**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **M.C., Who Sues By and Through Her Mother**<br>**and Next of Friend Gail Tatum,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 2:06-cv-83-WKW-CSC** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **PACTIV CORPORATION and** | ) | |
| **LOUISIANA-PACIFIC CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT PACTIV CORPORATION'S REPLY BRIEF
IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS AND
RULE 12(E) MOTION FOR A MORE DEFINITE STATEMENT**

Pactiv filed its Rule 12(b)(6) Motion to Dismiss, or, in the alternative, Rule 12(e) Motion for a More Definite Statement, on March 22, 2006. Pactiv's Motion to Dismiss raised several narrow legal issues based on Plaintiff's allegations in the First Amended Complaint, including whether Plaintiff's claims are timely under Alabama law given that Pactiv ceased operations at the wood treatment facility in November 1983. Pactiv's Motion to Dismiss also identified additional legal flaws with many of the individual counts in the First Amended Complaint, most of which are not fixable even if Plaintiff further amended the complaint.

Plaintiff's response, filed on April 26, 2006, relies on 13 extraneous affidavits and other documents not referenced in the First Amended Complaint. Each one of these exhibits submitted by Plaintiff is either (a) entirely irrelevant to the narrow legal issues presented by Pactiv's Motion to Dismiss, or (b) an attempt to make up for the failure to include in the First Amended Complaint sufficient allegations to state a claim.

13314766.1

The scope of review on a Rule 12(b)(6) motion to dismiss, however, "must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). It is "axiomatic that a plaintiff cannot amend a complaint by arguments . . . made in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert denied* 470 U.S. 1054 (1985)). These exhibits should be stricken from Plaintiff's response and disregarded. The First Amended Complaint fails to state a claim as a matter of law and must be dismissed.

## ARGUMENT

**I.    Plaintiff's Claims Are Barred By Alabama's Rule Of Repose.**

Plaintiff's claims are barred by Alabama's 20-year rule of repose. The rule of repose is triggered by the defendant's conduct (which in this case ceased in 1983), not the accrual of a plaintiff's claim. Moreover, Section 309 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9658, cannot preempt the running of the repose period in this case. First, CERCLA § 309 does not apply without an underlying CERCLA claim. Plaintiff does not assert a CERCLA claim here. Second, CERCLA § 309 can only preempt a state limitations period, not a state repose period.

**A.    Alabama's 20-Year Repose Period Runs From November 1983 When Pactiv Ceased Operations At The Facility.**

As set forth in Pactiv's Motion to Dismiss, "[a]pplication of Alabama's rule of repose has only one element—the passage of <u>twenty years</u> time from the moment the <u>actions</u> giving rise to the claim <u>occurred</u>—and, if that time has elapsed, no claim can be pursued." *Morgan v. Exxon Corp.*, 869 So. 2d 446, 448 (Ala. 2003) (emphasis in original) (citing *Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd* 267 F.3d 1209 (11th Cir. 2001)). The

rule of repose is "triggered merely by the alleged wrongful conduct of the defendant." *Id.* at 449. "A defining characteristic of the rule of repose is that its time period does not begin to run when an action accrues, but rather when the relevant action occurs." *Moore*, 267 F.3d at 1218.

Plaintiff suggests a different rule for starting the repose period. Plaintiff relies on language from certain cases stating that the rule of repose "begins running on a claim as soon as all of the essential elements of that claim coexist." Plf. Response at 12-13. Thus, according to Plaintiff, the repose period only runs once a claim accrues, just like a limitations period. But if the limitations and repose periods are both triggered by accrual, the longer 20-year repose period would be rendered superfluous in most cases. The rule of repose, which has been applied by Alabama courts for more than a century, should not be interpreted to yield such a result.

Plaintiff cites *Snodgrass v. Snodgrass*, 58 So. 201, 202 (Ala. 1912), for the proposition that the rule of repose "is premised upon the concept that 'it is inequitable to allow those who have slept upon their rights for a period of 20 years' to file suit." Plf. Response at 13. Thus, Plaintiff reasons, "one cannot 'sleep' on his rights until he has the right to commence an action." *Id.* But as the Alabama Supreme Court went on to explain in *Snodgrass*, the rule of repose:

> rests not only on the want of diligence in asserting rights, but on the <u>higher ground</u> that is necessary to suppress frauds, to avoid long dormant claims, . . . [and to] relieve[] courts from the necessity of adjudicating rights so obscure by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.

58 So. at 202 (emphasis added). Accordingly, the proper trigger for the repose period is the defendant's conduct. *See, e.g., Morgan*, 869 So. 2d at 447-49, 452 (holding that claims seeking damages for contamination against defendants that did not operate the oil wells at issue since the 1960s and 1970s were barred by the rule of repose).

**B.      CERCLA § 309 Cannot Apply Without An Underlying CERCLA Claim.**

Plaintiff, in a last-ditch effort to save her claims, turns to a provision embedded in CERCLA, 42 U.S.C. § 9658 ("CERCLA § 309").  Yet, in this personal injury action, Plaintiff does not assert any claims remotely dealing with cleanup or remedial activities.  Nor does Plaintiff allege that the facility is a designated CERCLA site subject to cleanup under CERCLA. Plaintiff's attempt to take shelter under CERCLA § 309 must fail.  CERCLA § 309 does not apply, and was never intended by Congress to apply, beyond the scope of the statute itself.  Since Plaintiff does not (and cannot) assert a CERCLA claim along with her personal injury claim in this case, CERCLA § 309 can provide no refuge to dismissal.

In *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1137 (Ala. 1997), the Alabama Supreme Court aptly recognized that "[m]ost federal courts have limited the application of [CERCLA § 309] to situations where an underlying CERCLA claim has been made or could exist based on the presence of hazardous waste—<u>where there is an underlying claim dealing with, or cause of action providing for, cleanup and remedial activities</u>."  (emphasis added). Although *Becton*'s holding was based in part on the conclusion that CERCLA § 309 does not apply to workplace releases, the *Becton* court also engaged in a broader in-depth analysis of the statute and case law and concluded that CERCLA § 309 "reflects an intent to confine its purposes to the scope of CERCLA itself."  *Id.* at 1142.

"The primary purpose of CERCLA is the prompt cleanup of hazardous waste sites." *State v. EPA*, 871 F.2d 1548, 1557 (11th Cir. 1989).   If CERCLA § 309 could apply without an underlying CERCLA claim, "it would give this isolated section of the Act a far more expansive effect than that of the balance of the Act."  *Knox v. AC & S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988).  "[A] statute is passed as a whole and not in parts or sections and is animated by one

general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." *Id. See also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context.").

As *Becton* explained, most courts have rightly limited the scope of CERCLA § 309 to cases involving an underlying CERCLA claim.[1] *See, e.g., Knox*, 690 F. Supp. at 758 ("[T]he wording of [CERCLA § 309] and its incorporation of the terms of CERCLA and the CERCLA definition of those terms indicate that the provision was limited to application in the situation where a state cause of action exists in conjunction with a CERCLA cause of action."); *Elec. Power Bd. v. Westinghouse Elec. Corp.*, 716 F. Supp. 1069, 1081 (E.D. Tenn. 1988) ("[T]he [plaintiff] has asserted no cause of action under [CERCLA], but seeks only to have the benefit of one of its provisions to avoid the Tennessee statute of repose.").[2]

In addition, principles of comity require CERCLA § 309 to apply only within the substantive limits of CERCLA itself. These principles "demand that in our federal system, state law not be preempted unless it is the clear and manifest purpose of Congress." *First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir. 1989) (holding that CERCLA § 309 does not preempt state law, as applied to asbestos removal actions, as such actions have

---

[1] Some of these cases addressed whether CERCLA § 309 could preempt a state statute of <u>repose</u> without an underlying CERCLA claim. Since these courts determined that CERCLA § 309 could not apply in any event, the courts did not reach the separate issue presented here in Part II.B—whether CERCLA § 309 can apply to a <u>repose</u> period at all.

[2] Plaintiff's attempt to distinguish these cases is unavailing. Plf. Response at 10 n.6. Plaintiff asserts that *Knox* involved a workplace release which would be excluded from CERCLA § 309. This was not the basis for the holding in *Knox*, which expressly held, after a thorough analysis, that CERCLA § 309 cannot apply without an underlying CERCLA claim. Plaintiff attempts to distinguish *Electric Power Board* because it involved a "miniscule release" from something other than a "typical facility." These irrelevant factual differences are no reason to discard the court's sound legal analysis.

been placed outside the scope of CERCLA).  *See also Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) ("Giving [CERCLA § 309] its broadest possible meaning . . . preempts wide sweeps of state law—something we do not lightly attribute to Congress."); *cf. Becton*, 706 So. 2d at 1142 ("[T]he rebirth of federalism in *United States v. Lopez*, 514 U.S. 549 (1995), may call into question the constitutionality of [CERCLA § 309].").[3]

Congress did not clearly and manifestly intend for CERCLA § 309 to apply where a CERCLA claim was not asserted.  Just the opposite, the key report to Congress which led to the enactment of CERCLA § 309 made clear that the federal discovery rule would <u>not</u> preempt a state statute of limitations unless there was also a CERCLA claim:

> The remedies discussed in this report are legal remedies for personal injury, environmental damages and reduction of property value resulting from spills of hazardous substances and disposal of hazardous wastes <u>for which CERCLA provides cleanup and remedial activities</u>.

*Knox*, 690 F. Supp. at 757 (quoting *Injuries and Damages from Hazardous Waste*, A Report to Congress in Compliance with Section 301(e) of [CERCLA], 97th Cong. 2d Sess. (1982)) (emphasis added).  Congress thus recognized that the scope of CERCLA § 309 was not broader than the scope of the Act itself.

---

[3] Indeed, CERCLA § 309 exceeds the scope of permissible Congressional power under the Commerce Clause.  The Commerce Clause vests Congress with the power to "regulate Commerce . . . between the several States."  U.S. Const., Art. I, §8, cl. 3.  This power extends only to laws regulating the channels of interstate commerce, the instrumentalities of interstate commerce, and activities that substantially effect interstate commerce.  *See United States v. Lopez*, 514 U.S. 549, 559-563 (1995).  CERCLA § 309 also violates the Tenth Amendment.  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  CERCLA § 309 impermissibly "commandeer[s]" Alabama's legislative and executive functions, forcing Alabama to adopt and enforce a different commencement date for the running of Alabama's statutes of limitations. *See, e.g. Hodel v. Virginia Surface Mining & Reclamation Ass'n.*, 452 U.S. 264, 288 (1981).

Plaintiff holds out *Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089 (11th Cir. 1994), as a "white horse case." Plf. Response at 6. *Tucker* is a horse of a different color. Unlike here, the plaintiff in *Tucker* asserted property damage claims under state and federal law, including a <u>CERCLA claim</u> for response costs and natural resource damages. *See Tucker*, Brief for Appellant, 1993 WL 13128896, at *2. As the Alabama Supreme Court explained, "no issue was raised in *Tucker* as to whether [CERCLA § 309] would apply in the absence of underlying CERCLA claims. . . ." *Becton*, 706 So. 2d at 1140. *Tucker* is therefore entirely irrelevant to the legal issue presented by Pactiv's Motion to Dismiss.[4]

Plaintiff tries to make up for the fact that she did not assert a CERCLA claim by arguing that "[c]learly, an underlying CERCLA claim could be maintained against the defendants in this case." Plf. Response at 10. This is far from clear. Even if the mere <u>possibility</u> of asserting a CERCLA claim were enough to trigger CERCLA § 309, which it is not under cases such as *Knox*, Plaintiff <u>could not</u> assert a CERCLA claim in this case.

There are four elements to a CERCLA claim: (1) the site must be a "facility"; (2) there must be a release or threatened release of a hazardous substance; (3) which caused the plaintiff to incur response costs consistent with the National Contingency Plan ("NCP"); and (4) the defendant must be a potentially responsible party. *See, e.g., Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1302 (11th Cir. 2002). Plaintiff does not allege that she incurred any response costs at all, let alone consistent with the NCP. Thus, there is no indication that

---

[4] Plaintiff also relies on two other cases, *Kowalski v. Goodyear Tire & Rubber Co.*, 841 F. Supp. 104 (W.D.N.Y. 1994), and *Tower Asphalt, Inc. v. Determan Welding & Tank Service, Inc.*, 530 N.W.2d 872 (Minn. Ct. App. 1995). As *Becton* noted, the *Kowalski* court "ignored other jurisdictions' interpretations of the kind of situations CERCLA was designed to remedy." 706 So. 2d at 1140-41. The *Tower* court then built off that mistake, citing only *Kowalski*, and not even addressing the significant issues raised in cases such as *Knox*, *Electric Power Board*, *First United Methodist Church*, and *Covalt*.

Plaintiff could assert a CERCLA claim here. This personal injury case simply has nothing to do with CERCLA.

Moreover, even assuming that M.C. did incur NCP-consistent response costs before her recent death (Plaintiff has yet to amend the complaint accordingly), Plaintiff cannot recover those costs. Under Alabama law, a decedent's unfiled claims do not survive in favor of the personal representative. *See* Ala. Code § 6-5-462. *See also King v. Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d 1241, 1246 (Ala. 1992) (a wrongful death claim does not allow for compensatory damages). Plaintiff therefore lacks standing to assert a CERCLA claim to bring this case within the scope of CERCLA § 309.

The CERCLA § 309 discovery rule cannot apply to Plaintiff's state law claims since Plaintiff has not (and cannot) assert a CERCLA claim.[5] Plaintiff's claims are thus time-barred pursuant to Alabama's rule of repose. The claims accrued over 20 years ago and the limitations periods have long-since expired.

### C.    CERCLA § 309 Cannot Apply To Repose Periods.

Plaintiff half-heartedly asserts, without offering any explanation, that CERCLA § 309 "preempts not only the applicable accrual rule [for the statute of limitations], but also Alabama's rule of repose." Plf. Response at 6. Plaintiff's "argument" is contrary to the plain text of CERCLA § 309 and basic repose principles. CERCLA § 309 does not demonstrate a clear and manifest intent by Congress to preempt state repose periods.

---

[5] Even assuming that CERCLA § 309 preempted state law in this case, it could not apply to Plaintiff's AMELD claim (Count 7) relating to Pactiv's alleged sale of firewood. Plaintiff cannot satisfy a basic element of CERCLA § 309—a release from a "facility." Consumer products are expressly exempted from the definition of a "facility." 42 U.S.C. § 9601(9) ("The term 'facility' . . . does not include any consumer product in consumer use. . . ."); *see also Elec. Power Bd.*, 716 F. Supp. at 1081. Pactiv therefore is not the owner or operator of any facility where a release occurred with respect to the firewood.

Even assuming that CERCLA § 309 can apply without an underlying CERCLA claim (which it cannot), by its own terms § 309 applies only to limitations periods, not repose periods. CERCLA § 309 specifies that when certain requirements are met:

> If the <u>applicable limitations period</u> for such action (as specified in the State <u>statute of limitations</u> or under common law) provides a commencement date which is earlier than the federally-required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added).  *See also id.* § 9658(b)(2) (defining "applicable limitations period" to mean "the period specified in a <u>statute of limitations</u> during which a civil action . . . may be brought") (emphasis added); (b)(3) (defining "commencement date" to mean "the date specified in a <u>statute of limitations</u> as the beginning of the applicable <u>limitations period</u>") (emphasis added).

Courts have relied on this plain language to hold that CERCLA § 309 does not apply to state repose periods.  *See BNSF v. Poole Chemical Co.*, 419 F.3d 355, 361-65 (5th Cir. 2005) ("[T]he reach of the plain language of [CERCLA § 309] does not extend to statutes of repose."); *McDonald v. Sun Oil Co.*, No. 03-1504, 2006 WL 696316, at *8-9 (D. Or. Mar. 14, 2006) ("[Section] 309 of CERCLA extends only to statutes of limitations.").

The difference between a statute of limitations and a statute or rule of repose is "substantive, not merely semantic." *BNSF*, 419 F.3d at 362; *McDonald*, 2006 WL 696316, at *9. As the Fifth Circuit in *BNSF* recently explained:

> A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time.  It cuts off a remedy. A statute of repose limits the time during which a cause of action can arise. . . .  Thus, with the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it.

*Id.* at 363 (citations omitted).  *See also Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd* 267 F.3d 1209 (11th Cir. 2001) ("While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is a substantive doctrine of the State, eliminating a cause of action. . . ."). Thus, after 20 years, Alabama law does not recognize a substantive cause of action at all; there is no claim to which CERCLA § 309's discovery rule for accrual can be applied.

Plaintiff offers a bare citation to *Morgan v. Exxon Corp.*, 869 So. 2d 446 (Ala. 2003), for the proposition that CERCLA § 309 applies to repose periods. Plf. Response at 6. But in *Morgan*, the Court held that CERCLA § 309 could not possibly apply because the plaintiff failed to present evidence of a "release of a hazardous substance." *Id.* at 450, 452. Thus, the Court did <u>not</u> address (1) whether CERCLA § 309 can apply without an underlying CERCLA claim or (2) whether CERCLA § 309 can circumvent a state repose period. *Id.* at 450. Indeed, it appears that no party even raised the issue of whether § 309 could preempt a repose period.

Accordingly, even if CERCLA § 309 can apply without an underlying CERCLA claim, § 309 cannot preempt the running of Alabama's 20-year repose period. The repose period ran from November 1983, when Pactiv ceased operations at the facility. All of Plaintiff's claims against Pactiv are therefore time-barred under the rule of repose. The First Amended Complaint should be dismissed in its entirety for failure to state a claim.

## II.    Count 3 (Negligence *Per Se*) Fails To State A Claim.

### A.    Plaintiff Fails To Allege Which Laws Pactiv Supposedly Violated.

The two-paragraph Count 3 alleges that Pactiv was negligent in that it violated "the laws and regulations of the State of Alabama." FAC ¶ 106. As set forth in Pactiv's Memorandum of

Law (at 5-6), notice pleading requires Plaintiff to identify the specific statutes and provisions at issue.  Plaintiff does not dispute this.  Instead, Plaintiff tries to amend the complaint through her response brief by arguing that Pactiv violated unspecified provisions of the Alabama Hazardous Waste Management and Minimization Act.  Plf. Response at 19 (citing Ala. Code §§ 22-30-1, *et seq.*).  Even if the complaint could be amended in such a fashion, Plaintiff still fails to cite which provisions of the HWMMA Pactiv supposedly violated, as required by notice pleading.  *See* Pactiv's Memorandum of Law at 5-6.  Tellingly, in *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1010 (11th Cir. 2004), the case cited by Plaintiff, the complaint identified "six independent violations of state and federal RCRA regulations, standards, and prohibitions." Plaintiff fails to plead that here.[6]  Count 3 should be dismissed.

### B.    The HWMMA Cannot Support A Negligence Per Se Claim.

The flaw with Count 3 is not just a pleading defect.  Even if Plaintiff were to identify the specific provisions of the HWMMA that are at issue, the HWMMA cannot support a negligence *per se* claim as a matter of law because it was enacted to protect the general public.

Under Alabama law, "[n]ot every violation of a statute or an ordinance is negligence *per se.*"  *Parker Bldg. Servs. Co. v. Lightsey*, No. 1031377, 2005 WL 141513, at *3 (Ala. 2005).  A plaintiff cannot state a claim for negligence *per se* unless the law at issue was enacted to protect a specific class of persons, "distinguished from the general public."  *Id.*  Thus, in *Lightsey* and *Thomas Learning Center, Inc. v. McGuirk*, 766 So. 2d 161, 170-72 (Ala. Civ. App. 1998), Alabama courts examined the statements of legislative purpose behind building codes and

---

[6] Instead, Plaintiff presents the Court with a flurry of factual affidavits and documents (which are irrelevant for a Rule 12(b)(6) motion) and apparently assumes that the Court and Pactiv can find in the HWMMA what provisions Plaintiff contends are at issue.  But the Court is not obligated to "manufacture arguments on Plaintiff's behalf."  *Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000).  And this does not provide adequate notice to Pactiv.

contractor licensing statutes and held that the laws could not support negligence *per se* claims because they were enacted to protect the general public.

Like the building code and contractor licensing statutes, the HWMMA was enacted to protect the general public. The Alabama legislature set forth its purpose and intent for the HWMMA in Alabama Code § 22-30-2:

> The Legislature finds that the generation and management of hazardous waste is a continuing problem. Further, that without adequate safeguards, the generation, treatment, storage and disposal of such wastes can create conditions which threaten <u>human health or the environment</u>. The Legislature, therefore, declares that in order to minimize and control any such hazardous conditions, it is in the <u>public interest</u> to establish and to maintain a statewide program, administered by the Alabama Department of Environmental Management, to provide for the safe management of hazardous wastes.

*Id.* (emphasis added). The HWMMA plainly benefits the general public and the environment, not a specific class of persons to which the decedent belonged. Plaintiff virtually concedes this. *See* Plf. Response at 20 ("[T]he citizens of Lockhart and Florala [are] a protected class of people."). The HWMMA therefore cannot support a negligence *per se* claim. Indeed, Plaintiff does not cite a single case recognizing a negligence *per se* claim under the HWMMA.

Plaintiff's response avoids this "general public" limitation entirely. Plaintiff merely cites to *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004), which she oddly claims is "remarkably similar" to the instant case. Plf. Response at 18. Yet *Parker* only involved a RCRA and CWA citizen suit. In *Parker*, the Eleventh Circuit <u>did not address</u> (1) a negligence *per se* claim, (2) the "general public" limitation on negligence *per se* under Alabama law (*Parker* arose in Georgia), or (3) the HWMMA. *Id.* at 1000 (stating that the <u>only</u> issue on

appeal was the RCRA and CWA claims, <u>not</u> negligence *per se*). It is hard to see how *Parker* is relevant at all to the narrow legal issue presented by Pactiv's Motion to Dismiss.[7]

Accordingly, even if Count 3 was properly pled, it still must be dismissed because alleged violations of the HWMAA cannot support a negligence *per se* claim as a matter of law.

### III.    Count 6 (Conspiracy) Fails To State A Claim.

As set forth in Pactiv's Memorandum of Law (at 8), a *prima facie* conspiracy claim would require Plaintiff to plead at least (1) an <u>affirmative agreement</u> or "meeting of the minds" between Pactiv and Louisiana-Pacific, and (2) an underlying act giving rise to a viable cause of action. *See, e.g., First Bank of Childresburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996). A conspiracy claim requires more than mere conclusory notice pleading. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Notwithstanding Plaintiff's many theories in her response (which were not pled in the First Amended Complaint), Plaintiff fails to sufficiently allege the necessary elements of a claim.

### A.    Plaintiff Fails To Allege An Agreement To Conspire.

Plaintiff must allege an affirmative agreement, or meeting of the minds, between Pactiv and Louisiana-Pacific. Merely alleging similar conduct by the two parties is not enough. *See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) ("[E]ven conscious parallel business behavior, standing alone, is insufficient to prove conspiracy."). Although it is certainly not necessary for each conspirator to know <u>all</u> of the

---

[7] Plaintiff also cites a Ninth Circuit RCRA citizen suit case which notes that those who live adjacent to landfills are particularly at risk from improper operations. Plf. Response at 18 (citing *Covington v. Jefferson County*, 358 F.3d 626, 639 (9th Cir. 2004)). But under Alabama law, that some members of the general public are at risk more than others does <u>not</u> mean that the statute was enacted to protect a specific class of persons, so as to allow a negligence *per se* claim. For example, the plaintiff in *Lightsey* was certainly put at risk by building code violations more than other members of the public (by walking on an improperly constructed roof), yet the Alabama Supreme Court still held that she could not assert a negligence *per se* claim.

details of a conspiracy, there still has to be some <u>communication</u>, showing that the parties actually had an affirmative agreement or meeting of the minds to accomplish an unlawful purpose. *See, e.g., Peters v. HUD*, No. 04:06057, 2006 WL 278916, at *7 (D.N.J. Feb. 1, 2006) (granting motion to dismiss conspiracy claim for failure to allege communication regarding a wrongful purpose or to allege a shared deliberate scheme).

Neither the First Amended Complaint nor Plaintiff's response alleges a single communication or agreement between Pactiv and Louisiana-Pacific. Without communications, there could be no affirmative agreement or meeting of the minds.

Plaintiff instead argues that a conspiracy existed because Pactiv and Louisiana-Pacific were successive owners of the facility. According to Plaintiff, the "meeting of the minds" supposedly occurred "when each successive defendant knowingly accepted the improper disposal practices of its predecessor and continued the intentional 'masking' of environmental non-compliance." Plf. Response at 22. Where is the agreement there? No matter how Plaintiff slices it, Plaintiff fails to allege this core element of a conspiracy.

Plaintiff's reliance on *United States v. Hansen*, 262 F.3d 1217 (11th Cir. 2001), is misplaced. In *Hansen*, three executives of the <u>same operator</u> were charged with criminal conspiracy. The executives' knowledge of their <u>common</u> "continuing" and "affirmative" legal obligations, along with other factors, provided sufficient circumstantial evidence that an agreement existed to operate the facility in violation of environmental laws. *Id.* at 1246-47. In other words, since the three executives <u>jointly operated</u> the facility in violation of environmental laws for a decade, a jury could infer that an agreement was in place.

A similar inference is not supportable here, since wholly <u>independent entities</u> operated the facility during entirely <u>different time periods</u>. That Pactiv and Louisiana-Pacific were each

subject to their own separate "affirmative" and "continuing" legal obligations when they operated the facility at different times does not provide circumstantial evidence of an affirmative agreement to violate environmental laws.

Ultimately, instead of using disregard for known legal obligations as circumstantial evidence of an agreement, as was the case in *Hansen*, Plaintiff attempts to use those obligations to replace the affirmative agreement element entirely. There is no exception to the affirmative agreement requirement in environmental cases as Plaintiff appears to suggest.

**B.    Plaintiff Fails To Plead The Underlying Basis For The Alleged Conspiracy.**

Plaintiff also fails to allege a viable underlying wrong. "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *Thompson Props. v. Birmingham Hide & Tallow Co.*, 897 So. 2d 248, 267 (Ala. 2004).

In this case, Plaintiff alleges that Pactiv and Louisiana-Pacific conspired "to violate the rules, regulations and laws of the State of Alabama and the United States of America." *See* FAC ¶ 120. As set forth in Pactiv's Memorandum of Law (at 5-6, 8-9), and herein (at 10-11), these vague allegations do not satisfy notice pleading requirements. Count 3 must be dismissed.

**IV.    Count 7 (Products Liability) Fails To State A Claim.**

As set forth in Pactiv's Memorandum of Law (at 10-12), Count 7 fails to allege two essential elements of an Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") claim: (1) that Plaintiff was a "user or consumer" of the firewood, and (2) that Pactiv was "in the business" of selling firewood. Plaintiff's AEMLD claim must also be dismissed as untimely even if the Court finds that CERCLA § 309 saves the rest of Plaintiff's claims because product liability claims are expressly excluded from CERCLA § 309. *See infra* at 8 n.5.

**A.    Plaintiff Fails To Allege That She Used Or Consumed The Firewood.**

The AEMLD only imposes liability on parties who sell a defective product that is "unreasonably dangerous to the plaintiff as the end user or consumer." *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132-33 (Ala. 1976) (emphasis added); *see also Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 140-41 (Ala. 1976) ("Liability . . . attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks.").

Plaintiff believes that *Dillard v. Pittway*, 719 So. 2d 188 (Ala. 1998), shows that the AEMLD extends to anyone. Plf. Response at 22. Plaintiff grossly misinterprets *Dillard*. The plaintiff in *Dillard* was injured when he ran into a burning building in an attempt to save the lives of the occupants. *Id.* at 191. The plaintiff asserted an AEMLD claim against the manufacturer of the home's smoke detector. The Alabama Supreme Court began its analysis by recognizing that it is "the ultimate user or consumer" of a product that can assert an AEMLD claim. *Id.* at 193 (emphasis added). The Court then crafted a limited exception to the "user or consumer" requirement for rescuers because it did not want to "penalize the commendable human urge to rescue another in peril." *Id.* at 193-94. The *Dillard* rescuer exception proves the rule. If anyone can bring an AEMLD claim as Plaintiff argues, then the Court never would have had to consider whether to create an exception for rescuers.

Plaintiff then offers a lengthy discussion of the two seminal AEMLD companion cases, *Casrell* and *Atkins*. Notably, in each case, the plaintiff was a user or consumer of the defective product. In *Casrell*, the plaintiff was using a utility truck when its telescoping arm contacted a power line. 335 So. 2d at 130. In *Atkins*, the decedent was driving his car when an accident caused the car to fill with burning gasoline. 335 So. 2d at 136.

Plaintiff finds it significant that the AEMLD does not require privity of contract. Plf. Response at 25. But that does not mean that <u>anyone</u> can bring a claim. As the Alabama Supreme Court explained in *Dillard*, "the ultimate user or consumer who seeks recovery in an AEMLD action need not have purchased the product, but could be a family member, friend, employee, guest, or donee of the purchaser." 719 So. 2d at 193 (citing *Atkins*). Comment l to the Restatement (Second) of Torts § 402A similarly explained:

> *User or consumer*. In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller. . . . He may have acquired it through one or more intermediate dealers. It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser. The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant.

Accordingly, even though privity of contract is not required, Plaintiff can still only state an AEMLD claim if the decedent actually used or consumed the firewood, wherever she got it from. Count 7 lacks this critical allegation. Notably, Plaintiff, a minor, was not even born when Pactiv allegedly sold the defective firewood.

**B.    Plaintiff Fails To Allege That Pactiv Was "In The Business" Of Selling Firewood.**

Plaintiff also fails to allege that Pactiv was "engaged in the business of selling" the allegedly defective product, as opposed to just being an "isolated or occasional seller." Pactiv's Memorandum of Law at 12. Plaintiff does not dispute that the First Amended Complaint was

deficient. Plaintiff instead tries to amend her complaint through his response brief by attaching newspaper articles and affidavits.[8]   This cannot defeat a Rule 12(b)(6) motion.

**V.    Count 9 (Spoliation) Fails To State A Claim (As Plaintiff Concedes) And Does Not Allege Any Spoliation By Pactiv.**

Plaintiff concedes that spoliation is not a cause of action under Alabama law and agrees to the dismissal of Count 9.   Still, Plaintiff continues to allege that the "defendants" destroyed evidence.   It should be stressed going forward, however, that Plaintiff's allegations and affidavits pertain only to alleged conduct by <u>Louisiana-Pacific</u>, not Pactiv.   Indeed, if Louisiana-Pacific was in possession of documents that reflected unfavorably on Pactiv, it is hard to see what motive Louisiana-Pacific would have to destroy them.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Pactiv's Motion to Dismiss the First Amended Complaint.   In the alternative, if the Court does not dismiss Counts 3 or 6, Plaintiff should be ordered to provide a more definite statement of those claims.

---

[8] Notably, the exhibits attached by Plaintiff do not even support the notion that Pactiv was "in the business" of selling firewood.   For example, in the affidavit from Roy Ezell, the former facility manager who worked at the facility since 1976, Plaintiff apparently asked him to attest that the facility used to "sell end cuts to be used as firewood and continued selling the end cuts until the mill was shut down."   He wouldn't.   He crossed that sentence out before signing the affidavit. *See* Plf. Ex. B at 5.

Dated May 8, 2006

By: _____/s E. Bryan Nichols_____
                H. Thomas Wells, Jr.
                Alabama Bar No. WEL004
                twells@maynardcooper.com
                John A. Earnhardt
                Alabama Bar No. EAR006
                jearnhardt@maynardcooper.com
                Edwin Bryan Nichols
                Alabama Bar No. NIC036
                bnichols@maynardcooper.com
                **Counsel for Pactiv Corporation**

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2006, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*COUNSEL FOR DEFENDANTS LOUISIANA-PACIFIC CORPORATION*

Dennis R. Bailey                          Erin O'Kane Scott
Robert A. Huffaker                        The Powell Law Firm
R. Austin Huffaker                        P.O. Box 969
Rushton, Stakely, Johnston & Garrett      Andalusia, Alabama 36421
P. O. Box 270
Montgomery, AL  36101

*COUNSEL FOR PLAINTIFF*

W. Eason Mitchell
Colon Law Firm
P. O. Box 866
Columbus, MS  39703

Gregory A. Cade
W. Lee Gresham III
Fred R. DeLeon
Environmental Litigation Group
3529 Seventh Avenue South
Birmingham, AL  35222


            s/ E. Bryan Nichols
E. Bryan Nichols
1901 Sixth Avenue North
Suite 2400
Birmingham, Alabama 35203
Telephone: (205) 254-1184
Facsimile: (205) 254-1999
E-mail: bnichols@maynardcooper.com
Bar Number: NIC036