IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM, | ) ) ) |
| Plaintiff, | ) CASE NO. 2:06-cv-83-LES-CSC ) |
| vs. | ) ) |
| PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, | ) ) ) |
| Defendants. | ) |

### DEFENDANTS' JOINT MOTION TO COMPEL

Defendants Pactiv Corporation and Louisiana-Pacific Corporation, through counsel, and pursuant to Federal Rule of Civil Procedure 37(a), hereby move the Court to compel plaintiffs Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb to answer deposition questions concerning various public meetings, and for Plaintiffs to produce documents and information relating to the meetings. In support thereof, Defendants state as follows:

### INTRODUCTION

Plaintiffs allege that various personal injuries, some dating back decades, were caused by Defendants' historic operation of a wood treatment facility near Lockhart and Florala, Alabama. Attempting to save their claims from the applicable state law limitations and repose periods, Plaintiffs invoked CERCLA § 309's "federally required commencement date," which purportedly grafts a federal discovery rule onto their state law claims.[1] To satisfy the federal discovery rule, if it applies, Plaintiffs allege that they "did not know and reasonably had no

---

[1] Pactiv and Louisiana-Pacific have each filed motions to dismiss challenging the applicability of CERCLA § 309, 42 U.S.C. § 9658.

13325486.1

knowledge or way of ascertaining that [their] disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint." *See, e.g.*, First Am. Compl., Case No. 2:06-cv-83, at ¶ 94.

In recent depositions, Plaintiffs testified that they first learned that their injuries were potentially connected to the facility by attending various public meetings held by Plaintiffs' counsel. Thus, the dates and circumstances of these meetings are directly relevant to the "discovery rule" upon which Plaintiffs attempt to rely. This motion to compel merely seeks a fair opportunity to take discovery on this critical issue affirmatively raised by Plaintiffs. Without such discovery, Plaintiffs force Defendants, and this Court, to simply take their word for when and how they first discovered their potential claims.

At Plaintiffs' request, the parties are in the midst of expedited depositions (for each designated witness, a "discovery" deposition followed by a videotaped "preservation" deposition for use at trial), as set forth in their Consent Scheduling Order filed June 22, 2006. During the recent preservation depositions for plaintiffs Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb, Plaintiffs' counsel asserted broad, unsubstantiated claims of attorney-client privilege over topics relating to the public meetings, and the deponents refused to answer questions concerning the same. This testimony, and related documents, bears directly on when each Plaintiff indeed knew or should have known of a potential claim.

Testimony concerning the public meetings and the related documents are not privileged. And even if they were privileged, Plaintiffs waived any applicable protection by (1) invoking CERCLA § 309's "federally required commencement date," thereby placing at issue how and when Plaintiffs first learned of their potential claims, and (2) voluntarily disclosing significant

details of the meetings at the prior discovery depositions, and Plaintiffs themselves eliciting testimony about the content of the meetings at Sherri Davis' videotaped preservation deposition.

Defendants therefore move to compel plaintiffs Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb to reappear for deposition and answer the questions posed to them at their videotaped preservation depositions concerning the public meetings. Defendants further move to compel the production of any letters inviting residents to the meetings and any sign-in sheets,[2] and to compel all five deposed plaintiffs (including Sherri Davis) to reappear for deposition to answer questions concerning any of the documents that were withheld by Plaintiffs prior to their original depositions. Plaintiffs and their counsel should also be required to identify the specific dates of the meetings and the dates on which Plaintiffs executed retention agreements with their counsel. Finally, Defendants move to compel Plaintiffs to produce a full privilege log identifying all documents in Plaintiffs' possession, custody, or control (including documents possessed by Plaintiffs' counsel) for which a claim of privilege has been asserted.[3]

## BACKGROUND

Plaintiffs' counsel hosted public meetings at the former Florala armory hall prior to establishing an attorney-client relationship with any of the deponents or initiating litigation. The exact dates, attendance, and content of these meetings is unclear. Plaintiffs have not produced related documents and the unaided recollections of the deponents vary significantly. The

---

[2] Defendants have also requested additional documents relating to these meetings, including agendas, hand-outs, and copies of any presentations, as well as any audio or video recordings of the meetings themselves. Plaintiffs' counsel has represented to Defendants that no such documents or recordings exist. In reliance on those representations, Defendants do not now seek to compel their production.

[3] Pursuant to Federal Rule of Civil Procedure 37(a)(2), Defendants have conferred with Plaintiffs' counsel in good faith in an effort to secure the deposition answers, documents, and information relating to the meetings without court action.

13325486.1                           3

relevant details, as far as Defendants can ascertain, are set forth below. Plaintiffs voluntarily disclosed these details during their discovery depositions. During most of the videotaped preservation depositions, however, Plaintiffs' counsel invoked the attorney-client privilege and refused to allow answers to questions about the meetings.

Plaintiffs' counsel apparently conducted at least four public meetings. *See* DeVaughn Discovery Dep. at 51: 11-19 (attended four meetings), attached hereto as Ex. A. *See also* Cobb Discovery Dep. at 132: 1-13 (attended two meetings), attached hereto as Ex. B; Davis Discovery Dep. at 38: 18-20 (attended two meetings), attached hereto as Ex. C; Reynolds Discovery Dep. at 91: 16-23 (attended three meetings), attached hereto as Ex. D; Creech Discovery Dep. at 125: 1-6 (attended at least one meeting), attached hereto as Ex. E.

The meetings were widely attended. *See, e.g.,* DeVaughn Discovery Dep. at 52: 17-23, 53: 1-3 (most of Florala was at one meeting); 61: 10-23, 62: 1-5 (the whole community, about 700 people, attended another meeting); Cobb Discovery Dep. at 122: 6-8, 127: 5-11 (about 100 to 150 people were at the meetings Cobb attended); Davis Discovery Dep. at 40: 2-12 (a "room full" of people attended a "rather large" meeting). Notably, <u>the deponents themselves described the meetings as "public."</u> *See, e.g.,* Creech Discovery Dep. at 124: 23, 125: 1-3 ("Q: What meetings were those? A: First public meeting with Cade where they were telling the people about this business."); Reynolds Discovery Dep. at 85: 14-15 ("Q: What did your mom tell you? A: She just told me that they were having a town meeting at the armory hall.").

Many of the prospective plaintiffs also brought family members with them to the meetings. For example, Ms. Creech attended with her sister, brother, grandmother, and aunt. *See* Creech Discovery Dep. at 125: 10-15. Ms. Reynolds attended with seven family members, including her mother and siblings. *See* Reynolds Discovery Dep. at 88: 4-8.

The prospective plaintiffs had not yet retained counsel at the time of some, and in many cases, all of the meetings. *See, e.g.,* DeVaughn Discovery Dep. at 60: 15-23, 61: 1-2 (retained lawyers after either second or fourth meeting); Cobb Discovery Dep. at 125: 1-13 (retained lawyers later on, after the meetings); Davis Discovery Dep. at 33: 4-16 (had not retained lawyers at time of the initial meeting); Reynolds Discovery Dep. at 89: 22-23, 90: 1-10 (decided to file lawsuit after attending initial meeting).

Importantly, <u>not everyone who attended these meetings was or is a client of Plaintiffs' counsel</u>, as Ms. Davis' discovery deposition amply demonstrated:

> Q:     What was Mr. Cade [Plaintiffs' counsel] saying [at the meeting]?
>
> Mr. Mitchell: Wait a minute. You're asking what her lawyer told her?
>
> \*     \*     \*
>
> Mr. Taylor:   Is the nature of this objection that Mr. Cade can go to a room full of people and have a discussion with folks that . . . hadn't hired him as their lawyer and make statements and those statements are privileged? Is that the nature of the objection?
>
> \*     \*     \*
>
> Mr. Mitchell: If it's held in front of nonclients in a public discussion, I would not object to that.
>
> \*     \*     \*
>
> Q:     So when you came into that meeting, ma'am, and Mr. Cade was speaking to a group of other people there, the other people there, what was he saying?
>
> Mr. Mitchell: I'm still going to object. . . . May I just ask her a question?
>
> Mr. Ter Molen:   Go ahead.

> Mr. Mitchell: Yeah. <u>Do you know whether there were other people there who were not clients</u>?
>
> A:  <u>Yes</u>.
>
> Mr. Mitchell: I'll withdraw it then.

Davis Discovery Dep. at 32: 23, 33-35, 36: 1-4 (emphasis added).  *See also* Creech Discovery Dep. at 127: 21-23, 128: 1-6 ("Mr. Mitchell: . . . And <u>we allowed you to ask questions at anything about what was said at any public meeting</u>. . . .") (emphasis added).

At the first of the five videotaped preservation depositions, which was for Ms. Davis, <u>Plaintiffs</u> themselves elicited testimony during their direct examination concerning the content of the public meetings.  *See* Davis Preservation Dep. at 38: 11-23, 39: 1-17 (Q:  "When did you learn that you were exposed to dioxins and other chemicals from the facility?"  A:  "<u>After the meetings where they explained what some of the chemicals were that were being released into the air</u>.") (emphasis added), attached hereto as Exhibit F.

Yet, notwithstanding (1) the ample testimony concerning the public meetings voluntarily disclosed during the discovery depositions, and (2) the testimony concerning the public meetings elicited by <u>Plaintiffs</u> at Ms. Davis' preservation deposition, Plaintiffs' counsel invoked the attorney-client privilege and the remaining four deponents refused to answer questions concerning the meetings at their preservation depositions.  *See* Creech Preservation Dep. at 24: 21-23, 25-27, 28: 1-19, attached hereto as Ex. G; DeVaughn Preservation Dep. at 86: 3-23, 87-92, 93: 1-22, attached hereto as Ex. H; Cobb Preservation Dep. at 50: 12-23, 51-60, 61: 1, attached hereto as Ex. I; Reynolds Preservation Dep. at 73: 13-23, 74, 75: 1-18, attached hereto as Ex. J.  Plaintiffs have similarly declined requests to produce related documents, including letters inviting the deponents to these meetings and sign-in sheets, as well as the specific dates of the meetings and the dates on which each plaintiff retained counsel in this matter.

# ARGUMENT

I. **The Public Meetings Held At The Florala Armory, And The Related Documents And Information, Are Not Privileged Attorney-Client Communications.**

"The burden of establishing the privilege rests with the client or with the party objecting to the disclosure of the communication." *Richards v. Lennox Indus., Inc.*, 574 So. 2d 736, 740 (Ala. 1991). The basic elements of the attorney-client privilege in Alabama are as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived." *Id.* at 739 (citations omitted); *see also* Ala. R. Evid. 502 (attorney-client privilege), 510 (waiver).

Among other factors, Plaintiffs cannot possibly show that communications during public meetings were "made in confidence." The case of *In re Pfohl Brothers Landfill Litigation*, 175 F.R.D. 13 (W.D.N.Y. 1997), is directly on point. In *Pfohl Brothers*, a group of plaintiffs asserted personal injury and wrongful death claims allegedly caused by exposure to hazardous and toxic substances from a landfill. The defendants sought production of various meeting agendas, status reports, newsletters, and other documents distributed to various residents near the landfill. *Id.* at 23. The court concluded that the plaintiffs had not carried their burden of establishing the confidentiality of these communications, *i.e.*, that they "were in fact distributed only to clients." *Id.* The plaintiffs' privilege claim was also rejected because they failed to produce "attendance sheets establishing that no one other than the Plaintiffs or their attorneys were present at the various meetings for which the agendas were prepared." *Id.*

Plaintiffs here have made no showing (and cannot show) that the meetings were attended only by clients, or even potential clients, with any expectation of confidentiality. These meetings

13325486.1                                           7

were self-described by the deponents as "public" meetings at which most of the town attended, well prior to retaining legal representation, to learn about the wood treatment facility. These meetings might as well have been held on a public street corner. This issue was directly addressed in Ms. Davis' discovery deposition, when in response to a question from her own counsel, Ms. Davis testified that there were in fact other people at the meetings who were not clients (at which point, Plaintiffs' counsel withdrew his privilege objection and allowed the deponent to answer). *See supra* at 5-6. Tellingly, Plaintiffs have refused to even produce sign-in sheets from these meetings to begin to attempt making the requisite showing of confidentiality.

Moreover, in *Pfohl Brothers*, the court further noted that the meetings at issue in that case were also attended by family members of clients, and that "[w]here a third-party's presence was required merely to assist the client in physically attending a meeting with an attorney, waiver of the attorney-client privilege will occur if the third party remains at such meeting while legal advice is given." *Id.* at 23-24 (citations omitted). Alabama law is the same. *See, e.g.,* C. Gamble, McElroy's Alabama Evidence § 388.02(4) (5th ed. 1996) (the known presence of an unnecessary third party negates the prerequisite confidentiality).

In this case as well, the public meetings were admittedly attended not only by clients, or even potential clients, but also their family members. Ms. Creech for example brought along her sister, brother, grandmother, and aunt; Ms. Reynolds brought along seven family members. *See supra* at 4. Plaintiffs cannot show that all of these guests were either necessary third parties or clients themselves. This too negates any potential confidentiality.

Plaintiffs simply cannot establish the necessary elements of the attorney-client privilege with respect to these public meetings. Defendants were entitled to question the deponents about

the meetings, and Plaintiffs should be compelled to produce the written materials and identify the information requested herein relating to the meetings.

**II.    Plaintiffs Waived Any Applicable Privilege By Invoking CERCLA § 309's Federal Discovery Rule To Avoid The State Limitations And Repose Periods.**

Even if the public meetings were privileged communications, Plaintiffs waived any applicable privilege by invoking CERCLA § 309's federal discovery rule and placing at issue when and how they learned of their potential claims. Having done so, Plaintiffs cannot hide behind the attorney-client privilege to prevent Defendants from inquiring as to this very matter.

In *Ex Parte State Farm Fire & Casualty Co.*, So. 2d 368 (Ala. 2001), the Alabama Supreme Court recognized the concept of implied waiver of the attorney-client privilege. In such a case, "the question whether a party has implicitly waived the attorney-client privilege 'turns on whether the actual content of the attorney-client communication has been placed in issue [in such a way] that the information is actually required for the truthful resolution of the issues raised in the controversy.'" *Id.* at 376 (quotations omitted).

Again, *Pfohl Brothers* is directly on point. In that case, the court held that a plaintiff waives the attorney-client privilege by invoking CERCLA § 309:

> Here, evidence that is necessary to determine the correct [federally required commencement date] has been placed 'at issue' as Plaintiffs have invoked [CERCLA § 309] as a 'sword' to overcome the otherwise applicable time bars to their claims based upon their lengthy periods of exposure to toxic wastes generated by Defendants and dumped at the Pfohl Brothers Landfill. . . .
>
> Plaintiffs' uniform position that they did not know, nor could not have reasonably discovered the cause of their injuries earlier than December 19, 1994 <u>places at issue the nature of the information received at the December 19th meeting and how it differed qualitatively from all the information of which Plaintiffs were previously aware or could have learned earlier</u> such that all of the Plaintiffs, simultaneously, discovered for the first time at the meeting that the instant claims existed.

13325486.1                                    9

175 F.R.D. at 25 (emphasis added).

The *Pfohl Brothers* case is hardly unique. Courts have repeatedly found that plaintiffs impliedly waive the attorney-client privilege when they place their knowledge at issue by asserting that they only recently discovered their claims. *See Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 271-75 (N.D. Ill. 1997); *Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C. 1983); *American Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 708-10 (W.D. Mo. 1978); *Lama v. Preskill*, 818 N.E.2d 443, 449-50 (Ill. App. Ct. 2004); *Wardleigh v. Second Judicial District*, 891 P.2d 1180, 1186-87 (Nev. 1995); *Ulibarri v. Superior Court*, 909 P.2d 449, 451-52 (Ariz. Ct. App. 1995).

Plaintiffs affirmatively placed their knowledge at issue at the outset of this litigation by pleading in their complaints that they "did not know and reasonably had no knowledge or way of ascertaining that [their] disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint." *See supra* at 1-2. Defendants are thus entitled to take discovery as to how and when Plaintiffs in fact learned of their claims, even if Plaintiffs may have received that knowledge from their attorneys as they allege. This discovery is absolutely necessary for the truthful resolution of this issue which has been affirmatively raised by Plaintiffs.

**III.    Plaintiffs Waived Any Applicable Privilege By Voluntarily Disclosing Meeting Content At The Expedited Discovery Depositions And By Themselves Eliciting Testimony At Ms. Davis' Preservation Deposition.**

Finally, Plaintiffs plainly waived any applicable attorney-client privilege by voluntarily disclosing significant details of the meetings during the discovery depositions. *See* Ala. R. Evid. 510 ("A person upon whom these rules confer a privilege against disclosure waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the

privileged matter."). Moreover, it is simply remarkable that <u>Plaintiffs</u> would elicit testimony concerning the public meetings at Ms. Davis' videotaped preservation deposition, but then invoke the attorney-client privilege to prevent <u>Defendants</u> from obtaining answers to similar questions during the remaining four depositions. *See supra* at 6. Plaintiffs cannot use the attorney-client privilege as both a sword and a shield, picking-and-choosing when the public meetings are or are not privileged communications.

WHEREFORE, Defendants Pactiv Corporation and Louisiana-Pacific Corporation respectfully request that the Court:

(1)    compel plaintiffs Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb to reappear for deposition and answer the questions posed to them at their videotaped preservation depositions and any follow-up questions about the public meetings,

(2)    compel the production of any documents relating to the public meetings, including letters inviting residents to (or advising them of) the meetings and sign-in sheets,

(3)    compel all five deposed plaintiffs (including Sherri Davis) to reappear for deposition to answer questions concerning any of the documents that were withheld by Plaintiffs prior to their original depositions,

(4)    compel Plaintiffs and their counsel to identify the specific dates of the meetings and the dates on which Plaintiffs signed retention agreements with Plaintiffs' counsel,

(5)    compel Plaintiffs to produce a full privilege log identifying all documents in Plaintiffs' possession, custody, or control (including documents possessed by Plaintiffs' counsel) for which a claim of privilege has been asserted, and

(6)    award any further relief the Court deems just and proper.

Respectfully submitted this 7th day of August, 2006.

/s/ John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

/s/ Orlyn O. Lockard, III
Bernard S. Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2006, I filed the foregoing via the CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

/s/ Matthew C. Sostrin
Of Counsel
