```
 1        IN THE UNITED STATES DISTRICT COURT

 2        FOR THE MIDDLE DISTRICT OF ALABAMA

 3               NORTHERN DIVISION

 4

 5   CASE NUMBER:  2:06-cv-83-LES-CSC (LEAD CASE)

 6   MELANIE CHAMBERS, who sues by

 7   and through her Mother and next

 8   of friend, GAIL TATUM,

 9           Plaintiff,

10        vs.

11   PACTIV CORPORATION and

12   LOUISIANA-PACIFIC CORPORATION,

13           Defendants.

14            S T I P U L A T I O N

15        IT IS STIPULATED AND AGREED by and

16   between the parties through their respective

17   counsel, that the videtaped deposition of

18   Kandy Creech may be taken before Angela

19   Smith, RPR, CRR, at the Embassy Suites

20   Hotel, at 300 Tallapoosa Street, Montgomery,

21   Alabama 36104, on the 27th day of July,

22   2006.

23           DEPOSITION OF KANDY CREECH
```



EXHIBIT G

1   best of your ability?

2        A.    Yes, sir.

3        Q.    Okay.  Ma'am, is it true that
4   no doctor has ever told you that the tumor
5   that was removed from you is associated with
6   the old lumber mill?

7        A.    No, sir.

8        Q.    Okay.  Let me rephrase my
9   question.  It's true, is it not, that no
10  doctor has ever told you that the tumor
11  removed from your head was caused by the
12  mill?

13       A.    It's true.  It is true that
14  they haven't.

15       Q.    -- told you that.  Okay.
16  Thank you.  I'm sorry.  That question was
17  complicated.

18       A.    Okay.

19       Q.    I just wanted to make sure we
20  were on the same wavelength.

21            And it's true, is it not,
22  ma'am, that you went to a public meeting at
23  -- I believe it's called the Armory, in

24

7/27/2006  Creech, Kandy

```
 1    Florala, where there were some lawyers,
 2    including some of the lawyers representing
 3    you here today, who made some presentations?
 4             MR. PALMER:  I'm going to
 5    object to the question as mischaracterizing
 6    prior testimony and as misstating the facts,
 7    assuming facts not in evidence.
 8        A.    That's right.
 9        Q.    You did go to that meeting,
10    did you not, ma'am?
11        A.    I did go to the meeting, and
12    whatever was talked about at the meeting is
13    between me and my lawyers.
14        Q.    Okay.  Well, isn't it true,
15    ma'am, that it's only after that meeting
16    that you came to believe that your brain
17    tumor was caused by exposure to that plant?
18        A.    Yes, sir.
19        Q.    And it's true that you came to
20    that belief based on what the lawyers told
21    you at that meeting; correct?
22             MR. PALMER:  I'm going to
23    instruct the witness not to answer with
```

25

1   respect to communications between attorney
2   and client.
3       Q.   Miss Creech, if I could have
4   that transcript back.
5       A.   (Witness complies.)
6       Q.   Thank you.
7            MR. TER MOLEN:  Counsel, I'm
8   going to ask you -- refer to you a page
9   thirty-one of the transcript.  And --
10           MR. PALMER:  Give me a moment.
11           MR. TER MOLEN:  Sure.
12           MR. MITCHELL:  Should we get
13  off the Record while we're going through all
14  these documents?
15           MR. TER MOLEN:  No, I don't
16  think so, but, thanks.
17      Q.   Ma'am, your lawyer has
18  instructed you not to answer the question.
19  And I take it that but for his instruction
20  to you not to answer the question, that you
21  would be able to answer the question; is
22  that fair to say?
23      A.   Yes, sir.

**7/27/2006  Creech, Kandy**

1        Q.      All right.
2                MR. TER MOLEN:  And, Counsel,
3        I'm going to read into the Record here the
4        portions of the deposition, beginning at
5        page one-thirty-one on line seven.
6                MR. PALMER:  Can I see your
7        transcript?
8                MR. TER MOLEN:  Sure.  Again,
9        page one-thirty-one on line seven.
10       Question:  And how did you come to that
11       belief?  Answer:  They kept talking about it
12       and everything.  Question:  When you say
13       they --
14               MR. PALMER:  Wait a minute,
15       that doesn't seem to be from one-thirty-one.
16               MR. TER MOLEN:  Have I given
17       you the right transcript?  Let's just see
18       here.  Yes, it is.
19               MR. PALMER:  That's not
20       one-thirty-one.
21               MR. TER MOLEN:
22       One-thirty-one, sir, right there
23       (indicating.

```
 1                    MR. PALMER:  Oh, I'm sorry.  I
 2     was looking at one-thirty-two, then.
 3                          (Off-the-Record discussion
 4                           was held.)
 5                    MR. TER MOLEN:  Question:
 6     Then, how did you come to that belief?
 7     Answer:  They kept talking about it and
 8     everything.  Question:  When you say "they",
 9     who is "they"?  Answer:  These two lawyers.
10                    Okay.  Let me just ask, having
11     done that, are you going -- will you
12     continue in instructing the witness not to
13     answer if I ask her those questions again?
14                    MR. PALMER:  Yes.  We do not
15     waive the attorney-client privilege.  It's
16     just -- It's not been waived ever.
17                    MR. TER MOLEN:  I won't debate
18     that on this transcript, and I have no
19     further questions.
20                    MR. TAYLOR:  Can you give me
21     just a few minutes?
22                    VIDEOGRAPHER:  Off the Record.
23     The time is 9:40 a.m.
```