```
 1          IN THE UNITED STATES DISTRICT COURT

 2          FOR THE MIDDLE DISTRICT OF ALABAMA

 3                  NORTHERN DIVISION

 4

 5   CASE NUMBER:  2:06-cv-83-LES-CSC (LEAD CASE)

 6   MELANIE CHAMBERS, who sues by

 7   and through her Mother and next

 8   of friend, GAIL TATUM,

 9            Plaintiff,

10       vs.

11   PACTIV CORPORATION and

12   LOUISIANA-PACIFIC CORPORATION,

13            Defendants.

14            S T I P U L A T I O N

15            IT IS STIPULATED AND AGREED by and

16   between the parties through their respective

17   counsel, that the videotaped deposition of

18   Dorothy DeVaughn may be taken before Angela

19   Smith, RPR, CRR, at the Embassy Suites

20   Hotel, at 300 Tallapoosa Street, Montgomery,

21   Alabama 36104, on the 27th day of July,

22   2006.

23            DEPOSITION OF DOROTHY DEVAUGHN
```



EXHIBIT H

1    to keep going here today?
2         A.    Yes.
3         Q.    All right.  You attended at
4    least four meetings at the Armory Hall; is
5    that correct?
6         A.    Yes.
7         Q.    And you believe the first of
8    those four meetings occurred around October
9    of 2004, is that correct, ma'am?
10        A.    I'm for certain one of them,
11   anyway.
12        Q.    Do you think there might have
13   been one before October of 2004?
14        A.    No.
15        Q.    And at the meetings, there was
16   discussion regarding the release of smoke
17   containing chemicals from the Lockhart wood
18   treatment facility; is that correct?
19              MR. PALMER:  I'm going to
20   object to any questions about the content of
21   the conversations.  You've just been told
22   these are attorney-client conversations.
23   And I'm going to instruct the witness not to

```
1    answer any questions about the content of
2    those conversations.
3              Furthermore, you know, the
4    witness is not going to be subjected to this
5    harassment.  If you keep asking questions
6    only about the content of those
7    conversations, you obviously have nothing
8    else to ask and I'm going to terminate the
9    deposition.
10             I'm instructing the witness
11   not to answer any questions about the
12   content of any of the attorney-client
13   conversations.  Let's not waste our time
14   asking those questions.
15        Q.   You heard the instructions
16   from your counsel, Ms. DeVaughn; is that
17   correct?
18        A.   Yes.
19        Q.   Do you intend to follow those
20   instructions, ma'am?
21        A.   Yes.
22        Q.   Let me refer you to page
23   forty-eight of your deposition transcript,
```

1    please.

2          A.     (Witness complies.)

3          Q.     Do you have it there in front

4    of you, ma'am?

5          A.     Yes.

6          Q.     And I'm going to read from

7    line five on page forty-eight.  Question:

8    Okay.  Do you recall anyone ever telling you

9    that you had been exposed to chemicals

10   released from the Louisiana-Pacific wood

11   treatment facility?  Answer:  Yes, yes.

12   That was going on when they -- Deborah had

13   called us to a meeting, and that was when we

14   were -- we was told that.  Question:  Okay.

15   So, it was at the meeting at the Armory

16   Hall?

17         A.     Yes.

18         Q.     Answer:  Right.  Did I read

19   that correctly now?

20                MR. PALMER:  I'm going to

21   object.  And I'm going to instruct the

22   witness not to answer about any

23   conversations that occurred during

**7/27/2006  Devaughn, Dorothy**

1  attorney-client privileged meetings.  And,
2  furthermore, I'm going to object to this
3  line of questioning in the prior deposition
4  as well.
5       Q.   Did I read that correctly,
6  ma'am?
7            MR. PALMER:  Objection.  Same
8  objection.  I'm instructing the witness not
9  to answer questions about what occurred
10 during the meeting.
11      Q.   And, ma'am, were you -- This
12 was your -- I was reading from -- Was I
13 reading from your deposition of July 11,
14 2006, is that correct, the deposition you
15 gave a couple of weeks ago?
16      A.   Yes.
17      Q.   And were you telling the truth
18 then?
19           MR. PALMER:  I'm going to
20 object to the question.  Are you talking
21 about specifically those questions?
22      Q.   When you took the deposition,
23 ma'am, were you -- did you swear to tell the

```
1    truth?
2           MR. PALMER:  Asked and
3    answered.
4           A.    Yes.
5           Q.    Okay.  And did you tell the
6    truth?
7           A.    Yes.
8           Q.    Now -- And focusing upon those
9    public meetings, most of Florala -- Most of
10   the people in Florala attended at least some
11   of those meetings; isn't that correct?
12          MR. PALMER:  I'm going to
13   object to the question.  I'm going to --
14   First of all, I'm going to object to the
15   question as mischaracterizing testimony, as
16   being argumentative.  You're calling it a
17   public meeting.  It's not a public meeting.
18          We've already told you these
19   are meetings between attorneys and either
20   clients or prospective clients.
21          Now, would you like to
22   terminate the deposition, or do you have
23   other questions other than your questions
```

```
1    about these meetings?
2              MR. TAYLOR:  Are you finished?
3              MR. PALMER:  I'm finished, but
4    I'm asking you a question.
5         Q.   Did you understand the
6    question, ma'am?
7              MR. PALMER:  I'm going to
8    instruct the witness not to answer questions
9    about the content of any conversations of
10   those meetings.
11        Q.   I'm going to ask the question
12   again to be sure that you and your counsel
13   understood what I asked.  Most of the people
14   of Florala attended at least one or some of
15   those meetings; isn't that correct?
16             MR. PALMER:  Objection.
17   Assumes facts not in evidence.  Calls for
18   speculation.  It's argumentative.  And
19   you're trying to get into the content of the
20   meetings.
21        Q.   Can you answer the question,
22   please?
23             MR. PALMER:  I'm going to
```

```
 1   instruct the witness not to answer about
 2   those meetings.
 3           Q.    Okay.  Would you turn to page
 4   fifty-two of your deposition transcript,
 5   please.
 6           A.    (Witness complies.)
 7           Q.    And let's start at -- on page
 8   fifty-two.  Let's start at line seventeen.
 9   I'm going to -- This is your deposition that
10   you've already told us on July 11th you
11   swore to tell the truth, and you were giving
12   truthful answers.  Now, let me hold on a
13   second.  Ms. DeVaughn, are you okay?
14           A.    Yes.
15           Q.    And do you want to continue?
16   Are you sure you want to continue, ma'am?
17           A.    Yes.
18           Q.    Page fifty-two, line
19   seventeen.  Question: Okay.  At the second
20   meeting, can you recall if anyone spoke to
21   the group attending?  Answer:  Yes.
22   Question:  Approximately how many people
23   attended the meeting?  Don't know?  Answer:
```

1    Florala.  Question:  You think it was most
2    of the people in Florala?  Answer:  Right.
3    Did I read that correctly, ma'am?
4              MR. PALMER:  I'm going to
5    object to the question as being
6    argumentative, as assuming facts not in
7    evidence, as being calling for speculation.
8         Q.   Did I read that question
9    correctly, ma'am?
10        A.   Yes.
11        Q.   And the answer, was that a
12   truthful answer at the time you gave it?
13             MR. PALMER:  I'm going to
14   object to the question, again, as being
15   argumentative, as calling for speculation.
16        Q.   The answer --
17             MR. PALMER:  Lack of
18   foundation.
19             MR. TAYLOR:  I'm sorry.
20        Q.   The answer you gave, was that
21   a truthful answer?
22        A.   Yes.
23        Q.   Now, prior to attending those