7/28/2006  Cobb, Sandra

```
1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE MIDDLE DISTRICT OF ALABAMA

3                  NORTHERN DIVISION

4

5    CASE NUMBER:  2:06-cv-83-LES-CSC (LEAD CASE)

6    MELANIE CHAMBERS, who sues by

7    and through her Mother and next

8    of friend, GAIL TATUM,

9              Plaintiff,

10             vs.

11   PACTIV CORPORATION and

12   LOUISIANA-PACIFIC CORPORATION,

13             Defendants.

14             S T I P U L A T I O N

15             IT IS STIPULATED AND AGREED by and

16   between the parties through their respective

17   counsel, that the videotaped deposition of

18   Sandra Cobb may be taken before Angela

19   Smith, RPR, CRR, at the Embassy Suites

20   Hotel, at 300 Tallapoosa Street, Montgomery,

21   Alabama 36104, on the 28th day of July,

22   2006.

23             DEPOSITION OF SANDRA COBB
```



1   handed you Exhibit 1.  And my question is,

2   whether this is the advertisement that you

3   recalled seeing in the Florala News?

4        A.    Yes, sir.

5        Q.    That's the advertisement that

6   you recall?

7        A.    Well, similar to that, yeah,

8   if not that one.

9        Q.    Thank you.  You can hand that

10  back to the court reporter, please.

11       A.    (Witness complies.)

12       Q.    Now, I understand that

13  sometime after January 6th of 2004, when you

14  were in Dr. Weaver's offices, you attended

15  meetings that were held by attorneys at the

16  Lockhart Armory Hall; correct?

17       A.    Correct.

18       Q.    And, in fact, you attended at

19  least two different meetings at the Armory;

20  is that correct?

21       A.    Correct.

22       Q.    And those meetings related to

23  the Lockhart Lumber Mill; correct?

1      MR. PALMER:  At this point I'm
2  going to object to any questions relating to
3  the content of discussions at the meeting.
4  You can ask where the meetings occurred, who
5  was there, when they occurred, but I'm not
6  going to permit the witness to answer.
7      I'm going to instruct my
8  client not to answer any questions about any
9  discussions that went on, the content of any
10 discussions at all, and I'm asserting the
11 attorney-client privilege as the basis for
12 that.
13     Q.    Okay.  Ma'am, I'm going to ask
14 you a series of questions about meetings
15 that were at the Armory that I think that
16 I'm entitled to ask.  And your attorney is
17 going to object however he thinks that he
18 needs to object.  And we'll just proceed
19 accordingly and resolve that at a later time
20 with the Court.  Okay?  But I'm just going
21 to read into the Record the questions that I
22 need to ask you.  Okay?
23     You did attend meetings at the

```
1     Lockhart Lumber Mill -- Excuse me.  Strike
2     that and let me start over.
3               You did attend meetings at the
4     Armory that related to the Lockhart Lumber
5     Mill; correct?
6          A.   Yes, sir.
7          Q.   And there were a lot of people
8     at those meetings that you attended;
9     correct?
10         A.   Yes, sir.
11         Q.   Was there a sign-in sheet at
12    the first meeting that you attended at the
13    Armory?
14              MR. PALMER:  Objection.
15    Attorney-client privilege.  Instruct the
16    witness not to answer.
17         Q.   Ma'am, did you understand the
18    question that I asked you?
19         A.   Yes, sir.
20         Q.   Okay.  And other than -- But
21    for your attorney's objection, could you
22    answer that question?
23         A.   Yes, sir.
```

1        Q.    Okay.  And you intend to
2    follow his instruction not to answer the
3    question?
4        A.    Yes, sir.
5        Q.    Now, before you attended your
6    first meeting at the Armory, you had not
7    hired any lawyer to represent you in
8    connection with any claims relating to the
9    Lockhart Lumber Mill; correct?
10       A.    Correct.
11       Q.    And you did not sign anything
12   at the first meeting you attended at the
13   Armory, stating that you were hiring a
14   lawyer to represent you; correct?
15             MR. PALMER:  I'm going to
16   object to the question as calling for
17   attorney-client privileged information.  I'm
18   going to instruct the witness not to answer.
19       Q.    Ma'am, did you understand the
20   question that I asked you?
21       A.    Yes, sir.
22       Q.    And you intend to follow your
23   attorney's instruction not to answer it?

```
1           A.      Yes, sir.
2           Q.      But for his instruction not to
3    answer, could you answer the question that I
4    asked you?
5           A.      Yes, sir.
6           Q.      In fact, it was only after you
7    attended your first meeting at the Armory
8    that you signed anything hiring a lawyer to
9    represent you in connection with the
10   Lockhart Lumber Mill; is that correct?
11          A.      Correct.
12          Q.      And you told me earlier, I
13   believe, at your deposition, there were
14   about one hundred to a hundred and fifty
15   people at the first meeting you attended at
16   the Armory; is that correct?
17          A.      Correct.
18          Q.      Mr. Cade spoke to the crowd at
19   the first Armory meeting you attended; is
20   that correct?
21          A.      Best I can remember.
22          Q.      And at the first Armory
23   meeting that you attended, Mr. Cade talked
```

54

1    about the Lockhart Lumber Mill; is that
2    correct?
3              MR. PALMER:  I'm going to
4    object to the question as calling for
5    information privileged by the attorney --
6    subject to the attorney-client privilege and
7    I'm going to instruct the witness not to
8    answer.
9         Q.   Ma'am, did you understand the
10   question that I asked you?
11        A.   Yes, sir.
12        Q.   And but for your attorney's
13   instruction, would you be able to answer
14   that question?
15        A.   Yes, sir.
16        Q.   And do you intend to follow
17   your attorney's instruction not to answer?
18        A.   Yes, sir.
19        Q.   At the first Armory meeting
20   that you attended, Mr. Cade indicated that
21   some chemicals had come from the mill; is
22   that correct?
23             MR. PALMER:  I'm going to

1   object to the question.  It's calling for
2   information subject to the attorney-client
3   privilege.  I'm going to instruct the
4   witness not to answer.
5           Q.    Did you understand my
6   question?
7           A.    Yes, sir.
8           Q.    Do you intend to follow your
9   attorney's instruction not to answer?
10          A.    Yes, sir.
11          Q.    But for that instruction,
12  could you answer my question?
13          A.    Yes, sir.
14          Q.    At the first Armory meeting
15  that you attended, did Mr. Cade indicate
16  that the lawyers were thinking about filing
17  a lawsuit relating to the Lockhart Lumber
18  Mill?
19                MR. PALMER:  I'm going to
20  object to the question as calling for
21  information subject to the attorney-client
22  privilege.  I'm going to instruct the
23  witness not to answer.

```
1       Q.      Ma'am, did you understand my
2  question?
3       A.      Yes, sir.
4       Q.      Do you intend to follow your
5  attorney's instruction not to answer it?
6       A.      Yes, sir.
7       Q.      And but for his instruction,
8  would you be able to answer my question?
9       A.      Yes, sir.
10      Q.      Okay.  I understand you
11 attended a second meeting at the Armory; is
12 that correct?
13      A.      Yes, sir.
14      Q.      Was there a sign-in sheet at
15 the second meeting you attended at the
16 Armory?
17              MR. PALMER:  I'm going to
18 object to the question as calling for
19 information subject to the attorney-client
20 privilege.  I'm going to instruct the
21 witness not to answer.
22      Q.      Ms. Cobb, did you understand
23 my question?
```

1         A.    Yes, sir.
2         Q.    And do you intend to follow
3   your attorney's instruction not to answer
4   it?
5         A.    Yes, sir.
6         Q.    But for your attorney's
7   instruction, would you be able to answer my
8   question?
9         A.    Yes, sir.
10        Q.    Mr. Cade spoke at the second
11  Armory meeting you attended; is that
12  correct?
13        A.    Yes, sir.
14        Q.    And at that second Armory
15  meeting, Mr. Cade talked about the Lockhart
16  Lumber Mill; correct?
17              MR. PALMER:  I'm going to
18  object to the question as calling for
19  information subject to the attorney-client
20  privilege and I'm instructing the witness
21  not to answer.
22        Q.    Ma'am, did you understand my
23  question?

1        A.    Yes, sir.
2        Q.    And do you intend to follow
3    your attorney's instruction not to answer my
4    question?
5        A.    Yes, sir.
6        Q.    And but for his instruction,
7    could you answer my question?
8        A.    Yes, sir.
9        Q.    At the second Armory meeting
10   that you attended, Mr. Cade indicated that
11   dioxin had come from the Lockhart Lumber
12   Mill; is that correct?
13            MR. PALMER:  I'm going to
14   object to the question as calling for
15   information subject to the attorney-client
16   privilege and I instruct the witness not to
17   answer.
18       Q.    Did you understand my
19   question?
20       A.    Yes, sir.
21       Q.    And you intend to adhere to
22   your attorney's instruction not to answer
23   the question?

7/28/2006  Cobb, Sandra

```
1          A.    Yes, sir.
2          Q.    And but for his instruction,
3    could you answer my question?
4          A.    Yes, sir.
5          Q.    At the second Armory meeting
6    that you attended, I believe you indicated
7    that Mr. Cade said that bad chemicals were
8    being released from the mill; is that
9    correct?
10               MR. PALMER:  I'm going to
11   object to the question as calling for
12   information subject to the attorney-client
13   privilege and I instruct the witness not to
14   answer.
15         Q.    Ma'am, did you understand my
16   question?
17         A.    Yes, sir.
18         Q.    And you intend to adhere to
19   your attorney's instruction not to answer my
20   question?
21         A.    Yes, sir.
22         Q.    And but for his instruction,
23   could you answer my question?
```

```
1        A.    Yes, sir.
2        Q.    Is Mr. Cade one of your
3   attorneys representing you here today?
4        A.    Yes, sir.
5                  (Defendant's Exhibit 2 was
6                   marked for identification
7                   purposes.)
8              MR. LOCKARD:  I'm going to ask
9   the reporter to mark what I've just handed
10  your counsel as Exhibit 2.
11       Q.    Are you okay, ma'am?
12       A.    Yes, sir.
13       Q.    And please take as much time
14  as you need to review that.  And it might be
15  easier if I break it down.  If I could just
16  ask you to review pages one through eleven
17  at the very start of Exhibit 2.  And you'll
18  see at the bottom --
19       A.    Excuse me.
20       Q.    Are you okay, ma'am?
21       A.    Yes.
22       Q.    Okay.  You'll see at the
23  bottom of those first eleven pages there's a
```