**7/26/2006  Reynolds, Deborah**

```
1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF ALABAMA

3             NORTHERN DIVISION

4

5   CASE NUMBER:  2:06-cv-83-LES-CSC (LEAD CASE)

6   MELANIE CHAMBERS, who sues by

7   and through her Mother and next

8   of friend, GAIL TATUM,

9             Plaintiff,

10            vs.

11  PACTIV CORPORATION and

12  LOUISIANA-PACIFIC CORPORATION,

13            Defendants.

14         S T I P U L A T I O N

15            IT IS STIPULATED AND AGREED by and

16  between the parties through their respective

17  counsel, that the videotaped deposition of

18  Deborah Reynolds may be taken before Angela

19  Smith, RPR, CRR, at the Embassy Suites

20  Hotel, at 300 Tallapoosa Street, Montgomery,

21  Alabama 36104, on the 26th day of July,

22  2006.

23            DEPOSITION OF DEBORAH REYNOLDS
```



EXHIBIT
J

```
 1              Q.     And the reason you believe --
 2      Just to be sure that I'm clear on your
 3      response to my question, and I know I'm
 4      going to draw an objection, it is correct
 5      that you have not had any doctor tell you
 6      that your leukemia is related in any way to
 7      the operations of the Lockhart facility;
 8      isn't that correct?
 9                     MR. PALMER:  Same objections.
10              A.     Right.
11              Q.     Is that a yes?
12              A.     Yes.
13              Q.     And the reason you believe
14      that there is some relationship between the
15      operations of the Lockhart facility and the
16      cause of your leukemia, is because your
17      lawyers have told you that; correct?
18                     MR. PALMER:  Objection.  I'm
19      going to -- Are you trying to delve into
20      attorney-client privilege?
21                     MR. TAYLOR:  She's already
22      testified to that.
23              Q.     Is that correct, ma'am?
```

```
 1        A.    Ask me again.  I'm sorry.
 2              MR. PALMER:  Hold on.  Don't
 3    say anything, yet.  What are you saying,
 4    Mr. Taylor?
 5              MR. TAYLOR:  I'm saying that
 6    she's already testified that she went to a
 7    meeting at the Armory and her lawyers told
 8    her that it was as a result of the
 9    operations of the Lockhart facility that she
10    developed her leukemia.
11              MR. PALMER:  I don't believe
12    that's correct.  I believe what she said is,
13    she was not aware until she went to that
14    meeting.  And I'm going to instruct the --
15    my client not to answer any questions that
16    deal with what your lawyers told you.
17        Q.    Well, then, let me ask this
18    next question.  Based upon your prior
19    testimony, Ms. Reynolds, and, again, we
20    appreciate your taking the time you've spent
21    with us.
22              But based upon your prior
23    testimony, it wasn't until you went to the
```

1    meeting with your lawyers at the Armory that

2    you were advised that there may be some

3    relationship between the development of your

4    cancer, your leukemia, and the operations of

5    the facility, the Lockhart facility, is that

6    correct, ma'am?

7                    MR. PALMER:  I'm sorry.  I

8    didn't realize.  Several times it seemed

9    like you stopped.  I'm still going to

10   instruct the witness not to answer because

11   you're still talking about what she was

12   advised.

13                   MR. TAYLOR:  Okay.

14                   MR. PALMER:  She has not

15   disclosed, according to my recollection, the

16   content of conversations.  If you want to

17   ask her what her understanding is -- Don't

18   answer that.

19                   MR. MITCHELL:  Why don't we

20   take a break until I can read the context?

21   I'm almost finished.

22                   MR. PALMER:  Well, I just want

23   to make sure that you understand that we're

```
 1    not waiving attorney-client privilege.

 2                    MR. TAYLOR:  Do you want to

 3    take a break and talk because I'm almost

 4    finished.  I can have the court reporter go

 5    back and read that portion of the transcript

 6    if you would like.

 7                    MR. PALMER:  Fine.

 8                    MR. TAYLOR:  Would you go back

 9    and read the portion of the transcript

10    dealing with the Armory, please, and what

11    she was told at the Armory.

12                        (Requested portion of the

13                         Record was read by the

14                         Reporter.)

15        Q.    Did you understand that

16    testimony that the court reporter just read

17    to you?

18        A.    Yes.

19        Q.    And were you being truthful at

20    the time you gave that testimony?

21        A.    Yes.

22        Q.    Okay.  Now, you indicated that

23    in answer to a question from your counsel
```