IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM, | ) ) ) |
| Plaintiff, | ) CASE NO. 2:06-cv-83-LES-CSC ) |
| vs. | ) ) |
| PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Pactiv Corporation and Louisiana-Pacific Corporation hereby move the Court to enter a protective order staying noticed expedited depositions of Plaintiffs' fact witnesses Roy Ezell, John "Buck" Roberts, Jackie Partridge, and Carlton Dukes.[1]

### BACKGROUND

At Plaintiffs' request, the parties are in the midst of expedited depositions (by agreement, for each designated witness, a "discovery" deposition followed by a videotaped "preservation" deposition for use at trial), as set forth in the Consent Scheduling Order filed June 22, 2006. Discovery depositions of Plaintiffs Sherri Davis, Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb were taken July 11-14, 2006, and preservation depositions of the same Plaintiffs were taken July 26-28, 2006. As described further below, it was readily apparent

---

[1] Pursuant to Federal Rule of Civil Procedure 26(c), and as set forth in more detail herein, Defendants have conferred with Plaintiffs' counsel in good faith in an effort to resolve this matter without court action.

13326785.1

at these depositions that despite representations by Plaintiffs' counsel to the contrary, no reasonable medical basis existed for expediting the depositions in the first place.

Plaintiffs have now noticed the videotaped preservation depositions for the round of designated witnesses (attached hereto as Exhibit A), all of whom are former facility employees. Plaintiffs intend to depose Carlton Dukes,[2] John "Buck" Roberts, Jackie Partridge, and Roy Ezell on <u>September 6, 7, 12, and 13</u>, respectively. If those were to go forward, per the parties' prior agreement, Defendants would be entitled to first take each witness' discovery deposition.

With respect to Carlton Dukes, John "Buck" Roberts, and Jackie Partridge, Defendants ask that their expedited depositions be stayed pending independent medical confirmation that a reasonable basis exists for expediting their depositions. Plaintiffs should not be allowed, and Defendants should not be required, to depose key fact witnesses prior to the start of discovery unless there is actually a sound basis for doing so. In an attempt to resolve this issue without court action, Plaintiffs' counsel appeared to agree that there was no immediate need to depose these three witnesses. Plaintiffs nonetheless now intend to proceed with the depositions.

Roy Ezell presents an opposite concern. Mr. Ezell is 73 years old, and according to his wife, has been diagnosed with early Alzheimer's. Mr. Ezell worked at the facility for about 40 years until the late 1990s. Mr. Ezell is now also purportedly named as a Plaintiff—in a suit recently filed on August 3, 2006 in Covington County Circuit Court on behalf of over one thousand additional individuals claiming injuries from the wood treatment facility.[3]

---

[2] Plaintiffs' counsel previously indicated that Mr. Dukes' deposition would be expedited as an accommodation to Louisiana-Pacific. While Louisiana-Pacific is interested in taking Mr. Dukes' deposition on certain limited issues, it is willing to work with Plaintiffs' counsel to agree upon a convenient date to take Mr. Dukes' deposition within the next 30 to 60 days.

[3] Defendants intend to remove this case to federal court shortly based on diversity and federal question jurisdiction.

13326785.1                                   2

Serious issues have come to light in the past week as to the scope of Mr. Ezell's actual involvement in this lawsuit and whether he is competent to provide testimony. Specifically, Joann Ezell, Mr. Ezell's wife, initiated contact with Louisiana-Pacific. As set forth in more detail herein and in Joann Ezell's sworn statement attached hereto as Exhibit B, Mrs. Ezell denies that she or her husband are represented by Plaintiffs' counsel, denies that they authorized Plaintiffs' counsel to file suit on their behalves, denies giving authorization for obtaining Mr. Ezell's medical records, and reportedly want no part of any lawsuit.[4] Yet notwithstanding their wishes, Mrs. Ezell claims that Plaintiffs' counsel has had Mr. Ezell sign at least one document (apparently a blank signature page) and has been pressuring Mr. Ezell to meet with them further, presumably in advance of the upcoming depositions.

In accordance with Mrs. Ezell's request for help, Defendants bring this to the Court's attention so that it may be properly and promptly resolved. Defendants ask that Mr. Ezell's deposition be stayed until this uncertainty as to Mr. Ezell's role in this lawsuit can be resolved. If Mr. Ezell is indeed unrepresented or no longer wants to be represented by Plaintiffs' counsel, Defendants should be allowed an opportunity to interview him prior to any deposition, just as Plaintiffs' counsel has apparently done. After that, if Plaintiffs still wish to go forward with his deposition to preserve testimony for use at trial, Defendants would request that Mr. Ezell first undergo an independent medical examination (or have his current doctors issue an opinion) to determine whether and to what extent he is indeed competent to testify.

---

[4] In light of Plaintiffs' counsel's claimed representation of Roy Ezell, Defendants have not had any contact with him concerning these matters.

**ARGUMENT**

I. **The Dukes, Roberts, and Partridge Depositions Should Be Stayed Unless Independent Medical Confirmation Shows an Immediate Need to Proceed.**

   A. **No Reasonable Medical or Cognitive Basis Existed for Expediting the Earlier Round of Plaintiffs' Depositions.**

Plaintiffs' counsel previously represented to the Court that depositions to preserve testimony were needed for certain witnesses prior to the start of discovery.[5] Plaintiffs' counsel represented that "[p]eople are getting forgetful, and they are unexpectedly coming down, relapsing, and dying," and that "we'd like to depose the sickest people." Plaintiffs' counsel further represented that "some of the ex-employees who are not old enough to have Alzheimer's are showing symptoms, and we don't know how fast they're going to go downhill. We'd like to get a few of the key witnesses who are starting to show cognitive deficiencies. . . ." *See* May 23, 2006 Hearing Transcript at 32, 34, attached hereto as Exhibit C.

By order dated May 25, 2006, the Court directed Plaintiffs to identify ten parties or witnesses for whom they sought expedited discovery for the purpose of preserving their testimony. Plaintiffs' counsel responded by identifying six party witnesses (Sherri Davis, Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, Sandra Cobb, and Gail Tatum) and four non-party witnesses (Roy Ezell, John "Buck" Roberts, Jackie Partridge, and Carlton Dukes).

At considerable expense, Defendants participated in the expedited discovery and preservation depositions for five of the six designated Plaintiffs. Despite Plaintiffs' counsel's representations concerning the deteriorating health and memory problems supposedly being experienced by these witnesses, it appeared during the course of the depositions that none of

---

[5] Federal Rule of Civil Procedure 26(d) otherwise provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."

these witnesses has been diagnosed with, nor exhibits, any cognitive or memory deficiency that would impair their ability to testify at a later time.

When questioned, each deponent expressly stated that she had never been diagnosed with any medical condition that would impair her memory. *See* Cobb Discovery Dep. at 11: 11-14 ("Q: Have you ever been diagnosed with any sort of a condition that interferes with your memory? A: No, sir."), attached hereto as Exhibit D; Cobb Preservation Dep. at 38: 6-9 ("Q: Ma'am, you've never been diagnosed with a medical condition that impairs your memory; is that correct? A: Correct."), attached hereto as Exhibit E; Creech Discovery Dep. at 97: 10-20 ("Q: [H]ave you ever been tested for memory problems[?] A: No, ma'am."), attached hereto as Exhibit F; Davis Discovery Dep. at 132: 19-22 ("Q: Have you ever been diagnosed with any sort of a condition that affects your memory at all? A: Diagnosed, no."), attached hereto as Exhibit G; Davis Preservation Dep. at 60: 23, 61: 1-5 ("Q: Okay. And, ma'am, I just want to be clear, to -- Is it fair to say that no doctor has diagnosed you with any memory loss issues? A: I've not been diagnosed with memory loss."), attached hereto as Exhibit H; DeVaughn Discovery Dep. at 172: 2-5 ("Q: Has anyone ever diagnosed you as having any memory problems? Any doctor ever told you you've got memory problems? A: Not really."), attached hereto as Exhibit I; Reynolds Preservation Dep. at 70: 17-19 ("Q: Have you ever been diagnosed with any memory issues, ma'am? A: No."), attached hereto as Exhibit J.

With at least four of the five witnesses, it further appears that there is no medical basis for concluding that they will be unavailable to testify in the normal course of discovery or at the time of trial. *See* Cobb Discovery Dep. at 111: 4-18 & Preservation Dep. at 45: 15-23, 46:1-7 (confirming that her current health is "good" and acknowledging that all medical exams since her cancer surgery have indicated no further evidence of cancer); Creech Discovery Dep. at 100: 10-

13326785.1                                5

23, 101: 1 & Preservation Dep. at 20: 14-20 (confirming that her only current medical conditions are anxiety and mild scoliosis, and that her brain tumor, removed in 2004, was benign and not expected to recur), attached hereto as Exhibit K; Davis Discovery Dep. at 111: 10-12 & Preservation Dep. at 63: 9-22 (stating that her current medical condition is "pretty good" and that she has had no signs of cancer since 1999); Reynolds Preservation Dep. at 68: 7-14 (acknowledging that she has had no signs of cancer since being treated 13-14 years ago).

      **B.**    **Defendants Will Suffer Undue Prejudice if Fact Witness Depositions Are Similarly Expedited in the Absence of a Reasonable Medical Basis.**

Following this first round of depositions, Plaintiffs' counsel sent notices for the preservation depositions of Carlton Dukes, John "Buck" Roberts, and Jackie Partridge, as well as for Roy Ezell. These fact witnesses will offer testimony as to most, if not all, of the facility's operational history that Plaintiffs contend is at issue in this litigation. All are former facility employees. For instance, Mr. Roberts reportedly worked at the facility for over 21 years. Similarly, Mr. Partridge claims to have worked at the facility from March of 1976 until January of 1999. Indeed, if the affidavits previously submitted by Plaintiffs in response to Defendants' motions to dismiss (attached hereto as Exhibit L) are any indication, many of the key allegations of Defendants' purported misconduct originate from these witnesses.

Defendants respectfully submit that they will be subjected to substantial prejudice and undue burden if the depositions of fact witnesses Buck Roberts, Jackie Partridge, and Carlton Dukes are expedited absent a reasonable medical basis. Plaintiffs seek to require Defendants to proceed without the opportunity to conduct full discovery regarding these witnesses and facility operations that would otherwise be available in the normal course. Plaintiffs should not be allowed to circumvent Federal Rule of Civil Procedure 26(d)'s guidelines for the timing and sequence of discovery absent a particularized showing that there is actually a need to do so.

Moreover, without any specific need, the significant expense and inconvenience of participating in these depositions on an expedited basis is unwarranted given that dispositive motions regarding Plaintiffs' claims remain pending for the Court's resolution.

In conferring to resolve this issue, Plaintiffs' counsel initially appeared to agree that there was no immediate need to depose Messrs. Roberts, Partridge, or Dukes. *See* August 2, 2006 Confirmation Letter, attached hereto as Exhibit M. Plaintiffs' counsel then appeared to change course, but still offered to work with Defendants to conduct independent medical evaluations to verify any need for expedited depositions *See* August 1, 2006 Letter from Eason Mitchell, attached hereto as Exhibit N. It now appears that even that offer is off the table. Plaintiffs intend to go forward with the videotaped preservation depositions of Messrs. Dukes, Roberts, and Partridge on September 6, 7, and 12, respectively, even though, by Plaintiffs' counsel's own admission, there may not be any need to do so.

While Defendants do not object to expedited discovery and preservation depositions of these witnesses <u>if</u> an appropriate medical basis for doing so exists, Defendants request that this Court stay the depositions of these witnesses pending an objective showing, through an independent medical examination, of such basis.

II.     **Mr. Ezell's Deposition Should Be Stayed Pending a Determination of His Status in the Lawsuit and Whether He is Competent to Provide Reliable Testimony.**

Roy Ezell is a key witness in this case. He worked at the facility for nearly its entire operation from 1962 until the late 1990s, often as the plant manager. In response to Defendants' motions to dismiss, Plaintiffs' counsel submitted an affidavit (attached hereto as Exhibit O) purportedly reflecting Roy Ezell's recollection of various facility operational practices and procedures. These purported allegations appear to form a key component of Plaintiffs' case. Mr. Ezell is also purportedly asserting his own claims against Defendants, as he was named as

one of over one thousand plaintiffs in a state court lawsuit recently filed by Plaintiffs' counsel, which Defendants will be removing to federal court.

Unlike with Messrs. Roberts, Partridge, or Dukes, there is no question that there may have been a need to preserve Roy Ezell's testimony. The issue here, however, is whether it is now too late. Mr. Ezell was diagnosed two years ago with early Alzheimer's disease, according to medical records and notes from Dr. David Marsh, at the Florala Family Health Center, who has evaluated and treated Mr. Ezell for many years. The records also indicate that Mr. Ezell has had continuing symptoms of confusion, memory loss and episodes of dizziness. Mr. Ezell is currently taking several prescription medicines for mild to moderate dementia relating to Alzheimer's disease. Moreover, if the recent short statement of Mr. Ezell's wife, Joann Ezell, is true, any testimony by Mr. Ezell may be forever tainted by the conduct of Plaintiffs' counsel.

### A. Joann Ezell's Recent Correspondence With Louisiana-Pacific.

Mrs. Ezell recently initiated contact with Louisiana-Pacific asking it to intervene to help stop what she describes as improper harassment by Plaintiffs' counsel. Defendants of course take these allegations very seriously. In the interest of full disclosure, to both the Court and Plaintiffs' counsel, the details of these communications are set forth below.

On Monday, August 7, 2006, Joann Ezell left three messages for Shirley Davis at Louisiana-Pacific. Ms. Davis works in Louisiana-Pacific's legal department, but she is not a lawyer. Mrs. Ezell's messages did not go into great detail, but indicated that she urgently wanted to discuss matters involving Plaintiffs' counsel, whom she described in a derogatory manner.

On Tuesday, August 8, Dennis Bailey, counsel for Louisiana-Pacific, sought informal guidance from the Alabama State Bar to confirm that Louisiana-Pacific could speak with Mrs. Ezell in these circumstances. Sam Partridge, Assistant General Counsel, after speaking

with General Counsel Tony McLain, confirmed that they saw no obstacle to speaking with Mrs. Ezell if she is not represented by counsel.

Shirley Davis then returned Mrs. Ezell's phone calls. At the very outset, Ms. Davis confirmed that Mrs. Ezell is not represented by counsel. Mrs. Ezell emphatically denied that she (or her husband) are represented by Plaintiffs' counsel. Ms. Davis then inquired as to the topics Mrs. Ezell wished to discuss and indicated to Mrs. Ezell that a lawyer for Louisiana-Pacific would contact her to follow-up on her concerns.

On Thursday, August 10, Dennis Bailey, counsel for Louisiana-Pacific, spoke with Mrs. Ezell by telephone. At the outset, Mr. Bailey again confirmed that Mrs. Ezell is not represented by counsel. Mr. Bailey also confirmed that Mrs. Ezell understood that he is a lawyer for Louisiana-Pacific, and that a lawsuit had been filed against Louisiana-Pacific purportedly on Mr. Ezell's behalf. Mr. Bailey arranged to meet with Mrs. Ezell the next morning at her home. Mrs. Ezell agreed that Mr. Bailey would bring a court reporter so that there would be a record of anything that was said. Mr. Bailey further explained to Mrs. Ezell that her husband could not be present since he is at least purportedly represented by Plaintiff's counsel.

On Friday, August 11, Mr. Bailey met with Mrs. Ezell with a court reporter present. A complete transcript of the meeting is attached as Exhibit B. Mrs. Ezell explained that she called Louisiana-Pacific because "my husband has been . . . harassed by Eason Mitchell," Plaintiffs' counsel, and "I wished that we could get the harassment stopped from Mr. Mitchell. . . . I've considered getting a lawyer myself." Sworn Statement at 4-5, 27.

Mrs. Ezell explained that Mr. Ezell's memory has been going ever since he was diagnosed with the early stages of Alzheimer's two years ago. *Id.* at 11. Mrs. Ezell now handles

all of Mr. Ezell's affairs, and although she does not have a power of attorney for her husband, she indicates that "I could get it in a heartbeat." *Id.* at 25.

Mrs. Ezell then explained the first time Mr. Mitchell came to their home: "I said, well, why are you here? We haven't filed a claim. Well, we need to take a statement from Roy. I said, I don't think you need to. He said, yes, ma'am, we do. And Roy said, it'll be all right. That's Roy." *Id.* at 14. The subsequent questioning bothered Mrs. Ezell, because as she explained, "[Mr. Mitchell] keeps asking Roy the same questions, and Roy, it gets him frustrated. . . . Roy would keep repeating his-self. I said, I told you that he cannot remember what happened two or three, four years ago." *Id.* at 12-13. *See also id.* at 13 ("He just kept on asking him what happened, you know, when they put the creosote in. I said, he don't remember that. He can tell you how to put it in and all but he don't know what happens after that."). The Ezells were then sent a copy of a document, apparently the affidavit, purportedly signed by Mr. Ezell, but "something Roy hadn't said was in there." *Id.* at 14.

Mrs. Ezell made clear that Mr. Mitchell does not represent her or her husband: "Roy didn't give him permission. . . . [Mr. Mitchell] told Roy – he was just taking affidavits. That's what he said. . . . He said, you need to sign up. I said, let me tell you something, I don't sue people. I said, we've always worked hard for what we had. And I said, Roy can't remember these things and he don't need to be included in this mess." *Id.* at 17-18. Mrs. Ezell then explained that subsequently, "[e]very time [Mr. Mitchell] comes, he tells Roy he is represented. I said, well, when did you get to represent Roy because he never asked you to represent him? And he didn't. He just takes it on his-self to – and he said that I needed to – I said, no. You don't represent me. Never have or never will." *Id.* at 26. *See also id.* at 12 ("We never attended any meetings. We never went down there. We never contacted anybody.").

Nor is Mr. Ezell apparently intending to assert any claims against Louisiana-Pacific or Pactiv. *Id.* at 15 ("Tell them to leave us alone. We are not interested. . . . [i]n this lawsuit they've got going."). Mrs. Ezell explained that Mr. Mitchell wanted them to attribute Mr. Ezell's Alzheimer's to chemicals at the facility, but Roy's family had a history of Alzheimer's. *Id.* at 22-23, 25 ("I said, I told you one time my husband does not remember. Well, it could be caused from chemicals. I said, it's caused because it runs in his family."). Mr. Mitchell apparently even wanted Mrs. Ezell to assert claims, but as Mrs. Ezell explained, "I said, I don't need to sign up for anything. . . . Because there's nothing wrong with me. . . ." *Id.* at 17.

Instead, the Ezells have apparently fought back against Plaintiffs' counsel for some time. Mrs. Ezell explained that Plaintiffs' counsel showed up one day with several people asking to test the dust in their attic. She continued, "I may have dust but it wasn't from Louisiana-Pacific. . . . They didn't go up in the attic. I said, you're not going in my attic." *Id.* at 20-21. Moreover, Roy Ezell has apparently blown off meetings with Plaintiffs' counsel: "And Roy is supposed to meet [Mr. Mitchell] over there at Lake House Breakfast over there and Roy didn't go." *Id.* at 18. This is hardly an existing attorney-client relationship.

**B.    With the Court's Oversight, Mr. Ezell's Role In This Lawsuit Should Be Resolved Before Any Deposition Can Proceed.**

Defendants are certainly troubled by the revelation that Roy Ezell may not be represented by Plaintiff's counsel after all. Plaintiff's counsel first approached Louisiana-Pacific and Pactiv threatening lawsuits nearly two years ago. For nearly two years, Defendants' hands have been tied. Defendants have not been able to contact many, if not all, of their former local employees to investigate the allegations because Plaintiff's counsel claimed to represent them. By claiming to represent Mr. Ezell and other former employees, Plaintiff's counsel essentially created a monopoly on access to first-hand accounts of facility operations. This is especially

troubling in light of Mrs. Ezell's allegation that Plaintiff's counsel may have manipulated those first-hand accounts by pressuring Mr. Ezell to give a statement as to matters he could not remember, and then having Mr. Ezell sign some sort of blank signature page to a document that eventually included statements that, according to Mrs. Ezell, Mr. Ezell never said.

Joann Ezell now indicates that neither she nor her husband is represented by Plaintiff's counsel. Plaintiffs' counsel appears to have taken it upon himself to represent Roy Ezell, or at least Mr. Ezell no longer wants Plaintiffs' counsel to represent him. If Mr. Ezell is indeed not represented by counsel, Defendants should be given an opportunity to interview him prior to any deposition, just as Plaintiff's counsel has done.

Defendants have to wonder, of course, whether this is an isolated incident, or the tip of the iceberg with respect to other former facility employees whom Plaintiff's counsel claims to represent (including Messrs. Roberts, Partridge, and Dukes).

In sum, Mr. Ezell's deposition should not proceed until the Court can adequately protect Mr. Ezell's rights by confirming: (1) whether Mr. Ezell ever retained (and was fit to retain) Plaintiff's counsel to represent him; (2) if so, whether Mr. Ezell wishes to still be represented by Plaintiffs' counsel; and (3) whether Mr. Ezell authorized Plaintiff's counsel to file an affidavit or lawsuit on his behalf and whether he intends to proceed with that lawsuit.[6] In light of Mrs. Ezell's statement, Defendants respectfully submit that any written materials which Plaintiffs' counsel might produce are insufficient to resolve these difficult issues. Further, based upon Mrs. Ezell's statement, Defendants request that the Court require Plaintiffs' counsel to

---

[6] Of course, if Roy Ezell is not a party, Plaintiff's deposition notices are deficient. Plaintiffs (or Defendants) would need to subpoena Mr. Ezell to appear for deposition. Moreover, the scope of Mr. Ezell's proposed deposition would be greatly impacted depending on whether he is solely a fact witness, or whether he is also asserting his own personal injury claims.

produce the original of the signed copies of any affidavits or medical authorizations purporting to reflect Mr. Ezell's signature.

### C. The Court Should Assess Mr. Ezell's Competency to Testify Prior to Any Depositions to Preserve Testimony for Trial.

As set forth above, Joann Ezell's statement, as well as Roy Ezell's medical records, plainly call into question whether Roy Ezell is indeed competent to testify.[7] *See also* Sworn Statement at 26-27 (stating that she believes that Roy's doctors would certify that he cannot remember enough to be deposed). In addition to his alleged Alzheimer's symptoms, and according to Mrs. Ezell, it appears that Mr. Ezell has been harassed by Plaintiffs' counsel concerning the merits of this case, further jeopardizing the reliability of his testimony.

In recent conferrals, Plaintiffs' counsel initially offered to make Mr. Ezell available for an independent medical examination prior to the expedited depositions. *See* August 1, 2006 Letter from Eason Mitchell, attached hereto as Exhibit M.[8] It now appears that the offer is off the table, and Plaintiffs intend to proceed with Mr. Ezell's videotaped preservation deposition. Indeed, based upon Mrs. Ezell's sworn statement, there is uncertainty concerning whether Mr. Ezell ever agreed to be deposed. In any event, in light of Mrs. Ezell's statement, it does not appear that Plaintiff's counsel is authorized to volunteer Mr. Ezell for a medical examination.

---

[7] Federal Rule of Evidence 601 (and Alabama Rule of Evidence 601) "allows one not mentally competent to testify, and it assumes that jurors are capable of evaluating a witness's testimony in light of the fact that he is not mentally competent." *United States v. Gates*, 10 F.3d 765, 767 (11th Cir. 1993). Yet "[n]otwithstanding Rule 601, a court has the power to rule that a witness is incapable of testifying, and in an appropriate case it has the duty to hold a hearing to determine that issue." *Id.* This power arises when the witness's deficiency renders the testimony inadmissible because of its being irrelevant (Rule 401) or too prejudicial (Rule 403), or when the witness is not sufficiently rational and thus without personal knowledge (Rule 602). *See* Fed. R. Evid. 601, Commentary on Judicial Discretion; Ala. R. Evid. 601, Advisory Committee Note.

[8] If Mr. Ezell is indeed a party to this litigation, Federal Rule of Civil Procedure 35 allows the Court to order a party to submit to a physical or medical examination by a suitably licensed or certified examiner.

13326785.1                                    13

Prior to any deposition to preserve testimony for trial, Defendants would request that the Court hold a hearing to determine Mr. Ezell's competency to testify. If Mr. Ezell will not agree to undergo an independent medical examination, his current doctors can be consulted for an opinion as to whether he is competent to testify as Mrs. Ezell suggested.

## CONCLUSION

For the foregoing reasons, Defendants Pactiv Corporation and Louisiana-Pacific Corporation respectfully request that the Court grant their Motion and enter the proposed Protective Order attached hereto as Exhibit P, thus staying the expedited depositions of Roy Ezell, John "Buck" Roberts, Jackie Partridge, and Carlton Dukes.

Respectfully submitted this 14th day of August, 2006.

/s/ Mark R. Ter Molen
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

/s/ Bernard Taylor
Bernard Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2006, I filed the foregoing via the CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

      /s/ Matthew C. Sostrin
      Of Counsel