Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

M.C., who sues by and through
her Mother and Next of Friend,
Gail Tatum,

     Plaintiff,

  vs.              CASE NO.:  2:06cv83-WKW

LOUISIANA-PACIFIC CORPORATION,
et al.,

     Defendants.

////////////////////////////////

RICKY PHILLIPS, as
Administrator of the Estate
of Susan Phillips, deceased,

     Plaintiff,

  vs.              CASE NO.:  2:06cv84-WKW

LOUISIANA-PACIFIC CORPORATION,
et al.,

     Defendants.

////////////////////////////////

SARAH K. THOMPSON, as
Administratrix of the Estate
of Royce Thompson, deceased,

     Plaintiff,

  vs.              CASE NO.:  2:06cv85-WKW

LOUISIANA-PACIFIC CORPORATION,
et al.,

     Defendants.

Page 2

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          FOR THE MIDDLE DISTRICT OF ALABAMA
 3                    NORTHERN DIVISION
 4   LILLIAN EDWARDS, as
     Administratrix of the Estate
 5   of Marvin Mays, deceased,
 6         Plaintiff,
 7      vs.           CASE NO.: 2:06cv86-WKW
 8   LOUISIANA-PACIFIC CORPORATION,
     et al.,
 9
           Defendants.
10
     //////////////////////////////
11
     JANICE MADDEN, as
12   Administratrix of the Estate
     of James Madden, deceased,
13
           Plaintiff,
14
        vs.           CASE NO.: 2:06cv186-WKW
15
     LOUISIANA-PACIFIC CORPORATION,
16   et al.,
17         Defendants.
18   //////////////////////////////
19   SHERRI L. DAVIS,
20         Plaintiff,
21      vs.           CASE NO.: 2:06cv187-WKW
22   LOUISIANA-PACIFIC CORPORATION,
     et al.,
23
           Defendants.
24
25
```

Page 3

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          FOR THE MIDDLE DISTRICT OF ALABAMA
 3                    NORTHERN DIVISION
 4   THOMAS DOUGLAS, as
     Administrator of the Estate of
 5   Sebera Gayle Douglas, deceased,
 6         Plaintiff,
 7      vs.           CASE NO.: 2:06cv188-WKW
 8   LOUISIANA-PACIFIC CORPORATION,
     et al.,
 9
           Defendants.
10
     //////////////////////////////
11
     LORRINE THOMPSON, as
12   Administratrix of the Estate
     of Jerry Thompson, deceased,
13
           Plaintiff,
14
        vs.           CASE NO.: 2:06cv189-WKW
15
     LOUISIANA-PACIFIC CORPORATION,
16   et al.,
17         Defendants.
18   //////////////////////////////
19   STANTON KELLEY, as
     Administrator of the Estate
20   of William Kelley, deceased,
21         Plaintiff,
22      vs.           CASE NO.: 2:06cv190-WKW
23   LOUISIANA-PACIFIC CORPORATION,
     et al.,
24
           Defendants.
25
```

Page 4

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          FOR THE MIDDLE DISTRICT OF ALABAMA
 3                    NORTHERN DIVISION
 4   GINGER CRAVEY, as
     Administratrix of the Estate
 5   of Riley Cravey, deceased,
 6         Plaintiff,
 7      vs.           CASE NO.: 2:06cv191-WKW
 8   LOUISIANA-PACIFIC CORPORATION,
     et al.,
 9
           Defendants.
10
11
12             * * * * * * * * * * *
13              STATUS CONFERENCE
14             * * * * * * * * * * *
15        BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES
16   DISTRICT JUDGE, at Montgomery, Alabama, on Tuesday, May 23,
17   2006, commencing at 4:02 p.m.
18   APPEARANCES:
19   FOR THE PLAINTIFFS:    Mr. Robert Leslie Palmer
                            Mr. Gregory Andrews Cade
20                          Attorneys at Law
                            ENVIRONMENTAL LITIGATION GROUP, PC
21                          3529 7th Avenue South
                            Birmingham, Alabama 35222
22
                            Mr. William Eason Mitchell
23                          Attorney at Law
                            THE COLOM LAW FIRM
24                          P.O. Box 866
                            Columbus, Mississippi 39703
25
```

Page 5

```
 1   APPEARANCES, Continued:
 2   FOR THE DEFENDANTS:    Mr. John C. Berghoff, Jr.
                            Attorney at Law
 3                          MAYER, BROWN, ROWE & MAW, LLP
                            71 South Wacker Drive
 4                          Chicago, Illinois 60606-4637
 5                          Mr. H. Thomas Wells, Jr.
                            Attorney at Law
 6                          MAYNARD, COOPER & GALE, PC
                            1901 Sixth Avenue North
 7                          2400 AmSouth/Harbert Plaza
                            Birmingham, Alabama 35203-2618
 8
                            Mr. Bernard Taylor
 9                          Mr. Orlyn O. Lockard, III
                            Mr. Douglas S. Arnold
10                          Attorneys at Law
                            ALSTON & BIRD, LLP
11                          One Atlantic Center
                            1201 West Peachtree Street
12                          Atlanta, Georgia 30309-3424
13                          Mr. Dennis R. Bailey
                            Attorney at Law
14                          RUSHTON, STAKELY, JOHNSTON & GARRETT
                            184 Commerce Street
15                          Montgomery, Alabama 36104
16   ALSO PRESENT:          Mr. James Faulkner
                            General Counsel, PACTIV Corporation
17
                            Ms. Laura E. Proctor
18                          In-house Counsel
                            Louisiana-Pacific Corporation
19
           Proceedings reported stenographically;
20          transcript produced by computer.
21             * * * * * * * * * *
22
23
24
25
```

Page 6

1  (The following proceedings were heard before the Honorable
2  W. Keith Watkins, United States District Judge, at
3  Montgomery, Alabama, on Tuesday, May 23, 2006, commencing
4  at 4:02 p.m.:)
5  (Call to Order of the Court)
6       THE COURT: Good evening. You may be seated. Give me
7  just a minute to get my notes spread out here. Did everyone get
8  an agenda?
9       MR. BERGHOFF: We did, Your Honor.
10      MR. PALMER: Yes, Your Honor.
11      MR. MITCHELL: Yes, sir.
12      THE COURT: All right. We're here on ten cases, and
13 I'm going to go ahead and just give you the numbers. And that
14 would be 06-83, 06-84, 06-85, 06-86, 06-186, 06-187, 06-188,
15 06-189, 06-190, and 06-191.
16      And I'd like, if I could, please, first to take
17 appearances. And if we can just begin with the plaintiffs'
18 counsel, this table over here.
19      MR. CADE: Yes, sir. May I approach the podium or from
20 here, sir? My name --
21      THE COURT: No. Just stand right there. Just identify
22 who you are.
23      MR. CADE: My name is Gregory Cade for the plaintiffs.
24      THE COURT: And you're from Birmingham, Mr. Cade?
25      MR. CADE: Yes, sir, I am.

Page 7

1       THE COURT: Okay. Thank you.
2       MR. MITCHELL: Good evening, Judge. I'm Eason
3  Mitchell. I'm from Tuscaloosa. You have me as William Eason
4  Mitchell.
5       THE COURT: All right. Thank you, Mr. Mitchell.
6       MR. PALMER: Your Honor, I'm Robert Leslie Palmer, also
7  from Birmingham, as Greg Cade, with Environmental Litigation
8  Group for the plaintiffs.
9       THE COURT: Okay. Mr. Palmer, you have entered an
10 appearance in the case; is that right?
11      MR. PALMER: Well, I have by filing -- or signing on
12 one of the responses to the motion.
13      THE COURT: Okay. That's good. Thank you.
14      Okay. Yes, sir.
15      MR. BAILEY: Your Honor, Dennis Bailey with Rushton,
16 Stakely here in Montgomery. And I'd introduce to the Court
17 Bernard Taylor from Alston & Bird, in Atlanta --
18      THE COURT: Welcome, Mr. Taylor.
19      MR. BAILEY: -- Doug Arnold with the same firm, and
20 Skip Lockard with the same firm. And you have granted them
21 leave to participate today.
22      THE COURT: Yes. Okay. Thank you.
23      All right. So we have Mr. Taylor, Mr. Arnold, and
24 Mr. Lockard, and Dennis Bailey. And then is it Laura Proctor?
25      MR. BAILEY: Laura is in-house counsel for

Page 8

1  Louisiana-Pacific --
2       MS. PROCTOR: Louisiana --
3       THE COURT: Okay. Good. Thank you, Ms. Proctor.
4       All right. Mr. Wells?
5       MR. BERGHOFF: Good evening, Your Honor. My name is
6  John Berghoff, and I represent the Defendant PACTIV. I'm from
7  Chicago.
8       THE COURT: Welcome.
9       MR. BERGHOFF: Thank you.
10      MR. WELLS: And Your Honor, Mr. Berghoff has been
11 admitted pro hac. I'm Tommy Wells with Maynard, Cooper & Gale
12 in Birmingham for the defendant. Thank you.
13      THE COURT: Good to see you.
14      MR. WELLS: Good to see you, sir.
15      MR. BERGHOFF: And Your Honor, I would also like to
16 introduce James Faulkner, who is the general counsel with
17 PACTIV.
18      THE COURT: Okay. Welcome, Mr. Faulkner.
19      MR. FAULKNER: Thank you, Your Honor.
20      THE COURT: I want to be sure I understand the
21 parties. And we'll talk about the plaintiffs in a minute, but
22 let me understand -- and I know -- I'm going to ask the
23 plaintiffs in a minute to give me a brief rundown of the
24 prelitigation history of this case, because it has come up. I
25 basically want to know where we are in the big picture there.

Page 9

1  But I understand from some of the responses from the defendants
2  that TMA Forest Products Group is not an entity. It's a
3  group -- or it no longer exists. I forget what I read about it,
4  but it's not an entity that should be sued here; is that
5  correct?
6       MR. BERGHOFF: Correct, Your Honor. It's the
7  predecessor entity to PACTIV, who is a defendant and is the
8  proper defendant.
9       THE COURT: And is PACTIV the successor to Tennessee
10 River Pulp?
11      MR. BERGHOFF: Correct, Your Honor.
12      THE COURT: Which is the successor to Lockhart and
13 D & D, or by merger?
14      MR. BERGHOFF: Well, as to the old -- to the old D & D.
15      THE COURT: The old D & D.
16      MR. BERGHOFF: As Your Honor knows, there is also a new
17 D & D, actually two entities, who the plaintiffs are
18 dismissing. But yes, that's correct. For all intents and
19 purposes, Your Honor, that's correct.
20      THE COURT: Okay. I think that takes care of that from
21 the defendants' side.
22      Plaintiffs, who's going to speak for the plaintiffs
23 right here? Mr. Mitchell?
24      MR. MITCHELL: I will, Your Honor. Eason Mitchell.
25      THE COURT: Yes, sir. Okay. Do you disagree about the

Page 10

1  status of TMA as an entity?
2       MR. MITCHELL: That is our agreement, and I understand
3  it to be correct.
4       THE COURT: Okay. So you don't have a problem with
5  that. I'm just trying to get the pleadings cleaned up from top
6  to bottom here as to who the parties are going to be.
7       MR. MITCHELL: We have agreed between ourselves and
8  from information he's provided me, PACTIV is in fact the proper
9  party defendant.
10      THE COURT: Okay. So we'll wind up -- when the day is
11 over with, we'll have two defendants, PACTIV and
12 Louisiana-Pacific.
13      MR. MITCHELL: That's correct, sir.
14      THE COURT: Okay. Good. Now, as I said, we have ten
15 cases. We have the original 83, 84, 85, and 86, and then we
16 have the removal cases. And then we have another distinctive in
17 the cases in that we have, I believe, eight death cases, one
18 minor case, and one multi-party case.
19      Is that correct, Mr. Mitchell?
20      MR. MITCHELL: It was, Your Honor. The little girl
21 died; and so now we have -- all the first filed, 83 through 86,
22 are death cases. We're amending under Wrongful Death to Minors
23 Act, and we'll pursue that only as a death claim.
24      THE COURT: Okay. She passed away after you filed?
25      MR. MITCHELL: Yes, sir. Just a few weeks ago.

Page 11

1       THE COURT: So then we have nine death cases presently
2  and one multi-party case.
3       MR. MITCHELL: That's correct.
4       THE COURT: And the multi-party case, I understand
5  those plaintiffs to have been -- to be people or persons who
6  lived in the area for a period of time but perhaps don't live
7  there now? Or what is the distinctive about that case, the
8  factual distinctive?
9       MR. MITCHELL: The distinction is they're alive.
10 They're people who live there. I believe they all live there
11 now.
12      THE COURT: Oh, okay.
13      MR. MITCHELL: They all have cancer, and they're all
14 alive. And I don't want to misspeak. I think they're all in
15 the Florala-Lockhart area or were at the time of exposure.
16      THE COURT: All right. Apart from those distinctives
17 I've just identified, is there any reason to treat any of these
18 cases any differently from any of the others at this stage of
19 the proceedings? Any other distinctive about the cases anyone's
20 aware of?
21      Mr. Berghoff?
22      MR. BERGHOFF: I don't believe so, Your Honor, from our
23 perspective.
24      THE COURT: The plaintiffs' perspective, Mr. Mitchell?
25      MR. MITCHELL: The only difference would be the

Page 12

1  difference in the damages for the live people versus the --
2  under the Alabama Wrongful Death Act.
3       THE COURT: All right. Let's review the list of
4  pending motions, and then we'll handle them one by one. First,
5  we have an agreed motion to dismiss D & D in the removal cases.
6  And the related motions to that are the requested entry of
7  default by plaintiffs and the motion to dismiss D & D by
8  defendants. And I think the agreed motion to dismiss D & D by
9  the plaintiffs will take care of those other two motions. They
10 will be rendered moot; is that correct?
11      MR. BERGHOFF: That's correct, Your Honor.
12      THE COURT: Then we have the motions to dismiss in each
13 case by each defendant, who are now going to be properly
14 identified as PACTIV and Louisiana-Pacific. And contained in
15 those or related to those are some motions to strike exhibits.
16 Next I have plaintiffs' motion for planning conference. Then I
17 have the motions to consolidate, at least for discovery, and I
18 believe the motion said other pretrial issues. Are there any
19 other motions that I did not recite?
20      MR. BERGHOFF: I just might add, Your Honor, that also
21 embedded in the motions to dismiss from the defendants are
22 motions for more definite statement.
23      THE COURT: Right. Correct. And when I refer to the
24 motions to dismiss, I include the more definite statement. Are
25 there any other motions?

Page 13

1       Okay. First, let's deal with the agreed motion to
2  dismiss. Did the defendants, according to Rule 41, agree to
3  this dismissal?
4       MR. BERGHOFF: Yes, we did, Your Honor.
5       THE COURT: Okay. And let's see. You're for
6  Louisiana --
7       MR. BERGHOFF: I am for PACTIV, Your Honor.
8       THE COURT: PACTIV. And Louisiana-Pacific also agrees?
9       MR. TAYLOR: Yes, Your Honor. We agree.
10      THE COURT: Okay. Thank you. That will be entered.
11      Now, to the motions to dismiss, first of all, there are
12 some implied motions to strike some exhibits that have been
13 filed. And I will inform all the parties that I have not
14 reviewed any of those exhibits and do not intend to at this
15 stage of the proceedings.
16      I want to take some time now and get some specific
17 responses, and I would ask that just one person provide the
18 argument for each party, if you would. Other than that, anyone
19 is free to speak at any time, of course. And I want PACTIV to
20 explain to me the rule of repose and its interaction with the
21 CERCLA provision that's in dispute here, if you would, please,
22 sir. Just take a couple of minutes and give me your best shot
23 on that.
24      MR. BERGHOFF: Your Honor, I hope I can give my best
25 shot in a couple of minutes on that.

Page 14

1    THE COURT: I'll give you more if you need it.
2    MR. BERGHOFF: Well, Your Honor has placed his finger
3  on an obviously important issue with respect to the motion to
4  dismiss. There's no question about it. I think that perhaps
5  from our perspective, this question has been most succinctly
6  dealt with by the circuit court in the Burlington Northern &
7  Santa Fe against Poole case which we have cited. And in the
8  BNSF case, which was a Fifth Circuit, 2005, case, the Court --
9  the Court made it very clear there that the -- whatever the
10 effect, whatever the preemption effect of Section 309 of CERCLA,
11 it does not and could not preempt a statute of repose, because
12 there is a significant difference between a statute of repose
13 and a statute of limitations.
14   And the Court pointed that out in a very clear
15 rendition and perhaps better than I can state it and certainly
16 more succinctly than I would state it, I suspect, where it
17 points out at page 8 of the copy that I have in 49 F.3d: A
18 statute of limitations extinguishes the right to prosecute an
19 accrued cause of action after a period of time. It cuts off the
20 remedy. A statute of repose limits the time during which a
21 cause of action can arise and usually runs from the act of a
22 defendant. It abolishes the cause of action after the passage
23 of time even though the cause of action may not have accrued.
24   So in pointing out this critical difference between the
25 two, the Court holds that 309 does not preempt in this case the

Page 15

1  Texas statute of repose. That's number one.
2    Number two, Your Honor, and perhaps more important in
3  some respects, when the Court is faced with a question of
4  preemption and how broad that preemption is to be, you must
5  first start with the preemptive statute. This preemptive
6  statute, Section 309, the so-called SARA amendments to CERCLA,
7  uses the phrase "statutes of limitations." It does not refer to
8  statutes of repose and, we have argued in our brief, for very
9  good reason. They are quite different in terms of their theory,
10 in terms of their approach from the state perspective when it is
11 dealing with the inevitability of -- or the need, I should
12 say -- the need to put an end to things legal.
13   And statute of repose operates in a very different
14 way. And we believe it is, therefore, clear why Congress did
15 not include it in Section 309 and why in any event Section 309,
16 however Your Honor would rule with respect to our arguments on
17 the motion to dismiss based on the statute of limitations and
18 the accrual period, in any event, at least with respect to
19 PACTIV -- which as Your Honor knows, sold this facility in
20 November of 1983 -- at least with respect to PACTIV, there is no
21 preemption of the statute of repose.
22   THE COURT: Thank you, Mr. Berghoff.
23   Mr. Mitchell, are you going to argue for the plaintiff?
24   MR. MITCHELL: Mr. Palmer may argue this point. He's
25 the master.

Page 16

1    THE COURT: All right. Mr. Palmer, why does PACTIV
2  stay in the case? I see this as dispositive, as a dispositive
3  issue.
4    MR. PALMER: Well, first of all, Alabama has no statute
5  of repose. Alabama has a rule of repose. The rule of repose is
6  a court-created rule, and it is not a rule similar to the
7  statute that was cited in the Texas case. The rule of repose in
8  Alabama accrues not on the defendant's last conduct, but rather,
9  it accrues when the plaintiff could bring the cause of action.
10 That's clear from the case law that discusses the rule of
11 repose. There's only one case that was cited by the defendants
12 concerning -- and it was a statement actually in dicta about the
13 rule of repose accruing on the defendant's last conduct. But
14 every other case that we could find refers to the rule of repose
15 beginning to run when the cause of action could first be
16 asserted. So that's the very first key.
17   The second key is that the defendants make an
18 assumption that the defendant's last conduct is when the
19 defendant was last operating the facility, and that is not
20 exactly correct. A release of a hazardous substance can occur
21 from a facility long after the facility closes. And the
22 interaction for CERCLA purposes means that if there's a
23 continuing release from the facility, that the release at a
24 later date is causing continuing exposure. The --
25   THE COURT: Is that your continuing tort theory?

Page 17

1    MR. PALMER: That's part of the continuing tort theory,
2  yes, Your Honor. The -- and one of the problems is that the --
3  the defendants cite some cases, and we don't agree with the
4  manner in which they've described what the cases hold. We would
5  invite you to actually read those cases.
6    Our understanding of the cases is that for exposure
7  purposes, for release purposes, that the release results from a
8  facility -- if you take a facility -- the facility itself,
9  any -- as -- the defendants can't just lock the facility up and
10 walk away. They're responsible for that facility.
11   Many of the cases that they have cited deal with the
12 transmigration of the hazardous substances from some other site
13 that they have contaminated that they're not responsible for.
14 And that's not what we're contending. We're contending that
15 there is a continuing release from the actual facility itself.
16 And so the cases cited by the defendants can be distinguished on
17 that -- that ground alone.
18   And finally, there is actually evidence in this case
19 that the defendant, especially PACTIV, continued to operate the
20 facility and continued to be actively involved in the facility
21 at least through April of 2004.
22   THE COURT: Okay. So that's your contention --
23   MR. PALMER: Yes, sir.
24   THE COURT: -- that PACTIV was still involved.
25   MR. PALMER: And we would like to give you this

5 (Pages 14 to 17)

Page 18

1  exhibit, if you'd like to see it, that shows that they've
2  continued to be involved.
3       THE COURT: Well, at the motion to dismiss stage, I'm
4  not going to take any exhibits right now. I would consider that
5  as a summary judgment matter, if we get that far. Anything else
6  on the rule of repose, Mr. Palmer?
7       MR. PALMER: Nothing else on that point.
8       THE COURT: Okay. Mr. Berghoff, if you want to respond
9  on the continuing tort theory that he just espoused, the
10 continuing release.
11      MR. BERGHOFF: Yes, Your Honor, I will, thank you,
12 because I will assume from the way your question is phrased that
13 the question of when the action accrues is not really relevant
14 to the issue that you are raising here. That's -- that's
15 another issue. But basically, what they are -- what they seem
16 to be arguing is that passive migration somehow will constitute
17 a continuing tort. And that is just simply not the law in
18 Alabama. As a matter of fact, the Olin case, which is a 2005
19 Southern District of Alabama decision -- excuse me -- makes that
20 very, very clear and uses vernacular language to describe the
21 fact that you cannot, without conduct, without concurrent
22 conduct, take old -- migration of old contamination is the way
23 the Court put it, as I recall, and turn that into a continuing
24 tort under Alabama law. That's just simply not the law in
25 Alabama. And that was also -- that was also pointed out by the

Page 19

1  Court, the Supreme Court, in the Payton against Monsanto case
2  where you did in fact have allegations of actual conduct.
3       I might add, Your Honor, there is no allegation in this
4  complaint about continuing conduct causing damage or harm to
5  these plaintiffs in these complaints. That came today from
6  counsel, but that's the first I have heard it. And you can
7  scour those complaints, and the fact is that they -- the
8  complaints speak of the cessation of operation by PACTIV in
9  November of 1983, obviously well beyond the purview of the rule
10 of repose. And that is the essence of our response, Your Honor.
11      THE COURT: Thank you, sir.
12      The next issue I want to deal with with the plaintiffs
13 is the Alabama extended liability claim, manufacturer's claim --
14 doctrine. Who wants to address that?
15      Okay. Mr. Mitchell.
16      MR. MITCHELL: Yes, sir.
17      THE COURT: Would you please explain that count to me;
18 in particular, with respect to the elements of that cause of
19 action in Alabama?
20      MR. MITCHELL: The products liability count is that
21 they sold a defective and reasonably dangerous product; that is,
22 firewood which had toxic chemicals in it. Those chemicals --
23 the wood was put to its ordinary and expected use, which was to
24 burn in fireplaces, and those chemicals then disseminated in the
25 neighborhood and added to the toxic contamination that they

Page 20

1  otherwise released from this facility. So those are the
2  elements.
3       I think the argument, as I understand it, is that the
4  user of the product was not the one who was actually damaged,
5  like the old lawn mower cases where the lawn mower slung the
6  rock and hit somebody in the eye across the street. It didn't
7  have to be -- we contend it doesn't have to be the person
8  actually using the product or who purchased the product who was
9  injured by it.
10      THE COURT: Are any of these plaintiffs or were any of
11 these plaintiffs actually users of the firewood?
12      MR. MITCHELL: Their families and people nearby used
13 the firewood. Some of the people used firewood from the
14 facility and some did not. But it's a close community. The
15 homes are pretty close together.
16      THE COURT: So are you saying it's a question of fact
17 as to which plaintiffs might have used the firewood, or are you
18 saying unequivocally that none of your plaintiffs, to your
19 knowledge, purchased firewood?
20      MR. MITCHELL: Your Honor, I do not believe that we
21 will be able to prove that any plaintiff purchased the
22 firewood. I think that we will be able to prove that the
23 plaintiffs were present in the community when firewood was
24 burned off-site.
25      THE COURT: All right. Thank you, Mr. Mitchell.

Page 21

1       Mr. Berghoff, do you have a response to that or
2  someone --
3       MR. BERGHOFF: Your Honor, Mr. Taylor will take the
4  burden on that.
5       THE COURT: Okay. Mr. Taylor, come on up.
6       MR. TAYLOR: Good evening, Your Honor.
7       THE COURT: Hello. Good evening.
8       MR. TAYLOR: I think you are zeroing in right on the
9  issue. There are basically several points that they need to
10 chin up to in order to sustain this claim under the AEMLD, and
11 one is an injury caused by one who sold a defective product that
12 is unreasonably dangerous to the plaintiffs as the ultimate
13 users or consumers. And I think the Court just heard today from
14 Mr. -- very candidly from Mr. Mitchell that they're really
15 unable to chin up to that bar. And that's a very important bar
16 in regards to being able to sustain that.
17      Then also they need to be able to prove that the seller
18 engaged in the business of selling the product. And when you
19 look at the four corners of their complaint, there's absolutely
20 no allegation that we were involved in the business -- L-P or
21 PACTIV were involved in the business of selling firewood, scrap
22 firewood.
23      THE COURT: They allege that it was sold but not that
24 you were in the business of selling it; is that correct?
25      MR. TAYLOR: That's right. That's right. And that's

Page 22

1  an important point, because as the Court knows, an occasional
2  selling of the product does not meet the standard.
3      So Your Honor, we believe that they have not been able
4  to meet the standard required by the AEMLD to support those
5  claims, based upon the complaint.
6      THE COURT: Okay. Thank you, Mr. Taylor.
7      MR. TAYLOR: Thank you.
8      THE COURT: I want to hear from the plaintiffs on your
9  conspiracy count. Which one of you wants to address that?
10     MR. MITCHELL: Your Honor, Eason Mitchell.
11     THE COURT: Yes, sir, Mr. Mitchell. Tell me why you
12 pled a conspiracy and adequately pled it.
13     MR. MITCHELL: The conspiracy count is one of those
14 counts that we do not already have the evidence to support. We
15 have not had any discovery in this case. We know from the
16 employee interviews that we have of misconduct and of failing to
17 provide Alabama and federal regulators with the information that
18 they would have needed to protect this community. The
19 management was the same of both of these companies. They
20 bought -- when L-P came in, they bought management and all the
21 employees. Nothing changed. They just -- the ownership
22 changed. So we contend that at this point, they -- I think
23 under Alabama law, you can't conspire with yourself. But
24 employees from one company continued doing and covering up what
25 they had done before as employees of the second company. That's

Page 23

1  the theory. We have not had an opportunity for discovery.
2  Thank you.
3      THE COURT: Okay. Come ahead, Mr. Taylor. You're
4  fine. I just realized we're getting to the meat of the
5  complaint here, and I haven't given Louisiana-Pacific much
6  opportunity to talk. You're welcome to speak.
7      MR. BAILEY: Mr. Taylor --
8      MR. TAYLOR: I represent Louisiana-Pacific.
9      THE COURT: Okay. That's right.
10     MR. TAYLOR: Your Honor, I think I can be brief based
11 upon Mr. Mitchell's comments. He has an -- they -- the
12 plaintiffs have an obligation in the complaint to make
13 appropriate allegations. And in regards to the conspiracy
14 claim, under Alabama law they are required to show or at least
15 allege an affirmative agreement or meeting of the minds alleged
16 between the conspirators. Plus, they have to show that -- or at
17 least they need to properly plead an underlying tort to sustain
18 the conspiracy claim.
19     Factually, Your Honor, PACTIV was involved in operating
20 the property until 1983. After that point, L-P took over the
21 property. There are absolutely no averments or allegations in
22 the complaint that the laws were the same at the time that
23 PACTIV was operating the facility opposed to the time when L-P
24 was operating the facility. There are no averments in the
25 complaint that there was some meeting of the minds between

Page 24

1  PACTIV and L-P to violate environmental laws. Your Honor, I
2  believe that's a fatal flaw in their complaint, in the four
3  corners of the complaint, and we would move that the Court
4  dismiss the conspiracy claim.
5      THE COURT: Okay. Thank you. The last thing I want to
6  hear from the plaintiffs on in this exercise we're in right now
7  on the motions to dismiss is your allegation of negligence per
8  se and the violation of statutes and regulations.
9      Mr. Mitchell?
10     MR. MITCHELL: Yes. May I?
11     THE COURT: Yes, sir. Please.
12     MR. MITCHELL: Your Honor, this is a facility where a
13 lot of things were happening over a long period of time. This
14 case is -- there were accidents, there were spills, but this is
15 not a case about an accident or a spill. Those things are
16 involved in it. This is the day-to-day operation over many
17 years, even under Mr. Berghoff's argument, over 20 years.
18     Their -- the -- we contend that the Alabama
19 environmental regulations and the federal environmental statutes
20 place standards of emissions, what's illegal under the
21 statutes. There are a lot of these statutes and a lot of these
22 regulations, and there's a lot of different things happening at
23 one time. It takes a computer program, an EPA software, to
24 actually compute exposure from this. So you've got -- they may
25 be doing something that is not a violation of the statute. It's

Page 25

1  negligence, we contend -- say the spray field where it sprayed
2  the toxic chemicals in the air. That was legal under the
3  statute, but our engineer says it's negligent.
4      But when they injected the toxic chemicals in the
5  smokestack after being told not to, that's illegal. That's a
6  violation of the statute. So we contend that the environmental
7  statutes and regulations place standards on this company that
8  when they violate those standards, that was negligence, just to
9  put the stuff in the air that they were not supposed to put in
10 the air.
11     THE COURT: Do you have an allegation or are you able
12 to make an allegation as to which statutes and regulations were
13 violated?
14     MR. MITCHELL: Your Honor, that would take thousands of
15 pages, because the -- when the wind changed one day -- I mean
16 you've got one plaintiff exposed; the wind changes direction,
17 you've got another plaintiff exposed.
18     THE COURT: But I'm asking about the particular
19 statutes that have been violated or the rules and regulations
20 that give you a negligence per se claim, that you say gives you
21 a negligence per se claim. Do you know which --
22     MR. MITCHELL: We could have alleged the statutes in
23 full, the statutes.
24     THE COURT: Okay.
25     MR. MITCHELL: It would be impractical and -- not

Page 26

1  impossible, because it's mathematically done, but to allege the
2  actual -- you know, this violation of the Clean Water Act at
3  this time and date --
4       THE COURT: No, no. I'm not interested in -- I go --
5  I'm a firm believer in Rule 8, short and simple. But you
6  haven't alleged the statute to give the defendants notice of
7  what they supposedly have violated. And I'm asking do you know
8  the statute.
9       MR. MITCHELL: We can do that.
10      THE COURT: Okay. Thank you.
11      Anyone have any comments, Mr. Taylor, about that point?
12      MR. TAYLOR: Based upon Mr. Mitchell's comments, I'm
13 not certain that I need to give a lengthy response. He's
14 already indicated that as required by law in Alabama, he has not
15 and did not allege in the complaint the statutes that he
16 contends we violated. As the Court knows from the Parker
17 Building Services case, which is at page 6 of our brief, not
18 every violation of the statute or ordinance is negligence per
19 se. In order for the plaintiffs to be able to chin up to the
20 bar of being able to prove a negligence per se claim, they need
21 to really hit on four points, and they didn't do that in this
22 case.
23      One, the statute protects a specific class of persons
24 to which the plaintiff belongs. There is no averment in the
25 complaint on that issue. And that's distinguishable from a

Page 27

1  statute that affects the general public. Two, that the
2  plaintiff's injury is the kind contemplated by the statute.
3  Mr. Mitchell has admitted to the Court that they haven't done
4  that. Three, that the defendant violated the statute. Since we
5  don't know what statute we're dealing with, we couldn't have --
6  they couldn't have chinned up to that bar. And then last, the
7  defendant's violation proximately caused the plaintiffs'
8  injuries. They have not chinned up to that bar, Your Honor.
9  Therefore, we would move that the Court grant our motion to
10 dismiss the conspiracy claim.
11      THE COURT: Okay. Thank you.
12      Plaintiff didn't respond to the defendants' motion with
13 respect to trespass. Does the plaintiff intend to abandon that
14 cause of action?
15      MR. MITCHELL: Yes.
16      THE COURT: Okay. Thank you.
17      MR. MITCHELL: If I may make a short comment, Your
18 Honor.
19      THE COURT: About that?
20      MR. MITCHELL: Yes, this case about trespassing persons
21 on that statute of limitations. But I think that's covered in
22 the reckless count, so we abandoned that.
23      THE COURT: All right. So -- but you are abandoning
24 the trespass.
25      MR. MITCHELL: That is correct.

Page 28

1       THE COURT: Okay. Those are the issues I wanted to
2  address on the motions to dismiss. Plaintiff acknowledges that
3  your -- now your nine cases are wrongful death cases. And I'm
4  going to -- I'll enter an order in all these cases giving leave
5  to amend your complaints as to, I'm not sure which defendant, to
6  allege a wrongful death claim pursuant to the Alabama statute.
7  I understand that TMA goes out. You also had an allegation in
8  your amended complaint about venue in Covington County. Of
9  course, you're going to get that out.
10      And then I would ask you to plead the dates of death so
11 we can avoid that argument. That's something that's commonly
12 known to you, I'm sure. And this will be in an order, so I'm
13 just giving you a heads up. I am going to, at least as to
14 Louisiana-Pacific, enter an order for more definite statement
15 regarding several of these causes of action. I'll specify those
16 in the order.
17      After that, I'm going to set up a scheduling response
18 for a short period of time, probably 14 days, to reply to the
19 amended complaint after it's filed. And then I'm going --
20 there's going to be a page limit on the briefs, and I don't want
21 you to brief anything that you've already briefed. You can make
22 reference to it, but don't reargue any of the points that have
23 been argued. Plaintiffs will have a chance to respond, but
24 there won't be any replies beyond that. And that will all be in
25 the order.

Page 29

1       Basically, I'm trying to get a grip on all these cases,
2  because I can hear hints -- and plaintiff, I want you,
3  Mr. Mitchell, if you would, give me just a brief history of the
4  prelitigation in this case and what the Court might expect, if
5  you can tell me, with respect to other cases, with respect to
6  class action certification. And I'm not asking you to give up
7  any strategy. Don't tell me any strategy that you don't feel
8  that you need to tell me, but I'd like to have an idea of where
9  we're headed with these ten cases and if there are more on the
10 way in this district.
11      MR. MITCHELL: Would you like me at the podium?
12      THE COURT: Yes, sir. Come on up. I can hear you
13 better.
14      MR. MITCHELL: I may change the order of the questions
15 as I give the answers.
16      THE COURT: Sure. I think Ms. Roy is checking to see
17 if your mike is on. I think I can hear you. That's fine.
18      MR. MITCHELL: Judge, frankly, I was waiting to see how
19 you wanted the complaint changed and if you did want it changed
20 before filing the complaints.
21      THE COURT: Yes. That's my interest, is getting
22 everything in form here.
23      MR. MITCHELL: Yes. We -- there are approximately 200
24 more. There -- we have one death and five or six living cases
25 that are recent. And then after that, there's -- the next --

Page 30

1  that would be two cases, six people; and then after that would
2  be 200 people, probably. I guess under the Class Action
3  Fairness Act, more than a hundred folks, that's a class action
4  without a class representative. I'm not -- I've never had a
5  case under the Class Action Fairness Act, so I don't -- it's
6  just a number of plaintiffs.
7       We can't effectively do depositions of all the family
8  members and all the physicians for 300 people. We would hope
9  that Your Honor would allow us to take the -- some of the lead
10 cases, the representative cases, enough to evaluate the cases
11 and proceed with those.
12      THE COURT: What's your timing on the two cases with
13 six people and on the 200 cases?
14      MR. MITCHELL: I can file the first one within a week
15 and the second one within two weeks.
16      THE COURT: When you say the second one, those are the
17 first two cases you just mentioned?
18      MR. MITCHELL: Excuse me. The first -- the six people
19 within a week, and the 200, approximately, people within two
20 weeks.
21      THE COURT: And that will be one case or 200 cases?
22      MR. MITCHELL: One case. And the problem is not put it
23 in; the problem is to make sure we don't leave anybody out. And
24 that -- we can file them quicker, but we might have to come back
25 and add -- we don't want to forget a plaintiff. That's our

Page 31

1  nightmare.
2       THE COURT: Well, while you're up there, let's move on
3  to the next motion. And you asked for early -- well, early
4  meeting to plan the discovery. And you've alleged in your
5  motion -- you didn't ask to take any depositions to preserve
6  testimony, but you've alleged that parties are passing away.
7  And you've already said today that the plaintiff in case number
8  83 is now deceased. Would -- I'm assuming that the witnesses --
9  that the expert witnesses, at least, and the former employees,
10 probably, will all be the same -- who are going to testify on
11 your side of the case will all be the same in all of the cases;
12 is that correct?
13      MR. MITCHELL: Yes, sir.
14      THE COURT: So I do intend to consolidate these cases
15 for discovery only, and I'll tell you about that in a minute.
16 But I'm trying to get the timing in my mind. When I enter this
17 ruling on the motions to dismiss and for more definite
18 statement, is that going to clear you up to file the rest of
19 your cases?
20      MR. MITCHELL: Yes, sir. That clears me up. And
21 Judge, we did -- I asked learned counsel about taking the
22 deposition of Melanie before her death, and the answer was we'll
23 get back to you Wednesday. Thursday morning, we agreed to
24 schedule it, and I found out she had died the night before.
25 Our -- we don't know who's going to die next or which one it's

Page 32

1  going to be. I can't tell you that someone -- it happens so
2  fast. I don't know how to deal with it. But we know that there
3  is -- we'd like to depose the sickest people.
4       THE COURT: How many are you talking about?
5       MR. MITCHELL: Less than ten. And some of these
6  chemicals also cause cognitive defects and cognitive
7  deficiencies, like an early onset of Alzheimer's and
8  forgetfulness. And some of the ex-employees who are not old
9  enough to have Alzheimer's are showing the symptoms, and we
10 don't know how fast they're going to go downhill. We'd like to
11 get a few of the key witnesses who are starting to show
12 cognitive deficiencies which are consistent with this chemical
13 exposure -- we'd like to get them tied down.
14      THE COURT: Is that in the ten or is that ten
15 additional or is that --
16      MR. MITCHELL: I think we can put that in the ten.
17      THE COURT: So you're representing to the Court that it
18 might be helpful to you to preserve the testimony of ten
19 witnesses.
20      MR. MITCHELL: Yes, sir.
21      THE COURT: All right. Let me get some responses from
22 defendant.
23      Mr. Taylor, would you -- Mr. Berghoff?
24      MR. TAYLOR: Your Honor, I think --
25      THE COURT: There's room for both of you.

Page 33

1       MR. TAYLOR: -- we'll both walk up together on this.
2  You know, obviously, generally, we want to -- we want to
3  cooperate and we want to help the plaintiffs with this very
4  serious and obviously sensitive issue. Before, however, we
5  would be tasked to go and take these depositions, I think we'd
6  want to do some preliminary work to see maybe some medical work
7  just to see what's really going on there to see if, indeed, the
8  medical evidence supports the fact these folks are imminently
9  about to pass away.
10      THE COURT: Well, Mr. Taylor, I saw a representation
11 probably in the plaintiffs' brief that there have been a
12 truckload of medical documents already submitted.
13      I will ask you, Mr. Mitchell, have -- do the defendants
14 have medical records on these ten folks you say you need to
15 depose?
16      MR. MITCHELL: Some of the -- a few of the people would
17 be the ex-employees, and they would not have medical records on
18 those.
19      THE COURT: Do you have the records on those?
20      MR. MITCHELL: I do not. They're -- the ex-employees
21 are not plaintiffs, and these are not injured people. These are
22 witnesses.
23      THE COURT: How do you propose the defendants get a
24 fair shot of taking someone's deposition where they don't have
25 their medical records or other records available and have not

Page 34

1  had the benefit of interrogatory answers and requests for
2  admissions and so forth?
3       MR. MITCHELL: First of all, it's just like any other
4  witness. The -- now, on the plaintiffs, we -- either they have
5  the medical records -- I believe they have the medical records
6  on all the plaintiffs. There are five live plaintiffs, and I
7  think you've got -- they've got medical records on all of them.
8  Judge, we'll also agree that if the parties are alive later,
9  they can come back and depose them again. We'd agree to put
10 them up a second time. But just in fairness, people are getting
11 forgetful, and they are unexpectedly coming down, relapsing, and
12 dying.
13      THE COURT: Okay. Thank you, Mr. Mitchell.
14      Mr. Taylor, go ahead. Or are you finished?
15      MR. TAYLOR: I think I'm finished on that point, Your
16 Honor.
17      THE COURT: Okay. Mr. Berghoff?
18      MR. BERGHOFF: No, I think we are -- Your Honor, we're
19 in agreement with what Mr. Taylor has said.
20      THE COURT: All right. So when you talk about
21 background work, besides medical, is there any other?
22      MR. TAYLOR: Well, not knowing who the plaintiffs are,
23 yes. I would think at this point, based upon the reason that we
24 would be taking the depositions, that it would be primarily
25 medical stuff that we would need to get our arms around first.

Page 35

1  And I probably should mention to the Court that although we
2  do -- we did receive a number of -- a large set of medical
3  records, that process is not complete in any way, shape, or
4  form. It was really more an opportunity to get what records we
5  could get in an attempt to try to determine whether or not a
6  process that we were going through at the time, we would be able
7  to resolve it through reviewing the medical records.
8       MR. BERGHOFF: Then, Your Honor, I would add, I
9  believe, as to nonplaintiff witnesses, if we are still talking
10 about that as a subset, we would certainly, I think, need any
11 employment-related records that they might have or any documents
12 or files they maintain from their employment period; because
13 after all, many of these people have long, long ago ceased their
14 employment with the company.
15      THE COURT: Mr. Mitchell, are any of these ten folks
16 former employees of the defendants?
17      MR. MITCHELL: Yes.
18      THE COURT: Do you have employment records on any of
19 those, or would those be in the possession of the defendants?
20      MR. MITCHELL: We don't have them. I assume they would
21 be in the defendants' possession.
22      THE COURT: Can you make available -- should I allow
23 you to depose out of time to preserve testimony some witnesses,
24 can you make available for each of those witnesses the medical
25 records if they are -- if they have a medical condition prior

Page 36

1  to -- prior to the deposition?
2       MR. MITCHELL: Yes, sir, all that can be gathered. And
3  what -- we gave them release forms. They got the medical
4  records and then gave the copies to us. They had the blank
5  release forms.
6       THE COURT: Did they have the blank release forms for
7  these ten people you're going to propose?
8       MR. MITCHELL: They did not have the blank -- in
9  their -- they did not have release forms on the employees, the
10 witnesses. I think all of the plaintiffs, they have. But if --
11 if they don't -- if they -- anyone they didn't have a release
12 form, anyone they didn't have medical records for, if the
13 deposition would in any way pertain to a medical condition,
14 we'll get the medical records and furnish them to them first.
15      THE COURT: Okay. Thank you.
16      Do either of the defendants have any other comments
17 about any early discovery?
18      MR. TAYLOR: Well, I'm concerned that we would describe
19 what happened prelitigation as being discovery. There was an
20 exchange of information. And as a result of the exchange of
21 that information, we did gather some facts about some of the
22 individuals and possibly some of the individuals that
23 Mr. Mitchell was talking about. I'm not certain, though, that
24 the information we gathered applies to all of the individuals
25 that Mr. Mitchell is referring to at this point. I am certain,

Page 37

1  however, that it was not thoroughly seeking discovery. It was
2  just receive certain information, receive certain responses to a
3  questionnaire, no way to test the validity or credibility of the
4  information or any of that.
5       THE COURT: All right.
6       MR. BERGHOFF: And though certainly we appreciate the
7  offer of counsel to have the opportunity to redepose this
8  subset, nonetheless, if they are in fact in difficult physical
9  straits, that may or may not be of use from the perspective of
10 the litigation.
11      THE COURT: All right. Thank you, Mr. Berghoff.
12      MR. TAYLOR: Thank you, Your Honor.
13      THE COURT: Mr. Mitchell, how long would you need to
14 identify these ten persons that you would want to depose?
15      MR. MITCHELL: I can do it this week.
16      THE COURT: Okay. I've already announced my intention
17 to consolidate these cases solely for discovery purposes. I've
18 spoken with Judge Charles Coody, who is the judge that these
19 will be assigned to. We have four magistrate judges in this
20 district, and each one of them got one or more of these cases
21 that have been filed. They're going to be consolidated, and our
22 magistrate judges handle all of the discovery issues and
23 disputes. If I -- I'm probably going to enter some kind of an
24 early limited discovery myself; but then after that, the case --
25 there will be a consolidation order, and the cases will be

Page 38

1  consolidated just for discovery.
2       I'm anticipating that the two new cases and the 200 --
3  well, those are the two new cases, the six and the 200 -- would
4  likewise be consolidated for purposes of discovery. Is that the
5  plaintiffs' understanding, and do you object to that?
6       MR. MITCHELL: We do not object.
7       THE COURT: Do either of the defendants object to that?
8       MR. TAYLOR: No, Your Honor.
9       MR. BERGHOFF: No, we do not, Your Honor.
10      THE COURT: Tell me what you think the consolidation
11 issues -- just for discovery, not for dispositive motions or any
12 other purpose, but just for discovery, are there other issues in
13 the consolidation that the Court should consider?
14      MR. TAYLOR: Not knowing that the Court was going to be
15 as forthright and laser-like in getting to this point, I haven't
16 had a chance to really think that through. I'd like to have an
17 opportunity to think that through and respond. But I would
18 assume that the normal discovery processes that you would need
19 to go through, the array of issues, we believe should be
20 included in the decision for a consolidation process.
21      THE COURT: Would Friday afternoon be long enough for
22 you to decide and get me something if you want me to consider
23 something?
24      MR. TAYLOR: Sure. Yes.
25      MR. BERGHOFF: Yes, Your Honor, and I echo Mr. Taylor's

Page 39

1  comment. I think we certainly all anticipated the need for
2  streamlining and the obvious need for consolidation, depending
3  on whether there were going to be more cases filed or not. But
4  we would like that opportunity.
5       THE COURT: Okay. You'll have until Friday afternoon
6  at five o'clock. And if I don't hear from you, then I'm going
7  to enter some kind of order next week.
8       MR. BERGHOFF: Thank you, Your Honor.
9       MR. TAYLOR: Thank you, Your Honor.
10      THE COURT: On that point. I'm sorry. I also -- I'm
11 going to identify a lead case for discovery purposes. It helps
12 our people downstairs in the clerk's office. And I had intended
13 to make it the first case, Case Number 83, 06-83. Is there any
14 reason for me not to make that the lead case? Anyone know of
15 any reason?
16      On your amended complaint in that case, now, you don't
17 have an administration set up yet. How long is it going to be
18 before you'll have an administration?
19      MR. MITCHELL: Your Honor, it is our present intention
20 to make a wrongful death claim. And under the Wrongful Death of
21 Minors Act, I don't think we have to have an administrator.
22      THE COURT: Under the minor. Okay.
23      MR. MITCHELL: And an administrator would be necessary
24 if we tried to reserve -- or I believe it would be revive the
25 prior tort action. And it's our intention to pursue it as a

Page 40

1  death claim, so we wouldn't need an administrator if -- unless
2  we tried to revive the prior tort action.
3       THE COURT: All right. Those are the issues that the
4  Court had. Do you-all have any issues that you think I need to
5  address today? Did I address what was on your agenda?
6       MR. BERGHOFF: You have addressed what is on PACTIV's
7  agenda, Your Honor. Thank you.
8       THE COURT: Thank you.
9       MR. TAYLOR: Same here, Your Honor.
10      THE COURT: Thank you, Mr. Taylor.
11      Plaintiffs, have I addressed everything for you-all?
12      MR. MITCHELL: You have. Thank you, Judge.
13      THE COURT: Okay. Well, thank you for coming. I'm
14 going to give the defendants until Friday to get me something,
15 if you want to, on that one issue; and then I will try to rule
16 on all of this next week and get you something in writing. I
17 may rule in part or I may rule in one -- in parts or I might
18 rule in one large order. I don't know yet. See how it turns
19 out.
20      Okay. We're adjourned. Thank you.
21      MR. BERGHOFF: Thank you, Your Honor.
22      (Proceedings concluded at 4:54 p.m.)
23              * * * * * * * * * * *
24
25

Page 41

1            COURT REPORTER'S CERTIFICATE
2       I certify that the foregoing is a correct transcript
3  from the record of proceedings in the above-entitled matter.
4       This 31st day of May, 2006.
5
6       _____
7       RISA L. ENTREKIN, RDR, CRR
        Official Court Reporter