**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**M.C., Who Sues
By and Through Her Mother and Next
of Friend Gail Tatum,**                                          **PLAINTIFF**

**VERSUS**                        **CIVIL ACTION NO. 2:06-CV-00083-LES-CSC**

                                                                 **(LEAD CASE)**

**PACTIV CORPORATION and
LOUISIANA-PACIFIC CORPORATION,**                    **DEFENDANTS**

**PARTIES' REPORT OF RULE 26(f) MEETING**

1.    Pursuant to Fed. R. Civ. P. 26(f), a telephonic conference was held on November 3, 2006, and was attended by:

|  |  |
|---|---|
| For Plaintiffs: | W. Eason Mitchell |
|  | Gregory A. Cade |
|  | Robert Leslie Palmer |
|  |  |
| For Louisiana-Pacific Corporation: | Bernard Taylor |
|  | Douglas S. Arnold |
|  | Orlyn O. Lockard, III |
|  | Dennis R. Bailey |
|  |  |
| For Pactiv Corporation: | John C. Berghoff, Jr. |
|  | Mark R. Ter Molen |
|  | Matthew C. Sostrin |

2.    **Pre-Discovery Disclosures**:  The parties differ on the appropriate date for Rule 26(a)(1) disclosures.

Plaintiffs' Contentions:

Plaintiffs contend that Rule 26 pre-discovery disclosures shall be completed within fourteen (14) days of the Rule 26(f) conference (December 14, 2006) as provided by Fed.R.Civ.P. 26(1)(E).

Defendants' Contentions:

Defendants have pending motions to dismiss in 10 cases.  Judge Strom's rulings on those motions will determine which of Plaintiffs' claims, if any, will remain in these lawsuits against each Defendant. Defendants also anticipate, based on the Court's rulings on the pending motions, filing motions to dismiss the remaining 8 cases. Defendants believe that the ultimate resolution of all motions to dismiss will determine both the need for, and scope of, initial disclosures under Rule 26(a)(1).  Defendants therefore submit that the parties should exchange Rule 26(a)(1) initial disclosures within 30 days after the disposition of motions to dismiss.

3.    **Discovery Plan:**  The parties differ on discovery plans.  A short overview of each party's position and concerns is set forth below.  Plaintiffs' proposed Scheduling Order, containing Plaintiff's detailed proposed schedule, is attached hereto as Exhibit A.  Defendants' proposed Scheduling Order, containing Defendants' detailed proposed schedule, is attached hereto as Exhibit B.

Plaintiffs' Position:

Plaintiffs contend that a scheduling order is not the proper place to argue a party's case and propose significant motions which have not been suggested prior to the parties' Rule 26 planning meeting.  Defendants choose to make use of this required effort to reach an agreement on a workable discovery schedule to argue their case and seek a "lone pine order" as part of the discovery process. Defendants certainly have a right to file their motion, once the agreed upon stay is

lifted. Such a motion, if considered by the Court, should allow for plaintiffs' full response.

Discovery in this case should take into consideration the nature of the case and the progress of informal discovery to date, including:

1.  The Plaintiffs' substantial and voluntary pre-litigation disclosures to the defendants.
2.  The Plaintiffs' substantial and voluntary post-litigation disclosures to the defendants.
3.  The fact that all Plaintiffs requested provided medical releases to defendants well over a year ago.
4.  The substantial amount of material that Plaintiffs have already filed to prove the validity of their claims.
5.  The absence of any disclosures by the defendants to the Plaintiffs.
6.  Lengthy questionnaires, drafted by defendants, which were supplied by several hundred plaintiffs.
7.  Records obtained from ADEM and the EPA demonstrating that the defendants, in violation of EPA regulations, released into the environment toxic chemicals designated by the EPA as known or probable carcinogens.
8.  Sworn statements of former employees of the defendants corroborating the ADEM and EPA records.
9.  Air modeling reports provided to defendants establish emissions of known carcinogens from the facility.
10. Blood tests establishing extraordinarily high dioxin levels for a number of plaintiffs.
11. Dust sample tests establishing extraordinarily high levels of dioxin, arsenic, and polycyclic aromatic hydrocarbons in the homes of several plaintiffs.
12. Expert medical reports establishing causation and correlating the specific diseases and other injuries suffered by the Plaintiffs with the specific toxic substances that the defendants released from the facility.
13. The Plaintiffs' medical records.

Given the large number of Plaintiffs, the most appropriate discovery plan should minimize redundancy and avoid wasting the time and resources of the Court and the parties. The Plaintiffs therefore submit that in the interests of justice and judicial economy, the Court should adopt a plan that will permit the

Page 3

preparation and trial of individual groups of Plaintiffs, one group at a time, delaying discovery with respect to all remaining Plaintiffs pending the resolution of each such trial group (except in the event of exigent health or similar circumstances). It is foreseeable that all of the Plaintiffs' claims could be settled after the trial of just one or two such trial groups. The Alabama Wrongful Death Statute, which provides for punitive damages only, would be a significant factor in establishing trial groups. In addition, to facilitate the selection of trial groups, the Plaintiffs would furnish to the Defendants specific exposure, occupational, and medical history information for all Plaintiffs, and would also furnish information releases so that the Defendants can collect documentary evidence from third parties relating to exposure, occupational, and medical history. This information would allow the Defendants to evaluate cases not included in a pending trial group and would further expedite discovery once those Plaintiffs were selected for a trial group, in the event that it becomes necessary to take to trial more than one trial group. The Plaintiffs propose the Scheduling Order attached hereto as <u>Exhibit A</u>.

The defendants assume that the admissibility of scientific evidence in this case should be governed by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The plaintiffs, however, contend that the standard for admissibility of scientific evidence is substantive law in Alabama, *Southern Energy Homes Inc. v. Washington,* 774 So.2d 505 (Ala 2000) and in *General Motors Corp. v. Jernigan,* 883 So.2d 646, 661 (Ala. 2003).

Defendants seek individual expert exposure reports for each of the 1,400 individually filed plaintiffs in order to cause undue expense and to delay the trial and claims evaluation process. "Lone Pine" orders, named for *Lore v. Lone Pine Corporation*, 1986 N.J. Super LEXIS 1626, No. L-33606-85 (N.J. Super. Ct. 1986), are appropriate only in cases in which the plaintiffs have not made the substantial disclosures already made in this case. "Lone Pine" orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation when allegations are made without certain forms of expert support has not been made available to substantiate certain allegations.

Defendants' Position as to Discovery Necessary to Assess Plaintiffs' Claims:

As is discussed in more detail below, Defendants need to complete individualized fact and expert discovery of a significant subset of the total Plaintiffs before scheduling any trials. Defendants therefore propose a 15-month schedule for initial fact discovery, including a 6-month period in which to complete the depositions of 200 to 300 plaintiffs, and a 6-month schedule for the anticipated substantial expert discovery. At the conclusion of this discovery period, Defendants anticipate filing dispositive motions with respect to many of the claims. Following rulings on those motions and any Daubert-related hearing, the parties will be in a position to begin scheduling trials for any remaining Plaintiffs in the initial group. Defendants further propose continuing with depositions and other discovery of the remaining Plaintiffs while these pre-trial and trial proceedings are also moving forward.

The claims of these 1,427 Plaintiffs arise from the Plaintiffs' alleged individual exposure(s) to various chemicals and alleged property damages from the former wood treatment facility. Plaintiffs' complaints essentially allege (without providing any particularity on each individual Plaintiff) that: (i) the Facility emitted many different chemicals through many different pathways over an approximately fifty year period; and (ii) each Plaintiff lived in or around the Lockhart/Florala area for various unspecified periods of time.

In light of the decades of Facility operations Plaintiffs collectively call into question, it is apparent that each Plaintiff presents individualized issues. Based on the allegations in the complaints, Defendants do not know—in even general terms—when each Plaintiff supposedly lived in the Lockhart/Florala area; where each Plaintiff resided; whether each Plaintiff allegedly encountered chemicals released by Pactiv, Louisiana-Pacific, or both; what the approximate timeframes of exposure were; whether the exposures occurred in an employment setting or elsewhere; whether they occurred on a given Plaintiff's property(ies) or elsewhere; which chemicals each Plaintiff allegedly encountered; what diseases or injuries each Plaintiff allegedly suffered as a result; when each Plaintiff first experienced symptoms or was diagnosed with those diseases or injuries; and whether each Plaintiff claims personal injury, property damage, or both.

Page 5

Defendants believe individualized discovery of each named Plaintiff with respect to these issues is a necessary predicate to identifying any particular Plaintiffs whose trials may have any potential relevance to the broader group of Plaintiffs, developing trial plans, or scheduling trials. Without such discovery, Defendants cannot possibly evaluate the scope and nature of Plaintiffs' collective claims, much less determine which claims might be subject to early resolution via motions for summary judgment or otherwise.

Defendants therefore suggest several preliminary steps which will be helpful in potentially narrowing the overall group of Plaintiffs, expediting the discovery process, enabling the parties to effectively focus resources for purposes of discovery, and allowing the parties to develop a reasonable benchmark of discovery so that informed decisions can be made on potential trial formats and schedules.

First, the parties have pending motions to dismiss in the initial 10 cases. These motions are based on significant issues that Defendants anticipate will substantially narrow and define the scope of discovery. For example, Pactiv sold the facility in 1983, more than 20 years before the claims here were filed, and is a potential beneficiary of Alabama's 20-year rule of repose. As another example, the statute of limitation issues raised in the motions to dismiss require Judge Strom to determine whether a federal "discovery rule" applies to Plaintiffs' claims as opposed to Alabama's "first injury" rule. The determination of the appropriate accrual rule will of course impact the scope of discovery and define some of the key issues as discovery progresses. Defendants anticipate that Judge Strom will determine these rule of repose and statute of limitation issues, among others, at or following the November 30th hearing. Defendants therefore propose that discovery should be deferred pending the resolution of the motions to dismiss and that any discovery deadlines run from the date that the motions to dismiss are resolved.

Second, as set forth in more detail in Defendants' proposed *Lone Pine* Order and the memorandum of supporting authority for a *Lone Pine* Case Management Order which are attached hereto as Exhibit C, Defendants submit that each individual Plaintiff (or their minor or decedent, as appropriate) should initially make a *prima facie* showing that, among other things, (a) they have suffered a cognizable illness or injury, and (b) a causal relationship exists between

Facility emissions and said illness or injury. Defendants request an opportunity to discuss this request, which is part and parcel to Defendants' proposed discovery plan, with the Court during the November 29, 2006 conference or at such other time as the Court considers the parties' proposed discovery plans.

Plaintiffs assert that a *Lone Pine* Order is unnecessary here because Plaintiffs voluntarily produced "substantial" information to Defendants, including questionnaire responses, medical releases, and blood samples. Defendants, however, dispute the accuracy of Plaintiffs' list of "informal discovery" that they have supposedly provided. For example, Plaintiffs provided questionnaire responses and medical releases for less than 10% of the 1400+ Plaintiffs. By way of further example, Plaintiffs provided blood samples for 21, or approximately 1.5%, of the claimants. This hardly constitutes "substantial" information on the 1,427 individual Plaintiffs that have asserted claims in this litigation.

Defendants propose the Scheduling Order attached hereto as <u>Exhibit B</u>, which sets forth the minimum discovery necessary to begin planning and scheduling trials in these cases. This schedule requires the parties to complete fact discovery for up to 300 Plaintiffs within approximately 15 months following the resolution of the motions to dismiss and to conduct expert discovery within 6 months thereafter.

<u>Defendants' Position on Plaintiffs' Proposed Discovery Stay:</u>

Defendants contend that Plaintiffs' proposal to stay discovery of all but a handful of Plaintiffs is both improper and highly prejudicial to Defendants. Not only does Plaintiffs' proposal fail to identify any pressing need for staying discovery on 1415 out of 1427 individual Plaintiffs, but Plaintiffs' proposed stay is impermissiably indefinite. Moreover, Plaintiffs' proposed stay will irreparably harm Defendants' ability to conduct discovery on the remaining 1400+ Plaintiffs, develop defenses to individual Plaintiffs' claims, and prepare these cases for resolution by trial or otherwise.

A a party seeking to stay discovery bears the burden of establishing a true need for the stay. *See, e.g., Scheuerman v. City of Huntsville, Ala.,* 373 F. Supp. 2d 1251, 1255 (N.D. Ala. 2005). Here, however, there is no legitimate reason for staying discovery on all but a handful of Plaintiffs. Far from avoiding "delay,"

Page 7

Plaintiffs' proposed discovery stay openly prolongs the time that will be required before the claims of the overwhelming majority of Plaintiffs can be resolved. Although Plaintiffs might prefer to prepare a limited number of individual cases for trial and defer all other discovery costs indefinitely, this preference hardly consistutes a need to defer discovery of the claims of the 1415 other Plaintiffs.

District courts do not have limitless discretion to stay discovery proceedings. *See Landis v. North Am. Co.*, 299 U.S. 248 (1936); *see, also e.g., Trujillo v. Conover & Co. Comm., Inc.*, 221 F.3d 1262, 1264-65 (11th Cir. 2000) (district court abused its discretion by entering a stay "indefinite in scope"). Here, Plaintiffs do not identify a specific date or event upon which the proposed stay of discovery against 1415 individual Plaintiffs will be lifted and discovery will begin. Indeed, under Plaintiffs' proposal to use serial trial groups and perpetually defer discovery on all other Plaintiffs, discovery on the overwhelming majority of 1400+ Plaintiffs in these cases would not even *begin* for decades.

In the meantime, Defendants' ability to conduct discovery on remaining Plaintiffs' claims, develop and preserve defenses, and adequately prepare these cases for resolution will have been irreparably harmed as percipient witnesses move or die, memories fade, and relevant evidence is lost. Put simply, the delay caused by Plaintiffs' desire to avoid discovery costs in this case will create insurmountable hurdles to Defendants' ability to defend individual Plaintiffs' claims.

Finally, Defendants note that Plaintiffs' proposed stay asymmetrically benefits all individual Plaintiffs while prejudicing Defendants. Because all Plaintiffs assert the same basic claims and are represented by the same counsel, every Plaintiff beyond the initial trial group will be able to discover and accumulate evidence against Defendants. At the same time, Defendants will be blocked from conducting basic discovery on those Plaintiffs' individual claims. Plaintiffs' proposed stay is thus not only indefinite, but unfairly asymmetric.

4.    **Other Items**

The parties request a conference with the Court before entry of a Scheduling Order to address the issues set forth herein.

Page 8

**Possibility of Prompt Settlement or Resolution of the Case:**  The parties have attempted mediation prior to the filing of these cases and after litigation was commenced.  The parties have failed to negotiate a settlement, although the chosen mediator reported that some progress was made during the October 16 and 17, 2006, mediation.  The parties conferred during their Rule 26(f) conference and chose to make different proposals.

Plaintiffs' Position:

The plaintiffs have provided defendants material and information for case evaluation since early 2005.  The plaintiffs believe that there is a reasonable likelihood for a successful mediation after the Court rules on the defendants' motions to dismiss.  The plaintiffs also believe that the presence or participation of a United States Judge Magistrate, together with the parties' chosen mediator, would improve the chances of a successful mediation.

Defendants' Position:

Defendants believe that settlement is unlikely.

**Issues for Discovery, Claims and Defenses**:

Plaintiffs' Anticipated Issues:

    a.    The Defendants' spoliation of evidence and the availability of witnesses with knowledge of that spoliation.

    b.    The extent to which the Defendants' spoliation of evidence entitles the Plaintiffs to judgment or other relief.

    c.    The Defendants' culpability, knowledge, motive, and pattern and practice in causing the release of toxic substances from their facility and other similar facilities.

    d.    The extent to which the Plaintiffs were exposed to the toxic substances released from the Defendants' facility.

e.    The extent to which the Plaintiffs' exposure to the toxic substances released from the Defendants' facility resulted from the Defendants' negligence, wantonness, and/or intentional conduct.

f.    The time period during which the Plaintiffs were exposed to the toxic substances released from the Defendants' facility.

g.    The extent to which the toxic substances released from the Defendants' facility were deposited on the Plaintiffs' properties.

h.    The time period during which the toxic substances released from the Defendants' facility were deposited onto the Plaintiffs' properties.

i.    The extent to which the Plaintiffs' decedents' deaths were caused by the release of the toxic substances from the Defendants' facility into the environment.

j.    The extent to which the Plaintiffs' personal injuries and property damages were caused by the release of the toxic substances from the Defendants' facility into the environment.

k.    The Plaintiffs' damages.

l.    Whether the substantive law of the state of Alabama concerning the admissibility of scientific evidence applies in this case (the *Frye* standard).

l.    Whether this Court should apply the federally required commencement date mandated by Section 309 of the COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980 ("CERCLA"), 42 U.S.C. §§ 9601, 9658 to these state law claims, as established by *Tucker v. Southern Wood Piedmont Company*, 28 F.3d 1089 (11th Cir. 1994).

Defendants' Anticipated Issues:

- Whether Plaintiffs' claims are timely under the applicable limitations and repose periods since Pactiv ceased operations in 1983 and LP ceased operations no later than 1999.

- With respect to each individual Plaintiff's claimed exposure to chemicals allegedly released from the facility:

  ○ The time period(s) of alleged exposure.

  ○ The place(s) of alleged exposure.

  ○ The pathway (air, soil, or groundwater) of alleged exposure.

  ○ The specific chemicals involved.

- With respect to each individual Plaintiff's alleged personal injury and/or wrongful death:

  ○ The specific injury, disease, and/or disorder alleged.

  ○ The timing of any symptoms and/or diagnosis.

  ○ Whether sufficient evidence exists to prove that the alleged injury was caused by Defendants' operation of the facility.

  ○ If a discovery rule in fact applies, when each Plaintiff knew or should have known that their injuries may have been caused by Defendants' operation of the facility.

- With respect to each individual Plaintiff's alleged property damage:

  ○ The property owned.

  ○ The property's distance from the facility.

Page 11

○ The chemicals allegedly deposited on the property.

○ The time period that chemicals were allegedly deposited.

● Whether the opinions of Plaintiffs' tendered expert witnesses (1) are based on sufficient facts or data, (2) are the product of reliable principles and methods, and (3) are the result of the reliable application of those principles and methods to the facts of this case so as to satisfy the requirements of *Daubert* and Federal Rule of Evidence 702.

● Whether each individual Plaintiff worked at the facility so as to invoke the exclusivity provisions of the Alabama Workers Compensation Act and/or to place that Plaintiff on notice of his or her potential claims (if a discovery rule in fact applies).

**Pre-trial Hearing Concerning Scientific Evidence:** The parties agree that it is proper for the Court to conduct a pre-trial hearing to determine the admissibility of scientific evidence. The Court shall conduct a hearing to determine the admissibility of scientific evidence on _____, 2007, in Montgomery Alabama at _____.m. at the Frank M. Johnson, Jr. Federal Building and United States Courthouse.

**Changes in Limitations on Discovery:** The parties disagree as to changes in limitations on discovery.

Plaintiffs' position and/or proposed changes:

Depositions of designated experts, treating physicians and parties shall not be included in determining the limit for depositions. Limits shall be in accordance with the Fed.R.Civ.P. and shall be computed as to each side.

Defendants' position and/or proposed changes:

Interrogatories: Defendants shall collectively be allowed a maximum of 25 interrogatories to each individual Plaintiff. Plaintiffs in these consolidated cases shall collectively be allowed a maximum of 25 interrogatories to each Defendant.

Page 12

Requests for Admission: Defendants shall collectively be allowed a maximum of 25 Requests for Admission to each individual Plaintiff.  Plaintiffs in these consolidated cases shall collectively be allowed 25 Requests for Admission of each Defendant.

Production Requests:    Defendants shall collectively be allowed a maximum of 25 Production Requests to each individual Plaintiff.  Plaintiffs in these consolidated cases shall collectively be allowed 25 Production Requests to each Defendant.

Fact Witness Depositions.  Defendants believe that this case will require the taking of more than 10 depositions per side, which is the limit set forth at Fed. R. Civ. P. 30(a)(2)(A). The parties do not know at this time how many depositions will be needed, but all fact witness depositions will take place during the window allotted for fact discovery set forth above.  Each non-expert deposition is limited to a maximum of 7 hours unless otherwise agreed to by the parties or upon leave of Court.

**Adoption of Parties Report:**  Except to the extent of any conflict with deadlines set out above, the Discovery Plan contained in the Report of Parties Planning Meeting, filed on _____, 2006, is adopted and incorporated herein.

## ORDER

The above Rule 26(f) Report is approved with the following additions/modifications:

Dated this _____ day of _____, 2006.

_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE

JUDGE

Page 13