## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| M.C., Who Sues By and Through Her<br>Mother and Next of Friend, GAIL TATUM | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:06-cv-83-LES-CSC<br>(LEAD CASE) |
| PACTIV CORPORATION and<br>LOUISIANA-PACIFIC CORPORATION, | ) ) ) | |
| Defendants. | ) ) ) | |

**IT IS ORDERED** that Defendants' Motion for a *Lone Pine* Case Management Order is granted as follows:

1.     **Affidavit of Residence.**  Within 30 days of the resolution of Defendants' pending motions to dismiss, each Plaintiff must serve on Defendants a signed statement showing:

     a.     Each address at which he or she resided between 1950 and the present.

     b.     For any claim brought by such Plaintiff on behalf of a minor, each address at which the minor resided between 1950 and the present.

     c.     For any wrongful death claim brought by such Plaintiff, the date and cause of the decedent's death and all known or reasonably ascertainable addresses at which the decedent resided between 1950 and the date of death.

2.     **Personal Injury Claims.**  Within 30 days of the resolution of Defendants' pending motions to dismiss, each Plaintiff who is claiming personal injury, whether to himself or herself, or to a minor or decedent, must serve on Defendants a sworn affidavit from a licensed physician or other qualified expert, or both, as may be necessary to make the requisite showing, that contains all of the following information:

a.     Each specific illness, injury or condition that the subject Plaintiff, minor, or decedent suffered as a result of alleged exposure to materials or substances allegedly emanating from Defendants' operations at the former wood treatment facility in Lockhart, Alabama identified in Plaintiffs' complaints (the "Facility");

b.     The date(s) on which the physician examined the subject Plaintiff, minor or decedent;

c.     The date on which each such illness, injury or condition was first suffered by the subject Plaintiff, minor or decedent;

d.     The identity and concentration of the materials or substances, that, to a reasonable degree of medical and scientific certainty, caused each such injury, illness or condition;

e.     The date(s) and means (*e.g.,* ingestion, inhalation, or skin absorption) of the subject Plaintiff's, minor's, or decedent's exposure;

f.     The basis for concluding, to a reasonable degree of medical and scientific certainty, that the alleged injury-causing materials or substances emanated from the Facility, including a precise description of the environment pathway (*e.g.,* soil, air, water) of each such alleged injury-causing material or substance from the Facility to the subject Plaintiff, minor or decedent;

g.     Any cause for the injury, illness or condition identified by the physician or other qualified expert, which is unrelated to the materials or substances allegedly emanated from the Facility;

h.     The scientific and medical bases, and the basic evidence supporting such bases, for the opinions and conclusions stated.

3.     **Property Damage Claims.**  Within 30 days of the resolution of Defendants' pending motions to dismiss, each Plaintiff who is claiming damage to real property, whether on his or her own behalf or on behalf of a decedent's estate, must serve on Defendants a sworn affidavit from a licensed real estate appraiser or other qualified expert, or both, as may be necessary to make the requisite showing, that contains all of the following information:

2

a. The legal or equitable owner of the property allegedly affected;

b. The street address of the property allegedly affected;

c. The identity and amount of the material or substance, in the opinion of the expert and to a reasonable degree of scientific certainty, allegedly affected the property, including a precise description of the environmental pathway (*e.g.,* soil, water, air) of each such material or substance from the Facility to the allegedly affected property;

d. The time period over which the material or substance emanated from the Facility;

e. Whether, to a reasonable degree of scientific certainty, the material or substance emanated from the Facility;

f. Any other cause or source of property damage, unrelated to any material or substance emanating from the Facility, as identified by the expert;

g. The value of the property before the claimed date of contamination;

h. The value of the property after the claimed date of contamination;

i. The methodology or bases underlying the opinions and conclusions.

Each Plaintiff must provide the foregoing information.  Any Plaintiff who fails to provide the foregoing information by the deadline established above shall be subject to sanctions, including dismissal of his or her claims with prejudice.  Plaintiffs shall serve the required information on Defendants, and not the Court.  Plaintiffs' counsel shall file a declaration of compliance with this order with the court, on behalf of each Plaintiff when the required affidavits are served on Defendants.

_____

United States District Court

This _____ day of _____, 20___.

3

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| M.C., Who Sues By and Through Her Mother and Next of Friend, GAIL TATUM | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:06-cv-83-LES-CSC (LEAD CASE) |
| PACTIV CORPORATION, et al., | ) ) | |
| Defendants. | ) ) | |

DEFENDANTS' CITATION OF LEGAL AUTHORITY FOR
ENTRY OF THE "LONE PINE" CASE MANAGEMENT ORDER IN
DEFENDANTS' PROPOSED DISCOVERY PLAN

Defendants Louisiana-Pacific Corporation and Pactiv Corporation cite the following legal authority supporting entry of the *Lone Pine* case management order in Defendants' proposed discovery plan. Defendants' proposed order simply requires Plaintiffs to specify their alleged injuries and produce *prima facie* support of causation and damages at the outset of discovery, rather than later in the discovery process. As shown below, Defendants' proposed *Lone Pine* order will clarify the numbers of claims and issues properly before the Court, expedite discovery, and enable the parties and the Court to focus discovery resources effectively and efficiently so that all pending claims can be tried as quickly as possible.

**I.      This Court has Wide Discretion in Managing Discovery in Complex Litigation.**

When managing complex litigation, district courts are charged with defining the issues at the "earliest stages of litigation" through the use of case management orders and

other tools. *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998). *See also Johnson v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1268-69 (11th Cir. 2001)(use of case management order); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000)(same). Fed. R. Civ. P. 16 gives courts wide discretion in managing pre-trial proceedings, including the "formulation and simplification of the issues, including the elimination of frivolous claims or defenses," "scheduling discovery, including orders affecting disclosures," and "special procedures to manage difficult or protracted actions that involve complex issues [and] multiple parties." Fed. R. Civ. P. 16(c)(1), (6), (12). Consistent with the general policy set forth in Fed. R. Civ. P. 1, district courts can enter discovery orders to "facilitate the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(16).

**II.    This Litigation Involves More than 1000 Plaintiffs with Unique Alleged Exposures, Injuries, and Damages.**

This litigation involves a wide range of personal injury and property damage claims alleging arising from operations at a former wood treatment facility in Lockhart, Alabama (the "Facility"). Plaintiffs' counsel have filed 18 separate complaints asserting claims on behalf of more than 1400 different Plaintiffs.[1]  Each Plaintiff alleges that

---

[1] *M.C. v. Pactiv Corp., et al.,* 2:06cv83-LES; *Phillips v. Pactiv Corp., et al.,* 2:06cv84-LES; *Thompson v. Pactiv Corp., et al.,* 2:06cv85-LES *Edwards v. Pactiv Corp., et al.,* 2:06cv86-LES; *Madden v. Pactiv Corp., et al.,* 2:06cv186-LES; *Davis v. Pactiv Corp., et al.,* 2:06cv187-LES: *Douglas v. Pactiv Corp., et al.,* 2:06cv188-LES; *Thompson v. Pactiv Corp., et al.,* 2:06cv189-LES; *Kelley v. Pactiv Corp., et al.,* 2:06cv190-LES; *Cravey v. Pactiv Corp., et al.,* 2:06cv191-LES; *Adams, et al., v. Pactiv Corp., et al.,* 2:06cv660-LES; *Cassady, et al. v. Pactiv Corp., et al.,* 2:06cv679-LES; *Brooks, et al. v. Pactiv Corp., et al.,* 2:06cv680-LES; *Anderson et al., v. Pactiv Corp., et al.,* 2:06cv739-LES; *Harrison, et al., v. Pactiv Corp., et al.,* 2:06cv757-LES; *Lawrence, et al., v. Pactiv Corp., et al.,* 2:06cv758-LES; *Hamilton v. Pactiv Corp., et al.,* 2:06cv759-LES;  *K.C. et al., v. Pactiv Corp., et al.,* 2:06cv904-LES.

2

Defendants released 40 or more different chemicals from the Facility through multiple pathways at unspecified times over a period of 50 or more years.

Based on these alleged releases, individual Plaintiffs claim exposure to one or more chemicals at different locations, including "homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area." *See M.C. v. Pactiv Corp.*, 2:06-cv00083, Sec. Am. Compl., ¶ 9. Each Plaintiff's exposure occurred at unspecified times and resulted in as many as 60 or more different kinds of injuries and/or diseases on unspecified dates. The complaints also assert that some Plaintiffs are entitled to unspecified property damages allegedly caused by Facility emissions, although the complaints do not indicate *which* Plaintiffs claim property damages (let alone for what properties).

III.    **The Magnitude and Nature of Plaintiffs' Claims Compel Entry of a *Lone Pine* Case Management Order.**

Defendants submit that the sheer number, variation, and ambiguity of Plaintiffs' claims in this complex litigation compel entry of a *Lone Pine* case management order.

A.      **Courts Commonly Use *Lone Pine* Orders To Facilitate Efficient Case Management and Resolution.**

"*Lone Pine*" case management orders have grown increasingly common since their origins twenty years ago in *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986), attached hereto as Appendix 1. In *Lore*, defendant Lone Pine Corporation operated a landfill to which the remaining defendants allegedly sent hazardous substances. *Id.,* at *1. As here, numerous Plaintiffs asserted both personal injury and property damage claims allegedly resulting from chemical releases at the landfill. *Id.*

Exercising its broad discretion to manage pre-trial discovery, the trial court entered a case management order requiring plaintiffs to provide "sufficient information to establish the existence of a *prima facie* case," including a report from a treating physician supporting "each individual plaintiff's claim of injury and causation" and a real estate appraisal supporting "each individual plaintiff's claim of diminution of property value." *Id.,* at *1-2. The court found that the plaintiffs should be "put to the test of proving their cause of action," and that failure to comply with the court's order, along with the associated expenses for defendants and the court, compelled dismissal of plaintiffs' claims. *Id.,* at *4.

Since *Lore,* similar orders have been frequently used in mass tort cases to assist the Court and parties in determining which Plaintiffs can state *prima facie* claims for personal injury and/or property damage caused by Defendants' alleged acts or omissions. Indeed, courts now widely recognize the usefulness of *Lone Pine* case management orders. In *Bell v. ExxonMobil Corp.,* No. 01-04-00171-CV, 2005 Tex. App. LEXIS 1680 (Tex. App. Mar. 3, 2005), for example, the court required each plaintiff alleging personal injury from a chemical explosion at defendant's plant to submit expert affidavits describing the "manner and duration of the [chemical] exposure" and opining that "to a reasonable medical probability, the injury [was] sustained because of that exposure." *Id.* at *3. The court also required expert affidavits "detailing the location of the property damage…, the amount of economic injury, and the causative link between the chemical exposure and the damage." Id. at *3-4. The court gave plaintiffs 30 days to produce the affidavits. *Id.*

4

Similarly, in *Meyer v. Creative Nail Design, Inc.*, 975 P.2d 1264 (Mont. 1999), the court required each plaintiff, who sued 18 defendants alleging personal injury from exposure to toxic substances in a beauty salon, to provide a list of products, the circumstances of exposure, an identification of each specific chemical which allegedly caused harm, and a physician's opinion of a causal connection between the exposure and injury. 975 P.2d at 1266. An affidavit stating a "'laundry list' of injuries and chemicals" would be deemed insufficient; rather, the court required that "[e]ach injury, illness or condition be linked to the chemical or chemicals believed to have caused that particular injury, condition or illness." *Id.* at 1267. *See also Claar v. Burlington N. R.R. Corp.*, 29 F.3d 499, 500 (9th Cir. 1994)(case management order "required plaintiffs to submit affidavits describing their exposure to the chemicals they claim harmed them, and affidavits from physicians listing each plaintiff's specific injuries, the particular chemical(s) that in the physician's opinion caused each injury, and the scientific basis for the physician's conclusions."); *In re Rezulin Prods. Liability Litig.*, MDL No. 1348, Civil No. 00-2843 (S.D.N.Y. Apr. 27, 2005)(granting defendants' motion for a *Lone Pine* order); *Rineheart v. Ciba-Geigy Corp., et al.*, Civil No. 96-517 (M.D. La. July 6, 2000)(same).

Alabama courts have also recognized the usefulness of *Lone Pine* orders in managing "mass tort" claims. In *Payton v. Monsanto Co.*, Civil Action No. 97-556 (Cir. Ct. Shelby County Sept. 17, 2001), for example, the court required each plaintiff asserting personal injuries and/or property damage claims based on alleged chemical releases at Monsanto's Anniston, Alabama plant to provide certain basic information supporting their claims, including (i) the circumstances of each individual's exposure,

including the chemical substance allegedly causing the injury and a description of the

date, duration, dose and route of exposure; (ii) the physical and/or mental symptoms

allegedly caused by exposure; (iii) the name and address of each treating physician,

psychologist or other health care provider seen within the last ten years; and (iv) a report

from a treating physician linking plaintiff's diseases or conditions to some substance

originating at Monsanto's plant.  *See* Appendix 2.  The court further required each

plaintiff to produce information substantiating their property damage claims, including a

real estate appraisal and statement describing the manner in which the chemical releases

caused the alleged diminution in property value.  *Id.* at 2-3.  *See also Bice v. Micon, Inc.*,

Civil No. 01-1194 (Cir. Ct. Jefferson County Feb. 25, 2002), attached as Appendix 3.

### B.    Lone Pine Orders Are Consistent with the Federal Manual on Complex Litigation.

The federal Manual on Complex Litigation also endorses the use of case

management tools, such as *Lone Pine* orders, pursuant to district courts' "inherent powers

to exercise extensive supervision and control of litigation." Manual for Complex

Litigation §10.1 (4th ed. 2004).  *See also* Fed. R. Civ. P. 16.  The "numerous grants of

authority that supplement the court's inherent power" empower judges to "tailor case-

management procedures to the needs of the particular litigation and to the resources

available from the parties and the judicial system."  *Id.*  Indeed, the Manual recognizes

that "[t]he *sine qua non* of managing complex litigation is defining the issues in the

litigation." *Id.* at §11.31.

Thus, identifying, narrowing and resolving issues at the outset of litigation is one

of the judge's most important powers.  *Id.* at §§11.31, 11.33 (citing *Morro v. City of

Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997)).   Where, as here, the pleadings "fail to

6

define the issues clearly, and the parties…lack sufficient information at the outset of the case," it is especially important to "press the parties to identify, define, and narrow the issues." *Id.* at §11.31.  A blanket assertion by plaintiffs' counsel that a defendant "was negligent" is insufficient; the court should require plaintiffs "to describe the material facts they intend to prove and how they intend to prove them." *Id.* at §11.33. Specifically, plaintiffs should be required to clarify the "amount of damages claimed" and "evidence of causation." *Id.*

Defining these specific issues sooner, rather than later, "identif[ies] the genuine dispute" while weeding out unmeritorious or time-barred claims. *Id.* Entering *Lone Pine* orders early in the litigation, as Defendants request here, "will lead to earlier dispositions, less wasteful activity, [and] shorter trials." *Id.* at §10.1.  Thus, Defendants' proposed order will promote "economies of judicial time and fewer judicial burdens" in the long-term management of these cases. *Id.*

**C.    The Court Should Enter a *Lone Pine* Order In this Case.**

In *Acuna v. Brown & Root Inc.,* 200 F.3d 335 (5th Cir. 2000), the Fifth Circuit Court of Appeals confirmed the propriety of using *Lone Pine* orders in federal "mass tort" cases to ensure *prima facie* validity of Plaintiffs' claims.  In *Acuna,* more than 1600 plaintiffs alleged a range of personal injuries resulting from the mining and processing activities of multiple defendants. *Id.* at 337-38. The federal district court issued pre-discovery *Lone Pine* orders requiring each plaintiff to submit an expert affidavit specifying the injuries suffered by each plaintiff, the substances causing each injury, the facility at which exposures occurred, the dates and circumstances of exposure, and the

7

scientific basis for the expert's opinion. *Id.* at 338. For the Court's convenience, a copy of the case management order endorsed in *Acuna* is attached hereto as Appendix 4.

On appeal, the Fifth Circuit Court of Appeals affirmed dismissal of Plaintiffs' claims for failure to comply with the district court's case management orders. 200 F.3d at 341. The Court endorsed the use of *Lone Pine* orders to facilitate resolution of "mass tort" claims like those Plaintiffs assert here, noting that "[n]either the defendants nor the court was on notice from plaintiffs' pleading as to how many instances of which diseases were being claimed as injuries or which facilities were alleged to have caused those injuries." *Id.* at 340. The Court further noted that the Lone Pine orders "essentially required that information which plaintiffs should have had before filing the claims…" *Id.*

*Acuna* and similar cases confirm that *Lone Pine* orders fall squarely within the power of federal judges to "handle the complex issues and potential burdens on defendants and the court in mass tort litigation." *Id.* at 340. *See also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604-05 (5th Cir. 2006)(affirming denial of class certification where plaintiffs' claims had "already been streamlined…through the issuance of a *Lone Pine* order" and the district court had "been careful to manage the litigation efficiently through the judicious use of…*Lone Pine* orders"); *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 52 (2d Cir. 2004)(affirming trial court's order requiring plaintiffs to produce expert testimony on causation and determine expert's admissibility before permitting parties to proceed with fact discovery), *cert. denied,* 1265 S. Ct. 355 (2005).

Defendants respectfully submit that the same issues and burdens present here. Plaintiffs' complaints reference approximately 40 chemicals allegedly released from the

Facility by one or both Defendants. *See* SAC, ¶ 22, 25-29, 32, 34, 42, 54, 61, 80. Although Plaintiffs' complaints assert a litany of alleged injuries and diseases, no individual Plaintiff's claims are linked to any particular chemicals. Nor do the complaints fairly inform Defendants which Plaintiff has what personal injuries, or which Plaintiffs have incurred property damages in connection with which properties.

Notably, the United States District Court for the District of Nebraska entered a *Lone Pine* order earlier this year in a case with allegations strikingly similar to those asserted by Plaintiffs here.[2] *See Schwan v. CNH America LLC,* No. 4:04-CV-3384 (D. Neb. Dec. 16, 2005), attached as Appendix 5. In *Schwan*, 174 individual plaintiffs alleged that multiple defendants owned or operated property at some point during a 40 year period. Complaint, *Schwan* (No. 4:04-CV-3384), ¶ 2. As here, each Plaintiff claimed personal injuries and/or property damages based on defendants' releases of various contaminants at different times. *Id*. at ¶ 32. Given these circumstances, the Court required each plaintiff to serve a signed statement confirming their residences during the relevant time period, a physician affidavit establishing a *prima facie* connection between the plaintiff's alleged injuries and defendants' chemical releases, and a real estate affidavit establishing a basis for plaintiff's property damage claims. *See* Appendix 5.

> **D.    Defendants' Proposed *Lone Pine* Order is Consistent with Plaintiffs' "Good Faith" Obligations for Filing Suit.**

Finally, entry of a *Lone Pine* order in this case would not impose any burdens beyond *each Plaintiff's* pre-existing obligation to have *prima facie* support for their

---

[2] Defendants' proposed case management order, filed concurrently herewith, is virtually identical to the order entered by the U.S.D.C. for the District of Nebraska in *Schwan.*

claims prior to initiating litigation.   Defendants simply seek initial clarification of (i) the personal injuries and/or property claims for which each Plaintiff seeks damages in this litigation, and (ii) *prima facie* evidence that a causal relationship exists between Facility emissions and said personal injuries and property claims.   This information is exactly what Fed. R. Civ. P. 11(b)(3) requires Plaintiffs, and their attorneys, to have in hand *prior* to filing a lawsuit.   *See Acuna*, 200 F.3d at 340.   *See also In re Ortohpedic Bone Screw Prods. Litig.,* No. MDL 1014, 1998 WL 411370 (E.D. Pa. Jan. 13, 1998)(Pretrial Order No. 1238)("the causation report [required by pretrial order] is simply a procedural requirement that each plaintiff must fulfill to satisfy the court that the attorneys had a reasonable basis to pursue the claims asserted in the complaints filed on their client's behalf…the minimum standard that each causation report must meet is whether the court would consider an attorney…in violation of Rule 11.").   *Id.*, at *1.   Indeed, "prior to the institution of [the] action, attorneys for plaintiffs must be prepared to substantiate, to a reasonable degree, the allegations for personal injury, property damage and proximate cause."   *Lore*, 1986 WL 637507, at *4.

Thus, entering a *Lone Pine* order in this case places no additional burden on Plaintiffs.   Defendants' proposed order would simply require Plaintiffs to clarify their alleged injuries and provide *prima facie* support for their claims sooner, rather than later.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request that the Court enter Defendants' proposed *Lone Pine* case management order.

10

Respectfully submitted this <u>9th</u> day of November, 2006.

/s/ John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

*Counsel for Defendant Pactiv Corporation*

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
E. Bryan Nichols
Alabama Bar No. NIC036
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com
bnichols@maynardcooper.com

*Additional counsel for Defendant*
*Pactiv Corporation*

11

/s/ Bernard Taylor
Bernard Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

*Counsel for Defendant Louisiana Pacific Corporation*

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

*Additional Counsel for Defendant Louisiana-Pacific Corporation*

12

# APPENDIX 1

Westlaw.

Not Reported in A.2d                                                                                    Page 1
Not Reported in A.2d, 1986 WL 637507 (N.J.Super.L.)
(Cite as: Not Reported in A.2d)

**C**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of New Jersey, Law Division.
Joseph v. LORE, et als, Plaintiffs,
v.
LONE PINE CORPORATION, et als, Defendants
No. L-33606-85.

Nov. 18, 1986.

OPINION: JUDGMENT OF DISMISSAL WITH
PREJUDICE

WICHMANN, J.S.C.
*1 This matter having come before this Court for the
purpose of case management, and the Court having
determined that, upon the face of the Complaint, no
prima facie claim for personal injuries or property
damage appears, the Court having ordered plaintiffs
to provide sufficient information to establish the
existence of a prima facie case, and the plaintiffs
having failed to do so by June, 1986; and the time
having been further extended by the Court to August
21, 1986, and the plaintiffs having again failed to
comply with this Court's order; and the Court being
of the opinion that the Complaint of the plaintiffs was
filed without good grounds in violation of R. 1:4-8;
and various defendants having moved for the entry of
a Judgment of Dismissal; and for good cause shown:

IT IS on this 18th day of November 1986:

ORDERED AND ADJUDGED that the Complaint of
plaintiffs, having failed to set forth a prima facie
case, and having failed to plead a claim upon which
relief may be granted, the Complaint is hereby
dismissed with prejudice for the reasons more fully
set forth in the written decision of this Court dated
November 18, 1986.

This is a suit instituted by the plaintiffs against some
464 defendants. The first named defendant, Lone
Pine Corporation, is alleged to have operated a
landfill; the remaining defendants are alleged to have
been generators and/or haulers of toxic materials.

Plaintiffs contend that their properties were
depreciated in value because of polluted waters
arising from the Lone Pine Landfill. They also sued
for personal injuries caused by the same pollution,
the nature of the injuries being allergies, skin rashes
and similar ailments.

Suit was filed on April 23, 1985. In October of 1985
an order to show cause was brought by the multiple
defendants. At that hearing the Court determined that
because of the number of defendants, organization
was required to manage the case. On November 12,
1985 Case Management Order # 1 was entered. It
provided that since few defendants had been been
served, discovery would not take place until most of
the remaining defendants had been served and had
the opportunity of filing answers or entering
appearances.

As a result of that order a case management
conference was held on January 31, 1986 with
defendants' counsel and plaintiff's counsel present. At
that time it was pointed out by defense counsel that
the Environmental Protection Agency had prepared a
Record of Decision (R.O.D.) which was a summary
of sixteen studies on the Lone Pine Landfill. The
R.O.D. cataloged and evaluated all the information
available on the Lone Pine problem and the location
of the resulting pollution.

After the conference, Case Management Order # 2
was issued. It ordered, in part, that on or before June
1, 1986:
(1) plaintiffs would provide the following
documentation with respect to each claim for
personal injuries:
(a) Facts of each individual plaintiff's exposure to
alleged toxic substances at or from Lone Pine
Landfill;
*2 (b) Reports of treating physicians and medical or
other experts, supporting each individual plaintiff's
claim of injury and causation by substances from
Lone Pine Landfill;
(2) plaintiffs would provide the following with
respect to each individual plaintiff's claim for
diminution of property value;
(c) Each individual plaintiff's address, including tax
block and lot number, for the property alleged to
have declined in value;
(d) Reports of real estate or other experts supporting
each individual plaintiff's claim of diminution of
property value, including the timing and degree of
such diminution and the causation of same.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 2
Not Reported in A.2d, 1986 WL 637507 (N.J.Super.L.)
(Cite as: Not Reported in A.2d)

These were considered to be the basic facts plaintiffs must furnish in order to support their claims of injury and property damage.

On June 20, 1986, a case management conference was held with all attorneys present. A member of plaintiffs' counsel's firm represented to the Court that there had been a serious illness in the immediate family of plaintiffs' attorney which ultimately resulted in the death of a family member and that this circumstance prevented the submission of the reports and proofs required by CMO # 2. Case Management Order # 3 was entered on June 25, 1986 and, over the objections of defense counsel, extended until August 19, 1986 the time for plaintiffs to provide the documentation required by the prior order.

On August 18, 1986 plaintiffs' attorney forwarded to the Court information which purportedly complied with CMO # 3. A copy of said information is attached to this decision. The data submitted was woefully and totally inadequate.

It had been clearly understood in the earlier meetings that defense counsel required sufficient information to provide defenses and to determine which of the multiple defendants might have been involved in the alleged dumping of certain chemicals which could have brought about the pollution in the area, as well as its effect on the property and persons of the plaintiffs.

The report submitted concerning the depression in real estate values consisted of a two and one-half page letter from Herbert N. Tanzman, Realtor.

Mr. Tanzman admitted in the report that he had not inspected any of the properties which were the subject of the litigation. He also stated that he had not compared the values of the subject properties with comparable land. He quoted only hearsay and provided no documentation or any other evidence of compromised values.

He further stated that he could not offer an opinion until he had an opportunity to review the problem in greater detail. He indicated that the report was inadequate because he had only 30 days in which to investigate the properties and record his findings prior to the court-imposed deadline for the submission of such substantiation of plaintiffs' claims as to the diminution of property values. (Emphasis added)

The conclusions which were reached by Mr. Tanzman are completely contrary to the EPA R.O.D. which indicates that there was no problem with ground water contamination, nor indeed with the transport of pollution by air, ground water or surface water.

*3 Mr. Tanzman provided no evidence of contamination of plaintiffs' properties and no evidence that any such contamination is causally related to Lone Pine.

One of the properties involved is 20 miles from Lone Pine at the end of the Metedeconk River, four properties are at the outlet of the Manasquan River in Point Pleasant, and two more are each two miles from the landfill in different directions. The EPA R.O.D. suggests that contamination is confined to the landfill and its immediate vicinity.

The information submitted as to personal injury claims was so inadequate as to be deemed unbelievable and unreal. Plaintiffs merely listed a variety of illnesses such as allergies, itching, dryness of skin, and the like. No records were submitted to substantiate any physical problems, their duration or severity. No doctors' reports were provided.

Certainly where there is personal injury or illness it is possible to obtain adequate reports of treating physicians and an opinion as to whether or not exposure to toxic materials was a contributing factor.

Plaintiffs' attorney stated that the doctors and treating physicians contacted by him were unwilling to commit to a causal connection. If they are unwilling, who, then, can provide the information?

Thus defendants were no better off at the end of the seven months allowed plaintiffs to substantiate their cases then when suit was instituted.

In light of the foregoing, it is clear that the plaintiffs have not established by expert evidence or the R.O.D. report that they were damaged. Sixteen months after the start of the suit, plaintiffs' counsel has failed to provide anything that resembles a prima facie cause of action based upon property diminution or personal injuries.

At the case management conference held on September 5, 1986, representative defense counsel moved for dismissal with prejudice of plaintiffs' complaint under Rule 4:23-2(b)(3) which provides

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1986 WL 637507 (N.J.Super.L.)
(Cite as: Not Reported in A.2d)

Page 3

that where discovery orders are violated (in this instance, two case management orders) the Court has sole discretion, including dismissal of the various causes of action. Further, Rule 4:37-2(a) permits dismissal with prejudice at the discretion of the Court for failure to comply with the Rules of Court.

In explanation of the delay in providing compliance with the orders, plaintiffs' attorney cited the serious illness and death of his father. While a death is always of great significance, the Court does not agree that this is an adequate explanation of the lengthy delay and of the ultimate submission of insufficient information. In such a case as this, preliminary expert reports should have been obtained prior to filing suit.

Plaintiffs' attorney also contends that in a conversation in chambers with lead counsel for defendants prior to the January 1986 meeting, he understood he would be permitted to provide something less than full and complete discovery. What counsel fails to indicate is that it was made clear to him that although the discovery need not be voluminous, it would have to be sufficiently clear and precise so that a cause of action for diminution of property values and for personal injuries would be clearly set forth.

*4 A reading of the reports submitted by plaintiffs at the expiration of sixteen months clearly indicates their inadequacy in establishing a prima facie case and do not constitute reasonable discovery.

Attorney Russel Hewit, speaking as one of the counsel moving for dismissal, stated at page 62 of the transcript of the case management conference of September 5, 1986:
"Mr. Lichtenstein has provided no evidence whatsoever for anybody to conclude, or even to infer, that the properties of the plaintiffs are polluted."

In referring to the doctors' statements (not reports), he continues at page 63:
"With regard to the personal injuries, there is no evidence whatsoever of any toxic or chemical contamination of any of the bodies of the plaintiffs."

It was agreed at the September 5, 1986 case management conference that a trial judge assigned to handle a matter dealing with over 400 defendants and 120 attorneys should direct that at least a modicum of information dealing with damages and causal relationship should be established at the outset of the suit.

In this Court's opinion, it is time that prior to the institution of such a cause of action, attorneys for plaintiffs must be prepared to substantiate, to a reasonable degree, the allegations of personal injury, property damage and proximate cause.

With the hundreds of thousands of dollars expended to date in this case, it appears that plaintiffs' counsel is moving things along without complying with discovery orders, hoping that some of the defendants, to avoid further delay and expense, would recommend a settlement of the case. However, there is nothing to be settled because there is total and complete lack of information as to causal relationship and damages.

This Court is not willing to continue the instant action with the hope that the defendants eventually will capitulate and give a sum of money to satisfy plaintiffs and their attorney without having been put to the test of proving their cause of action.

Therefore, it is the decision of this Court that this cause of action is dismissed with prejudice and thereby terminated. An Order of Dismissal with Prejudice has been signed and filed.

N.J.Super.L.,1986.
Lore v. Lone Pine Corp.
Not Reported in A.2d, 1986 WL 637507 (N.J.Super.L.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX 2**

IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA
18TH JUDICIAL CIRCUIT

BEN L. PAYTON, et al.,        )
                                 )

    Plaintiffs,         )

v.                          )    CIVIL ACTION NO. CV-97-556
                                 )

MONSANTO COMPANY, et al.,   )

    Defendants.     )



SEP 20 01
RECEIVED & FILED
MARY H. HARRIS
CIRCUIT & DISTRICT
COURT CLERK
SHELBY CO.

## CASE MANAGEMENT ORDER NO. 1

The Court has before it the Motion of Defendant Monsanto for Entry of Case Management Orders and Entry of Protective Order. Having considered the arguments and submissions of the parties, the Court finds that this case is a complex action and that a special management plan to ensure its orderly and efficient handling is appropriate.

IT IS THEREFORE ORDERED AND ADJUDGED that:

1.    **Nature of Action.** This action was filed as a class action. A phased approach to this matter will expedite the parties' presentation of their respective positions regarding class certification to the Court, and will permit the Court to determine "[a]s soon as practicable after the commencement of an action" whether class certification is warranted. Ala.R.Civ.P. 23(c)(1). The Court therefore orders an initial period of discovery on the issue of class certification, to be followed by a schedule allowing the parties to present the issue of class certification for the Court's consideration.

2.    **Personal Injury Claims.** Within thirty (30) days of the date of entry of this order, plaintiffs shall provide to defendants a signed authorization in the form attached hereto as Exhibit 1 for each plaintiff alleging personal injury. The plaintiffs shall within ninety (90) days of the date of this Order provide the following for each claim of each plaintiff alleging personal injuries:

a.    The facts of each individual plaintiff's exposure to alleged toxic substances originating with or from Monsanto's Anniston Plant, including the chemical substance or substances that allegedly caused injury, and a description of the date, duration, dose and route of exposure;

b.    The symptoms, whether physical or mental, complained of by each individual plaintiff alleged to have been caused or contributed to by exposure to any substance originating with or from Monsanto's Anniston Plant;

c.    The name and address of each physician, psychologist or other health care provider who has treated each plaintiff within the last ten (10) years; and

d.    A report or statement for each such plaintiff from a treating physician linking the plaintiff's disease or condition with some substance or substances originating with or from Monsanto's Anniston Plant.

3.    **Property Damage Claims.** For each individual claim of property damage or diminution of property value, the plaintiffs shall within ninety (90) days of this Order provide the following information for each plaintiff making such allegations:

a.    Each individual plaintiff's address, including the legal description of each piece of property alleged to have declined in value or otherwise adversely affected;

2

   b. The manner in which alleged toxic substances originating with or from Monsanto's Anniston Plant allegedly caused such decline in value or other adverse effect, including the chemical substance or substances that allegedly caused such decline or effect, and the date, duration and character of any contact between such substances and the property in question;

   c. Copies of any appraisals done on each piece of property in the last ten (10) years;

   d. The date of property purchase, if applicable;

   e. The property purchase price; and

   f. If not owned in fee simple, the plaintiff's interest in such property.

  4. **Class Definition.** By September 21, 2001, the plaintiffs shall file with this Court a proposed class definition in sufficient detail to identify the specific substances and routes of exposure complained of by the plaintiffs and the time period covered for each type of exposure. The plaintiffs are also directed to file a short statement by September 21, 2001, explaining how they plan to identify and send notices to the purported members of the class in the event of certification.

  5. **Discovery.** Discovery of class action issues will be commenced upon the entry of this Order and completed by March 8, 2002. The plaintiffs collectively may serve a maximum of 50 (fifty) interrogatories and 30 (thirty) requests for production on Monsanto. Monsanto may serve up to a maximum of 50 (fifty) interrogatories and 30 (thirty) requests for production to be answered by each individual plaintiff. The plaintiffs shall within thirty (30) days of the date of this Order designate as many as ten (10) putative class members whose claims

they contend are typical of the class, and their depositions may be taken by Monsanto on request. Monsanto may designate up to ten (10) additional putative class members for deposition concerning class action issues within ninety (90) days of the date of this Order. Within ninety (90) days of the date of this Order plaintiffs may designate as many as five (5) representatives of Monsanto for deposition. All of these depositions may be used for any purpose allowed by the Alabama Rules of Civil Procedure in order to avoid duplicative discovery at a later stage of the proceedings. Any party shall have the right at this stage to depose any physicians of any person designated by any party.

   6. **Expert Witnesses on Class Issues.** If the plaintiffs plan to offer proof through any expert witness in support of class certification, a report in the form required by Rule 26 of the Alabama Rules of Civil Procedure shall be provided to Monsanto by **January 4, 2002**, along with all material or references upon which the opinion is based. Any such expert shall be made available for deposition no later than **January 25, 2002**. If Monsanto plans to use any expert witness in opposition to class certification, a report in the form required by Rule 26 of the Alabama Rules of Civil Procedure shall be provided to the plaintiffs by **February 8, 2002**, along with all material or references upon which such expert relies. Any such expert shall be made available for deposition no later than **March 1, 2002**.

   7. **Submissions on Class Issues.** Plaintiffs shall file all submissions in support of class certification including legal memoranda and affidavits by **March 22, 2002**. Monsanto shall file its submissions in opposition to class certification by **April 19, 2002**.

4

8.      As part of this Case Management Order No. 1, and to ensure the orderly and efficient handling of this action, the Court enters a Protective Order of even date herewith in the form attached hereto as Exhibit 2.

9.      **Class Certification Hearing**.  After the parties have made their submissions concerning class certification, the Court will schedule a hearing on plaintiffs' motion for class certification.

10.     **Motion for Class Action**.  In the event plaintiffs do not file a motion for class certification on or before **March 22, 2002,** plaintiffs shall file an amended complaint eliminating therefrom allegations as to absent persons in accordance with Ala. R. Civ. P. 23(d)(4).  Such amended complaint shall be filed on or before **April 5, 2002**.

ORDERED AND ADJUDGED on this 17th day of September, 2001.


Honorable Dan Reeves
Circuit Judge

459589                                        5

# APPENDIX 3

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BESSEMER DIVISION

| | | |
|---|---|---|
| RANDY WADE BICE, et al., | ) | |
| | ) | CIVIL ACTION NO. CV 01-1194 |
| Plaintiffs, | ) | |
| | ) | |
| MICON, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### CASE MANAGEMENT ORDER NUMBER TWO

A status conference was held in this case on February 6, 2002, pursuant to which it is hereby ORDERED as follows:

**I.    Initial Disclosures**

**Plaintiffs:**

1.    Within ten (10) days of the entry of this order plaintiffs shall serve on defendants a description of the types of products that plaintiffs reasonably believe caused their injuries as described in the complaint.

2.    Each plaintiff will return to defendants completed, verified responses to the following requests within 45 days of the entry of this order.  Failure of the plaintiff to provide a verified and completed questionnaire by the prescribed deadline shall result in the dismissal with prejudice of that plaintiff's claims.  Plaintiffs shall furnish the following information under oath.

   a.    Home address at the time suit was filed (and current address, if different);

   b.    Name of each isocyanate containing product or "other MDA product" to which each plaintiff was allegedly exposed;

   c.    Date, time, and duration of each alleged exposure to each product listed in response to paragraph b. above.

   d.    Method of alleged exposure;

   e.    Identification or location of mine where each exposure occurred;

f.    Specific location at the mine of each alleged exposure, *i.e.*, above ground, in the mine, etc.;

g.    Circumstance of each alleged exposure, i.e., applying chemicals, working in an area near chemical application, etc.;

h.    Date plaintiff of last exposure to the products identified in the complaint;

i.    Description of all injuries, illnesses, diseases or conditions allegedly suffered due to exposure;

j.    Date plaintiff first noticed injury/illness/disease and date injury/illness/disease diagnosed by a physician;

k.    Identification of all physicians and other medical professionals who provided care and treatment before and after exposure, the dates of treatment, and the injuries, illnesses, diseases, or conditions they treated;

l.    Identification of hospitals where plaintiffs received care before and after exposure;

m.    The exact mine where each plaintiff worked, and the approximate length of time worked at same mine.

2.    Written authorizations signed by each plaintiff within 30 days of entry of this order authorizing the release of medical records, disability records, workers compensation records, and employment records. The authorization shall be in a form agreed upon by plaintiffs and defendants.

**Defendants:**

1.    Production of documents containing information listed below by each defendant. To the extent they exist, the documents described below shall be produced, or objections shall be served, within 45 days of the entry of this order.

a.    Documents regarding the brand names of the Isocyanate products manufactured, marketed, or sold by each defendant that are used in mines and are at issue in these lawsuits;

b.    Copies of contracts entered into between the defendants relating to the products at issue in these lawsuits;

c.    Documents reflecting the chemical composition of the Isocyanate products at issue (subject to prior agreement by all parties on an appropriate protective order and confidentiality agreement);

-2-

    d.    Warnings, instructions, and any other information provided to purchasers or users of each such Isocyanate product;

    e.    Material Safety Data Sheets for each such Isocyanate product at issue; and

    f.    Any documents submitted to or received from a governmental agency addressing safety questions regarding the use of each such Isocyanate product;

    g.    Copies of any documents reflecting research conducted by defendants related to the health risks associated with the products at issue;

    h.    The identity of employees or representatives who have visited the mines at issue.

2.    Defendants shall produce said documents to other defendants within the same time period upon written request.

**II.    Motions Related to Venue and Joinder.**

A.    The motions shall be filed within 30 days of the exchange of documents and information contemplated by paragraph I above. Plaintiffs' responses shall be due within 30 days after service of said motions. Defendants shall have 15 days thereafter to submit their replies. The originals of all of the foregoing shall be filed with the court and copies shall be filed with the undersigned.

B.    All other discovery between the parties shall be stayed until after these preliminary motions are filed. The parties shall be allowed to obtain documents from non-parties during this period.

III.    A subsequent Case Management Order will be entered after disposition of motions related to venue and joinder.

DONE and ORDERED this the 25 day of February, 2002.

_____
SPECIAL MASTER

## APPENDIX 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

APR 1 1 1997

CLERK, U.S. ......... COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CRECENSIO ACUNA, et al.,            *
                                    *
            Plaintiffs,             *
                                    *
    v.                              *    CIVIL NO. SA-96-CA-543
                                    *
BROWN & ROOT, et al.,               *
                                    *
            Defendants.             *

O R D E R

In an Order dated January 29, 1997, the Court granted a motion
to extend the scheduling order deadlines and directed the parties
to file a joint advisory containing proposed scheduling order
deadlines.   The Court sought input from counsel as to the
scheduling order deadlines because this is a mass-tort case
involving over 800 plaintiffs.  Plaintiff suggested that the Court
use a scheduling order that is used for "normal" cases, whereas the
defendant requested that the Court impose what is certainly an
atypical scheduling order.   The defendants' proposed scheduling
order, *Joint Advisory Report*, Exh. B, establishes an early deadline for
plaintiffs to establish a prima facie case of causation using
expert reports before defendants would be subjected to the expense
of discovery.  As this type of scheduling order has been used in
other mass-tort cases, the Court view its use appropriate in this
case.

## Discussion

The Court directed the parties to provide the Court with briefs as to the merits of using the defendants' proposed scheduling order. The plaintiffs contend that it would work a great injustice on them to be required to produce expert reports to establish a prima facie case of causation for personal injury and property damage claims without the benefit of disclosure and discovery. Plaintiffs contend that: (1) the defendants' suggested scheduling order does not comport with the standard adopted by the Fifth Circuit for handling mass-tort cases; and (2) a better alternative would be for the Court to exercise its discretion to conduct discovery as to a certain number of plaintiffs and proceed to trial with such finite number of plaintiffs.

Plaintiffs cite to only one case, *In re Fibreboard Corp.* ("*Fibreboard*"), to support their position. 893 F.2d 706 (5th Cir. 1990). In *Fibreboard*, the Fifth Circuit issued a writ of mandamus to vacate a pretrial order that consolidated 3,031 asbestos cases for trial in the Eastern District of Texas. The pretrial order at issue separated the case into three phases: (1) Phase I would be the trial of common defenses and punitive damages; (2) In Phase II, before the same jury, certain cases would be fully tried and the

jury would decide the total, or "omnibus" liability to the class[1]; and (3) in Phase III, any awarded damages would be distributed to the members of the class. *Fibreboard*, 893 F.2d at 707. The defendants in *Fibreboard* argued that the disputed pretrial order deprived them of their right to "one-to-one adversarial engagement" protected under the Constitution. The *Fibreboard* Court agreed with the defendants and held that the disputed pretrial order would violate federal and state law.

It is apparent that *Fibreboard* does not support the plaintiffs' argument for a "representative trial" because the holding provides a reaffirmation of the right to one-to-one adversarial process. Plaintiffs' suggestion that the Court allow discovery as to a certain number of plaintiffs and proceed to trial with that finite number of plaintiffs is simply not allowed under *Fibreboard*. The plaintiffs' claim of denial of due process as a result of not being able to conduct discovery before making a prima facie case using expert reports does have a measure of support in *Fibreboard*:

> Trials can vary greatly in their procedures, such as numbers of jurors, the method of jury instruction, and a large number of other ways. There is a point, however, where cumulative changes in procedure work a change in the very character of a trial. Significantly, changes in "procedure" involving the mode of proof may alter the liability of the defendants in fundamental ways. We do

---

[1]Under the disputed pretrial order, a representative group of cases would number 41, but only eleven cases would actually be fully tried. Although the parties could offer any evidence about the other thirty "illustrative plaintiffs" in the group of 41, the results of the trial would still require extrapolation to the 2,990 remaining plaintiffs. *Fibreboard*, 893 F.2d at 711 & n.5.

> not suggest that procedure becomes substance whenever
> outcomes are changed. Rather, we suggest that changes in
> substantive duty can come dressed as a change in
> procedure.

*Fibreboard*, 893 F.2d at 711. Although the Court is mindful that a

procedural change could create a substantive change in duty, it

appears that the particularities of mass-tort cases require a

balance of the respective burdens placed on the parties. The

*Fibreboard* Court indicated in its directive to the district court

that such a balance is necessary:

> We encourage the district court to continue its
> imaginative and innovative efforts to confront these
> cases. We also caution that defendants are obligated to
> cooperate in the common enterprise of obtaining a fair
> trial.

*Fibreboard*, 893 F.2d at 712. Upon consideration of the burdens

placed on the respective parties, the Court believes that use of

the defendants' proposed scheduling order would be fair.

In assessing the fairness of using the defendants' proposed

scheduling order, the Court is guided by the decisions of other

courts that have struggled with a similar issue in mass-tort cases.

In *Renaud v. Martin Marietta Corp.*, the court required the plaintiffs to

present their prima facie case of causation at an evidentiary

summary judgment hearing. 749 F.Supp. 1545, 1548 (D.Colo.1990),

*aff'd*, 972 F.2d 304 (10th Cir.1992). Similar to the requirement of

the defendants' proposed scheduling order in this case, the

plaintiffs in *Renaud* were required to show that they were exposed

to contaminants at levels sufficient to cause the injuries they

4

alleged. The *Renaud* Court granted summary judgment because the plaintiffs' evidence was insufficient to meet their prima facie burden. *Id.* at 1555. The holding in *Renaud* favors the use of the defendants' proposed scheduling order in this case.

In several Texas mass-tort cases, courts have required a preliminary showing of causation by plaintiffs before allowing the case to proceed. Defendants have provided copies of orders issued in those cases. *Def. Brief*, Exh. 2-7. Each one of the orders in the Texas cases requires that the plaintiffs establish a prima facie case of causation as a preliminary hurdle in such cases. Notably, in two of the orders, discovery was stayed, *Def. Brief*, Exh. 3,4, and in one order, the close of discovery was set for a date over nine months after the plaintiffs were required to establish a prima facie case of causation, *Def. Brief*, Exh. 2. These cases suggest that the use of the defendants' proposed scheduling order is fair.

The balancing of the parties' competing interests by various courts in mass-tort cases has resulted in the requirement of a prima facie showing of causation to justify the enormous expense involved in defending such a case. In *Able Supply Co. v. Moye*, the Texas Supreme Court granted a writ of mandamus and directed the trial court to grant the defendants' motion to compel, which would require the plaintiffs to identify the physician that linked their injuries to the defendants' products. 898 S.W.2d 766 (Tex.1995). The *Moye* Court concluded that "[r]equiring the plaintiffs to answer an interrogatory linking each plaintiff's injuries with a

5

particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for trial of these cases." *Id*. at 898 S.W.2d at 771. In a case citing *Moye*, the Supreme Court again stressed the waste involved in handling a mass-tort case as if it were a "typical" case: "Unfortunately, in this era of complex multi-party litigation, defendants must take a hard look at whether they can afford to defend a case regardless of the merits." *CSR Ltd. v. Link*, 925 S.W.2d 591, 598 (Tex.1996)(J.Gonzalez concurring). The *Link* case noted that, although the *Moye* case had been pending for more than eight years, the plaintiffs were never required to establish causation, yet many defendants felt compelled to settle for millions of dollars to cut their losses. *Id*. This Court shares those concerns.

It is not simply the waste of resources that motivates the Court to use the defendants' proposed scheduling order. First, information regarding the operations of the defendants in the highly regulated industry of uranium mining is a matter of public record. Disclosures have ostensibly been made to federal and state authorities by the defendants concerning the nature and amount of uranium mining products or by-products that have been handled. As part of the regulatory process, numerous inspections have been made of the mining operations. Defendants have provided evidence of a report conducted by the Texas Department of Health that summarizes its findings in a 1991 surveillance of facilities in Texas that

6

have a potential for elevated radiation levels or the release of radioactive substances into the environment. *Def. Brief*, Exh. A. The amount and nature of the public information that is currently available to the plaintiffs largely undermines their claim of prejudice in not being able to conduct discovery prior to being required to show causation.

Also, the Court must assume that plaintiffs are already in possession of evidence to support their allegations of personal injuries and property damage. Fed. R. Civ. P. 11(b)(3) provides that the signature of the plaintiffs' attorney on the plaintiffs' complaint operates as a certification that the allegations in the complaint have factual support, unless there is a statement that the allegations are likely to have evidentiary support after a reasonable opportunity to conduct discovery. There is no such disclaimer in the plaintiffs' active complaint.

Plaintiffs assert prejudice in having to establish causation, but the defendants contend that the task of establishing causation is due to the plaintiffs' action in suing the entire uranium mining industry in Texas.[2] Defendants contend that, for the most part, they were not in business together and they were not involved together at any single site. They also contend that their activities took place at sites physically separated from each

_____

[2]Defendants contend that, with the exception of defendant Brown & Root, the defendants in this case had some involvement, directly or indirectly, with uranium mining, uranium milling, uranium tailings disposal, or operations related to those activities.

7

other, in at least three counties during different parts of the last 40 years. The unfairness as to one defendant, Brown & Root, is highlighted by the absence of allegations that would indicate its involvement in any aspect of the uranium mining activities at issue. This underscores the unfairness to the defendants in having to defend this case without the benefit of a prima facie showing of causation.

Notably absent from plaintiffs' brief is a proposed scheduling order that would not violate case law or would not seek to have this 800-plus plaintiff case be treated as any other case. The cases previously discussed obviate the need to handle large, mass-tort cases differently. The plaintiffs failure to suggest a viable option is suspect. Therefore, the Court finds that the prejudice asserted by plaintiffs is largely undermined by the amount of information that is available from public sources and the plaintiffs themselves, and the balance of the respective burdens placed on the parties favors the use of the defendants' proposed scheduling order.

### SCHEDULING ORDER MODIFICATION

For the reasons described above, the Court's Order Concerning Consent Trials, Discovery, Pretrial Matters and Pretrial Order, signed July 10, 1996, (docket no. 15) is modified as follows.

1. On or before July 11, 1997, plaintiffs shall produce to defendants, for each individual plaintiff, an affidavit from a qualified expert that will:

A. With respect to each plaintiff's claim for personal

8

injuries:

(1) List all injuries, illnesses or conditions suffered by the plaintiff that, in the opinion of the expert, were caused by an alleged exposure to materials or substances from a facility or operation;

(2) Specify the material(s) or substance(s), that, in the opinion of the expert, caused each injury, illness or condition listed and identify the particular facility or operation alleged to be the source of the material(s) or substance(s);

(3) Describe, with specific dates, times, circumstances and incidents and exposure (i.e., ingestion, inhalation, dermal contact, etc.), how the plaintiff was exposed to the material(s) or substance(s) in question, how often, and in what dosages; and

(4) State the scientific and medical bases for the expert's opinions.

B. With respect to each plaintiff's claim for property loss:

(1) List all property that, in the opinion of the expert, was damaged by an alleged exposure to material(s) or substance(s) from a facility or operation;

(2) Regarding property alleged to be damaged, identify all real property by owner, street address, tax block and lot number, size and a description of improvements thereto;

(3) Identify the material(s) or substance(s) that, in the opinion of the expert, caused each alleged property damage and identify the particular facility or operation alleged to be the source of the material(s) or substance(s);

(4) For all property, report the amount of the alleged loss in value, the timing and degree of the alleged loss, the method of causation and the method of evaluation of such alleged loss in value.

2. <u>Status Conference</u>. On August 8, 1997, at 9:00 a.m., in United States Magistrate Courtroom B, 727 E. Durango Blvd, San

9

Antonio, Texas, there shall be a status conference at which all
pending issues or motions shall be addressed and the following
requirements and schedule may be reconsidered.

    3. Initial Discovery Phase. After the status conference, the
following schedule shall apply:

        A. Defendants may depose plaintiffs' expert witnesses
and a representative sampling of plaintiffs as chosen or
selected by defendants. The deadline for conducting such
depositions is November 7, 1997.

        B. Defendants shall provide plaintiffs with expert
reports in response to (1) deposition testimony of
plaintiffs and plaintiffs' experts, and (2) plaintiffs'
expert reports and affidavits provided to defendants in
accordance with the provisions of paragraph 1, which
required plaintiffs to provide defendants with expert
reports. Defendants shall provide these expert reports
by December 8, 1997.

        C. Plaintiffs may depose defendants' expert witnesses and
no more than two representatives of each defendant as
chosen or selected by plaintiffs. The deadline for
conducting such depositions is January 9, 1998.

    4. Mediation. The parties shall engage in a mediation on a
date and before a mediator to be selected by the parties from the
approved mediator list of the San Antonio Division of the Western
District of Texas. If the parties are unable to agree on a
mediator by October 9, 1997, the Court will appoint one after
notice by the parties that they are unable to agree on a mediator.
On or before October 9, 1997, the parties shall file an advisory as
to the name of the mediator selected, or state that they have not
reached an agreement. In any event, the mediation shall take place
on or before February 9, 1998. Within 7 days after the mediation,
the parties shall file a joint advisory to inform the Court of the
date and outcome of the mediation.

5. <u>Completion of Pretrial Matters and Discovery</u>.  In the event mediation is unsuccessful, the parties may begin all other discovery steps as allowed by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas, as the parties deem appropriate.  The parties shall, however, comply with the following requirements and schedule:

> A. Within 30 days of mediation, the parties shall file all motions to amend of supplement pleadings or to join additional parties.

> B. Within 90 days of mediation, plaintiffs shall designate potential fact witnesses and provide written summaries of their expected testimony.

> C. Within 120 days of mediation, plaintiffs shall designate any additional expert witnesses (if any are expected to be used in addition to those identified in accordance with the provision of paragraph 1) and provide written expert reports from each.

> D. Within 150 days of mediation, defendants shall designate potential fact witnesses and provide written summaries of their expected testimony.

> E. Within 180 days of mediation, defendants shall designate any additional expert witness (if any are expected to be used in addition to those identified under paragraph 3) and provide written expert reports from each.

> F. Within 240 days of mediation, the parties shall complete all discovery.

> G. Within 270 days of mediation, all dispositive motions shall be filed.

> H. Within 300 days of mediation, the parties shall file a joint pretrial order in the form required by the Court.

6. <u>Trial</u>.  The case will be set by the Court for jury trial to begin on a date 30 days or later after the joint pretrial order is due to be filed.

7. <u>Other Pretrial Matters</u>.    The Court's Order Concerning Consent Trials, Discovery, Pretrial Matters and Pretrial Order, signed July 10, 1996, shall remain in force to the extent it remains unchanged by the provisions of this Order.

It is so **ORDERED**.

SIGNED this 11th day of April, 1997.

JOHN W. PRIMOMO
United States Magistrate Judge

12

## APPENDIX 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOAN SCHWAN, et al. | ) | 4:04CV3384 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CNH AMERICA LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

IT IS ORDERED that Defendants' Motion for a <u>Lone Pine</u> Case Management Order (filing 103) is granted in part and otherwise denied, as follows:

1.    On or before October 31, 2006, each Plaintiff must serve on Defendants a signed statement showing:

    a.    Each address at which he or she resided between 1965 and the present.

    b.    For any claim brought by such Plaintiff on behalf of a minor, each address at which the minor resided between 1965 and the present.

    c.    For any wrongful death claim brought by such Plaintiff, the date and cause of the decedent's death and all known or reasonably ascertainable addresses at which the decedent resided between 1965 and the date of death.

2.    On or before October 31, 2006, each Plaintiff who is claiming personal injury, whether to himself or herself, or to a minor or decedent, must serve on Defendants a sworn affidavit from a licensed physician or other qualified expert, or both, as may be necessary to make the requisite showing, that contains the following information:

    a.    Each specific illness or injury that the subject Plaintiff, minor, or decedent suffered as a result of alleged exposure to "Contaminants" (as that term is defined in the Third Amended Complaint) allegedly emanating from

Defendants' operations at the property located at 3445 West Stolley Park Road, Grand Island, Nebraska (the "CNH Property");

      b.    The date(s) on which the physician examined the subject Plaintiff, minor, or decedent;

      c.    The date on which each such illness or injury was first suffered by the subject Plaintiff, minor, or decedent;

      d.    The identity and concentration of the Contaminant(s) that, to a reasonable degree of medical and scientific certainty, caused each such injury or illness;

      e.    The date(s) and means (e.g., ingestion, inhalation or skin absorption) of the subject Plaintiff's, minor's, or decedent's exposure to each such Contaminant;

      f.    The basis for concluding, to a reasonable degree of medical and scientific certainty, that the alleged injury-causing Contaminant(s) emanated from the CNH Property, including a precise description of the environmental pathway (e.g., soil, water, air) of each such alleged injury-causing Contaminant from the CNH Property to the subject Plaintiff, minor, or decedent;

      g.    Any cause for the injury, illness or Contaminant exposure(s) unrelated to Contaminant(s) from the CNH Property that the physician or other qualified expert identified; and

      h.    The scientific and medical bases, and the basic evidence supporting such bases, for the opinions and conclusions stated.

      3.    On or before October 31, 2006, each Plaintiff who is claiming property damage, whether on his or her own behalf or on behalf of a decedent's estate, must serve on Defendants a sworn affidavit from a licensed real estate appraiser or other qualified expert, or both, as may be necessary to make the requisite showing, that contains the following information:

      a.    The street address of the property allegedly affected;

      b.    The identity and amount of the Contaminant(s) that, in the opinion of the expert and to a reasonable degree of scientific certainty, allegedly

-2-

affected the property, including a precise description of the environmental pathway (e.g., soil, water, air) of each such Contaminant from the CNH Property to the allegedly affected property;

      c.    The time period over which the Contaminant(s) allegedly affected the property;

      d.    Whether, to a reasonable degree of scientific certainty, the Contaminant(s) emanated from the CNH Property;

      e.    Any other cause or source of property damage, unrelated to any Contaminates emanating from the CNH Property, that the expert identified;

      f.    The value of the property before the claimed date of contamination;

      g.    The value of the property after the claimed date of contamination; and

      h.    The methodology or bases underlying the opinions and conclusions.

Any Plaintiff who fails to provide the foregoing information in a timely fashion shall be subject to sanctions, up to and including dismissal of his or her claims with prejudice. Plaintiffs shall not file the foregoing information with the court, but Plaintiffs' counsel shall file with the court a declaration of compliance with this order on behalf of each Plaintiff when the information is served on Defendants.

IT IS FURTHER ORDERED that the parties shall file their Rule 26 planning conference report within sixty (60) days of today's date, and this matter is referred to Magistrate Judge Piester for further progression.

May 4, 2006             BY THE COURT:

                              s/ *Richard G. Kopf*
                              United States District Judge