IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM, | )<br>)<br>) |
| Plaintiff, | ) CASE NO. 2:06-cv-83-LES-CSC<br>)         (LEAD CASE) |
| vs. | )<br>) |
| PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, | )<br>)<br>) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF
JOINT MOTION TO COMPEL**

In July 2006, at Plaintiffs' request, the parties engaged in a series of expedited "discovery" and "preservation" depositions concerning five individual plaintiffs, Sherri Davis, Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb. Defendants' Joint Motion to Compel (docket no. 69) identified specific deposition questions (Motion at 6 & Exhibits G, H, I, J) and specific documents and information (Motion at 3, 11) for which Plaintiffs improperly asserted the attorney-client privilege in the course of this expedited discovery. Defendants seek this discovery to learn when the applicable statutes of limitation began to run on Plaintiffs' claims (assuming a discovery rule does apply).

The privilege asserted in Plaintiffs' opposition stems from a series of public meetings hosted by Plaintiffs' counsel where Plaintiffs supposedly first learned that their alleged injuries may have been caused by facility emissions. To be clear, Defendants did not coin the phrase "public" meetings. The individual plaintiffs/deponents described the meetings as such, and

13349987.1

Plaintiffs' own counsel agreed after confirming with Sherri Davis on the record that the meetings were in fact attended by third parties. *See* Motion at 4-6.

Setting aside Plaintiffs' attempts to now recast these meetings as "open only to individuals who were contemplating hiring the lawyers," Plaintiffs' assertion of the attorney-client privilege is unfounded. First, Plaintiffs' Response (docket no. 114) fails to make even a *prima facie* showing that the privilege applies. Moreover, even if the public meetings were privileged communications, Plaintiffs waived that privilege by (i) invoking CERCLA § 309's federal "discovery rule," and (ii) voluntarily and repeatedly disclosing significant details about what was discussed at the meetings before Plaintiffs' counsel decided to reverse course, midway through the videotaped "preservation" depositions, and assert the privilege.

## ARGUMENT

I. **Plaintiffs Have Not Made A *Prima Facie* Showing That The Public Meetings Held At The Florala Armory Were Privileged Communications.**

As set forth in Defendants' Motion (at 7), a party asserting the attorney-client privilege has the burden of establishing its basic elements: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived." *Richards v. Lennox Indus., Inc.*, 574 So. 2d 736, 740 (Ala. 1991). A party asserting the privilege must sufficiently describe the communication to allow the opposing party, and the court, to assess the claim. *See, e.g.,* Fed. R. Civ. P. 45(d)(2); Ala. R. Civ. P. 45(d)(2). "An affidavit containing mere conclusory statements . . . will not suffice in meeting [this] burden." *Freiermuth v. PPG Indus., Inc.*, 218 F.R.D. 694, 699 (N.D. Ala. 2003).

Plaintiffs have not set forth any facts showing that communications during the public meetings were "made in confidence." Plaintiffs fail to identify the exact dates or who was actually at these meetings to allow this Court to assess whether a privilege can apply. To the contrary, Plaintiffs refuse to produce the sign-in sheets, the logical starting point for this Court to determine who attended these meetings and whether any privilege ever potentially applied. *See, e.g., In re Pfohl Brothers Landfill Litig.*, 175 F.R.D. 13, 23 (W.D.N.Y. 1997) (rejecting privilege claim because plaintiffs failed to produce "attendance sheets establishing that no one other than the plaintiffs or their attorneys were present at the various meetings"). In fact, Plaintiffs have not even attempted to explain how the sign-in sheets themselves contain any attorney-client communications that could conceivably be privileged.[1] Without this information, it is impossible for this Court to assess the remaining elements of the attorney-client privilege.

Even if Plaintiffs provided these details, however, a communication is only "made in confidence" if it was "intended to remain confidential" and "under the circumstances was reasonably expected and understood to be confidential." *Freiermuth*, 218 F.R.D. at 699 (emphasis added). *See also* Ala. R. Evid. 502, Advisory Committee Notes (noting that "communications one knowingly makes in the presence of a third person generally are not privileged"). As set forth in the Motion (at 4-8), the deposed plaintiffs readily described these meetings as public and plainly had no expectation of confidentiality, conceding that third parties were present. The deposed plaintiffs also brought many family members with them to the

---

[1] As Plaintiffs note (Response at 10-11), some privilege logs were read into the record during the "preservation" depositions. These logs were incomplete. Plaintiffs did not log the sign-in sheets (which would of course require disclosure of the dates and parties involved), nor any other documents held by Plaintiffs' counsel. Documents held by counsel are well within a party's possession, custody, and control and are subject to discovery. The Motion (at 11) therefore seeks, among other things, to "compel Plaintiffs to produce a full privilege log identifying all documents in Plaintiffs' possession, custody, or control (including documents possessed by Plaintiffs' counsel) for which a claim of privilege has been asserted."

meetings, which likewise destroys any confidentiality. *See* Motion at 8. Plaintiffs' Response does not even attempt to refute these points.

Plaintiffs instead devote much of their Response (at 5-7) to the unremarkable proposition that the attorney-client privilege can apply to prospective clients. Defendants do not dispute that the privilege can extend to prospective clients, assuming Plaintiffs meet their burden of proof showing that <u>all</u> elements of the privilege exist. The key point is that Plaintiffs' Response falls woefully short of demonstrating these elements.

**II.   Even If The Meetings Were Privileged Attorney-Client Communications, Plaintiffs Waived The Privilege By Invoking CERCLA § 309.**

The attorney client privilege is impliedly waived where "the actual content of the attorney-client communication has been placed in issue [in such a way] that the information is actually required for the truthful resolution of the issues raised in the controversy." *Ex Parte State Farm Fire & Casualty Co.*, 794 So. 2d 368, 376 (Ala. 2001) (quotations omitted). Here, Plaintiffs invoked CERCLA § 309's federal discovery rule in an attempt to save their claims from the applicable limitations periods and testified that they first learned of their claims at these meetings. In doing so, they waived any privilege as to what was in fact conveyed at the meetings. *See, e.g., Pfohl Brothers*, 175 F.R.D. at 25.[2] *See also* Motion at 9-10.

Plaintiffs boldly assert (at 3, 8-9) that discovery concerning the meetings is not even relevant because "even if the Plaintiffs received 'notice' of their claims at the first meeting . . ., the complaints were nevertheless all timely filed." There are at least two flaws with this conclusory assertion.

---

[2] Plaintiffs correctly note that *Pfohl Brothers* applied New York law, but there is no difference between New York and Alabama law as to implied waivers of the attorney-client privilege. Indeed, courts nationwide have found implied privilege waivers where a plaintiff affirmatively raises a discovery rule to avoid the statute of limitations. *See* Motion at 10 (citing cases).

First, it begs the exact question Defendants are trying (and entitled) to assess themselves via the requested discovery. Because Plaintiffs have not identified the dates and attendees of these meetings, it is impossible to determine (if a discovery rule in fact applies) which claims asserted by which of the 1,427 Plaintiffs in this litigation <u>were</u> timely filed under Alabama's 2-year statute of limitations. Notably, the last complaint in these cases was filed on October 6, 2006. Even according to Plaintiffs, the first meeting may have occurred "around the middle of October, 2003" (Response, Exhibit K), <u>three years</u> before the last complaint was filed, and <u>more than two years</u> before all other complaints were filed.[3] Thus, the precise dates of the meetings are directly relevant to (1) all plaintiffs named in the October 6, 2006 complaint (and possibly others if meetings occurred before October 2003) and (2) the plaintiffs named in other complaints whose claims Defendants never agreed to toll.

Second, apart from straight timing issues, Defendants are entitled to discover how the content of these public meetings was so remarkable and different from what Plaintiffs already knew (from living in Lockhart and Florala and/or working at the facility) that they were only <u>then</u> put on notice that their alleged injuries may have been caused by facility emissions. As the court recognized in *Pfohl Brothers*:

> Plaintiffs' uniform position that they did not know, nor could have reasonably discovered the cause of their injuries earlier than December 19, 1994, places at issue the nature of the information received at the December 19th meeting and <u>how it differed qualitatively from all the information which Plaintiffs were previously aware or could have learned earlier</u> such that all of the Plaintiffs, simultaneously, discovered for the first time at the meeting that the instant claims existed.

---

[3] Although the parties agreed to toll the limitations period (Pactiv only agreed to do so for a period of less than one year) for some of the 1,427 Plaintiffs in this litigation, not every individually-named plaintiff was part of that agreement.

13349987.1                                              5

*Id.* at 25 (emphasis added). Even assuming that the attorney-client privilege applies to the meetings Plaintiffs themselves described as "public" (which it does not), Plaintiffs cannot hide behind the attorney-client privilege to prevent discovery and the truthful resolution of this key issue that Plaintiffs—not Defendants—affirmatively injected into this litigation.

**III.    Plaintiffs Waived Any Privilege By Voluntarily Disclosing The Substance Of The Public Meetings.**

A party waives the attorney-client privilege where it "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Ala. R. Evid. 510. Plaintiffs waived the attorney-client privilege (if it even applies) when Sherri Davis, Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb freely disclosed communications during the meetings at their "discovery" depositions, and when Plaintiffs themselves elicited such testimony from Sherri Davis during her "preservation" deposition. *See* Motion at 3, 6. Changing course midway through the "preservation" depositions, Plaintiffs' counsel began refusing to allow the deponents to answer similar questions.

Plaintiffs now claim that the individual plaintiffs/deponents only answered questions "about their knowledge without disclosing the content of attorney-client communications." Response at 10. To the contrary, the deponents plainly disclosed substantial details of the content of the meetings during their "discovery" depositions. *See, e.g.,* Motion, Exhibit B at 122: 12-23; 123: 1-19; 129: 21-23; 130: 1-19; 131: 1-23 (Sandra Cobb testifying that the discussions included Dioxin studies and chemical releases); Motion, Exhibit C at 36: 3-23; 37: 1-14 (Sherri Davis testifying, after Plaintiffs' counsel <u>withdrew his privilege objection</u>, that the discussions included the toxicity of creosote); Motion, Exhibit E at 127: 12-18 (Kandy Creech testifying that the discussions included how they supposedly "found the chemicals and stuff in the air and in some of the homes. Yeah. In the water and all"). In fact, Plaintiffs themselves

elicited similar testimony from Sherri Davis during her videotaped "preservation" deposition, when she testified about "the meetings where they explained what some of the chemicals were that were being released into the air." Motion at 6. These voluntary disclosures waived any supposedly-applicable privilege.

Plaintiffs also apparently argue that Defendants' questioning (or lack thereof) during the "discovery" depositions somehow precludes Defendants from subsequently inquiring about the meetings during "depositions taken for trial purposes only." Response at 2-3. While the basis for this argument is unclear (and indeed Plaintiffs offer no legal support for this novel proposition), the party asserting the privilege has the burden of proving its existence and that it has not been waived. This is true regardless of whether a deposition is videotaped for potential use at trial or intended as a standard discovery deposition (the Federal Rules do not distinguish between the two). Defendants are unaware of any reason why any particular topic is foreclosed from cross-examination at a videotaped deposition simply because it might ultimately be used at trial if the deponent is unavailable.

Plaintiffs asked for videotaped "preservation" depositions of their own witnesses after representing to the Court that the deponents may not be available at trial due to their health. Having done so, Plaintiffs cannot preclude Defendants from getting videotaped testimony of their own by asserting unfounded privilege objections, even if the deponents had already provided some information as to the content of the meetings during their earlier "discovery" depositions. Defendants' Joint Motion to Compel should be granted.

Respectfully submitted this 21st day of December, 2006.

/s/ John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

/s/ Bernard S. Taylor
Bernard S. Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2006, I filed the foregoing via the CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

      /s/ Matthew C. Sostrin
      Of Counsel