IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother<br>And Next of Friend, GAIL TATUM,<br><br>Plaintiff,<br><br>vs.<br><br>PACTIV CORPORATION and<br>LOUISIANA-PACIFIC CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)    CASE NO. 2:06-cv-83-LES-CSC<br>)             (LEAD CASE)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT PACTIV CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Defendant Pactiv Corporation ("Pactiv"), by its attorneys, for its Answer and Affirmative

Defenses to Plaintiff's Third Amended Complaint, states as follows:

**JURISDICTION**

1.    Plaintiff is a citizen of the State of Alabama.  Plaintiff files this as a wrongful
death action for the death of Melanie Chambers who was a resident of the State of Alabama.
Defendants are corporations both incorporated under the laws of the State of Delaware. PACTIV
Corporation's principal place of business is in the State of Illinois, and Louisiana-Pacific
Corporation's principal place of business is in the State of Oregon or the State of Tennessee. The
matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §
1332.

**ANSWER:**    Pactiv objects to the term "Defendants" as vague.  Pactiv states that,

throughout this Answer, it responds only for itself and its immediate corporate predecessor, and

not for Louisiana-Pacific Corporation ("LP").   Pactiv admits that Plaintiff filed this Third

Amended Complaint alleging wrongful death, that the amount in controversy exceeds $75,000,

and that Pactiv is a Delaware corporation with its principal place of business in Illinois.  Pactiv is

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and therefore denies them.

2.      Venue of this action is proper in the Northern Division of the Middle District of Alabama.

**ANSWER:**    Admitted.

## PARTIES

3.      PACTIV Corporation does business by agent in the State of Alabama and may be served through their registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

**ANSWER:**    Denied.  Pactiv further states that its undersigned counsel agreed to and have accepted service on its behalf.

4.      Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served by service on their registered agent for service of process, United States Corporation Company, 150 South Perry Street, Montgomery, AL 36104.

**ANSWER:**    Paragraph 4 is directed to another defendant and therefore no response is required.  To the extent an answer is required, Pactiv is without knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

5.      The Plaintiff, is the mother, custodial parent and administratrix of the Estate of Melanie Chambers, a deceased minor child who resided in Covington County, Alabama. The date of the death of Melanie Chambers was the 17th day of March, 2006.

**ANSWER:**    Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 and therefore denies them.

## BACKGROUND

6.      The Plaintiff makes claims for the wrongful death of Melanie Chambers caused by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

**ANSWER:**     Pactiv admits that Plaintiff makes claims for the wrongful death of Melanie Chambers, and that Pactiv's immediate corporate predecessor, prior to 1983, owned and operated a lumber mill in Covington County, Alabama that treated some wood products.  Pactiv denies the remaining allegations in Paragraph 6.

7.     The facility is located in the town of Lockhart, Alabama, and is adjacent to the town of Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company.

**ANSWER:**     Pactiv admits that a former lumber mill that treated some wood products was located in Lockhart, Alabama (the "Facility"), on a site formerly occupied by Lockhart Lumber Company.  Pactiv denies any remaining allegations in Paragraph 7.

8.     Melanie Chambers resided in the Florala/Lockhart community for most of her life.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and therefore denies them.

9.     Melanie Chambers also was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and therefore denies them.

10.     Pactiv Corporation or its predecessors assumed ownership and began operation of the wood treatment facility prior to 1960.

**ANSWER:**     Pactiv admits that wood treating operations at the Facility began in the early 1960s, and that Pactiv's immediate corporate predecessor (Tennessee River Pulp & Paper Company) acquired the facility in 1978 before selling it to L-P in 1983.  Pactiv denies any remaining allegations in Paragraph 10.

11.     PACTIV engaged in the business of treating lumber and pine wood poles with creosote and pentachlorophenol.

**ANSWER:**    Pactiv denies that it engaged in any operations at the Facility.  Pactiv states that wood treating operations at the Facility began in the early 1960s, and that Pactiv's immediate corporate predecessor acquired the Facility in 1978 before selling it to L-P in 1983. Throughout this Answer, Pactiv therefore construes allegations concerning "Pactiv" as referring to Pactiv or its immediate corporate predecessor.  Pactiv admits that at various times and in varying quantities, its immediate corporate predecessor used creosote and pentachlorophenol to treat wood at the Facility.  Pactiv denies any remaining allegations in Paragraph 11.

12.    Energy for the PACTIV wood treatment operation was partly obtained by burning wood wastes and scrap bark in three wood waste boilers which were used to create steam and provide heat and energy for PACTIV's sawmill and wood treatment operation.

**ANSWER:**    Pactiv admits that at various times and in varying quantities, its immediate corporate predecessor burned certain wood and bark in three boilers that were used to provide heat and energy for facility operations.  Pactiv denies any remaining allegations in Paragraph 12.

13.    The boilers used by Defendants were not licensed as hazardous or toxic waste incinerators.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 13.

14.    The boilers used by Defendants were not designed or intended to be used as hazardous or toxic waste incinerators.

**ANSWER:**    Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

15.    The boilers used by Defendants at the facility would not have safely disposed of any hazardous or toxic waste burned in them.

**ANSWER:**     Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

16.     The facility also operated a teepee burner which was used to burn waste or scrap wood. Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor operated a teepee burner and that its use was discontinued in or around 1980.  Pactiv denies any remaining allegations in Paragraph 16.

17.     Pursuant to 42 U.S.C. § 241(4), the Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

**ANSWER:**     The allegations in Paragraph 17 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the statute speaks for itself and denies any characterization thereof.

18.     Pursuant to 42 U.S.C. § 6921, the Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

**ANSWER:**     The allegations in Paragraph 18 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the statute speaks for itself and denies any characterization thereof.

19.     The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

**ANSWER:**     The allegations in Paragraph 19 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

20.     The Secretary of Health and Human Services, United States Environmental Protection Agency lists creosote as a probable human carcinogen.

**ANSWER:**    The allegations in Paragraph 20 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

21.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

**ANSWER:**    Pactiv admits that creosote is a mixture of certain chemicals.  Pactiv denies that creosote is carcinogenic to humans and denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 21.

22.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are known to cause cancer.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor used creosote at various times but denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 22 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

23.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentachlorophenol as a probable human carcinogen.

**ANSWER:**    The allegations in Paragraph 23 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

24.    Pentachlorophenol is probably carcinogenic to humans.

**ANSWER:**    Pactiv denies that pentachlorophenol has been demonstrated to cause cancer in humans and denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 21.

25.     The pentachlorophenol used by both Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

**ANSWER:**     Denied.

26.     Dioxin and/or dioxin/furans contaminates in pentaclorophenol used at the facility included tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins.

**ANSWER:**     Denied.

27.     The pentachlorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor used pentachlorophenol at various times but denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 27 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

28.     The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with or contained polycyclic aromatic hydrocarbons (PAHs).

**ANSWER:**     Pactiv admits that creosote is a mixture of chemicals that contain polycyclic aromatic hydrocarbons (PAHs) and denies any remaining allegations in Paragraph 28.

29.     The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

**ANSWER:**     Denied.

30.     Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

**ANSWER:**     The allegations in Paragraph 30 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

31.     The wood treatment chemicals used by both Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

**ANSWER:**     Pactiv denies that any wood treatment chemical for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 31 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

32.     The Defendants also made use of cooling tower corrosion inhibitors which contained hexavalent chromium.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and therefore denies them.

33.     The Secretary of Health and Human Services and United States Environmental Protection Agency list chromium (VI) as a known human carcinogen.

**ANSWER:**     The allegations in Paragraph 33 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

34.     Creosote and pentachlorophenol wood treatment chemicals used by Defendants were dissolved in diesel fuel or a petroleum product.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and therefore denies them.

35.     The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

**ANSWER:**     Pactiv admits that wood treatment operations at the Facility, including the use of pressurized treatment cylinders, produced waste water in various quantities and at various times.  Pactiv denies any remaining allegations in Paragraph 35.

36.    The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

**ANSWER:**    Pactiv admits that certain waste water created or generated by its immediate corporate predecessor contained certain chemicals and residue from the wood treatment process, but denies that any waste water caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 36.

37.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor operated water evaporation and containment areas at certain times.

38.    The Defendants engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor operated a spray field in one lagoon, that did not receive waste water from wood treating operations, for a short period of time in the early 1980s.  Pactiv denies that its immediate corporate predecessor sprayed "toxic waste water" into the air, denies that the spray system caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries, and denies any remaining allegations in Paragraph 38.

39.    Both Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

**ANSWER:**    Denied.

40.    Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor sold the Facility to LP in November 1983.  Pactiv affirmatively states that in November 1983, Pactiv's immediate corporate predecessor ceased all operations at the Facility and transferred title to LP, and that

9

thereafter, neither Pactiv nor any Pactiv affiliate engaged in any activity related to any ongoing Facility operations.

41.    L-P continued operating the facility with the same local management in the same manner as PACTIV.

**ANSWER:**    Paragraph 41 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

42.    Within a year after L-P began operation of the facility they began using another wood treatment chemical which contained copper, arsenic and chromium (CCA).

**ANSWER:**    Paragraph 42 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

43.    In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

**ANSWER:**    Paragraph 43 merely states a legal conclusion and is directed to another defendant and therefore no response is required.

44.    Based upon information and belief, Plaintiff alleges that PACTIV continued to maintain, by operation of law or contract, a responsibility to remediate and clean hazardous substances from the facility.

**ANSWER:**    Paragraph 44 merely states a legal conclusion to which no response is required.  To the extent a further response is required, the allegations are denied.

45.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

**ANSWER:**    The allegations in Paragraph 45 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

46.     Arsenic is known to cause cancer in humans.

**ANSWER:**     Pactiv admits that at certain levels, arsenic can cause cancer in humans. Pactiv denies that any arsenic for which it is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.

47.     During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

**ANSWER:**     Denied.

48.     During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**     Denied.

49.     During the term of its operation, L-P sprayed toxic waste water into the air.

**ANSWER:**     Paragraph 49 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

50.     During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**     Paragraph 50 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

51.     The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**     Denied.

52.     The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**     Paragraph 52 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

53.     Both Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

**ANSWER:**     Denied.

54.     The Defendants also used sawdust to filter and contain hazardous wastes.

**ANSWER:**     Denied.

55.     The sawdust used by Defendants was contaminated with creosote, pentachlorophenol and associated chemicals.

**ANSWER:**     Denied.

56.     The sawdust used for containment by L-P was further contaminated with arsenic.

**ANSWER:**     Paragraph 56 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

57.     The sawdust used for hazardous waste containment by Defendants was burned in the operation boilers.

**ANSWER:**     Denied.

58.     Both Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

**ANSWER:**     Pactiv admits that at times the operations and processes of its immediate corporate predecessor occurred at night and on weekends.  Pactiv denies the remaining allegations in Paragraph 58.

59.     Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

**ANSWER:**     The allegations in Paragraph 59 merely state a conclusion for which no response is required.  To the extent a further response is required, the allegations are denied.

60.     Both Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

**ANSWER:**     Denied.

61.     Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor utilized various chemicals during wood treatment operations.   Pactiv denies the remaining allegations in Paragraph 61.

62.     The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, creosote mixtures with carrying liquids such as diesel fuel oil, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, chromium, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

**ANSWER:**     Pactiv admits that its immediate corporate predecessor utilized various chemicals, including creosote and pentachlorophenol, during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 62.

63.     The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids and waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

**ANSWER:**     Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

64.     The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

**ANSWER:**     Denied.

65.     The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

**ANSWER:**     Paragraph 65 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

66.     Groundwater at the facility has been contaminated by toxic and hazardous wastes.

**ANSWER:**     Pactiv admits that groundwater beneath the Facility has been remediated pursuant to plans and directions approved by USEPA and ADEM.  Pactiv denies any remaining allegations in Paragraph 66.

67.     Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

**ANSWER:**     Denied.

68.     The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

**ANSWER:**     Denied.

69.     The Defendants engaged in the discharge of toxic waste fluids.

**ANSWER:**     Denied.

70.     The Defendants caused the discharge of toxic chemical vapors, particulates and aerosols into the air.

**ANSWER:**     Denied.

71.     The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous waste and known or probable human carcinogens.

**ANSWER:**     Denied.

72.    Defendants used toxic wastes to make roadways and scattered it about the facility roadways.

**ANSWER:**    Denied.

73.    Toxic chemicals spread over the facility contributed to a cloud of toxic dust or vapors created by the operation.

**ANSWER:**    Denied.

74.    PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:**    Denied.

75.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:**    Paragraph 75 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

76.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

**ANSWER:**    Pactiv denies that any pentachlorophenol or creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 76 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

77.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

**ANSWER:**    Paragraph 77 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

78.     Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

**ANSWER:**     Pactiv denies that Pactiv or its immediate corporate predecessor were aware or that any air emissions or disposal for which Pactiv is allegedly responsible were of a "hazardous nature" or caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 78.

79.     The Defendant PACTIV sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**     Denied.

80.     The Defendant L-P sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**     Paragraph 80 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

81.     Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, pentachlorophenol, creosote, benzene, PAHs and dioxin /furans have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, sarcoma, Ewings sarcoma, lung cancer, breast cancer, bone cancer, kidney cancer, liver cancer, leukemia, Scleroderma, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, female reproductive organ disease, reproductive problems, eye disease, skin disease, respiratory disease, sinus problems, coughing, miscarriages, premature births, birth defects and genetic changes in parents which would result in disease of their offspring.

**ANSWER:**     Pactiv denies that any pentachlorophenol, creosote, or other chemicals for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 81 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

82.     At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

**ANSWER:**     Denied.

83.     Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

**ANSWER:**     Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

84.     In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the public.

**ANSWER:**     Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

85.     The Defendants made no effort to warn surrounding neighborhoods and the public of the nature of the disease or cancer causing emissions from their facility.

**ANSWER:**     Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

86.     The toxic chemicals emitted by Defendants were persistent when deposited in Melanie Chambers' home and environment so that Melanie Chambers continued to be exposed to them even after the time of emission.

**ANSWER:**     Denied.

87.     PACTIV has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**     Denied.

88.     PACTIV has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**     Denied.

89.    L-P has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 89 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

90.    L-P has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 90 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

91.    At all times pertinent hereto, the Defendants PACTIV and L-P by and though their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, creosote, and their constituents which contained hazardous and toxic chemicals.

**ANSWER:**    Denied.

92.    The fact that Melanie Chambers was present at homes in various locations in the Florala/Lockhart area and that she attended school near the facility caused her to be exposed to toxic and/or hazardous chemicals or known or probable carcinogens released or produced at Defendants' wood treatment facility.

**ANSWER:**    Denied.

93.    The Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Melanie Chambers to suffer injuries and damages which proximately resulted in her death on the 17th day of March, 2006.

**ANSWER:**    Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegation of the date of Melanie Chambers' death.  Pactiv denies the remaining allegations in Paragraph 93.

94.    Melanie Chambers suffered from a disease that may be latent and not manifest itself until after a lengthy period of time after exposure.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries. Pactiv is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 94 and therefore denies them.

95.    Melanie Chambers did not know and reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint. Melanie Chambers was a minor child at the time of her death.

**ANSWER:**    Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 and therefore denies them.

96.    Plaintiff further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations for any time that accrued during the time defined by the parties' tolling agreement.

**ANSWER:**    Pactiv admits that it entered into a specific tolling agreement for a limited period of time applicable to some but not all of the 1,427 named plaintiffs in this and related cases. Pactiv denies any remaining allegations in Paragraph 96.

97.    At all times pertinent to this Complaint, Defendants created, stored and disposed of toxic and hazardous waste and chemicals which were regulated by both federal and state law.

**ANSWER:**    Pactiv admits that at various times during its immediate corporate predecessor's operations at the Facility before 1983, some disposal and handling activities were subject to federal and state regulatory control. Pactiv denies any remaining allegations in Paragraph 97.

98.    Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

**ANSWER:**    Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents

19

for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 98.

99.     Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 99.

100.     The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 100.

101.     Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 101.

102.     Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents

for certain periods of time.  Pactiv states that those regulations speak for themselves and denies

any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 102.

103.    Defendant L-P had actual knowledge of the pending or potential litigation which
would be filed against them by Plaintiff.

**ANSWER:**    Paragraph 103 is directed to another defendant and therefore no response

is required.  To the extent a response is required, Pactiv is without knowledge or information

sufficient to form a belief as to the truth of the allegations and therefore denies them.

104.    Upon information and belief, Plaintiffs aver that with knowledge of claims that
would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material
evidence and documents.

**ANSWER:**    Paragraph 104 is directed to another defendant and therefore no response

is required.  To the extent a response is required, Pactiv is without knowledge or information

sufficient to form a belief as to the truth of the allegations and therefore denies them.

105.    Plaintiffs are entitled to benefit of the substantive law of the State of Alabama,
including an inference of Defendants' guilt, culpability or awareness of their liability because of
spoliation of evidence.

**ANSWER:**    Denied.    Pactiv further states that Plaintiff has made no allegations

concerning any alleged spoliation of evidence by Pactiv.

106.    Plaintiff brings this action as a wrongful death action and as an action for the
wrongful death of a minor child. As a result of the wrongful acts or omissions of the Defendants,
Melanie Chambers suffered injuries from which she died.

**ANSWER:**    Pactiv admits that Plaintiff filed the Third Amended Complaint alleging

wrongful death.  Pactiv denies the remaining allegations in Paragraph 106.

**COUNT ONE**
**NEGLIGENCE CAUSING DEATH**

107.    Defendants had a duty to Melanie Chambers since the commencement of their
operation and continuing to the date of this lawsuit.

**ANSWER:**     The allegations in Paragraph 107 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.  Pactiv further states that its immediate corporate predecessor, prior to 1983, operated the Facility consistent with any legal duty to all Plaintiffs in this case and the related cases.

108.    Melanie Chambers was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Melanie Chambers lived for years.

**ANSWER:**     The allegations in Paragraph 108 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that its immediate corporate predecessor disseminated toxic fumes or waste into adjacent properties, homes, or communities.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 108 and therefore denies them.

109.    The Defendants, their officers, directors, agents and employees knew or should have known, with the exercise of reasonable care, that their operations emitted toxic and noxious substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including Melanie Chambers.

**ANSWER:**     Denied.

110.    At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring Melanie Chambers.

**ANSWER:**     Denied.

111.    The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

**ANSWER:**     Pactiv denies that Pactiv or its immediate corporate predecessor caused or contributed to "contamination of air" surrounding the Facility or failed to exercise reasonable care.  Pactiv further denies any remaining allegations in Paragraph 111.

112.    The Defendants negligent acts or omissions proximately caused Melanie Chambers to suffer injuries and damages which resulted in her death on the 17th day of March, 2006.

**ANSWER:**    Denied.


## COUNT TWO
## RECKLESSNESS CAUSING DEATH

113.    The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of Melanie Chambers and persons in surrounding neighborhoods.

**ANSWER:**    Denied.

114.    As a direct and proximate result of gross negligence and wanton acts of the Defendants Melanie Chambers suffered injuries which resulted in her death on the 17th day of March, 2006.

**ANSWER:**    Denied.


## COUNT THREE
## NEGLIGENCE PER SE CAUSING DEATH

115.    Defendants violated the standards provided by Code of Alabama 22- 27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls required by law.

**ANSWER:**    The allegations in Paragraph 115 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 115, the allegations are denied.

116.    Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

**ANSWER:**    The allegations in Paragraph 116 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 116, the allegations are denied.

117.    Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama, 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

**ANSWER:**    The allegations in Paragraph 117 merely state a legal conclusion to which

no response is required.  To the extent a response is required and with respect to any factual

allegations in Paragraph 117, the allegations are denied.

118.    The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

   (a)    violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type of waste other than the type waste used to establish boiler operating limits, or

   (b)    a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

   (c)    a violation of 335-3-4-.02(1)and(2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

   (d)    a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

   (e)    a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

   (f)    a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

   (g)    a violation of 335-14-7-.08 subpart H for use of an industrial boiler to dispose of hazardous wastes in a manner not allowed or exempted, or

   (h)    violation of federal rules and regulations adopted by the State of Alabama.

**ANSWER:**     The allegations in Paragraph 118, and its subparts, merely state legal conclusions to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 118, and its subparts, the allegations are denied.

119.     Defendants violated the requirements and standards of the laws of the United States, including the Resource Conservation and Recovery Act, the Clean Air Act, the Clean Water Act, the Solid Waste Disposal Act and the Comprehensive Environmental Response Compensation and Liability Act.

**ANSWER:**     The allegations in Paragraph 119 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

120.     In particular, the Defendants violated the standards, rules and regulations of the United States Environmental Protection Agency which were promulgated pursuant to the above described public laws and which were incorporated into the laws and regulations of the State of Alabama.

**ANSWER:**     The allegations in Paragraph 120 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

121.     The Defendants violated the following regulations:

(a)     40 C.F.R. 266.102 by operating an individual boiler in a manner that was not in accordance with permit requirements, or

(b)     40 C.F.R. 264.344 by operating a hazardous waste incinerator without permit and which would not have complied with permit requirements, or

(c)     40 C.F.R. 61.05 by operating a source of hazardous pollutants without permit and in violation of any permit requirements.

**ANSWER:**     The allegations in Paragraph 121, and its subparts, merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 121, and its subparts, the allegations are denied.

122.     Plaintiff avers that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Plaintiff's decedent and that the Defendants' violations are evidence of a breach of duty to Plaintiff.

**ANSWER:**    The allegations in Paragraph 122 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that the cited statutes and regulations were intended to protect a specific class of persons to which Plaintiff's decedent belonged.  Pactiv further states that Alabama law prohibits laws enacted to protect the general public from forming the basis of a negligence per se claim.

123.    As a proximate consequence of the aforestated negligence per se of Defendants and their agents, employees and representatives, Melanie Chambers suffered injuries which resulted in her death on the 17th day of March, 2006.

**ANSWER:**    Denied.

## COUNT FOUR
## INTENTIONAL TORT CAUSING DEATH

124.    Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to Melanie Chambers and other persons was certain or substantially certain.

**ANSWER:**    Denied.

125.    The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

**ANSWER:**    Denied.

126.    Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

**ANSWER:**    Denied.

127.    Melanie Chambers was a foreseeable victim of Defendants' wrongful acts.

**ANSWER:**    Denied.

128.    As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Melanie Chambers suffered injuries which resulted in her death.

**ANSWER:**    Denied.

129.    Plaintiff further alleges that the Defendants were aware that the volume of wood treatment and production at the Florala/ Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes. Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

    **ANSWER:**    Denied.

130.    Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

    **ANSWER:**    Denied.

131.    The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

    **ANSWER:**    Denied.

[132.]    [Paragraph 132 omitted by Plaintiff]

[133.]    [Paragraph 133 omitted by Plaintiff]

## COUNT FIVE
## CONSPIRACY

Count Five has been dismissed and therefore no response is required.

## COUNT SIX
## FAILURE TO WARN

142.    The Defendants failed to warn Melanie Chambers, her parents and members of the public of the dangerous health aspects related to their respective operation and the by-products, air emissions and other toxic emissions that were released. Specifically, Defendants failed to provide Melanie Chambers, her parents and other persons similarly situated and the public at large with warnings of dangerous emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

    **ANSWER:**    Denied.

143.    The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

**ANSWER:**    Denied.

144.    The danger also included the toxic air emissions that Defendants caused.

**ANSWER:**    Denied.

145.    Defendants further failed to provide Melanie Chambers and her parents and others with knowledge as to what would be a reasonable, safe and sufficient protection, if there were any, to protect Melanie Chambers and others from harm and life threatening injuries as a result of exposure to Melanie Chambers and her parents and others by the Defendants' emissions.

**ANSWER:**    Denied.

146.    The Defendants have negligently and recklessly failed and refused to warn and advise Melanie Chambers and her parents and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered Melanie Chambers and others by invading their homes, property, breathing zone, schools and the places that they occupy.

**ANSWER:**    Denied.

147.    Despite their knowledge that their toxic emissions have contaminated the environment where Melanie Chambers lived, even at the present time the Defendants have failed to warn.

**ANSWER:**    Denied.

148.    Defendants' failure to warn took place before, during and after Melanie Chambers and her parents were exposed to Defendants' toxic emissions.

**ANSWER:**    Denied.

149.    Defendants' breach of duty to warn of the dangers proposed by their exposure to Defendants' toxic emissions is a substantial contributing cause to Melanie Chambers' death.

**ANSWER:**    Denied.

150.    As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Melanie Chambers suffered injuries which resulted in her death.

**ANSWER:**    Denied

Pactiv further pleads that any allegation not specifically admitted herein is hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Third Amended Complaint, and each Count therein, fails to state a claim against Pactiv upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims against Pactiv are barred, in whole or in part, by the applicable statutes of limitations and/or statutes or rules of repose.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

### FOURTH DEFENSE

No act or omission on the part of Pactiv or its predecessors caused or contributed to Plaintiff's alleged injuries.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of assumption of risk and informed consent.

### SIXTH DEFENSE

Some or all of Plaintiff's alleged injuries, damages or losses, if any, were proximately caused, or contributed to, by the negligence of the Plaintiff (or Decedent).

**SEVENTH DEFENSE**

Plaintiff's alleged injuries, damages or losses, if any, were directly and proximately caused by the intervening, superseding acts and conduct of others over which Pactiv and its predecessors had no control, thereby precluding any recovery against Pactiv.

**EIGHTH DEFENSE**

To the extent the Third Amended Complaint fails to join indispensable parties, the Third Amended Complaint must be dismissed or, alternatively, this civil action should be stayed pending other appropriate relief by the Court.

**NINTH DEFENSE**

Plaintiff's claims are barred in whole or in part in as much as Pactiv owed no legal duty to Plaintiff (or Decedent) as alleged in the Third Amended Complaint.

**TENTH DEFENSE**

Plaintiff (or Decedent) failed to mitigate any damages or losses that Plaintiff allegedly sustained.

**ELEVENTH DEFENSE**

To the extent Plaintiff seeks punitive damages, an award of punitive damages in this case would violate Pactiv's rights to procedural and substantive due process and to equal protection of the law under the Fifth and Fourteenth Amendments to the Constitution of the United States, U.S. Const. Amends. V, XIV, § 1, the excessive fines provision of the Eighth Amendment to the Constitution of the United States, U.S. Const. Amend. VIII, and Article I, Sections, 1, 6, 13 and 15 of the Constitution of the State of Alabama, in that (a) Alabama law provides inadequate standards or criteria for the determination of whether punitive damages should be imposed; (b) the standards or criteria provided by Alabama law for the determination of whether punitive

damages should be imposed are impermissibly vague and indefinite; (c) Alabama law provides inadequate standards or criteria upon which a trier of fact may rely in determining the amount of a punitive damage award; (d) the procedures pursuant to which punitive damages may be awarded permit the imposition of different penalties for the same or similar acts; (e) the procedures pursuant to which punitive damages may be awarded under Alabama law fail to provide reasonable limits on the amount of punitive damages awarded; (f) Alabama law permits the imposition of punitive damages in excess of the amount permitted or required under statutes providing civil remedies or fines for the same or similar conduct, including willful conduct; (g) Alabama law permits the imposition of punitive damages in excess of the maximum criminal penalties for the same or similar conduct; (h) Alabama law permits the imposition of punitive damages, which are penal in nature, upon a burden of proof less than the "beyond reasonable doubt" standard required in criminal cases; (i) Alabama law permits the imposition of punitive damages that are grossly excessive and bear no rational or reasonable relationship to a defendant's conduct or culpability or to the actual harm suffered by a plaintiff; and (j) the procedures pursuant to which punitive damages may be awarded under Alabama law permit the imposition of punitive damages in an amount exceeding that reasonably necessary to accomplish any legitimate goals or policies of the State of Alabama.

## TWELVE DEFENSE

Plaintiff's claim for recovery of punitive damages is barred by Ala. Code §§ 6-11-20 and 6-11-21.

## THIRTEENTH DEFENSE

An award of punitive damages in this case would violate Pactiv's constitutional right to due process to the extent separate, individual determinations of punitive liability and amount are not allowed as to each defendant.

## FOURTEENTH DEFENSE

Some or all of Plaintiff's claims may be preempted by state and/or federal statutes, rules, and regulations.

## FIFTEENTH DEFENSE

Plaintiff's allegations of fraud, misrepresentation, and deceit are not stated with the degree of particularity required by the applicable law and should be dismissed.

## SIXTEENTH DEFENSE

Pactiv is entitled to a setoff of any and all sums received by Plaintiff from any source as a consequence of the alleged injuries or damages.

## SEVENTEENTH DEFENSE

If Plaintiff suffered legal injuries, which Pactiv denies, said injuries were not caused or contributed to by exposure to any chemical or substance for which Pactiv or its predecessors is responsible, but rather by exposure to dangerous or hazardous chemicals, fumes, products, substances, dust, etc., present at Plaintiff's (or Decedent's) workplaces or elsewhere for which Pactiv and its predecessors is not responsible.

## EIGHTEENTH DEFENSE

To the extent it is liable to Plaintiff, which is denied, Pactiv is entitled to indemnification and/or contribution from other parties.

## NINETEENTH DEFENSE

The negligence and conduct of Plaintiff's (or Decedent's) employers and/or labor unions are a partial or complete bar to all of Plaintiff's claims.

## TWENTIETH DEFENSE

Plaintiff's claims are barred in whole or in part by the application of the workers compensation statutes and regulations of the State of Alabama or of the states or jurisdictions other than the State of Alabama where Plaintiff's (or Decedent's) alleged damages may have occurred.

## JURY DEMAND

Defendant Pactiv Corporation demands a jury trial in this lead case and any member cases.

WHEREFORE, having answered fully, Pactiv prays that Plaintiff's Third Amended Complaint against it be dismissed in its entirety with all costs cast on Plaintiff.

Dated: January 12, 2007

/s/  John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Sostrin, hereby certify that on January 12, 2007, I served the foregoing **Defendant Pactiv Corporation's Answer and Affirmative Defenses to Plaintiffs' Complaint** on the following via email:

W. Eason Mitchell

Gregory A. Cade

Robert Leslie Palmer

Bernard Taylor, Sr.

Douglas S. Arnold

Orlyn O. Lockard, III

Laura Ellison Proctor

Dennis R. Bailey

R. Austin Huffaker, Jr.


/s/  Matthew C. Sostrin