### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM,** | ) ) ) | |
| **Plaintiff,** | ) ) | **CASE NO. 2:06-cv-83-LES-CSC (LEAD CASE)** |
| **vs.** | ) ) | **(Answer Pertains Only to Member Case 2:06-cv-84)** |
| **PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION,** | ) ) ) | |
| **Defendants.** | ) | |

### DEFENDANT PACTIV CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Pactiv Corporation ("Pactiv"), by its attorneys, for its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, states as follows:

### JURISDICTION

1.      Plaintiff is a citizen of the State of Alabama and Susan Phillips was a resident of the State of Alabama during her lifetime and at the time of her death.  Defendants are corporations both incorporated under the laws of the State of Delaware.  PACTIV Corporation's principal place of business is in the State of Illinois, and Louisiana-Pacific Corporation's principal place of business is in the State of Oregon or the State of Tennessee.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

**ANSWER:** Pactiv objects to the term "Defendants" as vague.  Pactiv states that, throughout this Answer, it responds only for itself and its immediate corporate predecessor, and not for Louisiana-Pacific Corporation ("LP").  Pactiv admits that Plaintiff filed this Second Amended Complaint alleging wrongful death, that the amount in controversy exceeds $75,000, and that Pactiv is a Delaware corporation with its principal place of business in Illinois.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and therefore denies them.

2. Venue of this action is proper in the Northern Division of the Middle District of Alabama.

**ANSWER:** Admitted.

## PARTIES

3. PACTIV Corporation does business by agent in the State of Alabama and may be served through their registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

**ANSWER:** Denied. Pactiv further states that its undersigned counsel agreed to and have

accepted service on its behalf.

4. Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served by service on their registered agent for service of process, United States Corporation Company, 150 South Perry Street, Montgomery, AL 36104.

**ANSWER:** Paragraph 4 is directed to another defendant and therefore no response is required.

To the extent an answer is required, Pactiv is without knowledge or information to form a belief

as to the truth of the allegations and therefore denies them.

5. The Plaintiff, Rickey Phillips, as Administrator of the Estate of Susan Phillips, deceased, is a resident of Covington County, Alabama.

**ANSWER:** Pactiv is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 5 and therefore denies them.

## BACKGROUND

6. Susan Phillips suffered injuries and damages which proximately caused her death by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

**ANSWER:** Pactiv admits that Plaintiff makes claims for the wrongful death of Susan Phillips,

and that Pactiv's immediate corporate predecessor, prior to 1983, owned and operated a lumber

mill in Covington County, Alabama that treated some wood products. Pactiv denies the

remaining allegations in Paragraph 6.

2

7.     The facility is located in the town of Lockhart, Alabama, and is adjacent to the town of Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company.

**ANSWER**:  Pactiv admits that a former lumber mill that treated some wood products was located in Lockhart, Alabama (the "Facility"), on a site formerly occupied by Lockhart Lumber Company.  Pactiv denies any remaining allegations in Paragraph 7.

8.     Susan Phillips resided in the Florala/Lockhart community for most of her life.

**ANSWER**:  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and therefore denies them.

9.     Susan Phillips also was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

**ANSWER**:  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and therefore denies them.

10.     PACTIV Corporation is the successor to TMA Forest Products Group which assumed ownership and began operation of the wood treatment facility on or about March 6, 1979.

**ANSWER**:  Pactiv admits that its immediate corporate predecessor (Tennessee River Pulp & Paper Company), began operations at the Facility in 1978 before selling it to LP in 1983.  Pactiv denies any remaining allegations in Paragraph 10.

11.     PACTIV engaged in the business of treating lumber and pine wood poles with creosote and pentachlorophenol.

**ANSWER**:  Pactiv denies that it engaged in any operations at the Facility.  Pactiv states that wood treatment operations at the Facility began in the early 1960s, and that Pactiv's immediate corporate predecessor acquired the Facility in 1978 before selling it to L-P in 1983.  Throughout this Answer, Pactiv therefore construes allegations concerning "Pactiv" as referring to Pactiv or its immediate corporate predecessor.  Pactiv admits that at various times and in varying

quantities, its immediate corporate predecessor used creosote and pentachlorophenol to treat wood at the Facility.  Pactiv denies any remaining allegations in Paragraph 11.

12.     Energy for the PACTIV wood treatment operation was partly obtained by burning wood wastes and scrap bark in three wood waste boilers which were used to create steam and provide heat and energy for PACTIV's sawmill and wood treatment operation.

**ANSWER:**  Pactiv admits that at various times and in varying quantities, its immediate corporate predecessor burned certain wood and bark in three boilers that were used to provide heat and energy for facility operations.  Pactiv denies any remaining allegations in Paragraph 12.

13.     The boilers used by Defendants were not licensed as hazardous or toxic waste incinerators.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 13.

14.     The boilers used by Defendants were not designed or intended to be used as hazardous or toxic waste incinerators.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

15.     The boilers used by Defendants at the facility would not have safely disposed of any hazardous or toxic waste burned in them.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

16.     The facility also operated a teepee burner which was used to burn waste or scrap wood.  Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

4

**ANSWER:**  Pactiv admits that its immediate corporate predecessor operated a teepee burner and that its use was discontinued in or around 1980.  Pactiv denies any remaining allegations in Paragraph 16.

17.     Pursuant to 42 U.S.C. § 241(4), the Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

**ANSWER:**  The allegations in Paragraph 17 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the statute speaks for itself and denies any characterization thereof.

18.     Pursuant to 42 U.S.C. § 6921, the Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

**ANSWER:**  The allegations in Paragraph 18 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the statute speaks for itself and denies any characterization thereof.

19.     The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

**ANSWER:**  The allegations in Paragraph 19 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

20.     The Secretary of Health and Human Services, United States Environmental Protection Agency lists creosote as a probable human carcinogen.

**ANSWER:**  The allegations in Paragraph 20 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

21.     Creosote is a mixture of chemicals and is probably carcinogenic to humans.

**ANSWER:**  Pactiv admits that creosote is a mixture of certain chemicals.  Pactiv denies that

creosote is carcinogenic to humans and denies that any creosote for which Pactiv is allegedly

responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any

remaining allegations in Paragraph 21.

22.     The creosote mixture used by the Defendants at their Florala/Lockhart facility
contained chemicals which are known to cause cancer.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor used creosote at various

times but denies that any creosote for which Pactiv is allegedly responsible caused or contributed

in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 22 contains insufficient

predicate information for Pactiv to admit or deny any remaining allegations.

23.     The Secretary of Health and Human Services and the United States
Environmental Protection Agency lists pentachlorophenol as a probable human carcinogen.

**ANSWER:**  The allegations in Paragraph 23 merely state a legal conclusion to which no

response is required.  To the extent a response is required, Pactiv states that the applicable

statutes and regulations speak for themselves and denies any characterization thereof.

24.     Pentaclorophenol is probably carcinogenic to humans.

**ANSWER:**  Pactiv denies that pentachlorophenol has been demonstrated to cause cancer in

humans and denies that any pentachlorophenol for which Pactiv is allegedly responsible caused

or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations

in Paragraph 24.

25.     The pentaclorophenol used by both Defendants for wood treatment at the subject
wood treatment facility was also contaminated with dioxin/furans.

**ANSWER:**  Denied.

26.     Dioxin and/or dioxin/furans contaminates in pentaclorophenol used at the facility included tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzofurans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins.

**ANSWER:** Denied.

27.     The pentaclorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor used pentachlorophenol at various times but denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 27 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

28.     The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with polycyclic aromatic hydrocarbons (PAHs).

**ANSWER:**  Pactiv admits that creosote is a mixture of chemicals that contains polycyclic aromatic hydrocarbons (PAHs) and denies any remaining allegations in Paragraph 28.

29.     The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

**ANSWER:** Denied.

30.     Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

**ANSWER:**  The allegations in Paragraph 30 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

31.     The wood treatment chemicals used by both Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

**ANSWER:**  Pactiv denies that any wood treatment chemical for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 31 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

32.     The Defendants also made use of cooling tower corrosion inhibitors which contained chromium (VI).

**ANSWER:**  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and therefore denies them.

33.     The Secretary of Health and Human Services and United States Environmental Protection Agency list hexavalent chromium as a known human carcinogen.

**ANSWER:**  The allegations in Paragraph 33 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

34.     Creosote and pentaclorophenol wood treatment chemicals used by Defendants were dissolved in diesel fuel or a petroleum product.

**ANSWER:**  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and therefore denies them.

35.     The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

**ANSWER:**  Pactiv admits that wood treatment operations at the Facility, including the use of pressurized treatment cylinders, produced waste water in various quantities and at various times. Pactiv denies any remaining allegations in Paragraph 35.

36.     The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

**ANSWER:** Pactiv admits that certain waste water created or generated by its immediate corporate predecessor contained certain chemicals and residue from the wood treatment process, but denies that any waste water caused or contributed in any way to Plaintiff's alleged injuries. Pactiv denies any remaining allegations in Paragraph 36.

37.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

**ANSWER:** Pactiv admits that its immediate corporate predecessor operated water evaporation and containment areas at certain times.

38.    The Defendants engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

**ANSWER:** Pactiv admits that its immediate corporate predecessor operated a spray field in one lagoon, that did not receive waste water from wood treating operations, for a short period of time in the early 1980s. Pactiv denies that its immediate corporate predecessor sprayed "toxic waste water" into the air, denies that the spray system caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries, and denies any remaining allegations in Paragraph 38.

39.    Both Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

**ANSWER:** Denied.

40.    Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

**ANSWER:** Pactiv admits that its immediate corporate predecessor sold the Facility to LP in November 1983. Pactiv affirmatively states that in November 1983, Pactiv's immediate corporate predecessor ceased all operations at the Facility and transferred title to LP, and that

thereafter, neither Pactiv nor any Pactiv affiliate engaged in any activity related to any ongoing Facility operations.

41.     L-P continued operating the facility with the same local management in the same manner as PACTIV.

**ANSWER:**  Paragraph 41 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

42.     Within a year after L-P began operation of the facility they began using another wood treatment chemical which contained copper, arsenic and chromium (CCA).

**ANSWER:**  Paragraph 42 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

43.     In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

**ANSWER:**  Paragraph 43 merely states a legal conclusion and is directed to another defendant and therefore no response is required.

44.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

**ANSWER:**  The allegations in Paragraph 44 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

45.     Arsenic is known to cause cancer in humans.

**ANSWER:**  Pactiv admits that at certain levels, arsenic can cause cancer in humans.  Pactiv denies that any arsenic for which it is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.

46.     During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

**ANSWER:**  Denied.

47.     During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**  Denied.

48.     During the term of its operation, L-P sprayed toxic waste water into the air.

**ANSWER:**  Paragraph 48 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

49.     During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**  Paragraph 49 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

50.     The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**  Denied.

51.     The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**  Paragraph 51 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

52.     Both Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

**ANSWER**: Denied.

53.     The Defendants also used sawdust to filter and contain hazardous wastes.

**ANSWER**: Denied.

54.     The sawdust used by Defendants was contaminated with creosote, pentachlorophenol and associated chemicals.

**ANSWER**: Denied.

55.     The sawdust used for containment by L-P was further contaminated with arsenic.

**ANSWER**: Paragraph 55 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

56.     The sawdust used for containment by Defendants was burned in the operation boilers.

**ANSWER**: Denied.

57.     Both Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

**ANSWER**: Pactiv admits that at times the operations and processes of its immediate corporate predecessor occurred at night and on weekends. Pactiv denies the remaining allegations in Paragraph 57.

58.     Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

**ANSWER**: The allegations in Paragraph 58 merely state a conclusion for which no response is required. To the extent a further response is required, the allegations are denied.

59.     Both Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

**ANSWER**: Denied.

60.     Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor utilized various chemicals during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 60.

61.     The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, creosote mixtures with carrying liquids such as diesel fuel oil, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

**ANSWER:**  Pactiv admits that its immediate corporate predecessor utilized various chemicals, including creosote and pentachlorophenol, during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 61.

62.     The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids and waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

63.     The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

**ANSWER:**  Denied.

64.     The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

**ANSWER:** Paragraph 64 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

65.     Groundwater at the facility has been contaminated by toxic and hazardous wastes.

**ANSWER:** Pactiv admits that groundwater beneath the Facility has been remediated pursuant to plans and directions approved by USEPA and ADEM. Pactiv denies any remaining allegations in Paragraph 65.

66.     Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

**ANSWER:** Denied.

67.     The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

**ANSWER:** Denied.

68.     The Defendants engaged in the discharge of toxic waste fluids.

**ANSWER:** Denied.

69.     The Defendants caused the discharge of toxic chemical vapors, particulates and aerosols into the air.

**ANSWER:** Denied.

70.     The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous waste and known or probable human carcinogens.

**ANSWER:** Denied.

71.     Defendants used toxic wastes to make roadways and scattered it about the facility roadways.

**ANSWER:** Denied.

14

72.    Toxic chemicals spread over the facility contributed to a cloud of toxic dust or vapors created by the operation.

**ANSWER:** Denied.

73.    PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:** Denied.

74.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:** Paragraph 74 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

75.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

**ANSWER:** Pactiv denies that any pentachlorophenol or creosote for which Pactiv is allegedly

responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that

Paragraph 75 contains insufficient predicate information for Pactiv to admit or deny any

remaining allegations.

76.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

**ANSWER:** Paragraph 76 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

77.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

**ANSWER:**  Pactiv denies that Pactiv or its immediate corporate predecessor were aware or that any air emissions or disposal for which Pactiv is allegedly responsible were of a "hazardous nature" or caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 77.

78.    The Defendant PACTIV sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**  Denied.

79.    The Defendant L-P sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**  Paragraph 79 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

80.    Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, pentachlorophenol, creosote, benzene, PAHs and dioxin/furans have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, lung cancer, breast cancer, bone cancer, kidney cancer, liver cancer, Scleroderma, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, femal reproductive organ disease, reproductive problems, eye disease, skin disease, respiratory disease, sinus problems, coughing, miscarriages, premature births and birth defects.

**ANSWER:**  Pactiv denies that any pentachlorophenol, creosote, or other chemicals for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries. Pactiv states that Paragraph 80 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

81.    At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

**ANSWER:**  Denied.

82.    Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

**ANSWER**:  Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

83.    In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the public.

**ANSWER**:  Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

84.    The Defendants made no effort to warn surrounding neighborhoods and the public of the nature of the disease or cancer causing emissions from their facility.

**ANSWER**:  Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

85.    The toxic chemicals emitted by Defendants were persistent when deposited in Plaintiff's home and environment so that Susan Phillips continued to be exposed to them even after the time of emission.

**ANSWER**:  Denied.

86.    PACTIV has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER**:  Denied.

87.    PACTIV has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER**:  Denied.

88.     L-P has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**  Paragraph 88 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

89.     L-P has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**  Paragraph 89 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

90.     At all times pertinent hereto, the Defendants PACTIV and L-P by through their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, creosote, and their constituents which contained hazardous and toxic chemicals.

**ANSWER:**  Denied.

91.     The fact that Susan Phillips was present at homes in various locations in the Florala/Lockhart area caused her to be exposed to toxic and/or hazardous chemicals or known or probable carcinogens released or produced at Defendants' wood treatment facility.

**ANSWER:**  Denied.

92.     The Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Susan Phillips to suffer injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

93.     Susan Phillips suffered from a disease that may be latent and not manifest itself until after a lengthy period of time after exposure.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor's operations or processes at

the Facility caused Plaintiff (or Decedent) to be exposed to any chemical or substance that

caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv is without knowledge or

18

information sufficient to form a belief as to the truth of any remaining allegations contained in

Paragraph 94 and therefore denies them.

94.     Susan Phillips did not know and reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.

**ANSWER:**  Pactiv is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 94 and therefore denies them.

95.     Plaintiff further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations for any time that accrued during the time defined by the parties' tolling agreement.

**ANSWER:**  Pactiv admits that it entered into a specific tolling agreement for a limited period of

time applicable to some but not all of the 1,427 named plaintiffs in this and related cases.  Pactiv

denies any remaining allegations in Paragraph 95.

96.     At all times pertinent to this Complaint, Defendants created, stored and disposed of toxic and hazardous waste and chemicals which were regulated by both federal and state law.

**ANSWER:**  Pactiv admits that at various times during its immediate corporate predecessor's

operations at the Facility before 1983, some disposal and handling activities were subject to

federal and state regulatory control.  Pactiv denies any remaining allegations in Paragraph 96.

97.     Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate

corporate predecessor were at certain times required to maintain certain documents for certain

periods of time.  Pactiv states that those regulations speak for themselves and denies any

characterization thereof.  Pactiv denies any remaining allegations in Paragraph 97.

98.     Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

19

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 98.

99.     The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 99.

100.     Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 100.

101.     Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 101.

102.     Defendant L-P had actual knowledge of the pending or potential litigation which would be filed against them by Plaintiff.

**ANSWER:**  Paragraph 102 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

103.   Upon information and belief, Plaintiff avers that with knowledge of claims that would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material evidence and documents.

**ANSWER:**  Paragraph 103 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

104.   Plaintiff is entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendant's guilt, culpability or awareness of their liability because of spoliation of evidence.

**ANSWER:**  Denied.  Pactiv further states that Plaintiff has made no allegations concerning any alleged spoliation of evidence by Pactiv.

**COUNT ONE**

**NEGLIGENCE**

105.   Defendants had a duty to Plaintiff since the commencement of their operation and continuing to the date of this lawsuit.

**ANSWER:**  The allegations in Paragraph 105 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.  Pactiv further states that its immediate corporate predecessor, prior to 1983, operated the Facility consistent with any legal duty to all Plaintiffs in this case and the related cases.

106.   Susan Phillips was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Plaintiff lived for years.

**ANSWER:**  The allegations in Paragraph 106 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that its immediate corporate predecessor disseminated toxic fumes or waste into adjacent properties, homes, or communities.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 106 and therefore denies them.

107.    The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their operations emitted toxic and noxious substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including the Plaintiff.

**ANSWER:**  Denied.

108.    At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring the Plaintiff.

**ANSWER:**  Denied.

109.    The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

**ANSWER:**  Pactiv denies that Pactiv or its immediate corporate predecessor caused or contributed to "contamination of air" surrounding the Facility or failed to exercise reasonable care.  Pactiv further denies any remaining allegations in Paragraph 109.

110.    The Defendants negligent acts or omissions proximately caused Susan Phillips to suffer injuries and damages which resulted in her death.

**ANSWER:**  Denied.

111.    As a direct and proximate consequence of the negligent acts and omissions of the Defendants, their agents, employees and representatives, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

## COUNT TWO

## RECKLESSNESS

112.    The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of the Plaintiff and persons in surrounding neighborhoods.

**ANSWER:**  Denied.

113.    As a direct and proximate result of gross negligence, wilful and wanton acts of the Defendants Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

114.    The Defendants' gross negligence, reckless and wanton acts and their reckless disregard for the safety of the Plaintiff and the public surrounding their facility entitles the Plaintiff to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

**ANSWER:**  Denied.

## COUNT THREE

## NEGLIGENCE PER SE

115.    Defendants' failure to cease emission of toxic substances into the air and their failure to cease the disposal or contamination of the ground water and soil and the Defendants' failure to properly report their violations and toxic air emissions is a violation of the laws and regulations of the State of Alabama.

**ANSWER:**  Denied.

116.    As a proximate consequence of the aforestated negligence per se of Defendants and their agents, employees and representatives, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

## COUNT FOUR

## INTENTIONAL TORT

117.    Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to the Plaintiff and other persons was certain or substantially certain.

**ANSWER:**  Denied.

118.    The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

**ANSWER:**  Denied.

119.    Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

**ANSWER:**  Denied.

120.    Susan Phillips was a foreseeable victim of Defendants' wrongful acts.

**ANSWER:**  Denied.

121.    As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

122.    Plaintiff further alleges that the Defendants were aware that the volume of wood treatment and production at the Florala/Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes.  Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

**ANSWER:**  Denied.

123.    Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

**ANSWER:**  Denied.

124.    The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

**ANSWER:**  Denied.

**COUNT FIVE**

**TRESPASS**

Pactiv believes that Plaintiff agreed to dismiss this count and therefore no response is required.  However, to the extent a response is required, Pactiv answers as follows:

125.    The Defendant L-P negligently, recklessly or intentionally caused or allowed hazardous toxic waste to touch and come in contact with the person and property of the Plaintiff without her knowledge or consent.

**ANSWER:**  Paragraph 131 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

126.    As a direct and proximate consequence of the negligent, reckless, knowing or intentional act of trespass by the Defendant L-P acting by and through their employees, agents and representatives, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Paragraph 132 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

127.    As a result of the Defendants' knowing and intentional act of trespass or reckless trespass and their violation of Plaintiff's right to be free from touching and contamination by Defendants' toxic and hazardous substances the Plaintiff is entitled to recover punitive damages to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

**ANSWER:**  Denied.  Pactiv further states that Plaintiff has made no allegations concerning any alleged trespass by Pactiv.

25

## COUNT SIX

## CONSPIRACY

Pactiv believes that Plaintiff agreed to dismiss this count and therefore no response is required. However, to the extent a response is required, Pactiv answers as follows:

128.    As a further and alternative ground for relief the Plaintiff asserts a cause of action for conspiracy.

**ANSWER:** Pactiv admits that Plaintiff asserts conspiracy as a cause of action but denies that Plaintiff is entitled to relief pursuant to this claim.

129.    At all times relevant, the Defendants L-P and PACTIV and others have conspired to violate the rules, regulations and laws of the State of Alabama and the United States of America.

**ANSWER:** Denied.

130.    The Defendants herein also knowingly and intentionally conspired to mislead and defraud governmental agencies and to conceal illegal and improper contamination emanating from their wood treatment facility in Lockhart, Alabama, in order to avoid any costs associated with the clean-up and remediation despite Defendants' knowledge of risk to human health.

**ANSWER:** Denied.

131.    The Defendants have further conspired between themselves to conceal from and defraud State of Alabama regulatory agencies the nature and amount of their toxic emissions in order to avoid the costs required to install proper pollution control devices or to make proper disposal of their hazardous waste.

**ANSWER:** Denied.

132.    In furtherance of their conspiracy or conspiracies, the Defendants committed an overt act or acts, including the acts described in this Complaint.

**ANSWER:** Denied. To the extent Plaintiff incorporates any allegations of Pactiv's acts or omissions asserted elsewhere in the Second Amended Complaint, Pactiv incorporates all responses thereto herein.

133.    As a proximate and direct result of the acts of the Defendants, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

134.    The Defendants' knowing and intentional act of conspiracy to violate the rules and regulations of the State of Alabama and to conceal their illegal discharge of toxic waste is such that the Plaintiff is entitled to punitive damages to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

**ANSWER:**  Denied.

## COUNT SEVEN

## PRODUCTS LIABILITY

135.    The Defendants engaged in the sale of firewood to residents and persons in the Florala/Lockhart community.

**ANSWER:**  Denied.

136.    The firewood or wood for use in home or stove fires sold by the Defendants included wood which had been treated with toxic wood treatment chemicals.

**ANSWER:**  Denied.

137.    The wood sold by Defendants was burned by persons in homes in the neighboring community in a foreseeable and intended use.

**ANSWER:**  Denied.

138.    The Defendants were engaged in the manufacture and sale and placement of wood and wood products into the stream of commerce for commercial purposes.

**ANSWER:**  Denied.

139.    The firewood sold by Defendants was defective and unreasonably dangerous when burned because it emitted toxic and hazardous waste products into the air.

**ANSWER:**  Denied.

140.    As a proximate consequence, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:**  Denied.

## COUNT EIGHT

## FAILURE TO WARN

141.    The Defendants failed to warn the Plaintiff and members of the public of the dangerous health aspects related to their respective operation and the by-products, air emissions and other toxic emissions that were released.  Specifically, Defendants failed to provide the Plaintiff and other persons similarly situated and the public at large with warnings of dangerous emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

**ANSWER:**  Denied.

142.    The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

**ANSWER:**  Denied.

143.    The danger also included the toxic air emissions that Defendants caused.

**ANSWER:**  Denied.

144.    Defendants further failed to provide Plaintiff and others with knowledge as to what would be a reasonable, safe and sufficient protection, if there were any, to protect the Plaintiff and others from harm and life threatening injuries as a result of exposure to the Plaintiff and others by the Defendants' emissions.

**ANSWER:**  Denied.

145.    The Defendants have negligently and recklessly failed and refused to warn and advise the Plaintiff and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered the Plaintiff and others by invading their homes, property, breathing zone, schools and the places that they occupy.

**ANSWER:**  Denied.

146.    Despite their knowledge that their toxic emissions have contaminated the environment where Plaintiff lived, even at the present time the Defendants have failed to warn the Plaintiff and others.

**ANSWER:**  Denied.

147.     Defendants' failure to warn took place before, during and after the Plaintiff was exposed to Defendants' toxic emissions.

**ANSWER:** Denied.

148.     Defendants' breach of duty to warn the Plaintiff of the dangers proposed by their exposure to Defendants' toxic emissions is a substantial contributing cause to Plaintiff's injuries.

**ANSWER:** Denied.

149.     As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Susan Phillips suffered injuries and damages which proximately caused her death.

**ANSWER:** Denied.

Pactiv further pleads that any allegation not specifically admitted herein is hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Second Amended Complaint, and each Count therein, fails to state a claim against Pactiv upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims against Pactiv are barred, in whole or in part, by the applicable statutes of limitations and/or statutes or rules of repose.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

### FOURTH DEFENSE

No act or omission on the part of Pactiv or its predecessors caused or contributed to Plaintiff's alleged injuries.

**FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrines of assumption of risk and informed consent.

**SIXTH DEFENSE**

Some or all of Plaintiff's alleged injuries, damages or losses, if any, were proximately caused, or contributed to, by the negligence of the Plaintiff (or Decedent).

**SEVENTH DEFENSE**

Plaintiff's alleged injuries, damages or losses, if any, were directly and proximately caused by the intervening, superseding acts and conduct of others over which Pactiv and its predecessors had no control, thereby precluding any recovery against Pactiv.

**EIGHTH DEFENSE**

To the extent the Second Amended Complaint fails to join indispensable parties, the Second Amended Complaint must be dismissed or, alternatively, this civil action should be stayed pending other appropriate relief by the Court.

**NINTH DEFENSE**

Plaintiff's claims are barred in whole or in part in as much as Pactiv owed no legal duty to Plaintiff (or Decedent) as alleged in the Second Amended Complaint.

**TENTH DEFENSE**

Plaintiff (or Decedent) failed to mitigate any damages or losses that Plaintiff allegedly sustained.

**ELEVENTH DEFENSE**

To the extent Plaintiff seeks punitive damages, an award of punitive damages in this case would violate Pactiv's rights to procedural and substantive due process and to equal protection of

the law under the Fifth and Fourteenth Amendments to the Constitution of the United States, U.S. Const. Amends. V, XIV, § 1, the excessive fines provision of the Eighth Amendment to the Constitution of the United States, U.S. Const. Amend. VIII, and Article I, Sections, 1, 6, 13 and 15 of the Constitution of the State of Alabama, in that (a) Alabama law provides inadequate standards or criteria for the determination of whether punitive damages should be imposed; (b) the standards or criteria provided by Alabama law for the determination of whether punitive damages should be imposed are impermissibly vague and indefinite; (c) Alabama law provides inadequate standards or criteria upon which a trier of fact may rely in determining the amount of a punitive damage award; (d) the procedures pursuant to which punitive damages may be awarded permit the imposition of different penalties for the same or similar acts; (e) the procedures pursuant to which punitive damages may be awarded under Alabama law fail to provide reasonable limits on the amount of punitive damages awarded; (f) Alabama law permits the imposition of punitive damages in excess of the amount permitted or required under statutes providing civil remedies or fines for the same or similar conduct, including willful conduct; (g) Alabama law permits the imposition of punitive damages in excess of the maximum criminal penalties for the same or similar conduct; (h) Alabama law permits the imposition of punitive damages, which are penal in nature, upon a burden of proof less than the "beyond reasonable doubt" standard required in criminal cases; (i) Alabama law permits the imposition of punitive damages that are grossly excessive and bear no rational or reasonable relationship to a defendant's conduct or culpability or to the actual harm suffered by a plaintiff; and (j) the procedures pursuant to which punitive damages may be awarded under Alabama law permit the imposition of punitive damages in an amount exceeding that reasonably necessary to accomplish any legitimate goals or policies of the State of Alabama.

## TWELVE DEFENSE

Plaintiff's claim for recovery of punitive damages is barred by Ala. Code §§ 6-11-20 and 6-11-21.

## THIRTEENTH DEFENSE

An award of punitive damages in this case would violate Pactiv's constitutional right to due process to the extent separate, individual determinations of punitive liability and amount are not allowed as to each defendant.

## FOURTEENTH DEFENSE

Some or all of Plaintiff's claims may be preempted by state and/or federal statutes, rules, and regulations.

## FIFTEENTH DEFENSE

Plaintiff's allegations of fraud, misrepresentation, and deceit are not stated with the degree of particularity required by the applicable law and should be dismissed.

## SIXTEENTH DEFENSE

Pactiv is entitled to a setoff of any and all sums received by Plaintiff from any source as a consequence of the alleged injuries or damages.

## SEVENTEENTH DEFENSE

If Plaintiff suffered legal injuries, which Pactiv denies, said injuries were not caused or contributed to by exposure to any chemical or substance for which Pactiv or its predecessors is responsible, but rather by exposure to dangerous or hazardous chemicals, fumes, products, substances, dust, etc., present at Plaintiff's (or Decedent's) workplaces or elsewhere for which Pactiv and its predecessors is not responsible.

**EIGHTEENTH DEFENSE**

To the extent it is liable to Plaintiff, which is denied, Pactiv is entitled to indemnification and/or contribution from other parties.

**NINETEENTH DEFENSE**

The negligence and conduct of Plaintiff's (or Decedent's) employers and/or labor unions are a partial or complete bar to all of Plaintiff's claims.

**TWENTIETH DEFENSE**

Plaintiff's claims are barred in whole or in part by the application of the workers compensation statutes and regulations of the State of Alabama or of the states or jurisdictions other than the State of Alabama where Plaintiff's (or Decedent's) alleged damages may have occurred.

WHEREFORE, having answered fully, Pactiv prays that Plaintiff's Second Amended Complaint against it be dismissed in its entirety with all costs cast on Plaintiff.

Dated: January 12, 2007

/s/  John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew C. Sostrin, hereby certify that on January 12, 2007, I served the foregoing **Defendant Pactiv Corporation's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint** on the following via email:

W. Eason Mitchell

Gregory A. Cade

Robert Leslie Palmer

Bernard Taylor, Sr.

Douglas S. Arnold

Orlyn O. Lockard, III

Laura Ellison Proctor

Dennis R. Bailey

R. Austin Huffaker, Jr.


/s/  Matthew C. Sostrin