IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM, | ) ) ) |
| Plaintiff, | ) CASE NO. 2:06-cv-83-LES-CSC ) (LEAD CASE) |
| vs. | ) (Answer Pertains Only to Member ) Case 2:06-cv-739) |
| PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, | ) ) ) |
| Defendants. | ) |

## DEFENDANT PACTIV CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant Pactiv Corporation ("Pactiv"), by its attorneys, for its Answer and Affirmative

Defenses to Plaintiffs' Complaint, states as follows:

### JURISDICTION AND VENUE

1.      Plaintiffs are citizens of the State of Alabama. Venue in this action is proper in Covington County, Alabama because the wrongful acts that caused the Plaintiffs' injuries and damages occurred in Covington County, Alabama, and because the Plaintiffs were injured in Covington County, Alabama.

**ANSWER:**  Pactiv admits that jurisdiction and venue is proper in the Middle District of

Alabama and denies any remaining allegations in Paragraph 1.

### DEFENDANTS

2.      PACTIV Corporation does business by agent in the State of Alabama and may be served through their registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109. Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served by service on their registered agent for service of process, United States Corporation Company, 150 South Perry Street, Montgomery, Alabama 36104.

**ANSWER:**  Pactiv denies the allegations in Paragraph 2 directed to Pactiv.  Pactiv further states

that its undersigned counsel agreed to and have accepted service on its behalf.  The remaining

allegations in Paragraph 2 are directed to another defendant and therefore no response is required. To the extent that an answer is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 and therefore denies them.

## PLAINTIFFS

## CANCER GROUP

3.      The Plaintiffs listed below are all persons, who have suffered cancer, leukemia and related diseases, which were proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

| | |
|---|---|
| Mildred W. Anderson | James L. Williams |
| Michael David Dixon | Randall Tuttle |
| Eva Pearl Goldsmith | Randall Stewart |
| Susan J. McClellan | Judy Roberson |
| Willie David McNeil | Richard Bryan Chambers |
| William Roy Pickron | James Laird |
| Lessie Smith | Frank Leddon |
| Willie E. Williams | Patricia Joyner |
| Elois Burke | Tammy Roberts |
| Helen Hartley | Betty Jones |

**ANSWER**:: Pactiv objects to the term "Defendants" as vague. Pactiv states that, throughout this Answer, it responds only for itself and its immediate corporate predecessor, and not for Louisiana-Pacific Corporation ("LP"). Pactiv admits that Plaintiffs list individual persons as belonging to said Cancer Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries. Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial. Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 and therefore denies them.

## FEMALE REPRODUCTIVE ORGAN GROUP

4.    The Plaintiffs listed below are all persons who have suffered female reproductive disorders, miscarriages, still births or cancer related diseases which were proximately caused by exposure to hazardous substances which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

| | |
|---|---|
| Lykeshia Matthews Anderson | Tracey L. Thompson |
| Tonya Anderson | Jacqueline Thrash |
| Virginia Smith Beasley | Lurleen Turner |
| Gail Blue | Sylvia Bryant Tyler |
| Rhonda Bryan | Monica L. Whitaker |
| Earnestine James | Ebony L. Wilkins |
| Laura Cassady | Mia Nicole Anthony |
| Mechele Chatman | Mary C. Jones |
| Gloria Carson Gill | Sable Denise Bradley, a minor, by |
| Bernita Cale Goldsmith | and through his/her mother and next |
| Lois Hernandez | friend, Dianna Bradley |
| Patricia Jones | Evelyn Shalista Anthony |
| Trece Jones Mays | Donna Marie Jowers |
| Angelia Sue McCoy | LaToya Nicole Turbyville |
| Joyce Knowles Mitchell | Frankie Thrash Thompson |
| Debra A. Moore | Daphne Vickers |
| Pamela S. Norman | Brenda Weaver |
| Tiffany Radford | Cindy Baker |
| Kathy Richardson | Kristy Caraway |
| Paula Thomas | Kathy Ansley |

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Female Reproductive Organ Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial.   Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 and therefore denies them.

## BIRTH DEFECT GROUP

5.     The Plaintiffs listed below are all persons, who have suffered birth defects, which were proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. These Plaintiffs were also damaged by genetic and reproductive damages caused to their parents' exposure to toxic chemicals and hazardous substances. The Plaintiffs in this group are:

Misty Bedsole, a minor, by and through her father and next friend, Tim Bedsole

Alonzo Bell

Michael L. Berry Jr., a minor, by and through his mother and next friend, Lacrecia Matthews

Jeremy Chad Carter

Jimmy Larry Cassady

Nathan Alexander Cassady, a minor, by and through his mother and next friend, Laura Cassady

Angela Chatman (Radford)

Jeremiah A. Chatman, a minor, by and through his mother and next friend, Tara S. Chatman

Nigel D. Chatman, a minor, by and

Shaniece Chatman, a minor, by and through her father and next friend, Jeffrey Chatman

Meagan D. Gantt

Jakiyah Joshae Griffin, a minor, by and through his mother and next friend, Coretta James

William Albert Hall

Adam Hattaway

Romonda Renea Lee

Dechanta Lynn Stubbs

Karen Renee Lynn, a minor, by and through her father and next friend, Dexter Lynn

Teric DeWarren Lynn

Valtrez C. Lynn, a minor, by and through his father and next friend, Dexter Lynn

Stephanie D. Matthews

Stephon McLaughlin

Levi Austin Nance, a minor, by and through his mother and next friend, April Lee Nance

Lonnie Leroy Norman Jr., a minor, by and through his mother and next friend, Christina Norman

Veronica Robinson Peacock

Archillius Mendrell Perry, a minor, by and through his mother and next friend, Beatrice Harrison

Kavian Fer-rell Perry

Yulishia Shentelle Perry, a minor, by and through her mother and next friend, Beatrice Harrison

Princess Jer-ree Petway, a minor, by and through her mother and next friend, Beatrice Harrison

Maxine Bradley Pitts

Mickey D. Richardson

Dometric Bertrand Robinson

Ernestine Simmons

Robert Gene Vaughn Sr.

Bill Watson

Ebony Wilson

McCandle Wilson (Bass)

Kyler Chatman, a minor, by and through his father and next friend, Jeffrey Chatman

Jerry Antonio (Tony) Stone

Gretchen Brooks Adams

Chanealie Barnes

Keisa L. Lynn

Jennifer Rawls

Garon Tommy Hughes

Scotty Lynn

Ja'ida Evelyn Murphy, a minor, by and through her mother and next

friend, Khaliah Thrash
Melissa Jayne Worrell, a minor, by
and through her mother and next
friend, Dixie Worrell
Alicia Wilson
Lacy Edwards, a minor, by and
through her mother and next friend,
Vickie V. Edwards
Jimmy Suttles
Jaden Cooper Johnson, a minor, by
and through his father and next friend,
Kenneth Johnson

Joshua Hunter Coon, a minor, by and
   through his mother and next
   friend, Twanna Coon
Charles Tatum Jr.
Betty Qualls
Jayce Caraway, a minor, by and
   through his mother and next
   friend, Kristy Caraway
William Steven Lawrence, a minor,
by and through his mother and
next friend, Jessica Lawrence

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Birth Defect Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 and therefore denies them.

## BLOOD AND IMMUNE SYSTEM DISORDER GROUP

6.     The Plaintiffs listed below are all persons, who have suffered blood and immune system disorders, and related diseases, which were proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

James E. Anthony
Hattie Appkins
Yz Bess
Willie Jay Brooks
Michael Wayne Chatman
Sherell Cook Dees
Tiffany Miller
Linsey R. Norman
Nicholas R. Norman

Taora Thrash Oates
Timothy Tillman
Vannie Vickers
Mavis Wilkins
Willis Cassady
David Danley
Joseph Daniel Perez, a minor, by and
   through his/her father and next
   friend, Joseph Perez

**ANSWER:** Pactiv admits that Plaintiffs list individual persons as belonging to said Blood and Immune System Disorder Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries. Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial. Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 and therefore denies them.

## RESPIRATORY SYSTEM DISORDER GROUP

7.      The Plaintiffs listed below are all persons, who have suffered respiratory system disorders, and related diseases, which were proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

Cheryl Adams Peacock

Christine Coone Adams

Derick Brent Adams

Joseph Daniel Adams, a minor, by
    and through his/her father and next
    friend, Frank Adams

Brandon Allred, a minor, by and
    through his/her mother and next
    friend, Janice Allred

Brittany Allred, a minor, by and
    through his/her mother and next
    friend, Janice Allred

Armand Anderson, a minor, by and
    through his/her mother and next
    friend, Lykeshia Matthews
    Anderson

Rudarius JaVaun Anthony, a minor,
    by and through his/her father and
    next friend, Rudolph Anthony

Zakiyyah Ball

Jonathan Tyler Barnes, a minor, by
    and through his/her mother and

next friend, Joann Barnes

Timothy N. Barnes

Coleman J. Bass

Shawn S. Bass, a minor, by and
    through his/her mother and next
    friend, Sandra Bass

Jerrie Bedsole

Tim Bedsole

Willie Fred Bell

Bert Blair

Eddie L. Blue

Johnny Boles

Sandra Lee Bonam

Albert Dewayne Bonam Jr., a minor,
    by and through his/her mother and
    next friend, Sandra Lee Bonam

Malik DeJuan Bonam, a minor, by
    and through his/her mother and
    next friend, Sandra Lee Bonam

Daniel L. Bradley

Christin S. Brooks, a minor, by and
    through his/her mother and next

friend, Angela Dukes
Ernie Brooks
Heather Geohagan Brooks
Kenneth D. Brooks
Tammy Lenora Brooks
James E. Bryan
Debra Bryant
Tuwan Bryant
Ishmael Buckley
Jonathan L. Carnley, a minor, by and
through his/her mother and next
friend, Rachel Cook
Nicholas Carter, a minor, by and
through his/her father and next
friend, Jeremy Carter
Kaunda Casey
Lily Jackson, a minor, by and through
his/her mother and next friend,
Catherine Jackson
Schon Jackson
Shaquille Jackson, a minor, by and
through his/her mother and next
friend, Emma G. Jackson
Tiffany Jackson
Chandra James
Pinkie P. Williams
Roderick Williams, a minor, by and
through his/her mother and next
friend, Theresa Bradberry
Rodero Williams, a minor, by and
through his/her mother and next
friend, Theresa Bradberry
Sharonda Toles
James Alan Cassady, a minor, by and
through his/her mother and next
friend, Elizabeth Cassady
Kevin Eli Cassady, a minor, by and
through his/her mother and next
friend, Jenny Cassady
Tommy Chambers
Van Chambers
Colandus Chatman Jr.
Marc Antonio Chatman
Steven Chatman
Ashley Christian, a minor, by and
through his/her father and next

friend, Everett Lynn Christian

Samuel Lynn Christian, a minor, by
and through his/her father and next
friend, Everett Lynn Christian
Mercedes Coleman, a minor, by and
through his/her mother and next
friend, Tiffany Coleman
Rashaad Coleman, a minor, by and
through his/her mother and next
friend, Cheybrel Bradberry
Elizabeth J. Cosson
Priscilla S. Cowart
Paul Aubrey Cox
Jayden Jevon Davis, a minor, by and
through his/her mother and next
friend, Ashley Greer
Mary P. Davis
Brookelyn S. Donaldson, a minor, by
and through his/her mother and next
friend, Anna Donaldson
Justin B. Donaldson, a minor, by and
through his/her mother and next
friend, Anna Donaldson
John Henry Douglas
Robert J. Douglas
Angela N. Dukes
Carlton Dukes
Joseph Dukes
Vicki V. Edwards
Wesley M. Feagin
Jessica Idella Frazier
Louis M. Frazier
Tenisha Quantel Frazier, a minor, by
and through his/her mother and next
friend, Jessica Frazier
Keonna Shaonta Gettis, a minor, by
and through his/her mother and next
friend, Jessica Gettis
Vance Gettis
Patricia A. Gilbert
Bobby C. Gilley
Cierra Goldsmith
Eva N. Goldsmith
Richard Goldsmith
Thelma Goldsmith

Willie Goldsmith
Stephanie Green
Sean Grissett, a minor, by and
    through his/her mother and next
    friend, Stacie Hudson
Mary L. Hall
Shiann M. Hall, a minor, by and
through his/her mother and next
friend, Wendy Hall
Judith Lee Hallford, a minor, by and
through his/her mother and next
friend, Cynthia Hallford
Kellie LeAnn Hallford, a minor, by
and through his/her mother and next
friend, Cynthia Hallford
Jeremy Hanscom
Roy Harrison
Yvonne Lachelle Hartley
Anah B. Hattaway, a minor, by and
through his/her mother and next
friend, Amber Hattaway
Catherine Spicer Hattaway
Joshua Hattaway, a minor, by and
through his/her mother and next
friend, Paula Hattaway
William A. Hattaway
Margie Henderson
Alaric Lamont Hill
Eddie J. Hill
Marc A. Holmes
Thomas Richard Howard
Tracy Huckabaa
John Dempsey Hudson Jr., a minor,
by and through his/her mother and
next friend, Stacie Hudson
John Dempsey Hudson
Hunter R. Hughes, a minor, by and
through his/her mother and next
friend, Debra Hughes
Willie Mae Hughes
Keanua Makayla Hutcheson, a
minor, by and through his/her mother
and next friend, Juliana Hutcheson
(Bryant)
Knshanaha Hutchinson
Jamie Inabinett

Catlyn J. Jackson, a minor, by and
through his/her mother and next
friend, Catherine Jackson
Christopher Paul Jackson II, a minor,
by and through his/her mother and
next friend, Catherine Jackson
Christopher Paul Jackson
Crystal Jackson
Echo V. Jackson, a minor, by and
    through his/her guardian and next
    friend, Kenneth Jackson
James Paul Jackson
Justin Lee Jackson
Yolanda L. James
Gilbert Lee Johnson
Evelyn Thompson Jones
Willie R. Jones
Keerie Necole Kimbril, a minor, by
    and through his/her mother and next
    friend, Kimberly Kimbril
Jonathon William Kyser, a minor, by
    and through his/her guardian and next
    friend, Lois Hernandez
Wiley L. Lowery
Dexter Lynn Jr.
Santanna D. Lynn
Juanita Marshall
Evelyn Christina Mason
Destiny Michelle Mason, a minor, by
    and through his/her mother and next
    friend, Evelyn Christina Mason
Craig D. Matthews
Fredrick Matthews
LaTara F. Matthews
Jimmy L. McCoy
Jacqueline McKinney
Billy J Miller
Terry Miller
Willie C. Milton
Janice Moore
Donnie Wilson Morris
John F. Morris
April Lee Nance
Lonnie Leroy Norman Sr.
Chester Ray Norris
Gary D. Oates

Arthur Gregory Olmstead
James Orndorff
Aisha Patrick
Glenn Edward Peacock
Charles E. Perry
Nathan L. Perry
Cleonia Lynn Pittman
Julian Roosevelt Pittman
Reginald Maurice Pittman
Barbara Porter Russell
Aria J. Price, a minor, by and through
his/her mother and next friend,
Subrina Price
Cortlin C. Price, a minor, by and
through his/her mother and next
friend, Subrina Price
Howard Cornelius Price
Ka'Trina Price, a minor, by and
through his/her mother and next
friend, Jessica Gettis
Kavon Price, a minor, by and through
his/her mother and next friend, Jessica
Gettis
Shawn Price
Johnny Reed
Linda Richardson
David E. Robertson
Zaniya Keilani Robinson, a minor, by
and through his/her guardian and next
friend, Fannie Robinson
Margaret Porter Rodgers
Valerie Russell
Savion Salter, a minor, by and
through his/her mother and next
friend, Sandra Barnes
Ezekiel Amari Sheridan, a minor, by
and through his/her grandmother and
next friend, Queen Feagin
Zandia M. Simon, a minor, by and
through his/her mother and next
friend, Ebony Wilkins
Corderus Smiley, a minor, by and
through his/her mother and next
friend, Queen Feagin
David Allen Smith
Linda Stone

Betty Jean Taylor, a minor, by and
through his/her mother and next
friend, Tammy Taylor
Hilary P. Thames, a minor, by and
through his/her mother and next
friend, Angela Dukes
Andrea Thomas
Asheley N. Thomas, a minor, by and
through his/her mother and next
friend, Elizabeth Casady
Chreedell Thomas
Dolly Thomas
LaKeria Thomas, a minor, by and
through his/her mother and next
friend, Ebony Wilkins
Kanessa M. Thompson
Lillie Mae Thompson
Cassandra Thrash, a minor, by and
through his/her mother and next
friend, Claudine Thrash
Rusty Townsend
Rhonda Oates Tucker
Derrick Dewayne Vaughn, a minor,
by and through his/her mother and
next friend, Sharon Vaughn
Mary L. Vickers
Okoye A. Vickers, a minor, by and
through his/her mother and next
friend, Daphne Wilson
Willie C. Vickers
Zouchrain O. Vickers, a minor, by
and through his/her mother and next
friend, Daphne Wilson
Irene Walker
Stanley Wallace
Linda D. Walls
Hayward James Walters
Glenda D. Ward
William (Mike) Ward
Johnnie Washington
Dewayne E. Williams
Francine Williams
George Brian Williams, a minor, by
and through his/her mother and next
friend, Renee Williams
Daphne Wilson

Gwendolyn Bass Wilson

LaToya Danielle Wilson

Bryan Caswell Withey

Wesley C. Wright, a minor, by and through his/her grandmother and next friend, Earnestine Holmes

Wilson Yelverton

Calvin Doyle York

Isaiah S. Chatman, a minor, by and through his/her father and next friend, March Antonio Chatman

Mary Joyce Patterson

Anthony D. Barnes

Hardred Barnes III

James Rusty Burke

Michael Z. Cotton, a minor, by and through his/her mother and next friend, Joanna Cotton

Courte' Jenay Dixon, a minor, by and through his/her mother and next friend, Cicely Hall

Stephanie Slaughter

Katelin M. Cassady, a minor, by and through his/her mother and next friend, Wendy Windham

Katie Carroll, a minor, by and through his/her guardian and next friend, Betty Jean Jackson

Shannon Carroll, a minor, by and through his/her guardian and next friend, Betty Jean Jackson

Ervin K. Flowers

Mary Jane Flowers

David A. Morris, a minor, by and through his/her mother and next friend, Stephanie Slaughter

Jesse Ray Carpenter

Hope I. Slaughter, a minor, by and through his/her mother and next friend, Stephanie Slaughter

Eva Tatum

Louis Olmstead, a minor, by and through his/her mother and next friend, Natasha Olmstead

Verge Leon Chames

Deandre Parsons, a minor, by and through his/her mother and next friend, Gwenever Jewel Peacock

Tony Womack, a minor, by and through his/her mother and next friend, Pamela Goldsmith

Michael Womack

Jarvontay J. Thomas, a minor, by and through his/her mother and next friend, Lureen Turner

Andreka Thrash, a minor, by and through his/her mother and next friend, Claudine Thrash

Kayla Goldsmith, a minor, by and through his/her mother and next friend, Diana Goldsmith

Houston A. Goldsmith, a minor, by and through his/her mother and next friend, Diana Goldsmith

Lillie V. Jordan

Tonjya M. Johns

Vincent M. Wilson

Shannon Don Spychalski

Princilla Sherelette Anthony, a minor, by and through her mother and next friend, Princilla Anthony Chatman

Nathan Tyler Hobbs, a minor, by and through his/her father and next friend, Kenneth Hobbs

Stephen Kyle Corbin, a minor, by and through his/her mother and next friend, Martha Corbin

Terry Richardson

Marie Harrison Stokes

Jerry Stokes

Zachery Ryan Hamilton, a minor, by and through his/her mother and next friend, Maxine Spicer

Houston Gene Biddle, a minor, by and through his/her mother and next friend, Susan Biddle

Hannah Goodwin, a minor, by and through his/her mother and next friend, Melissa Goodwin

Dora Dirga

Kathy Dennis

Ivan N. Pickron
Jeremy Kyser
Danny D. Franklin
Pamela Broder
Joann Haney Baxley
Anita Wilkinson
Fred Weaver
Mark Weaver
Christa Lafta, a minor, by and through
    his/her mother and next friend,
    Brenda Weaver
Kimberly Lafta, a minor, by and
    through his/her mother and next
    friend, Brenda Weaver

Nicho Lafta, a minor, by and through
    his/her mother and next friend,
    Brenda Weaver
Breonna Lafta, a minor, by and
    through his/her mother and next
    friend, Brenda Weaver
Bonnie Jackson
Keyvon Bardo Chambers, a minor, by
    and through his/her father and next
    friend, Ken Chambers
Linda Qualls
Clara Jordan

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Respiratory System Disorder Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial.   Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 7 and therefore denies them.

### ENDOCRINE/NEPHROLOGY GROUP

       8.    The Plaintiffs listed below are all persons who have suffered endocrine gland disorders and/or nephrology disorders proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

Willie Thelma Adams
Alice Mae Allen
Phyllis T. Barnes
Buffi Barrineau-Lowry
Mary Frances Jenkins Bass
Richard Bradberry
Annie Ruth Brooks

Timothy W. Brooks
Ethelrine Bryant
Shirley Crittenden Campbell
Pauline Carr
Eddie Ray Cassady
Jeffery Chatman
Maggie Davis

Ronnie C. Davis Jr.
Tayaka Davis, a minor, by and
through his/her mother and next
friend, Shannon Davis
Lillie Bell Edwards
Thomas L. Faulk
Mattie M. Frazier
Jessica Justine Gettis
Oliver Goodwin
Jimmy Gray
James Monroe Hadley
Wendy Farrah Hall
Sammy Lee Hallford
Thomas Hallford
Nealie Hooks
Jerry Hunter
Eleanor Inabinett
Walter Inabinett
Emma G. Jackson
Thomas J. Maddox
Albert Marshall Jr.
Edward E. Martin
John A. Matthews
Ann Linette McClelland
Carrie Lynn (Evans) Miller
Stacy Mulkey
Will Norsworthy
Ava Barber Norsworthy
Tonya Odom
Evelyn Peacock
James Lemont Peacock
Saddie Mae Peacock
Archie C. Reaves
Joann Reeves

Jewel L. Robbins
John I. Roberts
Michael D. Roof
Carrine Skanes
Willie Thompson
Angelene Varner
Sharon Sue Vaughn
Mable L. Vickers
Clarence Wallace
George R. Williams
Willie Earl Williams Jr.
Roger Lee Worrell
Albert Bradley
Tara Sunshine Hadley
Sharon Sue Hayes
Shelly Pryor
Betty Jean Jackson
Mary L. Rogers
Ciera Hughes, a minor, by and
    through his/her mother and next
    friend, Esther Hughes
Ashton Xander Fleming, a minor, by
    and through his/her mother and
    next friend, Kathy Richardson
Heather Renee Sexton, a minor, by
    and through his/her mother and
    next friend, Martha Corbin
Richard Edward Westenberger
James Simmons
Linda Faye Williford
Bettye Pickron
Michael A. Hutchinson
Donna Morgan
Jessica Lawrence

**<u>ANSWER:</u>**   Pactiv admits that Plaintiffs list individual persons as belonging to said Endocrine/Nephrology Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries. Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial. Pactiv is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 8 and therefore denies them.

## NEUROLOGICAL DISORDERS GROUP

9.     The Plaintiffs listed below are all persons who have suffered personal neurological disorders proximately caused by exposure to hazardous substances, which were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

Emma Armstrong
Christopher Bramlet, a minor, by and
    through his mother and next
    friend, Carolyn Jackson
Brittney A. Carson
Michael A. Carson, a minor, by and
    through his mother and next
    friend, Linda Carson
Christopher Caley Cassady
Kimberly Christian, a minor, by and
    through her father and next friend,
    Everette Lynn Christian
Simon P. Corbin
Shannon Davis
Beverly DeVaughn
Glenene L. Edmondson
Leroy Geohagan
Pamela Goldsmith Womack
Cicely Dixon Hall
Amber Hattaway
Jenell Robinson Hill
Johnny Foy Johnson
Roy Lee Johnson
Daphne L. Jordan
Mildred Kendrick
Yvonna Kilpatrick
Anna Hartley King
Camren D. Marshall, a minor, by and
    through his mother and next
    friend, Wendy C. Marshall
Jerry Allen Martin
Craig Murphy, a minor, by and
    through his mother and next
    friend, Shandrina Murphy

Quinton Orndorff
Herman Owens
David Porter
Corey L. Robinson
Winston E. Rowe
Inez M. Simmons
Desmond Smiley, a minor, by and
    through his mother and next friend,
    Shandrina Murphy
Margie N. Taylor
Lou Ella Thompson
Yusef A. Thrash
Michael Vernon Todd
Mary Lou Porter Turner
Jessica Watson
Christopher Dale Williams, a minor,
    by and through his mother and
    next friend, Renee J. Williams
Courtney Wilson
Jimmy D. Wise
Janice Allred
Shirley Garvin
Edna N. Harrison
Bobby Lynn
Gerald Reeves
Roy Ezell
Deonte J. Wright, a minor, by and
    through his father and next friend
    Lacy Evan Wright
Jeremy Jason Jones
Emily A. Cassady, a minor, by and
    through her mother and next
    friend, Wendy A. Windham
Paula Lois Cude

Summer Shayenne Henderson, a
   minor, by and through her mother
   and next friend, Evelyn Christina
   Mason
Jovontae Griffin, a minor, by and
   through his mother and next
   friend, Pamela Goldsmith
Xavier Cordell Fleming, a minor, by
   and through his mother and next
   friend, Kathy Richardson

Becki Lee Adams, a minor, by and
   through her mother and next
   friend, Phyllis Adams
Wiliam T. Creech
Tammy Creech
Johnny Armstrong
Michael J. Ordes Jr.
Paul Eugene Davis
Craig Morgan

**ANSWER:**    Pactiv admits that Plaintiffs list individual persons as belonging to said

Neurological Disorders Group, but denies that its immediate corporate predecessor's operations

or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that

caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the

claims of these individuals are properly joined for any purpose, including trial.  Pactiv is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 9 and therefore denies them.

### CARDIOVASCULAR DISORDERS GROUP

10.    The Plaintiffs listed below are all persons who have suffered cardiovascular
disorders proximately caused by exposure to hazardous substances, which were released into the
environment by Defendants to this action. The above named Plaintiffs also claim damages
resulting from other disorders, defects and diseases caused or related to exposure to the toxic
chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

Randy Lewis Adams
Bernard Anthony Sr.
Horace Armstrong
Gary Barnes
Mae Grace Barnes
Sharon K. Barnes
Benjamin J. Barrett
Ramona Barrett
William Steve Barton
Scotty Beck
Leo M. Bedsole
Bobby Jean Bess
Ronnie J. Bettis

Eugene Houston Biddle
Willie A. Bradberry
James E. Brooks
Margaret J. Brooks
Edith Brown
Annie Burlison
John Caldwell
Tierre Lamar Carson
Charles E. James
Johnny N. James
Lauretta Williams
Kevin Duane Cassady
Glen Chambers

Bobby B. Coleman
Bobbie Jean Cook
Dorothy J. Cooper
Betty Ann Daniels
James Walter Davis
LaVennia Davis
Shanda Davis-Goldsmith
Mary Dunbar Diggs
Verdie P. Dorsey
Terry Glenn Franklin
Detrick Oneal Frazier
Tommy Fuller
Robert E. Goldsmith
Willie C. Handy
Dennis Wayne Harrison
Michael T. Harrison
Bobby Joe Hemphill
Margaret Henderson
Joe Hernandez
Holland R. Hughes
Carolyn Jackson
Clara Jackson
John E. Jones
John Henry Jones Jr.
Rosa M. Jones (Perkins)
Michael D. King
Mae Lee
Dick Patrick Lee
Palmer Clint Lewis
Sheary Lowery
Emmitt Matthews
Everett Matthews
Robert McCall
Mary C. McCarey
Jacquelynn Peacock McGee
Larry L. Miller
William Miller
James D. Morrow
Shandrina Murphy
Mary Orndorff
Milton Parker
Rickey Thomas Phillips
Roosevelt Pittman
Estelle Porter
Lorenza Price

Annie Bell Reed
Delores Robbins
Albert Slater Jr.
Alene Slover
James Mack Smith
Junior Smith
Michael E. Spicer
Hubert Stephens
Donald Chad Stewart
Jeffery Dave Stone
Peggy Cassady Tatum
Earnest Oscar Taylor
Donald Thompson
Amos L. Thrash
Claudine Thrash
Daniel Thrash
David Lewis Thrash
Jeffery Thrash
Mary Nell Thrash
Stephon Letray Thrash, a minor, by
    and through his mother and next
    friend, Jessica Frazier
Mack Waing Vickers
Johnny Ray Wallace
Joann Carr Walters
Mattye Bell Walters
Lottie Wheeler
Charles R. Wibbing
Allie Mae Williams
Bertha Williams
Cedric Alphonso Williams
Estellieta Williams
Willie Earl Williams Sr.
Marvin Duane Williford Jr.
Sandy Williford
Robert Womack
James A. Thrash
Barry Lynn Carter
Pamela D. Hutcheson
Lonnie Garvin
David Windham
Alfred Jerome Whitaker Jr.
Aldean Brooks
Michael R. Barlow

**ANSWER:**    Pactiv admits that Plaintiffs list individual persons as belonging to said Cardiovascular Disorders Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial. Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 and therefore denies them.

## DIABETES GROUP

11.    The Plaintiffs listed below are all persons who have diabetes that was proximately caused by exposure to hazardous substances that were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

| | |
|---|---|
| Alice Adams | Steve Hataway |
| Donald W. Adams | James A Ingalls |
| Frank L. Adams | Annie D. (Frazier) Jones |
| Edward Armstrong | Coleman Douglas Jones |
| Joann Barnes | Ruby Nell Knight |
| Vaughn L. Barnes | Adelle N Lee |
| Sandra J. Bass | Jenny R. Lynn |
| Richard Blue | Robert Lynn |
| Bryan Anthony Bradberry | Gracie M. Maddox |
| Norma Bradberry | Marlon J. Matthews |
| Lavon Bradley | Melvin D. Matthews |
| Myrtle F. Bradley | Rasquez L. Matthews |
| Roy C. Bramlet | Earnest Lee McCraney |
| Ralph Brooks | Ivory J. Murphy |
| Willard Cawthon | Jacky Partridge |
| Otis Dorsey | Helen J. Pickron |
| Jan Edmondson | Timmy Allen Ramey |
| Dianne Franklin Craig | Manuel Robbins |
| James Frazier | Immergean Rodgers |
| E.B. Gautney | Sharon Robinson Stewart |
| Martha Neal Gibson | Sandra Stokes |
| Joel Gomillion | DiaLinda Thomas |
| Randall W. Hall | Wayne Thomas |
| Jo Ann Hobbs | Freddie L. Toles |

| | |
|---|---|
| Debra Matthews Tyler | Callie Gail Johnson |
| Bobby Tyson | Robert L. Thomas |
| Lue C. Whitaker | W. C. Lynn |
| Sonya Williams | Tabitha A. Marion |
| Regina Willis | Michael Jerome Jowers |
| Michael G. Wise | Susie Edwards Gilliam |
| Mattie Caphart | Pansy Jean Wilson |
| Willa Dean Head | Jane Devaughn |
| Donald Mack Jones | Minnie Pearl Smith |
| Jonathan Joseph Jones | Scott Thomas |
| Joan H. Corbin | |

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Diabetes Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11 and therefore denies them.

## OTHER DISORDERS GROUP

12.    The Plaintiffs listed below are all persons who have diseases or disorders that were proximately caused by exposure to hazardous substances that were released into the environment by Defendants to this action. The above named Plaintiffs also claim damages resulting from other disorders, defects and diseases caused or related to exposure to the toxic chemicals described hereinafter in this Complaint. The Plaintiffs in this group are:

| | |
|---|---|
| Carolyn D. Barrett | Charles Lance Chambers |
| Cindy Barrineau | Jerry E. Coone |
| Dustin Beverly | Jessie A. Danley |
| Madonna Bradley | John H. Edwards |
| Sonia Devaughn Brown | Kristen Flowers |
| Martha Faye Bryant | Vickie Gilley |
| Hural Buckley | Rita Faye Goodwin |
| Willie Calloway | Eleanor Griggs |
| Chelsea Shanear James, a minor, by | David Hutcheson |
| and through her mother and next | Junior Ashford King |
| friend, Maquita James | Gerald DeWayne Lynn |
| Kenneth R. Williams | Ronnie Lynn |

Dexter Lynn Sr.
Donald Sylvestor Matthews
Etta T. Matthews
Jeanette Matthews
Alton L. McKinney
Kenneth Norman
Vernon Norris
Deborah Odom
Lena Odom
Annie Laura Holmes
Dale Marie Parker
Eva Parker
Angela Marie Radford, a minor, by
    and through her mother and next
    friend, Angela Chatman
Jerry Cleveland Reese
Timothy J. Richardson, a minor, by
    and through his mother and next
    friend, Linda Richardson
Renee Robbins
Aaron Robinson Jr.
Jeremy A. Slaughter
Michael Stewart
Mason Skylar Strickland, a minor, by
    and through his/her mother and
    next friend, Laura Strickland
Khaliah Thrash Murphy
Michael A. Turner
Anthony A. Wilkins
Dennis L. Worrell
Lacy Evan Wright

David Bradley
Preston Ray Caldwell
Sherry F. Cook
Gloria Peacock DeVaughn
Christian Kyle Hadley, a minor, by
    and through his mother and next
    friend, Tara S. Hadley
Laken Page Hadley, a minor, by and
    through his/her mother and next
    friend, Tara S. Hadley
Connie R. Bryan
Savannah E. Cassady, a minor, by and
    through her mother and next
    friend, Wendy A. Windham
Kenneth A. Thompson
Chris Costopoulos
Annie Marie Jackson
William Robert Kyser
Bert D. Radford Jr., a minor, by and
    through his mother and next
    friend, Angela Chatman
Hank Tatum
Sal Marco Lynn
Chelsea Cheyenne Martin, a minor,
    by and through her mother and
    next friend, Joyce Johnson Martin
Tabitha Jane Withey-Yates
Sara Jackson
Joseph Skanes Jr.
Merry Sue J. Withey
Summer Ansley

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Other Disorders Group, but denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv further denies that the claims of these individuals are properly joined for any purpose, including trial.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 and therefore denies them.

## EXPOSURE GROUP

13.    The Plaintiffs listed below are all persons who have suffered limited personal injury, which may result in significant damages in the future, and/or property damage. These plaintiffs were exposed to toxic emissions released from Defendant's facility and have suffered genetic changes which may be manifested in dreaded disease. Some have property damages as well because of toxicants that collected in their homes. The Plaintiffs in this group are:

Brandon Dewayne Adams
Raymond Adams
Rudolph Anthony
Carmon Avan
Jorian Avan
Kenneth Avan
John Baldwin
Timothy Baldwin
Johnny L. Ball
Farrel E. Barrow
Katrina Bass
Robert Jerald Blackburn
Cecil Ray Blue
Robert L. Blue
Bobby C. Bradberry
Donnell Bradberry
Theresa Bradberry
Sam Bradberry Jr
Coranetta Horne Bradley
David Bradley
Otis J. Bradley, a minor, by and
    through his mother and next
    friend, Coranetta Bradley
RaSean Bradley, a minor, by and
    through his mother and next friend,
    Coranetta Bradley
Janice Bramlet
Charles Brooks
Essie M. Brooks
Jason Brooks
Patricia Brooks
Raymond Brooks
Tomika Shontese Brooks
Willie Ray Brooks
Ronald W. Brown
Lorena F. Bryant
Monica Bryant
Ray A Bryant
Connie S. Buckley

Gregory R. Caldwell
Jackie Caldwell
Mistilin Caldwell
Kenneth Mac Campbell
Randall Carlisle
Carla Denise Carson
Linda G. Carson
Ronda L. Carson
Sonya Carson
Sierra C. Carter
Marjorie K. Jackson
Mary A. Williams
Timmy Ray Cawthon
James Keith Chambers
Ken B. Chambers
Patsy L. Comalander
Kendall Scott Cook
Marvin D. Cooper
Lucidena Cowan
Donnie Ray Cutts
Don Daniel
Hank O. Davis
John D. Davis
Frank F. Devaughn
Otis Dixon
Thomas Earl Douglas
Gregory D. Edmondson
John Eliard
A.C. Elliot
Elmer Elliott
Robert Feagins
Douglas David Findley
Guthrie Pridgeon Finlay
Joshua S. Fleming
Murunda Florence
Franklin D. Flowers
Eddie Foreman
Annasia Frazier
Toteana Shambrel Frazier, a minor,

by and through her mother and
next friend, Jessica Frazier
Brandi Nichole Frost
Kenna Frost
Daniel Gantt III
Cleveland Gettis
William Gillard
Wilbert Gillbert
Lindsey Gilley
Mary Goff
Annie Goldsmith
Brooks Goldsmith
Donald Goldsmith
Willie David Goldsmith
Gregory Wright
Roy E. Hall
William G. Hamilton
Car Harris
Ida Mae Harris
Leslie D. Harrison
Linda Harrison
Paul E. Hartley
Ruby Heisler
Charlie Avery Hill
Kenneth G. Hobbs
Olivia Hobbs, a minor, by and
through her mother and next
friend, Connie Buckley
Angela Holley
Stacie Lynn Hudson
Juliana Marie Hutcheson
Douglas Hutchinson
Eddie Isgro
Patricia Isgro
Helen A. Jackson
Jonathan Wesley James
Frances Johnson
Francis M. Johnson
Cody Jones, a minor, by and through
his mother and next friend, Holley
Jones
Dewayne Jones
Holley Jones
Nicholas Jones, a minor, by and
through his mother and next
friend, Holley Jones

Raymond Alto Jones
Eloise Judson
Johnny Knight Jr.
Paul Jay Kyser
Eddie Lang
Buford Lee
Labaron Lee
Percy James Lett
Tony Lewis
Joe Lewis Jr.
Candress Lockeharte
Judy J. Logan
Gregory Lynn
Willie George Lynn Jr.
Benjamin Mack
Bruce Evan Maddox
Caleb Dakota Maddox, a minor, by
and through his father and next
friend, Bruce Maddox
Jennifer R. Maddox
Lori L. Maddox
Clifford D. Matthews
Johnny Matthews
Mary Matthews
Theresa A. Matthews
Tristan Matthews
Tyrone Maurice Matthews
Melody Mayes
Ealie S. McClain
Lessie McClain
Alice McCollough
Susie M. McGugin
Alyssa Miller
Arthur L. Miller
Susan Miller
Teresa Miller
Betty Kembro Mitchell
Alesia R. Moore
Dominique M. Moore
EvyMic L. Moore
Michael Moore
Corbin L. Murphy
Ida Murphy
James A. Murphy
Emily Paige Nance
Michael D. Nance

E. Louise Nazario
Neal Oates
Steven L. Oates
Amanda Odom
Betty Gail Odom
Maggie Odom
Mitchell Odom
Rebecca Odom
Kelvin James Owens
Queen E. Owens
John Leroy Henderson
Warren Owens
Harold Parker
Joshua O. Parker
Kelley Parker
Prince N. Parker
Shawana J. Parker
Robert Parker Jr.
Nina Parks
Annie Pate
Elijah Patrick
Eloise Patrick
Steven T. Perry
Marcus E. Phillips
Tony Ray Pickron
Antonio DeWayne Perdue Jr.
M. Doyle Prescott
Carroll Eugene Pryor
Veronica T. Purdie
Christian Radford
Clarence Ratliff
Georgeann Redmon
Rudolph Redmon
Ellie Reeves
Greg Reeves
Alan H. Robbins
Jarvis Roberts
Shannon Ray Roberts
Diamond Robinson
Jonathan David Robinson, a minor, by
    and through his mother and next
    friend, Geraldine Wheeler
Patrick Dewayne Robinson
Felicia Hartley Russell
Mary Lee Sankey
Beulah Shaw

Patricia Shaw
Clarence Edward Slater
Reginald Floyd Slaughter
James E. Small
Minnie Small
Arthur Smiley Jr.
Densthia Smiley
Michelle Smiley
Annie Smith
Carolyn Hutchinson Smith
Cherice Lanette Smith
Lewis Edward Snow
Timothy Lewis Snow
Daniel Christopher Steele
Melinda Strickland
William Tanner
Philip Harold Thomas
Unadia Thomas
Linda Thompson
Lorene Thompson
Holden Thornhill
Leighton B. Thornhill
Cornelia Thrash
David Leon Thrash
Joshua Thrash
Markell L. Thrash
Michael E. Thrash
Stephoni Letravia Thrash, a minor, by
and through her mother and next
friend, Jessica Frazier
Tysean Temario Thrash, a minor, by
    and through his mother and next
    friend, Jessica Frazier
Yuvanda Thrash
Larry Bruce Toles
Wonderful Toles Jr.
Benny L. Turner
Emmitt M. Tyler Jr.
Ethan Matthews Tyler
Leon A. Vann
Wayne B. Vann
Kevin Patrick Walker
Theresa Ann Walker
William Scott Walker
William Arthur Walker
Terrence Walters

Tracey Wang
Joyce Washington
John D. Weeks
Arthur J. Wheeler
Geraldine Wheeler
Alford Whitaker Sr.
Angelia Williams
Cicely F. Williams
Cleveland Williams
Earnest Leo Williams
Edwin B. Williams
Edwin Chamberlin Williams
Kimley Williford
Thomas Williford
Kimberly Owens Wilson
Mary N. Wilson
Betty Wright
Raymond Yates
Wade L. Yates
Calvin Maxwell York
Donna LaKeisha Holmes
Willie G. Lynn
Arnold Keith Pryor
Keadra T. Avan
Michael Earl Barnes
Debbie Jo Franklin
Eugene Herbert Jr.
Kim Madden
Janice Madden
Trina Jordan
Romanuel Gundrum Jr.
Jeffrey Pryor
Kayla S. Adams
Cynthia Hughes
Tommy D. Hughes

Donnie Ray Matthews
Michael Ball
Tuyen T. Morris, a minor, by and
    through his mother and next
    friend, Stephanie Slaughter
Breanna D. Morris, a minor, by and
through her mother and next friend,
Stephanie Slaughter
Louise Cassady
John E. Porter
Josephine Y. Hutchinson
Velma Lee Vallandingham
Sylvia Elaine Vallandingham
Paul Hartley Jr.
Melissa Windham
Tony R. Hughes
Robert Womack III
Deldric T. Matthews
Eric D. Jones
Charles (Mike) Read
Ayesha Lynn
Ruth Creech
Jessica Bryan, a minor, by and
    through her mother and next
    friend, Connie Bryan
Carlton Palmer
Kenneth Harrison
Kenneth L. Johnson
Justin Maddox
Domonique Nelson
Joshua Boles, a minor, by and through
    his guardian and next friend,
    Kenneth Boles
Pamela Jolene Broder
Dallas O. Haney

**ANSWER:**  Pactiv admits that Plaintiffs list individual persons as belonging to said Exposure

Group, but denies that its immediate corporate predecessor's operations or processes at the

Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed

in any way to Plaintiffs' alleged injuries (if any).  Pactiv further denies that the claims of these

individuals are properly joined for any purpose, including trial.  Pactiv is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 10 and therefore denies them.

## RELATED CLAIMS AND DISEASES

14.    All of the Plaintiffs in this action suffer from disease or defect caused by exposure to hazardous substances released into the environment by Defendants. Plaintiffs also suffer from disease related to their primary disease and some Plaintiffs suffer from multiple diseases or disorders. Inclusion in one of the subgroups set out above is not intended to limit Plaintiffs' claims for damages resulting only from the subgroup disease category. Plaintiffs' claim damages for all personal injury caused by toxic chemical released from Defendants' facility.

**ANSWER:**  Pactiv admits that Plaintiffs make claims for personal injury.  Pactiv denies that its

immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be

exposed to any chemical or substance that caused or contributed in any to Plaintiffs' alleged

injuries.  Pactiv further denies that the claims of these individuals are properly joined for any

purpose, including trial.  Pactiv is without knowledge or information sufficient to form a belief

as to the truth of any remaining allegations contained in Paragraph 14 and therefore denies them.

## BACKGROUND

15.    Plaintiffs make a claim for personal injuries and property damage caused by exposure to toxic chemicals and hazardous wastes, which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

**ANSWER:**  Pactiv admits that Plaintiffs make claims for personal injuries and property damage

and that Pactiv's immediate corporate predecessor, prior to 1983, owned and operated a lumber

mill in Covington County, Alabama that treated some wood products.  Pactiv denies the

remaining allegations in Paragraph 15.

16.    The facility is located between the towns of Lockhart and Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company, a predecessor to PACTIV Corporation.

**ANSWER:**  Pactiv admits that a former lumber mill that treated some wood products was

located in Lockhart, Alabama (the "Facility"), on a site formerly occupied by Lockhart Lumber

Company.  The allegation in Paragraph 16 that Lockhart Lumber Company is a "predecessor" to Pactiv merely states a legal conclusion to which no response is required.  Pactiv denies any remaining allegations in Paragraph 16.

17.     Emissions of hazardous substances by Defendants and/or their predecessor corporations into the environment proximately contributed to cause Plaintiff's injuries and damages.

**ANSWER:**  Denied.

18.     Plaintiffs resided in the Florala/Lockhart community for a period of time or Plaintiffs were present at other homes, businesses, and places of employment, churches and/or schools in the Florala/Lockhart area.

**ANSWER:**  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and therefore denies them.

19.     PACTIV Corporation or its predecessor began operation of the facility in the late 1950's and engaged in the business of treating lumber and pine wood poles with creosote, pentachlorophenol and CCA (chromium, copper and arsenic).

**ANSWER:**  Pactiv denies that it engaged in any operations at the Facility.  Pactiv states that wood treating operations at the Facility began in the early 1960s, and that Pactiv's immediate corporate predecessor (Tennessee River Pulp & Paper Company) acquired the facility in 1978 before selling it to LP in 1983.  Throughout this Answer, Pactiv therefore construes allegations concerning "Pactiv" as referring to Pactiv or its immediate corporate predecessor.  Pactiv admits that at various times and in various quantities, its immediate corporate predecessor used creosote and pentachlorophenol to treat wood at the Facility.  Pactiv denies any remaining allegations in Paragraph 19.

20.     Energy for the Defendants' wood treatment operation was partly obtained by burning waste wood and bark in three boilers, which were used to create steam and provide heat and energy for the sawmill and wood treatment operation.

**ANSWER:**  Pactiv admits that at various times and in varying quantities, its immediate corporate predecessor burned certain wood and bark in three boilers that were used to provide heat and energy for facility operations.  Pactiv denies any remaining allegations in Paragraph 20.

    21.    The boilers used by Defendants were not licensed as hazardous substance or toxic waste incinerators.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 21.

    22.    The boilers used by Defendants were not designed or intended to be used as hazardous substance or toxic waste incinerators.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

    23.    The boilers used by Defendants at the facility would not have safely disposed of hazardous substances or toxic waste burned in them.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries.

    24.    The boilers used by Defendants were not licensed as dioxin/furan compounds incinerators.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 24.

25.     The boilers used by Defendants were not designed or intended to be used as dioxin/furan compound incinerators.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

26.     The boilers used by Defendants at the facility would not have safely disposed of dioxin/furan compounds waste burned in them.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries.

27.     The boilers used by Defendants were not licensed as arsenic compounds incinerators.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 27.

28.     The boilers used by Defendants were not designed or intended to be used as arsenic compounds incinerators.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

29.     The boilers used by Defendants at the facility would not have safely disposed of arsenic compounds burned in them.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries.

30.     The boilers used by Defendants were not licensed as hexavalent chromium compounds incinerators.

**ANSWER**:  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 30.

31.     The boilers used by Defendants were not designed or intended to be used as hexavalent chromium compounds incinerators.

**ANSWER**:  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

32.     The boilers used by Defendants at the facility would not have safely disposed of hexavalent chromium compounds burned in them.

**ANSWER**:  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries.

33.     The boilers used by Defendants were not licensed as pentachlorophenol compounds incinerators.

**ANSWER**:  Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 33.

34.     The boilers used by Defendants were not designed or intended to be used as pentachlorophenol compounds incinerators.

**ANSWER**:  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

35.     The boilers used by Defendants at the facility would not have safely disposed of pentachlorophenol compounds burned in them.

**ANSWER:**  Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiffs' alleged injuries.

36.     The facility also operated a teepee burner, which was used to burn waste or scrap wood. Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor operated a teepee burner and that its use was discontinued in or around 1980.  Pactiv denies any remaining allegations contained in Paragraph 36.

37.     The Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

**ANSWER:**  The allegations in Paragraph 37 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

38.     The Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes, which are carcinogens, mutagens, teratogens, or endanger human health.

**ANSWER:**  The allegations in Paragraph 38 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

39.     The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

**ANSWER:**  The allegations in Paragraph 39 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

40.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists creosote as a probable human carcinogen.

**ANSWER:**  The allegations in Paragraph 40 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

41.     Creosote is a mixture of chemicals and is probably carcinogenic to humans.

**ANSWER:**  Pactiv admits that creosote is a mixture of certain chemicals.  Pactiv denies that creosote is carcinogenic to humans and denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv denies any remaining allegations in Paragraph 41.

42.     The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals, which are known to cause cancer.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor used creosote at various times but denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv states that Paragraph 42 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

43.     The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals, which are believed to cause cancer.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor used creosote at various times but denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv states that Paragraph 43 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

44.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentachlorophenol as a probable human carcinogen.

**ANSWER:**  The allegations in Paragraph 44 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

45.     Pentachlorophenol is probably carcinogenic to humans.

**ANSWER:**  Pactiv denies that pentachlorophenol has been demonstrated to cause cancer in humans and denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv denies any remaining allegations in Paragraph 45.

46.     The pentachlorophenol used by Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

**ANSWER:**  Denied.

47.     Dioxin and/or dioxin/furans contaminates in pentachlorophenol used at the facility included 2,3,7,8-tetrachlorodibenzo-p-dioxins, other tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachloro-dibenzo-p-dioxins, hepta-chlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins.

**ANSWER:**  Denied.

48.     The pentachlorophenol used by Defendants at the Florala/Lockhart facility contained chemicals, which are known to cause cancer.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor used pentachlorophenol at various times but denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv states that Paragraph 48 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

49.     The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with polycyclic aromatic hydro-carbons (PAHs).

**ANSWER:**  Pactiv admits that creosote is a mixture of chemicals that contain polycyclic aromatic hydrocarbons (PAHs) and denies any remaining allegations in Paragraph 49.

50.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

**ANSWER:**  Denied.

51.    Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

**ANSWER:**  The allegations in Paragraph 51 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

52.    The wood treatment chemicals used by Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

**ANSWER:**  Pactiv denies that any wood treatment chemical for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv states that Paragraph 52 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

53.    The Defendants also made use of cooling tower corrosion inhibitors, which contained hexavalent chromium and after 1985, made use of wood treatment chemicals, which contained hexavalent chromium.

**ANSWER:**  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 concerning the use of cooling tower inhibitors and therefore denies them.  The remaining allegations of Paragraph 53 are directed to another defendant and therefore no response is required.  To the extent an answer is required, Pactiv is

without knowledge or information to form a belief as to the truth of the allegations and therefore

denies them.

54.     The Secretary of Health and Human Services and United States Environmental
Protection Agency list chromium (VI) as a known human carcinogen.

**ANSWER:**   The allegations in Paragraph 54 merely state a legal conclusion to which no

response is required.   To the extent a response is required, Pactiv states that the applicable

statutes and regulations speak for themselves and denies any characterization thereof.

55.     The wood treatment operation employed by Defendants created or generated
waste water when water in wood products was replaced by treatment chemicals in a pressurized
treatment cylinder or "retort."

**ANSWER:**   Pactiv admits that wood treatment operations at the Facility, including the use of

pressurized treatment cylinders, produced waste water in various quantities and at various times.

Pactiv denies any remaining allegations in Paragraph 55.

56.     The wastewater created or generated by Defendants was contaminated with toxic
or hazardous chemicals from the treatment chemicals.

**ANSWER:**   Pactiv admits that certain waste water created or generated by its immediate

corporate predecessor contained certain chemicals and residue from the wood treatment process,

but denies that any waste water caused or contributed in any way to Plaintiffs' alleged injuries.

Pactiv denies any remaining allegations in Paragraph 56.

57.     The Defendants further operated or maintained water evaporation and
containment areas, or lagoons.

**ANSWER:**   Pactiv admits that its immediate corporate predecessor operated water evaporation

and containment areas at certain times.

58.     The Defendants PACTIV and L-P engaged in the air disposal of toxic waste water
by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over
disposal lagoons.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor operated a spray field in one lagoon, that did not receive waste water from wood treating operations, for a short period of time in the early 1980s.  Pactiv denies that its immediate corporate predecessor sprayed "toxic waste water" into the air, denies that the spray system caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries, and denies any remaining allegations in Paragraph 58.

59.     Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

**ANSWER:**  Denied.

60.     Beginning November 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor sold the Facility to LP in November 1983.  Pactiv affirmatively states that in November 1983, Pactiv's immediate corporate predecessor ceased all operations at the Facility and transferred title to LP, and that thereafter, neither Pactiv nor any Pactiv affiliate engaged in any activity related to any ongoing Facility operations.

61.     L-P continued operating the facility with the same local management in the same manner as PACTIV.

**ANSWER:**  Paragraph 61 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

62.     Within a year after L-P began operation of the facility they began using another wood treatment chemical, which contained copper, arsenic and chromium (CCA).

**ANSWER:** Paragraph 62 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

63.     In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

**ANSWER:** Paragraph 63 merely states a legal conclusion and is directed to another defendant and therefore no response is required.

64.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

**ANSWER:** The allegations in Paragraph 64 merely state a legal conclusion to which no response is required. To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

65.     Arsenic is known to cause cancer in humans.

**ANSWER:** Pactiv admits that at certain levels, arsenic can cause cancer in humans. Pactiv denies that any arsenic for which it is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.

66.     During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

**ANSWER:** Denied.

67.     During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:** Denied.

68.     During the term of its operation, L-P sprayed toxic wastewater into the air.

**ANSWER:** Paragraph 68 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

69.     During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:** Paragraph 69 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

70.     The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:** Denied.

71.     The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:** Paragraph 71 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

72.     Defendants engaged in the burning of hazardous wastes, which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

**ANSWER:** Denied.

73.     The Defendants also used sawdust to filter and contain hazardous wastes from the wood treatment solutions and their wastewater.

**ANSWER:** Denied.

74.     The sawdust used by Defendants was, at times, contaminated with creosote.

**ANSWER:** Denied.

75.    The sawdust used by Defendants was, at times, contaminated with pentachlorophenol.

**ANSWER:** Denied.

76.    The sawdust used by Defendants was, at times, contaminated with dioxin/furan compounds.

**ANSWER:** Denied.

77.    The sawdust used by Defendants was, at times, contaminated with PAH's.

**ANSWER:** Denied.

78.    The sawdust used for containment by L-P was further contaminated with arsenic.

**ANSWER:**  Paragraph 78 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

79.    The sawdust filter material used to filter wastes by Defendants was burned in the operation boilers.

**ANSWER:** Denied.

80.    Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

**ANSWER:**  Pactiv admits that at times the operations and processes of its immediate corporate predecessor occurred at night and on weekends.  Pactiv denies the remaining allegations in Paragraph 80.

81.    Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

**ANSWER:**  The allegations in Paragraph 81 merely state a conclusion for which no response is required.  To the extent a further response is required, the allegations are denied.

82.    Defendants sprayed toxic waste into the air, which was contaminated with known human carcinogens or probable human carcinogens.

**ANSWER:**  Denied.

83.    Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

**ANSWER:**  Pactiv admits that its immediate corporate predecessor utilized various chemicals during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 83.

84.    The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

**ANSWER:**  Pactiv admits that its immediate corporate predecessor utilized various chemicals, including creosote and pentachlorophenol, during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 84.

85.    The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids, waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv denies any remaining allegations in Paragraph 85.

86.    The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

**ANSWER**: Denied.

87.    The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

**ANSWER**:  Paragraph 87 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

88.    Groundwater at the facility has been contaminated by toxic and hazardous wastes.

**ANSWER**: Pactiv admits that groundwater beneath the Facility has been remediated pursuant to plans and directions approved by USEPA and ADEM.  Pactiv denies any remaining allegations in Paragraph 88.

89.    Groundwater at the facility, which is contaminated by toxic and hazardous wastes, has migrated off-site.

**ANSWER**:  Denied.

90.    The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

**ANSWER**:  Denied.

91.    The Defendants engaged in the discharge of toxic waste fluids.

**ANSWER**:  Denied.

92.    The Defendants allowed the discharge of toxic chemical vapors, particulates and aerosols into the air.

**ANSWER**:  Denied.

93.    The day-to-day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous substances and known or probable human carcinogens.

**ANSWER**:  Denied.

94.     Defendants used toxic wastes to make roadways on the facility and scattered it about.

**ANSWER**:  Denied.

95.     Waste ashes from the facility boilers contained substances listed by EPA as human carcinogens or probable human carcinogens or likely human carcinogens.

**ANSWER**:  Denied.

96.     Ashes from the boilers were dumped on the facility property.

**ANSWER**:  Denied.

97.     Toxic chemicals and toxic boiler ashes spread over the facility and contributed to toxic dust, which was subject to wind transportation.

**ANSWER**:  Denied.

98.     PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER**:  Denied.

99.     L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER**:  Paragraph 99 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

100.     Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

**ANSWER**:  Pactiv denies that any pentachlorophenol or creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv states that Paragraph 100 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

101.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

**ANSWER**:    Paragraph 101 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

102.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

**ANSWER**:  Pactiv denies that Pactiv or its immediate corporate predecessor were aware or that any air emissions or disposal for which Pactiv is allegedly responsible were of a "hazardous nature" or caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv denies any remaining allegations in Paragraph 102.

103.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the boiler ash that was being disposed into ditches and creeks.

**ANSWER**:  Pactiv denies that Pactiv or its immediate corporate predecessor were aware or that any air emissions or disposal for which Pactiv is allegedly responsible were of a "hazardous nature" or caused or contributed in any way to Plaintiffs' alleged injuries.  Pactiv denies any remaining allegations in Paragraph 103.

104.    The Defendant PACTIV sold scrap wood, which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER**:  Denied.

105.    The Defendant L-P sold scrap wood, which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER**:    Paragraph 105 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

106. Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, pentachlorophenol, creosote, benzene, PAHs and dioxin/furans and pesticides used as wood treatment chemicals have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, lung cancer, breast cancer, bone cancer, kidney cancer, liver cancer, Scleroderma, leukemia, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, female reproductive organ disease, reproductive problems, eye disease, skin disease, respiratory disease, sinus problems, coughing, miscarriages, premature births and birth defects.

**ANSWER:** Pactiv denies that any pentachlorophenol, creosote, or other chemicals for which

Pactiv is allegedly responsible caused or contributed in any way to Plaintiffs' alleged injuries.

Pactiv states that Paragraph 106 contains insufficient predicate information for Pactiv to admit or

deny any remaining allegations.

107. At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

**ANSWER:** Denied.

108. Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released there from.

**ANSWER:** Denied. Pactiv further denies that its immediate corporate predecessor's operations

or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that

caused or contributed in any way to Plaintiffs' alleged injuries.

109. In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the Plaintiffs or to the public.

**ANSWER:** Denied. Pactiv further denies that its immediate corporate predecessor's operations

or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that

caused or contributed in any way to Plaintiffs' alleged injuries.

110.    The Defendants made no effort to warn the Plaintiffs or surrounding neighborhoods or public of the nature of the disease or cancer causing emissions from their facility.

**ANSWER:**  Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.

111.    The toxic chemicals emitted by Defendants were persistent when deposited in Plaintiffs' homes and environment so that Plaintiffs continued to be exposed to them even after the time of emission.

**ANSWER:**  Denied.  Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries.

112.    Subsequent to 1997, the Defendants have both exercised control of the facility and have both assumed responsibility for environmental remediation of the site.

**ANSWER:**  Pactiv admits that it has participated in certain remediation activities at the Facility. Pactiv denies that Pactiv or any Pactiv affiliate "exercised control" over the Facility at any time after the Facility was sold to LP in 1983.  Pactiv further denies any remaining allegations in Paragraph 112.

113.    Plaintiffs aver the toxic chemicals continue to migrate off site and continue to contaminate Plaintiffs' person and property.

**ANSWER:**  Denied.

114.    There were instances when PACTIV did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**  Denied.

115.    There were instances when PACTIV did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**  Denied.

116.    There instances when L-P did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 116 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

117.    There were times when L-P did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 117 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

118.    At all times pertinent hereto, the Defendants PACTIV and L-P by through their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, dioxin/furans, creosote and their constituents which contained hazardous substances and toxic chemicals.

**ANSWER:**  Denied.

119.    The fact that Plaintiffs were present at homes in various locations in the Florala/Lockhart area caused them to be exposed to toxic chemicals and/or hazardous substances or known or probable human carcinogens which were released or produced at Defendants' wood treatment facility in Lockhart, Alabama.

**ANSWER:**  Denied.

120.    Plaintiffs allege that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Plaintiffs to suffer physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and which will probably contribute to their death.

**ANSWER:**  Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or

contributed in any way to Plaintiffs' alleged injuries. Pactiv denies any remaining allegations contained in Paragraph 120.

121. Plaintiffs' homes and property was contaminated by the hazardous substances, which Defendants caused or allowed to be deposited in and upon Plaintiffs' homes and real property (for those Plaintiffs who are property owners). As a result, remediation and removal of the hazardous substances is required and Plaintiffs' property has been caused to decrease in value.

**ANSWER:** Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility deposited any hazardous substances in or upon Plaintiffs' homes or real property. Pactiv further denies that remediation or removal of any hazardous substances is required or that Plaintiffs' property has been caused to decrease in value. Pactiv is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 121 and therefore denies them.

122. Plaintiffs suffered from a disease that is latent and which does not manifest itself until after a lengthy period of time after initial exposure.

**ANSWER:** Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiffs' alleged injuries. Pactiv is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 122 and therefore denies them.

123. Plaintiffs did not know and reasonably had no knowledge or way of ascertaining that their disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two years of the date of the filing of this complaint.

**ANSWER:** Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 123 and therefore denies them.

124.     Plaintiffs further allege that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations based upon a computation of time which includes any time that accrued during the time defined by the parties' tolling agreement.

**ANSWER:**  Pactiv admits that it entered into a specific tolling agreement for a limited period of time applicable to some but not all of the 1,427 named plaintiffs in this and related cases.  Pactiv denies any remaining allegations in Paragraph 124.

125.     During the period of time that Defendants operated or controlled the subject facility, Defendants created, stored or disposed of toxic chemicals or hazardous substances or chemicals which were regulated by state and federal law.

**ANSWER:**  Pactiv admits that at various times during its immediate corporate predecessor's operations at the Facility before 1983, some disposal and handling activities were subject to federal and state regulatory control.  Pactiv denies any remaining allegations in Paragraph 125

126.     Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 126.

127.     Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

**ANSWER:**  Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 127.

128.     Defendants were required by law to notify surrounding communities about the release and other waste management activities that could result in personal and property exposure to their hazardous substances.

**ANSWER:** Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 128.

129.    The Plaintiffs aver that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

**ANSWER:** Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 129.

130.    Plaintiffs aver that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals, which they stored on their premises.

**ANSWER:** Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 130.

131.    Plaintiffs aver that Defendants were required by law to keep written records of any hazardous waste, which they disposed of either on-site or off-site.

**ANSWER:** Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 131.

132.    In October 2004, Defendant L-P had actual knowledge of the pending or potential litigation, which would be filed against them by Plaintiffs.

**ANSWER:**  Paragraph 132 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

133.    Upon information and belief, Plaintiffs aver that with knowledge of claims that would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material evidence and documents.

**ANSWER:**  Paragraph 133 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

134.    Plaintiffs are entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.

**ANSWER:**  Denied.  Pactiv further states that Plaintiff has made no allegations concerning any alleged spoliation of evidence by Pactiv.

135.    Plaintiffs have exhausted all efforts, including administrative remedies, to redress their damages and cause Defendants to remediate the facility, surrounding area, groundwater and Plaintiffs' homes.

**ANSWER:**  Denied.

136.    The Plaintiffs assert that they would obtain real and substantial benefit if the Court ordered Defendants to remediate and properly remove toxic chemicals from the subject facility, surround area, groundwater and Plaintiffs' homes.

**ANSWER:**  Denied.

137.    Plaintiffs are further entitled to injunctive and equitable relief, including costs of this action and attorneys' fees.

**ANSWER:**  Denied.

## COUNT ONE

### NEGLIGENCE

138.    Defendants had a duty to Plaintiffs since the commencement of their operation and continuing to the date of this lawsuit.

**ANSWER**:  The allegations in Paragraph 138 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.  Pactiv further states that its immediate corporate predecessor, prior to 1983, operated the Facility consistent with any legal duty to all Plaintiffs in this case and the related cases.

139.    Plaintiffs were foreseeable victims of the dissemination of toxic fumes and toxic waste into the air, soil and water, which evaded the properties, homes and community in which Plaintiffs lived for years.

**ANSWER**:  The allegations in Paragraph 139 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that its immediate corporate predecessor disseminated toxic fumes or waste into adjacent properties, homes, or communities.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 139 and therefore denies them.

140.    The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their operations emitted toxic and hazardous substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including the Plaintiffs.

**ANSWER**:  Denied.

141.    At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring the Plaintiffs.

**ANSWER**:  Denied.

142.    The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

**ANSWER:**  Pactiv denies that Pactiv or its immediate corporate predecessor caused or contributed to "contamination of air" surrounding the Facility or failed to exercise reasonable care.  Pactiv further denies any remaining allegations in Paragraph 142.

143.   The Defendants negligent acts or omissions proximately caused Plaintiffs to suffer physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and which will probably result in their death.

**ANSWER:**  Denied.

144.   As a direct and proximate consequence of the negligent acts and omissions of the Defendants, their agents, employees and representatives, Plaintiffs suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and which will probably result in their death.

**ANSWER:**  Denied.

## COUNT TWO

### RECKLESSNESS

145.   The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of the Plaintiffs and persons in surrounding neighborhoods.

**ANSWER:**  Denied.

146.   As a direct and proximate result of gross negligence and wanton acts of the Defendants Plaintiffs suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of life and will probably result in their death.

**ANSWER:**  Denied.

147.   The Defendants' gross negligence, reckless and wanton acts and their reckless disregard for the safety of the Plaintiffs and the public surrounding their facility entitles the Plaintiffs to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

**ANSWER**: Denied.

## COUNT THREE

## NEGLIGENCE PER SE

148.   Defendants violated the standards provided by Code of Alabama 22-27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls.

**ANSWER**:   The allegations in Paragraph 148 merely state a legal conclusion to which no response is required.   To the extent a response is required and with respect to any factual allegations in Paragraph 148, the allegations are denied.

149.   Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

**ANSWER**:   The allegations in Paragraph 149 merely state a legal conclusion to which no response is required.   To the extent a response is required and with respect to any factual allegations in Paragraph 149, the allegations are denied.

150.   Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

**ANSWER**:   The allegations in Paragraph 150 merely state a legal conclusion to which no response is required.   To the extent a response is required and with respect to any factual allegations in Paragraph 150, the allegations are denied.

151.   The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

a.   a violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type of waste other than the type waste used to establish boiler operating limits, or

b.   a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

c.   a violation of 335-3-4-.02(1) and (2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

d.   a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

e.   a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

f.   a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

g.   a violation of 335-14-7-.08 subpart H for use of an industrial boiler to dispose of hazardous wastes in a manner not allowed or exempted, or

h.   a violation of federal rules and regulations adopted by the State of Alabama.

**ANSWER:**   The allegations in Paragraph 151 merely state a legal conclusion to which no response is required.   To the extent a response is required and with respect to any factual allegations in Paragraph 151, the allegations are denied.

152.   Defendants violated the requirements and standards of the laws of the United States, including the Resource Conservation and Recovery Act, the Clean Air Act, the Clean Water Act, the Solid Waste Disposal Act and the Comprehensive Environmental Response Compensation and Liability Act, and the emergency Planning Community Right to Know Act, to the extent these laws and regulations were incorporated by reference into the state laws of Alabama.

**ANSWER:**   The allegations in Paragraph 152 merely state a legal conclusion to which no response is required.   To the extent a response is required, the allegations are denied.

153.    In particular, the Defendants violated the standards, rules and regulations of the United States Environmental Protection Agency, which were promulgated pursuant to the above-described public laws.

**ANSWER:**    The allegations in Paragraph 153 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

154.    The Defendants violated the following regulations:

a.    40 C.F.R. 266.102 by operating an individual boiler in a manner that was not in accordance with permit requirements, or

b.    40 C.F.R. 264.344 by operating a hazardous waste incinerator without permit and which would not have complied with permit requirements, or

c.    40 C.F.R. 61.05 by operating a source of hazardous pollutants without permit and in violation of any permit requirements.

**ANSWER:**    The allegations in Paragraph 154, and its subparts, merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 154, and its subparts, the allegations are denied.

155.    Plaintiffs aver that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Plaintiffs and that the Defendants' violations are evidence of a breach of duty to Plaintiffs.

**ANSWER:**    The allegations in Paragraph 155 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that the cited statutes and regulations were intended to protect a specific class of persons to which Plaintiffs' decedent belonged.  Pactiv further states that Alabama law prohibits laws enacted to protect the general public from forming the basis of a negligence per se claim.

156.    As a proximate consequence of the aforestated negligence per se, Plaintiffs suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:** Denied.

## COUNT FOUR

## INTENTIONAL TORT

157.    Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to the Plaintiffs and other persons was certain or substantially certain.

**ANSWER:** Denied.

158.    The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

**ANSWER:** Denied.

159.    Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

**ANSWER:** Denied.

160.    Plaintiffs were foreseeable victims of Defendants' wrongful acts.

**ANSWER:** Denied.

161.    As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Plaintiffs suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:** Denied.

162.    Plaintiffs further allege that the Defendants were aware that the volume of wood treatment and production at the Florala/Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes. Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

**ANSWER:** Denied.

163.    Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

**ANSWER:** Denied.

164.    The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiffs to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

**ANSWER:** Denied.

## COUNT FIVE

### NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

165.    Defendants negligently failed to properly train their employees concerning the hazards of the toxic substances, which were used, stored or disposed of at the facility.

**ANSWER:** Denied.

166.    Defendants negligently failed to properly train their employees on methods of safe handling of the toxic substances used, stored or disposed of at the facility.

**ANSWER:** Denied.

167.    Defendants negligently made a decision to burn harmful toxic chemicals and hazardous waste in a boiler that was neither designed nor intended to incinerate toxic chemicals. Defendants further carried out the aforesaid negligent decision by negligent day-to-day activities and the burning of hazardous substances in an illegal or improper manner.

**ANSWER:** Denied.

168.    As a proximate consequence of the Defendants' aforestated negligence, the Plaintiffs were caused to suffer injuries and damages.

**ANSWER:** Denied.

## COUNT SIX

### PRODUCTS LIABILITY

169.    The Defendants engaged in the sale of firewood to residents and persons in the Florala/Lockhart community.

**ANSWER:** Denied.

170.    The firewood or wood for use in home or stove fires sold by the Defendants included wood which had been treated with toxic wood treatment chemicals.

**ANSWER:** Denied.

171.    The wood sold by Defendants was burned by person's homes in the neighboring community in a foreseeable and intended use.

**ANSWER:** Denied.

172.    The Defendants were engaged in the manufacture and sale and placement of wood and wood products into the stream of commerce for commercial purposes.

**ANSWER:** Denied.

173.    The firewood sold by Defendants was defective and unreasonably dangerous when burned because it emitted toxic and hazardous waste products into the air.

**ANSWER:** Denied.

174.    As a proximate consequence, Plaintiffs suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:** Denied.

## COUNT SEVEN

### FAILURE TO WARN

175.    The Defendants failed to warn the Plaintiffs and members of the public of the dangerous health aspects related to their respective operation and the by-products, air emissions and other toxic emissions that were released. Specifically, Defendants failed to provide the Plaintiffs and other persons similarly situated and the public at large with warnings of dangerous emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

**ANSWER:** Denied.

176.   The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

**ANSWER:**  Denied.

177.   The danger also included the toxic air emissions that Defendants caused.

**ANSWER:**  Denied.

178.   Defendants further failed to provide Plaintiffs and others with knowledge as to what would be a reasonable, safe and sufficient protection, if there were any, to protect the Plaintiffs and others from harm and life threatening injuries as a result of exposure to the Plaintiffs and others by the Defendants' emissions.

**ANSWER:**  Denied.

179.   The Defendants have negligently and recklessly failed and refused to warn and advise the Plaintiffs and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered the Plaintiffs and others by invading their homes, property, breathing zone, schools and the places that they occupy.

**ANSWER:**  Denied.

180.   Despite their knowledge that their toxic emissions have contaminated the environment where Plaintiffs lived, even at the present time the Defendants have failed to warn the Plaintiffs and others.

**ANSWER:**  Denied.

181.   Defendants' failure to warn took place before, during and after the Plaintiff was exposed to Defendants' toxic emissions.

**ANSWER:**  Denied.

182.   Defendants' breach of duty to warn the Plaintiffs of the dangers proposed by their exposure to Defendants' toxic emissions are a substantial contributing cause to Plaintiffs' injuries.

**ANSWER:**  Denied.

183.   As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Plaintiffs suffered physical and emotional injuries and damages, including pain

and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiffs to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:**  Denied.

## COUNT EIGHT

### NUISANCE

184.    The acts and omissions described in this Complaint constitute a nuisance.

**ANSWER:**  Denied.

185.    The Defendants have used their facility in such a manner as to cause hurt and damage to the Plaintiffs.

**ANSWER:**  Denied.

186.    The nuisance created and maintained by the Defendants has proximately caused injury and damage to each of the Plaintiffs and includes both physical and emotional injuries and damages, pain and suffering, loss of wages, medical expense, loss of enjoyment of life and diminution of the value of the property of those Plaintiffs who own property within two miles of the facility.

**ANSWER:**  Denied.

Pactiv further pleads that any allegation not specifically admitted herein is hereby denied.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs' Complaint, and each Count therein, fails to state a claim against Pactiv upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs' claims against Pactiv are barred, in whole or in part, by the applicable statutes of limitations and/or statutes or rules of repose.

**THIRD DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

**FOURTH DEFENSE**

No act or omission on the part of Pactiv or its predecessors caused or contributed to Plaintiffs' alleged injuries.

**FIFTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of assumption of risk and informed consent.

**SIXTH DEFENSE**

Some or all of Plaintiffs' alleged injuries, damages or losses, if any, were proximately caused, or contributed to, by the negligence of the Plaintiff (or Decedent).

**SEVENTH DEFENSE**

Plaintiffs' alleged injuries, damages or losses, if any, were directly and proximately caused by the intervening, superseding acts and conduct of others over which Pactiv and its predecessors had no control, thereby precluding any recovery against Pactiv.

**EIGHTH DEFENSE**

To the extent the Complaint fails to join indispensable parties, the Complaint must be dismissed or, alternatively, this civil action should be stayed pending other appropriate relief by the Court.

**NINTH DEFENSE**

Plaintiffs' claims are barred in whole or in part in as much as Pactiv owed no legal duty to Plaintiffs as alleged in the Complaint.

## TENTH DEFENSE

Plaintiffs failed to mitigate any damages or losses that Plaintiff allegedly sustained.

## ELEVENTH DEFENSE

To the extent Plaintiffs seek punitive damages, an award of punitive damages in this case would violate Pactiv's rights to procedural and substantive due process and to equal protection of the law under the Fifth and Fourteenth Amendments to the Constitution of the United States, U.S. Const. Amends. V, XIV, § 1, the excessive fines provision of the Eighth Amendment to the Constitution of the United States, U.S. Const. Amend. VIII, and Article I, Sections, 1, 6, 13 and 15 of the Constitution of the State of Alabama, in that (a) Alabama law provides inadequate standards or criteria for the determination of whether punitive damages should be imposed; (b) the standards or criteria provided by Alabama law for the determination of whether punitive damages should be imposed are impermissibly vague and indefinite; (c) Alabama law provides inadequate standards or criteria upon which a trier of fact may rely in determining the amount of a punitive damage award; (d) the procedures pursuant to which punitive damages may be awarded permit the imposition of different penalties for the same or similar acts; (e) the procedures pursuant to which punitive damages may be awarded under Alabama law fail to provide reasonable limits on the amount of punitive damages awarded; (f) Alabama law permits the imposition of punitive damages in excess of the amount permitted or required under statutes providing civil remedies or fines for the same or similar conduct, including willful conduct; (g) Alabama law permits the imposition of punitive damages in excess of the maximum criminal penalties for the same or similar conduct; (h) Alabama law permits the imposition of punitive damages, which are penal in nature, upon a burden of proof less than the "beyond reasonable doubt" standard required in criminal cases; (i) Alabama law permits the imposition of punitive

damages that are grossly excessive and bear no rational or reasonable relationship to a defendant's conduct or culpability or to the actual harm suffered by a plaintiff; and (j) the procedures pursuant to which punitive damages may be awarded under Alabama law permit the imposition of punitive damages in an amount exceeding that reasonably necessary to accomplish any legitimate goals or policies of the State of Alabama.

### TWELVE DEFENSE

Plaintiffs' claim for recovery of punitive damages is barred by Ala. Code §§ 6-11-20 and 6-11-21.

### THIRTEENTH DEFENSE

An award of punitive damages in this case would violate Pactiv's constitutional right to due process to the extent separate, individual determinations of punitive liability and amount are not allowed as to each defendant.

### FOURTEENTH DEFENSE

Some or all of Plaintiffs' claims may be preempted by state and/or federal statutes, rules, and regulations.

### FIFTEENTH DEFENSE

Plaintiffs' allegations of fraud, misrepresentation, and deceit are not stated with the degree of particularity required by the applicable law and should be dismissed.

### SIXTEENTH DEFENSE

Pactiv is entitled to a setoff of any and all sums received by Plaintiff from any source as a consequence of the alleged injuries or damages.

## SEVENTEENTH DEFENSE

If Plaintiffs suffered legal injuries, which Pactiv denies, said injuries were not caused or contributed to by exposure to any chemical or substance for which Pactiv or its predecessors is responsible, but rather by exposure to dangerous or hazardous chemicals, fumes, products, substances, dust, etc., present at Plaintiffs' workplaces or elsewhere for which Pactiv and its predecessors is not responsible.

## EIGHTEENTH DEFENSE

To the extent it is liable to Plaintiff, which is denied, Pactiv is entitled to indemnification and/or contribution from other parties.

## NINETEENTH DEFENSE

The negligence and conduct of Plaintiffs' employers and/or labor unions are a partial or complete bar to all of Plaintiffs' claims.

## TWENTIETH DEFENSE

Plaintiffs' claims are barred in whole or in part by the application of the workers compensation statutes and regulations of the State of Alabama or of the states or jurisdictions other than the State of Alabama where Plaintiffs' alleged damages may have occurred.


WHEREFORE, having answered fully, Pactiv prays that Plaintiffs' Complaint against it be dismissed in its entirety with all costs cast on Plaintiff.

Dated:  January 17, 2007

/s/  John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Sostrin, hereby certify that on January 17, 2007, I served the foregoing **Defendant Pactiv Corporation's Answer and Affirmative Defenses to Plaintiffs' Complaint** on the following via email:

W. Eason Mitchell

Gregory A. Cade

Robert Leslie Palmer

Bernard Taylor, Sr.

Douglas S. Arnold

Orlyn O. Lockard, III

Laura Ellison Proctor

Dennis R. Bailey

R. Austin Huffaker, Jr.



/s/  Matthew C. Sostrin