7/11/2006 Devaughan, Dorothy

```
 1    IN THE UNITED STATES DISTRICT COURT
 2         MIDDLE DISTRICT OF ALABAMA
 3              NORTHERN DIVISION
 4
 5    CIVIL ACTION No.  2:06-cv-187-WKW
 6    SHERRI L. DAVIS, et al.,
 7
 8         Plaintiff(s),
 9    v.
10    TMA FOREST PRODUCTS GROUP, et al.,
11
12         Defendant(s).
13
14         DEPOSITION TESTIMONY OF:
15              DOROTHY DEVAUGHN
16
17    Commissioner:
18    Renny D. McNaughton
19    July 11, 2006
20    Andalusia, Alabama
21
22
23
```

7/11/2006 Devaughan, Dorothy

```
 1              S T I P U L A T I O N
 2         IT IS STIPULATED AND AGREED by and
 3    between the parties through their respective
 4    counsel that the deposition of Dorothy
 5    DeVaughn, may be taken before Renny D.
 6    McNaughton, Court Reporter and Notary
 7    Public, State at Large, at the offices of
 8    The Powell Law Firm, 201 East Troy Street,
 9    Andalusia, Alabama, on the 11th day of July,
10    2006, commencing at approximately 9:00 a.m.
11         IT IS FURTHER STIPULATED AND AGREED
12    that it shall not be necessary for any
13    objections to be made by counsel to any
14    questions, except as to form or leading
15    question and that counsel for the parties
16    may make objections and assign grounds at
17    the time of trial or at the time said
18    deposition is offered in evidence, or prior
19    thereto.
20         In accordance with Rule 5(d) of the
21    Alabama Rules of Civil Procedure, as
22    amended, effective May 15, 1988, I Renny D.
23    McNaughton, am hereby delivering to Bernard
```

7/11/2006 Devaughan, Dorothy

```
 1    Taylor the original transcript of the oral
 2    testimony taken the 11th day of July, 2006,
 3    along with exhibits.
 4         Please be advised that this is the
 5    same and not retained by the Court Reporter,
 6    nor filed with the Court.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

7/11/2006 Devaughan, Dorothy

```
 1                I N D E X
 2    EXAMINATION BY:          PAGE NO.
 3    Mr. Bernard              9, 212
 4    Mr. Ter Molen            203
 5
 6              E X H I B I T S
 7    Defendant's
 8    No. 1                    11
 9    No. 2                    15
10    No. 3                    21
11    No. 4                    86
12    No. 5                    100
13
```

7/11/2006 Devaughan, Dorothy

```
1          A P P E A R A N C E S
2
3    FOR THE DEFENDANT (S):
4    Bernard Taylor
5    Skip Lockard
6    Alston & Bird
7    1201 West Peachtree Street, N.W.
8    Atlanta, Georgia   30309
9    404-881-7000
10
11   Mark Ter Molen
12   Mayer, Brown, Rowe & Maw
13   71 South Wacker Drive
14   Chicago, Illinois   60606
15   312-782-7711
16
17
18
19
20
21
22
23
```

7/11/2006 Devaughan, Dorothy

```
1    FOR THE PLAINTIFF (S):
2    W. Eason Mitchell
3    The Colom Firm
4    P.O. Box 866
5    Columbus, Mississippi 39703
6
7    Gregory Cade
8    The Environmental Litigation Group
9    3529 7th Avenue South
10   Birmingham, Alabama   35255
11
12
13
14
15
16
17
18
19
20
21
22
23
```

7/11/2006 Devaughan, Dorothy

```
1              I, Renny D. McNaughton, a Court
2    Reporter of Greenville, Alabama, and a
3    Notary Public for the State of Alabama at
4    Large, acting as Commissioner, certify that
5    on this date, pursuant to the Alabama Rules
6    of Civil Procedure, and the foregoing
7    stipulation of counsel, there came before me
8    at the offices of The Powell Law Firm, 201
9    East Troy Street, Andalusia, Alabama,
10   commencing at approximately 9:00 a.m. on the
11   11th day of July, 2006, Dorothy DeVaughn,
12   witness in the above cause, for oral
13   examination, whereupon the following
14   proceedings were had:
15
16              DOROTHY DEVAUGHN,
17   being first duly sworn, was examined and
18   testified as follows:
19         MR. TAYLOR:  This will be the
20         deposition of Dorothy A. DeVaughn
21         taken pursuant to the Federal
22         Civil Practice Act and the local
23         rules of the U.S. District Court
```

7/11/2006 Devaughan, Dorothy

```
1          Middle District of Alabama
2          Northern Division.  And all -- I
3          don't know what the normal
4          stipulations are, but all
5          formalities except for notice,
6          because we do have a notice in
7          this case, all objections except
8          those to the form of the question
9          or responses of the answer are
10         reserved until later use of the
11         deposition transcript in court or
12         in the course of this litigation.
13         We would like to have the witness
14         read and sign the deposition
15         transcript.
16            MR. CADE:  That's fine.
17            MR. TAYLOR:  Are those
18         stipulations fine?
19            MR. CADE:  That's fine with us.
20            MR. TAYLOR:  Any others you want
21         to add?
22            MR. CADE:  That's fine.
23
```

1  Q  Nicole T. Lynn?
2  A  No.
3  Q  Suzie Porter?
4  A  Yes, I know a Suzie Porter.
5  Q  How do you know Ms. Porter?
6  A  Is she deceased?
7  Q  I don't know for sure.
8  A  Well, it might not be the one I'm
9  talking about.
10 Q  The Ms. Porter you know about,
11 did she have breast cancer?
12 A  Yes.
13 Q  And is that person deceased?
14 A  Yes.
15 Q  Do you recall when she passed
16 away?
17 A  No, I don't.
18 Q  Do you recall if you and
19 Ms. Porter ever discussed breast cancer
20 issues?
21 A  No.
22 Q  Do you recall where she worked?
23 A  No.

1  Q  Have you ever been, to your
2  knowledge, provided with a medical
3  evaluation or evaluated by a medical doctor
4  by the name of Dr. Berry S. Levy?
5  A  No.
6  Q  Do you know Dr. Levy?
7  A  No.
8  Q  To your knowledge, have you ever
9  been evaluated by a doctor by the name of
10 Thomas M. Nolen?
11 A  No.
12 Q  N-O-L-E-N.  Up in Columbiana,
13 Alabama?
14 A  No.
15 Q  Have you ever been in the Baptist
16 Health Center in Columbiana?
17 A  No.
18    (Whereupon, Defendant's
19    Exhibit Number 4 was marked.)
20 BY MR. TAYLOR
21 Q  Let me show you what's marked for
22 purposes of this deposition as Defendant's
23 4.  And I represent to you, Ms. DeVaughn

1  this is a history and physical sheet from
2  January 14th, 1999, from the Mizell Memorial
3  Hospital and it references that it's a
4  history and physical for you.
5  A  Yes.
6  Q  Now I need to ask you some
7  questions about it.  And if you want to take
8  a break, then we can do that.  But -- and
9  please understand, the only reason I'm
10 asking you the questions is so that I can
11 understand and we can all understand the
12 nature of your lawsuit, okay?
13 A  Okay.
14 Q  Under the history of present
15 illness, I'm going to read something to you
16 and I want you to tell me if I read it
17 properly.  That's going to be the first
18 sentence.  "The patient is a 63 year old
19 female who has known that she has a mass in
20 the inferomedial portion of her left breast
21 for at least four to five years."  Next
22 sentence, "She had not sought any attention
23 because of that, but after her daughter had

1  felt the mass in her breast, she insisted
2  that she go get evaluated, and the patient
3  went to the Covington County Health
4  Department where she was seen and she had a
5  breast exam and a pelvic and a Pap smear
6  done and a mammogram was ordered by some
7  physician named Miller, who I don't know."
8  Did I read that correctly?
9  A  Yes.
10 Q  All right.  I want to talk to you
11 about that for just a couple of minutes.  Is
12 that accurate?  Is it accurate that you were
13 aware that you had a mass in your left
14 breast for four or five years and didn't
15 obtain any medical treatment for it?
16 A  Yeah.
17 Q  Why is that, Ms. DeVaughn?
18 A  I just didn't.  I just didn't go
19 to the doctor.
20 Q  Now I can tell that you're very
21 intelligent, and so there must have been a
22 reason for that.  I wonder could you share
23 with us, please, why you wouldn't have gone

7/11/2006 Devaughan, Dorothy

1  to get medical treatment when you knew you
2  had a mass in your left breast?
3      A    Just scared.
4      Q    Well thank goodness you did
5  finally speak with your daughter. And this
6  was this summer?
7      A    Uh-huh.
8      Q    Do you want to take a break?
9      A    Uh-huh.
10     Q    Let's take a break.
11 (Whereupon, a short break was taken.)
12 BY MR. TAYLOR
13     Q    Had you had any discussions with
14 your daughter about the mass in your left
15 breast before she was able to convince you
16 -- before the time she was able to convince
17 you to go to the doctor?
18     A    Yes.
19     Q    Over what period of time, do you
20 recall when the -- ask it this way. You
21 knew about the lump in your breast for four
22 or five years. Could have been more than
23 that, more than five years?

89

7/11/2006 Devaughan, Dorothy

1      A    Could have.
2      Q    Could have. Over -- during that
3  period of time, when did you and your
4  daughter first start discussing the lump in
5  your breast?
6      A    It was beginning to bleed.
7      Q    Do you recall how long before you
8  went to the doctor that was occurring?
9      A    Not long.
10     Q    Let me take you to page 3 of the
11 document that's marked Defendant's 4. And
12 do you see under impression?
13     A    Okay.
14     Q    And I'm going to read a portion
15 of this also. I'll read the first two
16 sentences.
17     A    Okay.
18     Q    "We have a patient with a lesion
19 in her left breast in the inferomedial
20 portion which has been there four to five
21 years to the patient's knowledge, which she
22 has not sought any attention for. This type
23 of lesion, if it is malignant, has serious

90

7/11/2006 Devaughan, Dorothy

1  connotations from the basis of the size and
2  the time and the location in that it could
3  metastasize most frequently and most likely
4  to the internal mammary node lymphatics."
5  Do you recall any doctor explaining to you
6  that if you had come to the doctor earlier
7  when you first started feeling the mass,
8  that you may have been able to avoid the
9  cancer metastasizing?
10     A    No.
11     Q    No one has explained that to you?
12     A    No.
13     Q    At some point you did hire a
14 lawyer, is that correct?
15     A    No.
16     Q    Okay. Let me go back to this.
17 You had -- you received some letters from
18 Mr. Cade and his law firm notifying you of
19 the meetings at the armory. Do you still
20 have all of those letters?
21     A    I have some of them. I don't
22 know what.
23     Q    Okay. We may ask your -- can you

91

7/11/2006 Devaughan, Dorothy

1  preserve those? Because we may ask your
2  lawyer for those letters, and he will then
3  talk to you about and make a decision
4  whether he's -- what we do about that. But
5  he, I'm certain, will want you to preserve
6  them also until we get to that point.
7      A    Okay.
8      Q    I may be using the wrong term so
9  let me try it this way. After the meetings,
10 did you have any other, that is, after the
11 meetings at the armory, did you have any
12 meetings after that with Mr. Cade or
13 Mr. Mitchell or any other lawyers?
14     A    No.
15     Q    And let me be sure I'm clear,
16 because I think that you and Mr. Cade may
17 have had a discussion last night.
18         MR. CADE: Object to the form.
19     Q    I'm --
20         MR. CADE: Go ahead.
21     Q    Let me -- I withdraw the
22 question. Let me ask it this way, because I
23 want to be sure that we're communicating.

92