## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **M.C., Who Sues By and Through Her Mother** | ) | |
| **And Next of Friend, GAIL TATUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 2:06-cv-83-LES-CSC** |
| | ) | **(LEAD CASE)** |
| **vs.** | ) | |
| | ) | |
| **PACTIV CORPORATION and** | ) | |
| **LOUISIANA-PACIFIC CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SUPPLEMENTAL BRIEF
## IN SUPPORT OF JOINT MOTION TO COMPEL

Plaintiffs are attempting to assert the attorney-client privilege over several town meetings held more than two years before these lawsuits were filed. As set forth in their prior briefing on the Joint Motion to Compel (docket nos. 69, 115), Defendants are entitled to discovery concerning these meetings for three independent reasons: (1) the attorney-client privilege cannot apply to meetings that the Plaintiffs/deponents themselves described as "public" and concede were attended by third parties; (2) Plaintiffs waived any purportedly applicable privilege by invoking CERCLA § 309 and asserting that they had no knowledge or way of ascertaining that their alleged injuries were caused by facility emissions until less than two years before filing their complaints, and (3) Plaintiffs waived any purportedly applicable privilege by voluntarily disclosing significant details of the content of the meetings during prior depositions.

At the April 10, 2007 hearing, the Court requested supplemental briefing on the relevance of these meetings and the degree to which information obtained from counsel can place a plaintiff on notice of potential claims consistent with CERCLA § 309's "discovery rule." These

issues are addressed at pages 9 through 17 of Plaintiffs' 24-page supplemental brief (docket no. 229).  The remainder of Plaintiffs' brief focuses on other issues that this Court has already recognized have no bearing on the pending motion.[1]

Assuming CERCLA § 309 applies here as <u>Plaintiffs</u> assert,[2] Alabama's two-year statute of limitation would begin to run on the date a plaintiff "knew (or reasonably should have known)" that an injury was "caused or contributed to" by facility emissions.  42 U.S.C. § 9658(b)(4)(A).  As set forth below, (1) the "reasonably should have known" standard starts the limitations period once a plaintiff has mere <u>inquiry notice</u> of a potential link between chemical emissions and an alleged injury, and (2) this inquiry notice can clearly arise (in whole or in part) from comments made by an attorney.  The contents of those meetings, therefore, are directly relevant to when the statute of limitations began to run.

Defendants also briefly address below certain representations made by Plaintiffs' counsel at the April 10 hearing.  Although Mr. Palmer conceded that he did not attend the meetings at issue, he stated that (1) unnecessary third parties (*i.e.*, family members) would have been asked to leave at the outset of the meetings, and (2) there were no sign-in sheets.  The record testimony in this case directly contradicts these statements.

---

[1] Louisiana-Pacific's contact with Mrs. Joann Ezell (and the Alabama State Bar's clearance thereof) is already addressed in Defendants' Joint Motion for Protective Order (docket no. 71), and the transcript from Mr. Bailey's meeting with Mrs. Ezell speaks for itself.  Defendants will further address any such issues at an appropriate time.

[2] Defendants do not believe that CERCLA § 309 applies to these cases to begin with (let alone that the instant discovery motion hinges on its ultimate applicability), but since Plaintiffs rely on it to render their claims timely, Defendants seek this discovery to determine what the appropriate accrual date would be if section 309 did somehow apply.

I.      **The Dates, Attendance, And Content Of The Town Meetings Are Directly Relevant To The Running Of The Statute Of Limitations.**

CERCLA § 309 imposes a federal "discovery rule" for certain environmental torts involving personal injury or property damage. If CERCLA § 309 applies and a claim would otherwise accrue earlier under state law, the state statute of limitations instead begins to run on "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). This date is called the "federally required commencement date" ("FRCD").

A.      **"Inquiry Notice" Of A Potential Link Between Chemical Emissions And An Alleged Injury Starts The Limitations Period Under The FRCD.**

In applying the FRCD, courts have consistently held that a plaintiff "reasonably should have known" of a causal link between a contaminant and an alleged injury once she was placed on inquiry notice. The Southern District of Alabama, for example, explained that:

> In applying the FRCD's "reasonably should have known" standard, courts apply a two-pronged test. First, they assess whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury. If the plaintiff was on inquiry notice, then courts consider whether such inquiry would have disclosed the nature and cause of plaintiffs injury so as to put him on notice of his claim, and charge plaintiff with knowledge of facts that would have been discovered through that process. <u>The law is clear that the "reasonably should have known" test under FRCD does not permit a party to await certainty. A key point in applying the FRCD rule is that a plaintiff must be diligent in discovering the critical facts.</u> As a result, a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence.

*LaBauve v. Olin Corp.*, 231 F.R.D. 632, 659 (S.D. Ala. 2005) (citations omitted) (emphasis added). *See also Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 932 (6th Cir. 2004)

(concluding that the FRCD "does not permit a party to await certainty. To toll the limitations period because a prospective defendant denies its liability, or because the plaintiff lacks absolute certainty . . . would circumvent the purpose of the statute of limitations"). *Cf. Reichhold Chemicals, Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1126 (N.D. Fla. 1995) (noting in the context of a property damage claim that "it is not necessary that the plaintiff know the identity of every specific pollutant or contaminant, but only the fact of the contamination").

**B.      Communications From Attorneys Can Constitute "Inquiry Notice" For Purposes Of Starting The Running Of The Statute Of Limitations.**

The mere fact that information creating inquiry notice comes through a meeting with an attorney, as opposed to some other source, does not excuse a plaintiff from exercising due diligence to investigate her claims. *In re Pfohl Brothers Landfill Litigation*, 175 F.R.D. 13 (W.D.N.Y. 1997) (attached as **Exhibit A**), clearly demonstrates that point. In that case, the court compelled discovery concerning similar town meetings hosted by attorneys for plaintiffs.

At the April 10 hearing, Plaintiffs tried to distinguish the *Pfohl Brothers* opinion by arguing that it somehow recognized a distinction "between what the client knew and asking specifically about what the attorney told the client." April 10 Transcript at 22 (attached as **Exhibit B**). This is plainly incorrect. The court in *Pfohl Brothers* expressly allowed "[d]iscovery of ***precisely what was stated at the meetings***," 175 F.R.D. at 25 (emphasis added), both because the meetings were not privileged to begin with and because the plaintiffs invoked CERCLA § 309 to delay the accrual of their claims. The court noted that:

> The answers to these questions [concerning what was stated at the meetings], as well as others Defendants may formulate, are ***manifestly relevant*** to the key issue as to when sufficient relevant objective facts, upon which Plaintiffs' knowledge of the cause of their injuries is based, were first available to Plaintiffs. A fair determination of this threshold question can not be made unless Defendants are allowed to compare the objective factual

information available to Plaintiffs prior to the asserted FRCD with the new objective information presented to Plaintiffs on December 19, 1994 [by their attorneys].  As Plaintiffs refuse discovery of information imparted at the meeting based on the privilege, it is unfair to prevent Defendants access through discovery to this same information where Plaintiffs have the burden of proof to establish the FRCD as it would be to prohibit cross-examination of Plaintiffs at trial on this issue by their assertion of the privilege.  Such a selective use of the privilege could garble the truth and should not be permitted.

*Id.* (emphasis added).  *See also Wagner v. Allied Chem. Corp.*, 623 F. Supp. 1407, 1409 (D. Md. 1985) ("Plaintiffs were definitely 'put upon inquiry' about a possible causal connection between their illnesses and the chemical exposure when they consulted attorneys or medical experts who expressly told them of the possible relationship.").

Indeed, courts have compelled discovery into the content of attorney-client communications when the client places the date she first knew or should have known of potential claims at issue.  In *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269 (N.D. Ill. 1997), plaintiff claimed that although it consulted an attorney in 1995, it first learned of its potential claims when it met with an attorney in 1997.  The court compelled discovery into the content of the 1995 communications from the attorney, recognizing that "invasion of the attorney-client privilege is necessary *because the specific content of those communications is essential to the statute of limitations issue*."  *Id.* at 274-75 (emphasis added).  That evidence led to the entry of summary judgment against plaintiff.  *See* 172 F.3d 516 (7th Cir. 1999).

Similarly, in *Conkling v. Turner*, 883 F.3d 431, 434-35 (5th Cir. 1989), the Fifth Circuit held that plaintiff's reliance on the discovery rule waived the attorney-client privilege and allowed discovery concerning both the timing and "the specifics" of plaintiff's communications with counsel.  *See also Byers v. Burleson*, 100 F.R.D. 436, 438, 440 (D.D.C. 1983) (holding that discovery of attorney-client communications was "necessary" to determine when plaintiff

discovered or should have discovered claims and that plaintiff waived privilege by invoking the discovery rule); *Am. Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) ("By contending that fraud . . . was not discovered until 1973 by its counsel, plaintiff has made it appropriate" that discovery be taken concerning its attorney's work product); *Wardleigh v. Second Judicial Dist.*, 891 P.2d 1180, 1187 (Nev. 1995) ("[B]ecause [plaintiff] raised the statute of limitations issue in their complaints and because evidence needed to prove the issue at trial necessarily comes from privileged documents, fairness requires that the privilege be waived.").

In this case, Plaintiffs have made the town meetings directly relevant to the parties' claims and defenses by (1) relying on CERCLA § 309's "discovery rule" to avoid the statute of limitations, and (2) uniformly testifying, during the expedited depositions, that these meetings were the first time they learned that their injuries may have been caused by the facility. Indeed, the Plaintiffs/deponents specifically indicated that they first suspected a causal link when their attorneys explained "what some of the chemicals were that were being released into the air," stated that they "found chemicals and stuff in the air and in some of the homes," and discussed the toxicity of dioxin, creosote, and other chemicals.[3] *See* Reply at 6. Those communications would place anyone who attended the meetings on inquiry notice (if they were not already) that their medical conditions may have been caused by facility emissions, and/or that they might have property damage caused by the facility.

Importantly, information concerning the meetings and their contents is relevant and discoverable even if there is a possibility that the information imparted may ultimately be found

---

[3] This is unsurprising given the fact that, to date, not a single medical record produced by Plaintiffs contains any indication by a treating physician that the disease or condition at issue was potentially related to former facility operations.

insufficient to trigger the FRCD by itself.[4]  Under Federal Rule of Evidence 401, the test for relevancy is whether the requested information regarding the meetings would have "any tendency to make the existence" of inquiry notice "more or less probable than it would be without the evidence."  This standard is easily met here.[5]  At the April 10 hearing (Transcript at 24), Plaintiffs suggested that the meetings might not be dispositive of the FRCD and that determining whether any particular information creates notice of potential claims is a "fact-based question" hinging on "whether or not there is sufficient information there."  This is exactly why this discovery is necessary.  A determination cannot be made without having these facts.

Though acknowledging the need to assess these facts in applying the FRCD, Plaintiffs nonetheless refuse to disclose key details of the meetings, including (1) the exact dates, (2) everyone who attended, and (3) what exactly was conveyed to Plaintiffs by their attorneys and any experts.  These are the very facts that are necessary, either for the Court in resolving a summary judgment motion or for the jury, to determine when each Plaintiff "knew (or reasonably should have known) that the personal injury or property damages . . . were caused or

---

[4] In *Ex Parte Wilkerson*, 795 So. 2d 663 (Ala. 2000), the case cited by Plaintiffs during the April 10 hearing, the court applied the FELA statute of limitations and found a fact issue for trial because the plaintiff did not yet have any disease when he first met with an attorney and received a medical examination.  In this case, Plaintiffs claim actual manifest injuries.  For example, Sherri Davis was diagnosed with breast cancer in 1998.  Dorothy DeVaughn was diagnosed with breast cancer in 1999.  Deborah Reynolds was diagnosed with leukemia in 1992.  Various Plaintiffs also claim actual property damage resulting from facility operations.

[5] In view of other issues raised at the April 10 hearing, Defendants note briefly that attorney statements at the meetings are not hearsay as they certainly would not be used for the truth of the matter asserted.  Instead, as with any issue of "notice," the statements are fully admissible to show the effect on the listeners.  *See, e.g., United States v. Gold*, 743 F.2d 800, 818 (11th Cir. 1984) (out-of-court statements are admissible to prove notice).  Moreover, even assuming that any statements are somehow hearsay, discovery is not limited to admissible evidence, as Federal Rule of Civil Procedure 26(b)(1) broadly allows discovery that is "reasonably calculated to lead to the discovery of admissible evidence."  It is difficult to imagine anything *more* likely to lead to relevant, admissible evidence than discussions at the meetings about the very facts and circumstances supposedly giving rise to Plaintiffs' claims.

contributed to by the hazardous substance or pollutant or contaminant concerned." The Motion to Compel should therefore be granted.

## II.      Third Parties Were Not Asked To Leave The Town Meetings.

In addition to the foregoing, Defendants are compelled to address certain statements at the April 10 hearing about the nature of the town meetings. In trying to explain how the meetings were not open to the "public," Plaintiffs' counsel claimed that third parties would typically have been asked to leave the meetings at the outset:

> The Court:    Well, so if a husband and wife showed up at the meeting, and the husband was the only one who was potentially a client, the husband is the only one you let in?
>
> Mr. Palmer:    That's right. What we did was, we, at the very outset of the meeting – <u>now I was [not] at these meetings</u>, but I have been at a lot of our meetings that we do, and the way we do this is that we announce at the very outset, "If you're not here to consult us, you know, we're here to talk about potential litigation, if you're not here to consult us in connection with possibly hiring us for this litigation, then you're not welcome to attend."

April 10 Transcript at 3-4 (emphasis added).

This assertion plainly does not satisfy Plaintiffs' threshold burden to establish the existence of the privilege in the first place. As an initial observation, counsel admittedly was not at any of the meetings and therefore cannot make any firsthand representations to the Court. Further, even assuming counsel attempted to protect the privilege by asking persons not present for consultation purposes to leave, there is absolutely no information before the Court about whether those people actually did leave.

More importantly, however, Plaintiffs' counsel's speculation ignores direct testimony by the Plaintiffs/deponents that third parties <u>did</u> in fact attend the meetings. *See* Motion to Compel

at 4, 8 (Kandy Creech attended meetings with her sister, brother, grandmother, and aunt; Deborah Reynolds attended meetings with seven family members including her mother and siblings); Reply at 3-4. Plaintiffs have not even attempted to show that all of these guests were either necessary third parties or clients themselves. Moreover, upon questioning from her own attorney, Sherri Davis openly admitted that there were other people at the meetings who were not clients, at which point Plaintiffs' counsel withdrew his privilege objection. *See* Motion to Compel at 5-6. Plaintiffs' belated and unsubstantiated attempt to recast the meetings as open only to clients must be rejected.

## III.     **Plaintiffs' Assertion That Sign-In Sheets Do Not Exist Is Contrary To Sworn Testimony And Prior Representations.**

Defendants are also compelled to clarify the record concerning sign-in sheets at the town meetings. On April 10, Plaintiffs' counsel indicated that sign-in sheets do not exist. When allowed to testify on the subject, however, the Plaintiffs/deponents testified that there were sign-in sheets at the meetings.

Plaintiff Sandra Cobb was asked in her initial "discovery" deposition: "Do you remember signing any sheets or pieces of paper at that [first] meeting?" She plainly answered: "Just a sign-in sheet." *See* Cobb Discovery Dep. at 124: 21-23 (attached as **Exhibit C**). But when asked during her "preservation" deposition whether "there was a sign-in sheet at the first meeting you attended at the Armory," Mr. Palmer instructed the witness not to answer. *See* Cobb Preservation Dep. at 52: 11-16 (attached as **Exhibit D**).

Plaintiff Dorothy DeVaughn's testimony is similarly clear. During her initial "discovery" deposition, she testified that she thought she signed in at the meetings but was not sure. She later provided Defendants with a corrected errata sheet <u>specifically reconfirming that she did sign in at</u>

the meetings.  *See* DeVaughn Discovery Dep. at 57: 15-20 (attached as **Exhibit E**).  As she explained at her "preservation" deposition:

> Q:     Okay.  Let's look at number fifteen.  It says:  Question: Okay.  Do you recall signing a list or anything at any of the meetings where you put your name and your address and your phone number on the list?  Answer:  I think so.  I'm not sure.  I'm not sure – I'm not for sure.  What about that question and that answer is – needed to be corrected?
>
> A.     Well, that one needed to be corrected because we did sign a list as we was going in the door.
>
> Q:     Okay.
>
> A:     We put our name and address on –
>
> Q:     On a list?
>
> A:     On it.

*See* DeVaughn Preservation Dep. at  72: 19-23, 73: 1-12 (attached as **Exhibit F**).

Not only does Plaintiffs' new position that no sign-in sheets exist contradict the foregoing testimony, but it contradicts information previously provided by Plaintiffs' counsel during the meet-and-confer process.  By letter dated August 4, 2006 (attached as **Exhibit G**), Defendants requested copies of any sign-in sheets, agendas, hand-outs, presentations, or any audio or video recordings of the meetings themselves.  During a subsequent phone call with Mr. Palmer and Mr. Cade on August 7, 2006, Plaintiffs' counsel represented that there were no agendas, hand-outs, presentations, or recordings of the meetings, but stated that they did have sign-in sheets.

At that time, Plaintiffs' counsel gave two reasons for not producing the sign-in sheets.  First, they stated that the sheets were in counsel's possession, not the Plaintiffs/deponents, and were therefore not subject to discovery.  Second, they stated that the sign-in sheets constituted

13377621.1                                    10

attorney work product.  Defendants were not aware of any authority that would support either position and therefore requested the sign-in sheets via the Motion to Compel.

Thus, during discussions with counsel at the depositions themselves and subsequent meet-and-confer attempts, Plaintiffs' counsel made it abundantly clear that they had sign-in sheets but considered them privileged.  Moreover, Plaintiffs' response to the Motion Compel contains no suggestion whatsoever that no record was kept of which individuals attended the town meetings.  Defendants were therefore surprised on April 10 to hear, for the first time, that the sheets "do not exist."  Defendants reiterate their request for documentation of attendance at the meetings, whether in the possession of counsel or individual Plaintiffs, and regardless of whether Plaintiffs' counsel characterizes such documentation as "sign-in sheets" or "otherwise."

## CONCLUSION

Defendants seek a fair opportunity to adequately probe Plaintiffs' critical allegation that they "did not know and reasonably had no knowledge or way of ascertaining that [their] disease was caused by toxic chemicals" until within two years of the date each complaint was filed.  A full-scale evidentiary hearing is not required to resolve these privilege issues.  The deposition testimony already reveals that the town meetings were public, which precludes any claim of privilege as to any of the attendees, and Plaintiffs have not made even a *prima facie* showing that the privilege applies.  Moreover, the two remaining grounds for granting Defendants' motion (implied waiver and waiver by voluntary disclosure) present purely legal issues for the Court to resolve.  Defendants therefore request that the Court:

(1)     compel plaintiffs Deborah Reynolds, Kandy Creech, Dorothy DeVaughn, and Sandra Cobb to reappear for deposition and answer the questions posed to them at their videotaped preservation depositions and any follow-up questions about the public meetings,

(2)     compel the production of any documents relating to the public meetings, including letters inviting residents to (or advising them of) the meetings and sign-in sheets,

(3)     compel all five deposed plaintiffs (including Sherri Davis) to reappear for deposition to answer questions concerning any of the documents that were withheld by Plaintiffs prior to their original depositions,

(4)     compel Plaintiffs and their counsel to identify the specific dates of the meetings and the dates on which Plaintiffs signed retention agreements with Plaintiffs' counsel,

(5)     compel Plaintiffs to produce a full privilege log identifying all documents in Plaintiffs' possession, custody, or control (including documents possessed by Plaintiffs' counsel) for which a claim of privilege has been asserted, and

(6)     award any further relief the Court deems just and proper.

Dated:  April 30, 2007

/s/  Mark R. Ter Molen
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

13377621.1

/s/  Bernard S. Taylor
Bernard S. Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific
    Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2007, I filed the foregoing via the CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

/s/  Matthew C. Sostrin
Of Counsel