```
 1                IN THE UNITED STATES DISTRICT COURT
                                 FOR
 2                  THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5
    MC, etc.
 6
           vs.                         CIVIL ACTION NO.
 7                                     2:06-CV-83
    PACTIV CORP., et al.
 8

 9

10

11              ORIGINALLY FTR DIGITALLY RECORDED
                 AND THEN STENOGRAPHICALLY TAKEN
12                  AND TRANSCRIBED THEREAFTER

13

14
                     JOINT MOTION TO COMPEL
15

16

17                    *  *  *  *  *  *  *  *  *

18

19

20

21  BEFORE:         The Hon. Charles S. Coody

22  HEARD AT:       Montgomery, Alabama

23  HEARD ON:       April 10, 2007

24  APPEARANCES:    Robert Palmer, Esq.
                    mark Termolen, Esq.
25                  Bernard, Taylor, Esq.
```

EXHIBIT B

**MITCHELL P. REISNER, CM, CRR - (334) 265-2500**
Official U. S. District Court Reporter
TOTAL COMPUTERIZED LITIGATION SUPPORT & INSTANT TRANSLATION

```
 1   privilege applies at a public meeting.
 2              MR. PALMER:  Well first, Your Honor, it was
 3   not a public meeting.  There were no public meetings.
 4   In our response we've attached --
 5              THE COURT:  Well, was everyone there a client?
 6              MR. PALMER:  They were either clients or
 7   prospective clients.  They were not permitted to come
 8   into the meetings unless they were there for the purpose
 9   of consultation to determine whether or not they wanted
10   the Environmental Litigation Group to represent them in
11   connection with a case against these defendants.  And it
12   is clear under Alabama law, which applies, that the
13   privilege is not waived simply because you have two or
14   more people who are jointly represented or potentially
15   jointly represented by the same lawyer.
16              THE COURT:  Plainly, that's not a -- not
17   everybody -- Well, so if a husband and wife showed up at
18   the meeting, and the husband was the only one who was
19   potentially a client, the husband is the only one you
20   let in?
21              MR. PALMER:  That's right.  What we did was,
22   we, at the very outset of the meeting -- now I was at
23   these meetings, but I have been at a lot of our meetings
24   that we do, and the way we do this is that we announce
25   at the very outset, "If you're not here to consult us,
```

```
 1   you know, we're here to talk about potential litigation,
 2   if you're not here to consult us in connection with
 3   possibly hiring us for this litigation, then you're not
 4   welcome to attend."
 5           If people leave sometimes, other than the ones
 6   who stay, are -- we deem them to be considering hiring
 7   us.  Whether they ultimately do or not, whether we
 8   accept them or not.
 9           THE COURT:  At that point that's really sort
10   of immaterial.
11           MR. PALMER:  In addition, just to make sure
12   the record is clear, the only letters that have ever
13   been sent, have been sent to individuals who actually
14   did sign either contract or signed something indicating
15   they wanted to be represented.
16           THE COURT:  There was nothing distributed at
17   the meeting?
18           MR. PALMER:  Nothing distributed at the
19   meetings.  There are -- My understanding is, there is no
20   sign-in sheets of any sort.  They're talking about
21   sign-in sheets, there were multiple meetings.  The
22   subsequent meetings, people who indicated they wanted to
23   be represented were sent letters.  And only those
24   individuals who had already indicated a desire to be
25   represented were sent letters.
```

```
 1   they want to about how they learned these facts at these
 2   facts of these meetings, but that distinction is a
 3   critical distinction, even under the In re:  Pfohl case,
 4   which itself acknowledged that there's a distinction in
 5   the law concerning the attorney/client privilege between
 6   what the client knew and asking specifically about what
 7   the attorney told the client.  We have no problem with
 8   them asking questions for the statute of limitations
 9   purpose.  We said that in our response.  We said that
10   during the depositions about what these plaintiffs
11   themselves knew, they can explore that complete.  We
12   have no problem with that.  I don't want them asking
13   questions --
14             THE COURT:  I understand.
15             What is your view about when the statute
16   begins to run under these circumstances?
17             MR. PALMER:  Under Section three oh nine, the
18   statute begins to run when the victim knows or should
19   have known that he had an injury that was caused by
20   exposure to the defendants' product.  And it's a -- it's
21   a -- there is ample case law, I don't have it handy
22   right here, but there is case law that that indicates
23   it's not just knowledge of the injury, it's not just
24   knowledge of the exposure, but it's knowledge that links
25   the two.
```

1   determine whether or not there is sufficient information
2   there.  Whether the plaintiff had enough information to
3   know -- whether the plaintiff knew or should have known.
4           I think for a court to make the determination
5   whether or not the plaintiff knew or should have known
6   that there's going to have to be just like any summary
7   judgment type issue, there's going to have to be so much
8   evidence that's going to be clear as a matter of law.
9           THE COURT:  Well, if a lawyer says your
10  exposure caused the same injury, is that sufficient?
11          MR. PALMER:  Well, typically lawyers don't say
12  that.  Typically, mass tort lawyers say we will look
13  into this for you.  You know, if you have an injury --
14          THE COURT:  Well, if the lawyer says there is
15  this possibility, if the lawyer says all of the studies
16  have been done that collectively shows there is a
17  probability that a disease such as you may have can be
18  caused by -- now those are non-committal statements, if
19  you will.  And we'll be happy to look into that for you,
20  but is the possibility sufficient?
21          MR. PALMER:  I don't think it is.  And I don't
22  have a case I can cite off the top of my head under
23  three oh nine, but just to give you an analogous case,
24  it's an Alabama case under the F. E. L. A. which also
25  has a discovery statute so it's very similar to this,