IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GAIL BEDSOLE TATUM, as Mother and Administratrix of the Estate of Melanie Chambers, a Deceased Minor Child,<br><br>Plaintiff,<br><br>vs.<br><br>PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 2:06-cv-83-LES-CSC<br>) (LEAD CASE)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT LOUISIANA-PACIFIC'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Louisiana-Pacific Corporation ("LP") respectfully requests that Plaintiffs' Motion for Partial Summary Judgment (dkt. no. 248) ("Motion") be denied in its entirety. Plaintiffs assert four separate arguments in support of their Motion:

1. Plaintiffs claim that partial summary judgment should be entered as a sanction for LP's "failure" to produce certain insurance settlement agreements in purported violation of Fed. R. Civ. P. 26(a)(1)(D). *See* Pl. Mot. at 1-4.

2. Plaintiffs claim that LP's prior lawsuit against its insurers seeking coverage for certain alleged environmental liabilities at numerous sites, including the site at issue here, constituted an advance admission of liability to Plaintiffs for their alleged injuries. *Id.* at 4-7.

3. Plaintiffs claim that certain allegations in LP's complaint against its insurers, as well as LP's responses to interrogatories in that case, constituted an automatic admission of liability for Plaintiffs' individual claims in this litigation. *Id.*

4.  Plaintiffs claim that LP's receipt of insurance proceeds as a result of the settlements with its insurers bars LP from denying liability to Plaintiffs under the doctrine of equitable estoppel. *Id.* at 6-7.

As shown below, all four of these arguments are completely meritless. Moreover, Plaintiffs' first ground for partial summary judgment – as a sanction for fictitious discovery "abuse" – is so "[u]nwarranted by existing law" and so lacking "a nonfrivolous argument for the extension [or] modification of existing law" that the Court should award LP all attorneys' fees, costs and expenses incurred in responding to this portion of Plaintiffs' Motion.[1] *See* Fed. R. Civ. P. 11(b)(2).

**FACTS**

On December 22, 2006, LP identified its insurance agreements "under which any [insurer] may be liable to satisfy part or all of a judgment" in this litigation pursuant to Fed. R. Civ. P. 26(a)(1)(D). On January 22, 2007, Plaintiffs' counsel, Mr. Eason Mitchell, requested an opportunity to inspect the documents that LP identified in its Initial Disclosures disclosures, including these insurance agreements. *See* Exhibit A hereto. This inspection occurred at the offices of LP's counsel on February 14, 2007. Neither Mr. Gregory Cade nor Mr. Robert Palmer participated.

More than two months after the inspection, Mr. Mitchell requested that LP produce "any documents that affect liability under" LP's insurance policies, including

---

[1] Only two of Plaintiffs' counsel of record signed this Motion – Mr. Gregory Cade and Mr. Robert Palmer. Therefore, it is unclear whether Mr. Eason Mitchell, who is also counsel of record for Plaintiffs, was a participant in the Motion. If not, then LP's request for fees, costs and expenses is directed only to Mr. Cade and Mr. Palmer.

LEGAL02/30453408v5

any settlement agreements.[2] *See* Pl. Mot., Exh. B. Because the plain language of Rule 26(a)(1)(D) does not require such production, LP's counsel asked for the legal basis for Mr. Mitchell's request. Pl. Mot., Exh. C. LP's counsel subsequently (i) provided Plaintiffs' counsel with legal authority directly on point confirming that insurance settlement agreements do <u>not</u> fall within the initial disclosure requirements of Rule 26(a)(1)(D), and (ii) again asked Plaintiffs' counsel to provide legal support for their request. *See* Pl. Mot., Exh. E.

LP never received a response. Instead, Plaintiffs filed a "Motion for Partial Summary Judgment" almost a month later. To date, Plaintiffs have not served LP with a Rule 34 request for any insurance settlements (or any other insurance-related documents).[3]

**ARGUMENT AND CITATION OF AUTHORITY**

**I.    Rule 26(a)(1)(D) Does Not Require A Party to Produce Insurance Settlement Agreements.**

Contrary to Plaintiffs' misconstruction, the plain terms of Fed. R. Civ. P. 26(a)(1)(D) only require disclosure of "any <u>insurance agreement under which any [insurer] may be liable</u> to satisfy part or all of a judgment…" *Id*. (emphasis added). Plaintiffs do not dispute that LP produced copies of potentially applicable insurance

---

[2] Mr. Mitchell made a similar request prior to his inspection. *See* Pl. Mot., Exh. A. However, Mr. Mitchell subsequently requested that the documents identified in LP's Rule 26(a) disclosures be made available for inspection so that Plaintiffs could "identify those items which should be copied" given the associated copying costs. *See* Exhibit A, page 2.

[3] LP recognizes that a very different analysis would apply if Plaintiffs were seeking insurance settlements via a request for production of documents under Fed. R. Civ. P. 34. To date, Plaintiffs have not served such a request. If and when Plaintiffs do so, LP will respond appropriately and consistent with its obligations under the Federal Rules.

agreements. *See* Pl. Mot. at 1. Instead, Plaintiffs argue that Rule 26(a)(1)(D) also obligates LP to produce (1) "any agreements 'that change or modify responsibility under [the] insurance agreements'"; and (2) "any documents that affect liability under those insurance policies," including but not limited to any settlement agreements with its insurers, which Plaintiffs contend are "de facto amendments" of the policies. Pl. Mot. at 2.

Plaintiffs do not provide a shred of legal authority for their interpretation of Rule 26(a)(1)(D). This is because Plaintiffs' interpretation contravenes case law directly on point. Indeed, LP referred Plaintiffs' counsel to *Excelsior College v. Frye,* 233 F.R.D. 583 (S.D. Cal. 2006) long before Plaintiffs filed their Motion. *See* Pl. Mot., Exhs. C, E.

In *Excelsior College,* the sole issue before the court was the proper scope of Rule 26(a)(1)(D). Plaintiffs in that case filed a motion to compel (rather than a motion for sanctions/partial summary judgment), arguing that the Rule 26(a)(1)(D) requires production of "all agreements relating to insurance" and not just the policies themselves. 233 F.R.D. at 585. Concluding that plaintiffs' interpretation was wholly unsupported by the plain language of the rule, relevant drafting history, and the case law, the court denied plaintiffs' motion. *Id.* at 585-86. Specifically, the court found that

> [a] plain reading of Rule 26(a)(1)(D) indicates that it is clearly designed for parties to produce documentation of any insurance policies that give rise to an insurer's obligation to indemnify or hold its insured harmless for a judgment. Likewise, the legislative history supports this interpretation ... The Advisory Committee Notes to the 1993 Amendments indicate the drafters intended the rule to continue to apply to insurance policies. Specifically, the notes… "provide that <u>liability insurance policies</u> be made available for inspection and copying" … Case law does not support an extension of the requirements of Rule 26(a)(1)(D) beyond its plain meaning.

*Id.* at 585 (emphasis in original).  Thus, the court held that plaintiffs' request for any releases or settlements under the insurance policy at issue "clearly exceeds the scope of Rule 26(a)(1)(D)."  *Id.* at 586.  *See also Native Am. Arts, Inc. v. Bundy-Howard, Inc.,* No. 01C1618, 2003 WL 1524649 (N.D. Ill. Mar. 20, 2003)(Rule 26(a)(1)(D) only entitles plaintiff to the insurance policies themselves).

Plaintiffs fail to distinguish the *Excelsior College* case (because they cannot), and the failure to try is unsurprising.  LP expressly asked Plaintiffs' counsel, <u>on two separate occasions prior to Plaintiffs' Motion</u>, to provide legal authority supporting Plaintiffs' claim that Rule 26(a)(1)(D) extends to the insurance settlement agreements or other documents that Plaintiffs purportedly seek.  *See* Pl. Mot., Exhs. C, E.  Plaintiffs never provided any authority, or even a putative reason why existing law – as summarized in *Excelsior College* – should be changed.  Nor do Plaintiffs offer any authority or explanation in their Motion.

Plaintiffs' Motion likewise neglects to mention Plaintiffs' failure to (1) serve LP with a request for production of documents pursuant to Rule 34, and (2) take the requisite first step of filing a motion to compel discovery <u>prior</u> to filing a motion for sanctions.  It is telling that to date, Plaintiffs have still not served LP with a single discovery request for the insurance documents that they contend LP should be sanctioned for not producing.

**II.  LP is Entitled to Its Attorneys' Fees, Costs, and Expenses Incurred in Responding to Plaintiffs' Fictitious Claim of Discovery "Abuse."**

Although LP is generally reluctant to request fees and expenses from opposing counsel, Plaintiffs' request for partial summary judgment as a sanction for LP's failure to produce insurance settlement agreements under Rule 26(a)(1)(D) is so clearly "[un]warranted by existing law" and so lacking "a nonfrivolous argument for the

5

extension [or] modification… of existing law" as to warrant the imposition of sanctions under Fed. R. Civ. P. 11(b)(2).  *See, e.g., Rogers v. Naccio,* No. 06-13712, 2007 WL 2002594, at *7 (11th Cir. July 12, 2007)(affirming sanction pursuant to Rule 11(b)(2) where party "provided no support for their allegation"); *Bullard v. Downs,* 161 Fed. Appx. 886, 887-88 (11th Cir. 2006)(affirming award of attorneys fees pursuant to Rule 11(b) where party conceded that position was barred by "clear and well-entrenched" law); *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 440 F. Supp. 2d 1256, 1266-67 (N.D. Ala. 2006)(imposing sanctions where plaintiffs' motion was "based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law" and "needlessly increased the cost of litigation.").

LP's request for attorneys' fees, costs and expenses is further justified by the fact that Plaintiffs, although claiming LP's Rule 26 disclosures were deficient, still have not served LP with a discovery request for the information that they claim LP improperly failed to produce.  Indeed, it appears that Plaintiffs' request for a discovery "sanction" is nothing more than a thinly-veiled attempt to avoid their burden of establishing liability based on record evidence and applicable law.  For all of these reasons, LP respectfully requests that this Court order Plaintiffs' counsel to pay LP's attorneys' fees, costs, and expense incurred in responding to this portion of Plaintiffs' Motion.

**III.    LP's Prior Insurance Coverage Suit Has No Bearing Whatsoever on Plaintiffs' Claims.**

    A.    <u>The Insurance Coverage Case is Irrelevant.</u>

LP has never disputed that it previously filed coverage claims against its insurers, including the claims described in LP's Complaint in *Ketchikan Pulp Co. v. Ace Indem.*

6

*Ins. Co.*, United States District Court, District of Alaska, Case No. A01-223 (the "Insurance Coverage Complaint," attached as Exh. F to Pl. Mot.). That Complaint sought damages "for breach of contract, tortious breach of the implied covenant of good faith and fair dealing."[4] *See* Pl. Mot., Exh. F, at ¶ 1. Thus, on its face, the Insurance Coverage Complaint was plainly limited to contractual claims between LP and its insurers.

Further, the claims in the Insurance Coverage Case relating to the Lockhart facility were based upon the Alabama Department of Environmental Management's ("ADEM's") claim for remediation of certain areas of the facility itself. As such, the Insurance Coverage Case was completely irrelevant to future (and then unknown) personal injury and property damage claims asserted by third-parties (such as Plaintiffs here). *See Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1222 (11th Cir. 2000) ("[c]ontracts bind only named parties unless both parties to the contract clearly express an intent to benefit a third party"); *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990)("[w]here the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon, even though such third person might derive some incidental or consequential benefit from its enforcement"); *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.*, 619 So.2d 1328, 1329 (Ala. 1993) ("[a] party claiming to be a third-party beneficiary of a contract must

---

[4] Most of those policies do not have even theoretical relevance to Plaintiffs' claims. LP did not acquire the Lockhart facility until 1983. *See* Third Amended Complaint (dkt. no. 63-1) at ¶ 40; Pl. Response to Def. Mot. to Dismiss (dkt. no. 21-1) at 1, 19. Thirteen of the fifteen policies under which LP sought coverage in the Insurance Coverage Case were issued prior to 1983. *See* Pl. Mot., Ex. F, ¶¶ 12-16. Thus, as Plaintiffs are aware, the vast majority of policies at issue in the Insurance Coverage Case expired long before LP ever acquired the Lockhart facility.

establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party").

> B. Asserting a Contractual Right to Coverage Under an Insurance Policy Is Not an Admission of Liability.

Setting aside that the Insurance Coverage Case is irrelevant to Plaintiffs' claims, LP's prior assertion of a coverage claim against its insurers cannot be an admission of liability for the underlying claims in any event. Plaintiffs' argument to the contrary necessarily turns on the admissibility of the liability insurance policies at issue. A federal court exercising diversity jurisdiction analyzes the admissibility of evidence under the Federal Rules of Evidence. *Peat, Inc. v. Vanguard Research, Inc.,* 378 F.3d 1154, 1159 (11th Cir. 2004)("[a]lthough Alabama law controlled the substantive issues in this diversity action, 'the admissibility of evidence in federal courts is governed by federal law,' *Borden, Inc. v. Fla. East Coast Ry. Co.,* 772 F.2d 750, 754 (11th Cir. 1985)."). *Accord Craig v. F.W. Woolworth Co.,* 866 F. Supp. 1369, 1372 (N.D. Ala. 1993), *aff'd,* 38 F.3d 573 (11th Cir. 1994).

Here, Plaintiffs claim that asserting a contractual right to insurance coverage constitutes an admission of liability violates Federal Rule of Evidence 411. Rule 411 clearly prohibits "[e]vidence that a person was or was not insured against liability." *Id.* Such evidence is inadmissible for "the issue of whether the person acted negligently or otherwise wrongfully." *Id. See also Morrissey v. Welsh Co.,* 821 F.2d 1294, 1305 (8th Cir. 1987)("[e]vidence that a person was or was not insured against liability is not admissible").[5]

---

[5] This result is the same even if this Court determines that Alabama state law potentially applies to this issue. Alabama courts have repeatedly held that "[i]t has long been the

8

Indeed, Plaintiffs' position – if adopted – would turn the insurance coverage world on its head. Under Plaintiffs' reasoning, any person or entity would be deemed legally liable for any current or future third-party claim (whether known or unknown) once the claim is tendered to an insurance carrier. Thus, any defendant would be forced into the untenable position of choosing either to (1) defend even a meritless claim without the benefit of any defense or potential indemnification from its insurers, or (2) tender the claim and, per Plaintiffs' interpretation here, automatically admit legal liability. At its absurd conclusion, Plaintiffs' argument, if adopted, would automatically render an insurer liable for the underlying claim by virtue of the insured's supposed admission in tendering the claim. This completely illogical paradigm, which is unsupported by any existing law or reasonable basis for modifying existing law, further warrants denial of Plaintiffs' Motion.

In a case with strong factual similarities to the instant matter, the Alabama Supreme Court reaffirmed the general rule that settlement evidence is inadmissible. *See Harris v. M&S Toyota, Inc.,* 575 So. 2d 74 (Ala. 1991). In *Harris,* used car purchasers sued the dealer from whom they purchased a car. *Id.* at 75. After a verdict in favor of the purchasers, the dealer moved for a new trial based on the admission of evidence concerning the prior settlement of an unrelated fraud claim. *Id.* The Alabama Supreme Court affirmed the granting of a new trial, holding that "evidence of an offer of settlement is generally inadmissible as proof of an admission against the party making the offer." *Id.* at 79. The same logic applies here. Plaintiffs seek to use the previous

---

general rule … that the admission of evidence…indicating or suggesting…that a civil defendant is indemnified in any degree or fashion by an insurance company is prejudicial and constitutes reversible error." *Lowery v. Ward,* 662 So. 2d 224, 225 (Ala. 1995). *See also Ex parte Proactive Ins. Corp.,* 668 So. 2d 512, 512-13 (Ala. 1995)(citing *Lowery*).

LEGAL02/30453408v5

settlements of unrelated claims between LP and its insurers in February 2004 as an admission of liability by LP for the claims in this litigation. Plaintiffs' Motion seeks an impermissible misuse of the prior settlements and should be denied.

Plaintiffs' reliance on *Cochran v. Watson*, 628 So. 2d 407 (Ala. 1993) is completely misplaced. *Cochran* involved an alleged admission against interest at the scene of the automobile accident giving rise to the lawsuit. *Id*. at 408-09. The court held that "the evidence in this case does not support the contention that any payments made…constituted an offer to compromise; rather, they are inextricable from offered evidence that Cochran…admitted liability and, therefore, [was] making payments in light of that admission." *Id.* In contrast, Plaintiffs here fail to present any evidence that LP's settlement with its insurers constituted an admission of liability. Plaintiffs cannot present such evidence for the simple reason that the Insurance Coverage Case was filed years before Plaintiffs initiated their lawsuits. In sum, the assertion and settlement of a contract-based coverage claim by an insured against its insurer is in no way an admission of liability on the merits of the underlying claim.

    C.    <u>Alleged Judicial Admissions in Prior Litigation Are Inadmissible.</u>

In federal court, judicial admissions are usually binding only "for the purpose of the case in which the admissions are made, not in separate and subsequent cases." *Raiford v. Abney,* 695 F.2d 521, 523 (11th Cir. 1983). *See Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968); *American Tissue, Inc. v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F.Supp.2d 79, 96 (S.D.N.Y. 2004).[6] Plaintiffs were not participants in the Insurance Coverage Case. Thus, while none of the alleged "admissions" in the Insurance Coverage Case relate to Plaintiffs' claims for the reasons discussed further below, Plaintiffs' hair-splitting arguments over the language used in LP's Insurance Coverage Complaint and interrogatory responses cannot support Plaintiffs' Motion in any event.

      D.    LP Never Admitted Liability for *These* Plaintiffs' Claims, Even Assuming its Insurance Claims Somehow Constituted an Admission.

Although any "admissions" in a prior case cannot apply to Plaintiffs' claims in this litigation, even a cursory reading of the Insurance Coverage Complaint and interrogatories confirms that there was no "admission" of liability in the Insurance Coverage Case for these Plaintiffs' claims.

      1.    *The Complaint.*

First, LP's claims in the Insurance Coverage Case sought payment under various insurance policies for "defense costs, settlements, judgments, and clean-up costs" incurred (i) through 2001, (ii) in connection with 47 different sites, (iii) as a result of "<u>alleged</u> environmental liabilities." *See* Pl. Mot., Exh. F, at ¶¶ 17-19. LP's claims related to clean-up costs and expenditures incurred at the time the Insurance Coverage Complaint was filed, not the claims Plaintiffs make here.

---

[6] Even if this court determines that Alabama state law applies to this issue, Alabama courts have similarly held that judicial admissions in pleadings and discovery responses in a prior case are admissible in subsequent proceedings only if the prior pleadings are inconsistent with the party's current position. *See, e.g., City of Gulf Shores v. Harbert Int'l,* 608 So. 2d 348, 354 (Ala. 1992); *Yates v. Christian Benevolent Funeral Homes,* 356 So. 2d 135, 137 (Ala. 1978).

Second, Plaintiffs selectively and misleadingly quote from the Insurance Coverage Complaint. The Complaint merely indicates that certain policies (i) entitled LP to liability coverage as a contractual matter, *id.* at ¶¶ 24, 31, (ii) created a duty for insurers to indemnify LP for sums which LP <u>could become</u> legally obligated to pay, *id.* at ¶¶ 25, 32, and (iii) entitled LP to coverage for <u>alleged</u> environmental liabilities (*i.e.* "Underlying Liabilities,") *id.* at ¶¶ 26, 33 (emphasis added). Further, the Complaint alleged that certain insurers breached their insurance contracts by failing to pay certain amounts that LP "ha[d] become" required to pay as a result of <u>alleged</u> environmental liabilities (*id.* at ¶¶ 27, 34). Indeed, "Underlying Liabilities" is defined throughout the Complaint as those "<u>alleged environmental liabilities incurred by LP to date</u>." (*Id.* at ¶17). In other words, LP's claims revolved around cleanup costs LP had previously incurred as a result of <u>alleged</u> environmental contamination at several sites, including the Lockhart site. Nothing in the Insurance Coverage Complaint remotely conceded actual legal liability for future personal injury and property damage claims by third parties, such as Plaintiffs' claims in this litigation.

2.  *The Insurance Coverage Interrogatories.*

Plaintiffs similarly attempt to misconstrue LP's responses to Interrogatories Nos. 8, 9, 11, and 12 as admissions of liability for Plaintiffs' claims. *See* Pl. Mot. at 5 and Exh. G, at 121-22. Plaintiffs' argument, however, conveniently omits the interrogatories to which LP was responding.

Interrogatory No. 8 asked LP to identify the claimant against LP with respect to each particular site, *e.g.* Lockhart. Pl. Mot., Exh. G, at 32-33. In response, LP identified ADEM as the sole entity making a claim against LP at Lockhart. *Id.* at 121.

Interrogatory No. 9, in turn, asked LP to identify the "allegations made by each claimant." *Id.* at 33. In response, LP indicated that ADEM's claims were based on "environmental property damage…under RCRA [Resource Conservation and Recovery Act] and state environmental law." *Id.* at 121. Nothing in this response indicates that LP had any alleged (let alone actual) liability for <u>personal injury</u> claims or <u>off-site</u> property damage claims like Plaintiffs assert here.

Interrogatory No. 11 asked "when the claimant…<u>first alleged</u>" that LP caused damages in connection with the Lockhart site. *Id.* at 34. LP responded that "[s]ite investigation and remediation" has been conducted pursuant to an ADEM Consent Order [No. 98-0290CHW] issued n December 13, 1997. *Id.* at 121-22.

Finally, Interrogatory No. 12 asked whether LP was involved with any civil litigation, administrative action, or other type of action in connection with each site. For the Lockhart facility, LP described the administrative proceedings relevant to the ADEM-required investigation and remediation. *Id.* at 122. LP further responded that it had incurred roughly $2.6 million in costs associated with remediation activities at the facility at the time the Insurance Coverage Case was initiated. *See* Pl. Mot., Exh. G, at 40.

In sum, these written discovery responses do not indicate in any way that LP had any alleged (let alone actual) liability for the personal injury and off-site property damage claims that Plaintiffs assert here. Plaintiffs' selective reading to the contrary is disingenuous, to put it mildly.

3.    *The Supplemental Interrogatory Responses.*

Plaintiffs' reliance on LP's supplemental responses to Interrogatories Nos. 7 and 10 is likewise disingenuous. *See* Pl. Mot. at 6 and Exh. G, at 180, 182, 192-93, 201.

Interrogatory No. 7 asked LP to describe when the release of hazardous materials occurred <u>at each site</u> for which it was seeking coverage. Pl. Mot., Exh. G, at 32. LP responded that operations at each site, including the Lockhart site, exposed hazardous materials to the environment. *Id.* at 180, 192. Nothing in this response describes, implicates, or relates to any alleged <u>off-site</u> releases of contaminants, much less constitutes an "admission" that any such releases caused or contributed to these Plaintiffs' personal injury or property damage claims.

Similarly, Interrogatory No. 10 asked when the "<u>alleged</u>" property damage occurred "<u>at each site</u>." *Id.* at 33-34. LP responded that such property damage at each site occurred when "<u>the property</u>" (e.g. the Lockhart facility) was first exposed to hazardous materials. *Id.* at 182, 201. Again, LP's response has nothing to do with any alleged off-site releases of contaminants, much less the injuries alleged by Plaintiffs.

LP's supplemental responses to other interrogatories, also omitted from Plaintiffs' Motion, further demonstrate that LP's responses have no bearing on Plaintiffs' claims. Interrogatory No. 9, for example, asked LP to state the nature of the allegations made by each claimant for each site relating to personal injury, bodily injury or property damage. *See* Pl. Mot., Exh. G, at 33. LP's Supplemental Response indicated that "<u>the claimants at each of the sites at issue have alleged property damage</u>. To our present knowledge, <u>no claimant has alleged bodily injury and/or personal injury</u>." *Id.* at 201. Thus, LP's supplemental response to Interrogatory No. 9 merely indicates that ADEM, the sole claimant, alleged property damage claims for remediation of the property itself.

### IV.  Plaintiffs' "Equitable Estoppel" Argument Fails as a Matter of Law.

Finally, Plaintiffs argue that the doctrine of equitable estoppel applies because "[h]aving received the benefit of the insurance proceeds based on its liability, Defendant LP should not now be permitted to deny that very same liability." *See* Pl. Mot. at 6-7. This argument fails for obvious reasons.

First, as explained above, LP's assertion of coverage claims against its insurers (and subsequent settlement of those claims) does not imply that LP had any actual liability for the underlying claims, let alone for these Plaintiffs' then-unasserted tort claims.

Second, Plaintiffs' Motion ignores the hornbook elements of equitable estoppel under Alabama law.  For equitable estoppel to apply, Plaintiffs must show that: (i) the actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence <u>to the other party</u>; (ii) <u>the other party relies on</u> that communication; and (iii) the other party would be materially harmed if the actor is later permitted to assert any claim inconsistent with his earlier conduct. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.,* 952 So. 2d 342, 351 (Ala. 2006); *Ford v. Jackson Square, Ltd.,* 548 So. 2d 1007, 1013 (Ala. 1989). Accordingly, both privity and detrimental reliance are critical elements of equitable estoppel.  *See Meeks v. Budco Group, Inc.,* 631 So. 2d 915, 917 (Ala. 1993) (equitable estoppel denies a person "the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence").

Applying those legal standards here, Plaintiffs must show that any alleged "admissions" in the Insurance Coverage Case were directed to <u>them</u>. Further, they must show that they <u>detrimentally relied on</u> those supposed "admissions." Plaintiffs do not make either showing. This is because Plaintiffs cannot claim that they relied on any statements in pleadings and discovery responses in the Insurance Coverage Case, particularly since the alleged "admissions" pertained solely to claims for investigation and remediation made against LP by ADEM when the Insurance Coverage Complaint was filed in 2001.[7] Plaintiffs' estoppel argument is simply not colorable and should be rejected on its face.

## CONCLUSION

Every argument in Plaintiffs' Motion clearly fails as a matter of law. Rule 26(a)(1)(D) does not support Plaintiffs' request for insurance settlements; LP's prior Insurance Coverage Case has no bearing on the merits of Plaintiffs' personal injury and off-site property damage claims; and Plaintiffs' counsel improperly seeks sanctions for a fictitious discovery "abuse" without serving a single discovery request (let alone following the proper procedures for compelling discovery when a dispute arises).

---

[7] Plaintiffs' estoppel argument also supports LP's Statute of Limitations defenses. To the extent Plaintiffs claim that they had knowledge of LP's "admissions" in the Insurance Coverage Case filed in July 2001, Plaintiffs would also have been on notice of their own potential claims no later than July 2001 for statute of limitations purposes. *But see* Third Amended Complaint (dkt. no. 63-1) at ¶ 95 ("[Plaintiff] did not know or reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint."); Pl. Response to Defs. Mot. to Dismiss (dkt. no. 21-1) at 12 ("There is no evidence that the Plaintiff either knew or reasonably should have known that the Plaintiff's injuries were caused by exposure to hazardous substances released from the Releasing Facility more than two years prior to the filing of this lawsuit").

Plaintiffs' Motion should not have been filed, and Plaintiffs' transparent attempt to manufacture discovery "abuse" where none exists should not be condoned.

LP therefore respectfully requests that this Court deny Plaintiffs' Motion in its entirety. LP further asks that this Court award LP all attorneys' fees, costs, and expenses associated with responding to Plaintiffs' frivolous claim for sanctions.

Respectfully submitted this 27th day of July, 2007.

/s/Bernard Taylor
Bernard Taylor (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific
  Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

LEGAL02/30453408v5

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2007, I filed the foregoing via the CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

Robert Leslie Palmer

Richard Elder Crum

John Berghoff

Mark TerMolen

Matthew Sostrin

Roberta Wertman

Jaimy Hamburg

                                                  /s/ Orlyn O. Lockard, III
                                                  Of Counsel