# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

GAIL BEDSOLE TATUM as Mother and )
Administratrix of the Estate of MELANIE )
CHAMBERS, a Deceased Minor Child, )
                                       )   Civil Action No.
      Plaintiff                 )   2:06-cv-00083-LES-CSC
                                         )   (Lead Case)
      v.                        )
                                       )
PACTIV CORPORATION and )
LOUISIANA-PACIFIC CORPORATION )
                                       )
      Defendants.          )

## DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO SUBMIT SPECIAL INTERROGATORIES AT TRIAL

Defendants Pactiv Corporation and Louisiana-Pacific Corporation jointly oppose Plaintiffs' Motion to Submit Special Interrogatories at Trial and for Inclusion in Case Management Order (dkt. no. 268) ("Plaintiffs' Motion"). Plaintiffs' Motion should be denied for the following reasons.

## INTRODUCTION

Plaintiffs' Motion concedes that significant individualized circumstances must be resolved for each individual Plaintiff's claims, and seemingly recognized as much when they filed individual, *non-class action claims*.[1] Plaintiffs further recognize that formulating any special interrogatories at this point in time would be premature. Nonetheless, as a stalking horse for the "one trial fits all" approach that this Court has already repeatedly considered and rejected, Plaintiffs suggest that certain "common

---

[1] Although Plaintiffs' Motion states that "[t]hese are consolidated claims with more than 900 Plaintiffs," Plaintiffs' claims are consolidated for discovery purposes only. *See* Order dated October 19, 2006 (dkt. no. 93).

issues" special interrogatories might be appropriate in the trial of the first case (Melanie Chambers). Some special interrogatories may be appropriate and can certainly be proposed in the normal course prior to trial. But the special interrogatories now suggested by Plaintiffs regarding liability and causation, if eventually adopted, would require a jury to decide exceedingly broad and abstract questions without knowledge of any facts about the 900-plus other Plaintiffs in these cases. These suggestions are not only impractical and prejudicial, but contrary to both federal and Alabama law.

Specifically, Plaintiffs suggest that a single jury in the first trial should resolve the elements of "duty and breach of duty." This suggestion necessarily fails because: (1) the existence of a duty is a legal question for resolution by the trial court, not the jury; (2) a "breach of legal duty" requires that the alleged resulting injury be "foreseeable," and thus requires analysis relative to specific individual Plaintiffs; (3) Plaintiffs' proposal impermissibly severs proximate causation and contributory negligence from the determination of duty and breach of duty; and (4) Plaintiffs' proposed common issues are so broad that they cannot have any meaningful effect in subsequent trials. Moreover, requiring jurors to decide special interrogatories relating to more than 40 years of facility operations involving not one, but two Defendants would impose a tremendous burden on the jury (and the Court) as well as potentially create hopeless confusion for the jurors.

Plaintiffs also suggest determining "general causation," *i.e.* whether a particular substance can cause a particular disease in the general population, via special interrogatories to a single jury. This proposal is both premature and speculative because: (1) the injury apparently alleged by the first trial Plaintiff (Ewing's Sarcoma) is not alleged by any other Plaintiff, and (2) a "general causation" inquiry will require expert

testimony subject to Fed. R. Evid. 702 and *Daubert* standards. Moreover, later juries cannot assess specific causation in a vacuum. Any assessment of specific causation will depend on key evidence of general causation (*i.e.* the quantity, duration, and type of exposure needed to potentially cause injury).

For these reasons and others detailed below, Defendants submit that Plaintiffs' suggestion of a special common issues interrogatories deadline be rejected entirely. Defendants recognize, however, the importance of narrowing certain factual issues among all Plaintiffs, or among groups of Plaintiffs, in the interest of judicial efficiency. If this Court denies Plaintiffs' Motion, Plaintiffs are not prohibited from proposing special interrogatories in the normal course of the trial, when this Court considers the parties' proposed jury instructions.[2]

## I.    USE OF BINDING SPECIAL INTERROGATORIES BASED ON A SINGLE TRIAL WOULD PREVENT THE FAIR ADJUDICATION OF THE REMAINING CASES.

Each of the 900-plus individual Plaintiffs in these cases claim exposure to different chemicals, under different conditions, causing different injuries, at different times from the early 1960s until the present. Many Plaintiffs, like Plaintiffs' deponents John Roberts and Jackie Partridge, were Facility employees. Other Plaintiffs, like Melanie Chambers, Stanley Wallace, Susan Phillips, and Kandy Creech—the first four trial Plaintiffs—never worked at the Facility. Even among the first four trial Plaintiffs, the diseases allegedly resulting from exposure to contaminants range from Ewing's Sarcoma (Melanie Chambers), asthma (Stanley Wallace), lung cancer (Susan Phillips), to

---

[2] Defendants reserve the right to object to any special interrogatories subsequently proposed by Plaintiffs at the appropriate time when the Court considers the parties' proposed jury instructions.

depression and a brain tumor (Kandy Creech).   Indeed, Plaintiffs' prior Lone Pine responses suggest that the 900-plus individual Plaintiffs collectively claim that at least 350 different diseases and/or injuries resulted from their alleged chemical exposures.

Thus, the circumstances presented by plaintiff A, who worked at the Facility from 1980 to 1985, lived within 1 mile of the Facility, and allegedly was exposed to chemical B, will have little, if anything, in common with the circumstances of plaintiff X, who never worked at the Facility, lived more than one mile of the Facility from 1990 to 1995, and allegedly was exposed to chemical C.   Plaintiffs concede these "differences in specific causation and damages for each individual Plaintiff," but ignore the different liability and general causation determinations that must be made for each individual Plaintiff.   *See* Pls. Motion at 2.

Moreover, the law is settled that before a prior ruling may be given preclusive effect in later litigation, it must be shown that the prior ruling was made as to the "particular issue or issues" to be resolved in the later litigation.   *Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904); *see also Stewart v. Brinley*, 902 So. 2d 1, 10 (Ala. 2004). Consistent with that general rule, issue preclusion cannot apply under Alabama law unless it can be shown: "(1) that an issue in a prior action was *identical* to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."   *Stewart*, 902 So. 2d at 10 (emphasis added).   As discussed in Sections II and III, Plaintiffs' suggested "common issues" will not advance the resolution of these claims because they are not susceptible to a later showing that the jury decided the "identical" issues later Plaintiffs present.

## II.    PLAINTIFFS' PROPOSED USE OF "DUTY AND BREACH OF DUTY" SPECIAL INTERROGATORIES WOULD VIOLATE ALABAMA LAW

Plaintiffs propose that the elements of "duty and breach of duty" be determined by a jury in a single case, "even if a defense verdict resulted on the issue of causation." This proposal: (1) ignores that the existence of a duty is a legal question to be determined by the court, (2) impermissibly bifurcates the element of proximate causation, and (3) ignores the doctrine of contributory negligence.  Further, Plaintiffs propose common issues of such generality that a jury's findings would be meaningless in later trials.

Alabama courts have uniformly held that "the existence of a duty is a strictly legal question to be determined by the court" and, where there is no duty, there can be no negligence.  *Taylor v. Smith*, 892 So. 2d 887, 892 (Ala. 2004); *Rose v. Miller & Co.*, 432 So. 2d 1237, 1238 (Ala. 1983); *Gilbert v. Gwin-McCollum Funeral Home, Inc.*, 106 So. 2d 646, 650 (Ala. 1958).  Thus, Plaintiffs' presumption that a jury here, and not this Court, would make determinations about Defendants' legal duties, if any, clearly ignores that this is ordinarily not a question for a jury.

Moreover, the duty a defendant potentially owes in a particular case is a duty to *that plaintiff*, and the allegedly-resulting injury must be foreseeable.  *Taylor*, 892 So. 2d at 892 ("The existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.  The *key* factor is whether the injury was *foreseeable* by the defendant.").

Indeed, the Seventh Circuit Court of Appeals rejected a proposal very similar to Plaintiffs' proposal here in *In re Rhone-Poulenc Rourer*, 51 F.3d 1293 (7th Cir. 1995).  In

LEGAL02/30469347v2

that case, the trial court bifurcated the "liability" portion of the trial from the damages

portion of the trial as to the legal issues of whether defendants owed duties to plaintiffs

regarding the handling of blood and breached these duties. *Wadleigh v. Rhone-Poulenc*

*Rorer, Inc.*, 157 F.R.D. 410 (N.D. Ill. 1994). The Seventh Circuit Court found that this

approach would impermissibly result in the same issue being reexamined by different

juries. *In re Rhone-Poulenc Rourer*, 51 F.3d at 1303. The Court explained:

> The first jury will not determine liability. It will determine merely
> whether one or more of the defendants was negligent under one of the two
> theories. . . . Unless the defendants settle, a second (and third, and fourth,
> and hundredth, and conceivably thousandth) jury will have to decide, in
> individual follow-on litigation . . . such issues as comparative negligence .
> . . and proximate causation. Both issues overlap the issue of the
> defendants' negligence.

*Id*. Accordingly, the Seventh Circuit Court reversed the district court's bifurcation order

and directed the district court to decertify the "liability" class action. *Id*. at 1307.

Similarly, the Southern District of Alabama recently rejected a bifurcation

proposal under which one jury would determine whether the defendant released certain

pesticides via air and water pathways and made misrepresentations about these alleged

emissions, while a second jury would determine whether that defendant would be liable

to specific individual plaintiffs. *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273,

315-16 (S.D.Ala. 2006). As the Court explained, "[s]uch an approach would be terribly

inefficient (or worse) because the second jury would invariably have to reexamine the

common evidence of wrongdoing by [defendant] to determine whether any of that

wrongdoing aggrieved a particular plaintiff in a manner entitling him to damages." *Id*.

Applying these legal principles here, the facts presented by the first trial Plaintiff,

Melanie Chambers, confirms that "duty and breach of duty" cannot possibly be

determined as to all Plaintiffs by any common issues special interrogatories. As noted in Plaintiffs' pleadings, Pactiv owned the Lockhart facility from the 1960s to 1983 and Louisiana-Pacific owned the Facility from 1983 to the present. Third Amended Compl. (dkt. no. 103). Melanie Chambers is a deceased minor child born in 1987 who was allegedly exposed to Facility emissions prior to her death in 2006. Clearly, any alleged "duty" or "breach of duty" to Ms. Chambers cannot resolve the same issues for Plaintiffs claiming earlier exposures to emissions dating back to the 1960s. Instead, the existence of and alleged violation of any duty depends on the specific facts and circumstances underlying each Plaintiff's claims.

Lastly, even if some set of common issues could be decided by a single jury in these cases, Plaintiffs' suggested common issues are so broad that any jury's findings would be meaningless in subsequent trials. Plaintiffs propose that the jury should decide:

1. *Duty - Did Defendants have a duty not to allow contaminants to migrate off-site*

2. *Duty – Did Defendants have a duty to use proper control for contaminants to prevent off-side migration*

3. *Duty – Did Defendants have a duty to adhere to environmental laws and regulations?*

4. *Breach of Duty – Did Defendants breach their duty of due care?*

*See* Pls. Motion at 3. The answers to these broad and abstract questions cannot have any meaningful effect on the resolution of subsequent Plaintiffs' claims.

For example, Plaintiffs' suggested common issue relating to their negligence *per se* claim completely ignores the fact that the potentially applicable environmental statutes and regulations were amended, repealed, or changed during the nearly 40 years that the

Facility was in operation. It also ignores the questions of whether each specific statute at issue (i) was enacted to protect a class of persons of which the plaintiff is a member, and (ii) whether each plaintiff's injury is of the type contemplated by the statute. *Parker Bldg. Servs. Co., Inc. v. Lightsey ex rel. Lightsey*, 925 So.2d 927, 931 (Ala. 2005). Thus, each Plaintiff's factual circumstances are necessarily an integral part of the Court's determination of each Defendant's duties, if any, to each individual Plaintiff. As such, these duties and the alleged breach thereof cannot readily be determined as common issues.

### III. PLAINTIFFS' SUGGESTED "CAUSATION" SPECIAL INTERROGATORY IS BOTH UNWORKABLE AND PREMATURE FOR CONSIDERATION

Plaintiffs suggest that "general causation" should be a common issue. The Eleventh Circuit Court of Appeals requires plaintiffs in toxic tort cases to "demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover." *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005).

This inquiry in turn requires expert testimony, which is subject to Fed. R. Evid. 702 and the *Daubert* requirements. *Id*. at 1237. As such, the trial court acts as a "gatekeeper" in considering the reliability of Plaintiffs' experts' opinion on the question of general and individual causation. *Id*. at 1239 (holding expert testimony relating to ephedrine and caffeine did not meet Fed R. Civ. P. 702 or *Daubert* inquiry); *see also Benkwith v. Matrixx Initiatives, Inc.*, 467 F.Supp.2d 1316 (M.D.Ala. 2006) (dismissing all claims because expert's testimony relating to Zicam had not "employ[ed] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert

in the relevant field"); *LeBlanc v. Chevron USA, Inc*., 2007 WL 1772057 (E.D. La. June 18, 2007) (dismissing all claims because expert's testimony regarding general causation lacked necessary foundation to withstand *Daubert* scrutiny).

It is inconceivable that the Melanie Chambers case can decide general causation *identical* to the issues presented by the 900-plus other Plaintiffs. Ms. Chambers allegedly suffered from Ewing's Sarcoma, an injury unique to her, because no other Plaintiff claims that injury. Consequently, resolution of whether any Facility chemicals can generally cause Ewing's Sarcoma cannot resolve the question of whether those same chemicals can generally cause any of the approximately 350 diseases alleged by the remaining Plaintiffs. In sum, given the unique nature of Ms. Chambers' injury, Defendants submit that general causation is not an appropriate common issue to be determined by the first trial jury.

Designation of general causation as a common issue for jury determination is also premature and speculative at this juncture. Experts have not yet been designated or deposed, expert reports have not been submitted, and independent medical examinations have not been conducted. Defendants respectfully suggest that, at minimum, consideration of general causation as a potential common issue be deferred until after this Court determines whether Plaintiffs' experts (1) meet the requirements of Fed. R. Evid. 702 and *Daubert*, and (2) may introduce evidence of general causation of a disease to the jury.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion. Plaintiffs may propose special interrogatories in the normal course of

the trial, when the Court assesses the jury instructions, and Defendants reserve the right to object at that time.

10

/s/ Bernard Taylor
Bernard Taylor, Sr. (admitted *pro hac vice*)
Douglas S. Arnold (admitted *pro hac vice*)
Orlyn O. Lockard, III (admitted *pro hac vice*)

Counsel for Defendant Louisiana-Pacific
Corporation

OF COUNSEL:

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
doug.arnold@alston.com
skip.lockard@alston.com

ADDITIONAL COUNSEL:

Dennis R. Bailey
ASB No. 4845-I71D
R. Austin Huffaker
ASB NO. 3422-F55R
RUSHTON, STAKELY, JOHNSON, & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101
Tel:  (334) 206-3100
Fax:  (334) 262-6277
drb@rsjg.com (Bailey)
rah2@rsjg.com (Huffaker)

Laura Proctor
ASB 1504-R54L
Associate General Counsel
Louisiana-Pacific Corporation
414 Union Street North, Suite 2000
Nashville, Tennessee  37219
Tel: (615) 986-5878
Fax: 1-866-741-5091
laura.proctor@lpcorp.com

LEGAL02/30469347v2

/s/ John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2007, I filed the foregoing via the

CM/ECF system which will send notice of said filing to the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

Richard Elder Crum

/s/ Orlyn O. Lockard, III
Of Counsel

13