IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GAIL BEDSOLE TATUM as Mother and
Administratrix of the Estate of
MELANIE CHAMBERS, a Deceased
Minor Child,                                                      PLAINTIFF

VERSUS                          CIVIL ACTION NO. 2:06-CV-00083-LES-CSC

                                                     JURY TRIAL DEMANDED

PACTIV CORPORATION and
LOUISIANA-PACIFIC CORPORATION,                             DEFENDANTS

FOURTH AMENDED COMPLAINT

JURISDICTION

1.      Plaintiff is a citizen of the State of Alabama.  Plaintiff files this as a

wrongful death action for the death of Melanie Chambers who was a resident of

the State of Alabama.  Defendants are corporations both incorporated under the

laws of the State of Delaware.  PACTIV Corporation's principal place of business

is in the State of Illinois, and Louisiana-Pacific Corporation's principal place of

business is in the State of Tennessee.   The matter in controversy exceeds,

exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

Page 1 of  25

2.     Venue of this action is proper in the Northern Division of the Middle District of Alabama.

**PARTIES**

3.     PACTIV Corporation does business by agent in the State of Alabama.

4.     Louisiana-Pacific Corporation does business by agent in the State of Alabama.

5.     The Plaintiff, is the mother, custodial parent and administratrix of the Estate of Melanie Chambers, a deceased minor child who resided in  Covington County, Alabama.  The date of the death of Melanie Chambers was the 17th day of March, 2006.

**BACKGROUND**

6.     The Plaintiff makes claims for the wrongful death of Melanie Chambers caused by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

7.     The facility is located in the town of Lockhart, Alabama, and is adjacent to the town of Florala, Alabama.

8.     Melanie Chambers resided in the Florala/Lockhart community for most of her life.

9.     Melanie Chambers also was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

10.     Pactiv Corporation and its predecessors assumed ownership and began operation of the wood treatment facility prior to 1960.

11.     PACTIV engaged in the business of treating lumber and pine wood poles with creosote and pentaclorophenol and CCA.

12.     Energy for the PACTIV wood treatment operation was partly obtained by burning wood wastes and scrap bark in three wood waste boilers which were used to create steam and provide heat and energy for PACTIV's sawmill and wood treatment operation.

13.     The boilers used by Defendants were not licensed as hazardous or toxic waste incinerators.

14.     The boilers used by Defendants were not designed or intended to be used as hazardous or toxic waste incinerators.

15.     The boilers used by Defendants at the facility would not have safely disposed of any hazardous or toxic waste burned in them.

16.    The facility also operated a teepee burner which was used to burn waste or scrap wood.

17.    Pursuant to 42 U.S.C. § 241(4), the Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

18.    Pursuant to 42 U.S.C. § 6921, the Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

19.    The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

20.    The Secretary of Health and Human Services, United States Environmental Protection Agency lists creosote as a probable human carcinogen.

21.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

22.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are known to cause cancer.

23.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentaclorophenol as a probable human carcinogen.

24.    Pentaclorophenol is probably carcinogenic to humans.

25.    The pentaclorophenol used by both Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

26.    Dioxin and/or dioxin/furans contaminates in pentaclorophenol used at the facility included tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins and mixtures of dioxin/furans classified on toxicity equivalent scales by the United States Environmental Protection Agency in accordance with law.

27.    The pentaclorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

28.    The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with and contained polycyclic aromatic hydrocarbons (PAHs).

29.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with and contained benzene.

30.    Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

31.    The wood treatment chemicals used by both Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

32.    The Defendants also made use of cooling tower corrosion inhibitors which contained hexavalent chromium.

33.    The Secretary of Health and Human Services and United States Environmental Protection Agency list chromium (VI) as a known human carcinogen.

34.    Defendants further used CCA (Copper Chromate Arsenate) as a wood treatment chemical.

35.    The Secretary of Health and Human Services and the United States Environmental Protection Agency classify arsenic as a known human carcinogen.

36.    Arsenic causes cancer in humans.

37.    The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

38.    The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

39.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

40.    The Defendants engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

41.    Both Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits and deposited toxic ash on the facility property.

42.    Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

43.    L-P continued operating the facility with the same local management in the same manner as PACTIV.

44.    In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV. PACTIV further had and/or assumed a duty to remediate and remove toxic waste from the facility in addition to the duties of L-P.

45.    Based upon information and belief, Plaintiff alleges that PACTIV continued to maintain, by operation of law or contract, a responsibility to remediate and clean hazardous substances from the facility.

46.    During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

47.    During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

48.    During the term of its operation, L-P sprayed toxic waste water into the air.

49.    During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

50.    The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

51.    The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

52.    Both Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

53.    The Defendants also used sawdust to filter and contain hazardous wastes.

54.    The sawdust used by Defendants was contaminated with creosote, pentachlorophenol, arsenic and associated chemicals.

55.    The sawdust used for hazardous waste containment by Defendants was burned in the operation boilers, along with the hazardous waste contained in it.

56.    Both Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

57.    Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

58.    Both Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

59.    Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

60.    The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, chromium, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

61.    The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids and waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

62.    The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

63.    The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

64.     Groundwater at the facility has been contaminated by toxic and hazardous wastes.

65.     Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

66.     The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

67.     The Defendants engaged in the discharge of toxic waste fluids.

68.     The Defendants caused the discharge of toxic chemical vapors, particulates and aerosols into the air.

69.     The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous waste and known or probable human carcinogens.

70.     Defendants used toxic wastes to make roadways and scattered it about the facility roadways.

71.     Toxic chemicals spread over the facility contributed to a cloud of toxic dust or vapors created by the operation.

72.     PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the

dangers associated with the chemicals used in their wood treatment facility or operation.

73.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

74.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

75.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

76.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

77.    At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

78.    Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

79.    In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the public.

80.    The Defendants made no effort to warn surrounding neighborhoods and the public of the nature of the disease or cancer causing emissions from their facility.

81.    The toxic chemicals emitted by Defendants were persistent when deposited in Melanie Chambers' home and environment so that Melanie Chambers continued to be exposed to them even after the time of emission.

82.    PACTIV has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

83.    PACTIV has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

84.    L-P has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

85.    L-P has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

86.    At all times pertinent hereto, the Defendants PACTIV and L-P by and though their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, dioxin/furans, PAH's, creosote, and their constituents which contained hazardous and toxic chemicals.

87.    The fact that Melanie Chambers was present at homes in various locations in the Florala/Lockhart area and that she attended school near the facility caused her to be exposed to toxic and/or hazardous chemicals or known or probable carcinogens released or produced at Defendants' wood treatment facility.

88.    The Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Melanie Chambers to suffer injuries and damages which proximately resulted in her death on the 17th day of March, 2006.

89.     Melanie Chambers did not know and reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.  Melanie Chambers was a minor child at the time of her death.

90.     Plaintiff further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations for any time that accrued during the time defined by the parties' tolling agreement.

91.     At all times pertinent to this Complaint, Defendants created, stored and disposed of toxic and hazardous waste and chemicals which were regulated by both federal and state law.

92.     Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

93.     Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

94.     The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

95.     Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

96.    Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

97.    Defendant L-P had actual knowledge of the pending or potential litigation which would be filed against them by Plaintiff.

98.    Upon information and belief, Plaintiffs aver that with knowledge of claims that would become litigation, Defendants  destroyed or disposed of material evidence and documents.

99.    Plaintiffs are entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.

100.   Plaintiff brings this action as a wrongful death action and as an action for the wrongful death of a minor child.  As a result of the wrongful acts or omissions of the Defendants, Melanie Chambers suffered injuries from which she died.


## COUNT ONE

## NEGLIGENCE CAUSING DEATH

101.   Defendants had a duty to Melanie Chambers since the commencement of their operation and continuing to the date of this lawsuit.

102.    Melanie Chambers was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Melanie Chambers lived for years.

103.    The Defendants, their officers, directors, agents and employees knew or should have known, with the exercise of reasonable care, that their operations emitted toxic and noxious substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including Melanie Chambers.

104.    At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring Melanie Chambers.

105.    The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

106.    The Defendants negligent acts or omissions proximately caused Melanie Chambers to suffer injuries and damages which resulted in her death on the 17th day of March, 2006.

## COUNT TWO

## RECKLESSNESS CAUSING DEATH

107.   The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the life and health of Melanie Chambers and persons in surrounding neighborhoods.

108.   As a direct and proximate result of gross negligence and wanton acts of the Defendants, Melanie Chambers suffered injuries which resulted in her death on the 17th day of March, 2006.

## COUNT THREE

## NEGLIGENCE PER SE CAUSING DEATH

109.   Defendants violated the standards provided by Code of Alabama 22-27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls required by law.

110.   Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

111. Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

112. The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

   a.   violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type of waste other than the type waste used to establish boiler operating limits, or

b.    a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

c.    a violation of 335-3-4-.02(1)and(2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

d.    a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

e.    a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

f.    a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

g.    a violation of 335-14-7-.08 subpart H for use of an industrial boiler to dispose of hazardous wastes in a manner not allowed or exempted, or

h.    violation of federal rules and regulations adopted by the State of Alabama.

113.    Defendants violated the requirements and standards of the laws of the United States, including the Resource Conservation and Recovery Act, the Clean Air Act, the Clean Water Act, the Solid Waste Disposal Act and the Comprehensive Environmental Response Compensation and Liability Act.

114.    In particular, the Defendants violated the standards, rules and regulations of the United States Environmental Protection Agency which were promulgated pursuant to the above described public laws and which were incorporated into the laws and regulations of the State of Alabama.

115.    The Defendants violated the following regulations:

a.      40 C.F.R. 266.102 by operating an individual boiler in a manner that was not in accordance with permit requirements, or

b.      40 C.F.R. 264.344 by operating a hazardous waste incinerator without permit and which would not have complied with permit requirements, or

c.      40 C.F.R. 61.05 by operating a source of hazardous pollutants without permit and in violation of any permit requirements.

116.    Plaintiff avers that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States

Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Melanie Chambers  and that the Defendants' violations are evidence of a breach of duty.

117.   As a proximate consequence of the aforestated negligence per se of Defendants and their agents, employees and representatives, Melanie Chambers suffered injuries which resulted in her death on the 17th day of March, 2006.

## COUNT FOUR

### INTENTIONAL TORT CAUSING DEATH

118.   Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to Melanie Chambers and other persons was certain or substantially certain.

119.   The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

120.   Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

121.   Melanie Chambers was a foreseeable victim of Defendants' wrongful acts.

122.   As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Melanie Chambers suffered injuries which resulted in her death.


## COUNT FIVE

## NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

123.   Defendants negligently failed to properly train their employees concerning the hazards of the toxic substances which were used, stored or disposed of at the facility.

124.   Defendants negligently failed to properly train their employees on methods of safe handling of the toxic substances used, stored or disposed of at the facility.

125.   As a proximate consequence of the Defendants' aforestated negligence, Melanie Chambers was caused to suffer injuries and damages, which caused her death.

126.   Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

127.   The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, as mother and administratrix of th estate of Melanie Chambers, demands judgment against Defendants for damages to be determined by the trier of fact and costs.

 /s/ W. Eason Mitchell
W. EASON MITCHELL (MIT020)
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
Telephone: 662-327-0903
Facsimile: 662-329-4832
emitchell@colom.com

## CERTIFICATE OF SERVICE

I, W. Eason Mitchell, hereby certify that on October 10, 2007, I electronically filed the foregoing *Fourth Amended Complaint* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Douglas Sheppard Arnold
Dennis R. Bailey
Joshua L. Becker
John C. Berghoff , Jr
Meaghan G Boyd
Richard Elder Crum
Fred R. DeLeon , Jr
John Aaron Earnhardt
Jaimy L Hamburg
R. Austin Huffaker , Jr
Orlyn O. Lockard , III
Akila S. McConnell
Edwin Bryan Nichols
Laura Ellison Proctor
Sean A. Simmons
Matthew C. Sostrin
Bernard Taylor
Mark R. Ter Molen
H. Thomas Wells, Jr
Roberta M Wertman

This 10th day of October, 2007.

 /s/ W. Eason Mitchell
W. Eason Mitchell

85263.wpd

Page 25 of  25