## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**GAIL BEDSOLE TATUM as Mother and**
**Administratrix of the Estate of**
**MELANIE CHAMBERS, a Deceased**
**Minor Child,**                                                  **PLAINTIFF**

**VERSUS**                    **CIVIL ACTION NO. 2:06-CV-00083-LES-CSC**

                                                          **(LEAD CASE)**

**PACTIV CORPORATION and**
**LOUISIANA-PACIFIC CORPORATION,**                        **DEFENDANTS**


### REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS
### PROPOUNDED TO PACTIV CORPORATION


   Plaintiffs in the above styled cause request Defendant PACTIV Corporation produce documents or things related to each area of testimony set out in Plaintiffs' 30(b)(5) and (6) deposition notice and any documents produced in response to that notice.

I.

### DEFINITIONS

1.  Document" is used herein in its broadest sense to mean every document or other record of any kind, including without limitation, any written, printed, typed, recorded, filmed or graphic matter, however produced or reproduced, and any written or original, master, duplicate or copy. "Documents" shall further include oral or visual records or representations (including, without limitation, photographs, microfiche, microfilm, videotape, sound recordings, motion pictures), and computer, electronic, mechanical or electric records or

Page 1 of 28

representations of any kind, including without limitation, any tapes, cassettes, disks, diskettes, recordings, programs, etc. Documents shall include without limitation, any record of all or any portion of any discussion, communication, agreement, conversation, interview, meeting, conference, conclusion, fact, impression, occurrence, photographs, opinion, report, or other similar matter.

2.    If any defendant refuses to produce any document requested under a claim of privilege, then said defendant must state with respect to each such document the date of its preparation, the author(s), the recipient(s), the specific privilege claimed, and a sufficiently detailed description of the document in order to enable the plaintiffs and the court to evaluate the merit of such privilege. <u>A privilege list is required.</u>

3.    The applicable time period is from the date that you or your predecessor or any Defendant began operation of the facility to present, unless otherwise indicated.

4.    This request for production of documents and things is directed to each of the separate defendants in this case. Consequently, as used herein, the terms "defendant," "you," and "your" refer to each defendant and to all of its directors, officers, employees, and agents, to all of its predecessors and/or successors in interest (whether by purchase, merger, consolidation, and/or otherwise), to all of its subsidiaries, divisions, joint ventures, and/or affiliates, to any other entity and/or entities in which it owns and/or has owned any interest and/or share, and to its representatives, servants, distributors, insurance carriers, and attorneys, and/or anyone else acting on its behalf.

5.    The term "relate to" including, but not limited to, its various forms such as "relating to," shall mean: consist of, refer to, reflect, regarding, or be in any way relevant to the matter.

6.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any matters which might otherwise be construed to be outside the scope.

7.    "Communication" means any transfer and/or exchange between two or more persons of any information, whether by written, oral, electronic, and/or other

means, including, without limitation, personal conversations, correspondence, telephone calls, telegrams, emails, and/or any other Document. THIS DEFINITION INCLUDES ALL COMMUNICATIONS FOR WHICH YOU MAY CLAIM A PRIVILEGE (IF A PRIVILEGE IS CLAIMED, PLEASE SPECIFY THE PRIVILEGE). A PRIVILEGE LIST IS REQUIRED AS DESCRIBED ABOVE.

8.    "State," "identify" (or "identity"), or "describe," when referring to any natural person (whether connected with identification of Documents, Communications, and/or otherwise), means to set forth the full name, present or last known residential and business addresses and phone numbers, including employer, title, and position of each such person for the period(s) to which any request herein refers, and the relationship of any such natural person to any of the parties to this lawsuit. Once a person has been thus identified in a response, it shall be sufficient thereafter when identifying that person to merely state his or her full name.

9.    "State," identify," or "describe," when referring to a Document, means to state the type of Document, the number of pages thereof, the subject matter thereof, the date thereof (and the date on which prepared, if different), the identity of each author, originator, and/or contributor thereof, the identity of each person who signed and/or was an addressee and/or recipient of the Document, including, without limitation, each addressee of any copy, and each present custodian of the original and each copy of the Document bearing any marking and/or notation not found on the original and/or other identified copy. Previously produced and described documents may be identified by Bates stamp number and a general description.

10.    "Facility," "site," "mill" or "plant" refers to the wood processing plant located in Covington County, Lockhart, Alabama.

11.    "Facilities" refers to all of your wood processing plants.

12.    "ADEM" refers to the Alabama Department of Environmental Management.

13.    "EPA" refers to the United States Environmental Protection Agency.

14.   "SEC" refers to the Securities and Exchange Commission. "SEC Disclosure Rules" concern three (3) major areas: (1) disclosure of material effects of environmental regulations on earnings, competition, and future capital expenditures; (2) environmental litigation; and (3) corporate environmental policy.

15.   "Creosote," "coal tar creosote," or "creosote materials" refer to the mixture of the many chemicals they represent, including, without limitation, polycyclic aromatic hydrocarbons.

16.   "PAHs" refers to Polycyclic Aromatic Hydrocarbons.

17.   "CCA" means Chromated Copper Arsenate, or a group of chemicals known as Osmose.

18.   "Penta" refers to Pentachlorophenol.

19.   "History" of the facility includes, but is not limited to: date of incorporation, sales or purchases, property transfers, type and magnitude of operations, any changes to the facility unites and operations with time, periods of shutdown/non-operation due mechanical breakdown, catastrophic events that required shutdown, the dates of such, duration, event description, the corrective actions taken, historic insurance and claims information, employment practices, management, operation and regulatory history. History also includes the purchase of, acquisition of, or mergers of the owners or operators of the facility/site including the terms and conditions of such transaction, environmental audits, assessments or "Due Diligence" performed on the facility as a result of the purchase of, acquisition of, or merger of the facility and any and all indemnity agreements contained in any purchase agreement, merger agreement, acquisition agreement or separate agreement between such parties regarding the facility/site, or with any of your parent, sister, subsidiary or predecessor corporations.

20.   "History" also includes the corporate history of your company and any all information and testimony regarding the merger or acquisition of assets of predecessor companies, including, but not limited to, the total purchase price which includes any stock offerings or stock swaps and the value of those stock

offerings in regard to the purchase or merger of your company withy these companies, as well as the environmental condition of the site at the time of merger or acquisition and any disclosures by any party to the merger or acquisition or to any state or federal regulatory agency with regard to the environmental condition of the site, including, but not limited to, any environmental liability associated with the site and the total sales and revenues generated by the facility located in Covington County, Lockhart, Alabama, from 1958 to present.

21.    Any other term not specifically defined may be understood according to the definitions stated in the American Heritage Dictionary, Second College Edition, published by Houghton Mifflin Company, Boston, Massachusetts; and in the context within which such words are used.

22.    Please list and identify every document or thing produced. A list of general description and Bates stamp number is sufficient for documents produced prior to this request. However, documents should be listed individually and not collectively. IDENTIFY THE DOCUMENTS THAT YOU PROVIDE FOR EACH NUMBERED REQUEST EVEN IF PRODUCED IN A PRIOR REQUEST.

II.

## DOCUMENTS AND THINGS REQUIRED TO BE PRODUCED

1.    Documents produced or provided to Plaintiffs in this action.

2.    Documents related to any of your defenses in this action.

3.    Documents related to any claims you may make or made for indemnity due to loss, cost or expenses of this action, or liability, loss, accident, incidence or occurrence at the facility.

4.    Documents related to the defenses of any co-defendant in this action.

5.     Documents that you have provided to any co-defendant in this action, including their predecessor, parent, sister or related entity, either during or before notice of claims in this case.

6.     Notices that you have provided to any co-defendant in this action, including their predecessor, parent, sister or related entity concerning the facility.

7.     All Documents related to settlement agreements, payments, mediations or negotiations related to claims, payments, defenses, or adjustment and determination of loss due to accident, occurrence, incidence or contamination by hazardous substance on or alleged to be on the site or emanating from it.

8.     Documents provided to plaintiffs in this action for any reason, including documents related to the areas of testimony set out in Plaintiffs' notice of deposition of the Defendants pursuant to F.R.C.P. 30(b)(5) and (6).

9.     Documents described in either Defendants' Rule 26 disclosures.

10.     Documents related to all issues set out in the plaintiff's complaint.

11.     Documents related to all documents that you were required to generate or maintain under any statutes or any state or federal regulation, identifying who kept such documents, where such documents were kept, when they were generated and the nature of such documents.

12.     Electronic records relating to any document requested.

13.     Documents related to the identity and job description of each person, employee who is most knowledgeable on each document and each area of testimony set out in Plaintiffs' 30(b)(5) and (6) deposition notice.

14.     Documents related to the purchase, acquisition, or mergers of the owners or operators of the facility/site including the terms and conditions of such transaction.

15.   Documents related to environmental audits, assessments or "Due Diligence" performed on the facility as a result of the purchase of, acquisition of, or merger of the facility.

16.   Indemnity agreements contained in any purchase agreement, merger agreement, acquisition agreement or separate agreement between such parties regarding the facility/site, or with any of your parent, sister, subsidiary or predecessor corporations.

17.   Insurance policies or insurance agreements under which insurance coverage may be invoked to satisfy part of all of the judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy the judgment, or expense of defense, including any agreements or settlements which may alter or amend any form of coverage, indemnity, or limits of coverage under those policies.

18.   Documents related to the cost or your contribution to clean-up, maintenance or environmental compliance at the facility from 1958 to the present.

19.   Documents related to negotiations or requests or claims for contributions to costs of compliance with environmental regulations at the facility from 1982 to the present.

20.   Documents related to your acceptance or rejection of responsibility for the cost of clean-up and/or environmental compliance at the facility.

21.   Documents related to any of your other facilities which were sold to or purchased from any other Defendant in this action.

22.   Documents related to your communication with any other Defendant or their predecessors in this action concerning environmental remediation, cost of environmental remediation, environmental quality, compliance with environmental regulations.

23.   Documents related to any contention that any other person or entity was responsible for hazardous waste emanating from the facility during the relevant time period.

24.  Documents related to any contention that any other person or entity was responsible for training and education of employees of the facility during the relevant time period.

25.  Any documents related to any contention that any other person or entity is responsible for claims made by the trial plaintiffs in this action.

26.  Documents related to all claims and notices produced to your insurance carriers or indemnitors related to indemnity or insurance coverage or claims for any activities, losses, occurrences, accidents or other matters at the facility.

27.  Any agreements related to your purchase and operation of the facility including any indemnity agreements or agreements to distribute and share cost of environment study, remediation or other matters and all documents related to those agreement, including any claims or defense that you may have asserted under those agreements.

28.  All settlement agreements, documents and any matters concerning the case of *Ketchikan Pulp Co., et al. V. Ace Indemnity Ins., et al.*, Case Nos. A01-223-CV-JWS and A02-0102-CV-JWS, in the U.S. District Court for the District of Alaska, and *Granite State Ins. Co., et al. v. Louisiana-Pacific Corp., et al.*, Case No. 4:01-CV-04842-CW, in the U.S. District Court, California Northern District (Oakland), including settlement presentations, negotiations, and documents used to preent or support your claims.

29.  Discovery which existed or was taken or prounded in *Ketchikan Pulp Co., et al. V. Ace Indemnity Ins., et al.*, Case Nos. A01-223-CV-JWS and A02-0102-CV-JWS, in the U.S. District Court for the District of Alaska, and *Granite State Ins. Co., et al. v. Louisiana-Pacific Corp., et al.*, Case No. 4:01-CV-04842-CW, in the U.S. District Court, California Northern District (Oakland).

30.  Documents related to any presentations, documents, photographs, notices, letters, that you have provided to any insurance companies, adjusters, co-defendants, entities related to or predecessors or co-defendants, or any other entities seeking or negotiating to seek indemnity for any losses or costs associated with the facility due to environmental contamination of any type, whether on the facility or off-site.

31. Documents related to the history of the wood preserving site in Lockhart, Alabama, regarding its use and ownership dating back to when the wood treating operations began.

32. Documents related to the history of the facility including, but not limited to: incorporation, sales or purchases, property transfers, type and magnitude of operations, any changes to the facility unites and operations with time, periods of shutdown/non-operation due mechanical breakdown, catastrophic events that required shutdown, duration, dates, event description and the corrective actions taken, indemnity agreements, any documents or citations or warnings related to environmental contamination, regulatory history and assignment of insurance benefits.

33. Documents related to the corporate structure and/or corporate flowchart of each Defendant, any documents indicating the identities and addresses of the officers and board members of any and all corporations previously identified, including minutes of the boards of directors and minutes of the environmental and compliance committees.

34. All Shareholders' Annual Reports.

35. Documents related to the corporate history of your company or regarding the merger or acquisition of assets of predecessor companies, including, but not limited to, stock offerings, stock swaps, value of those environmental conditions of the site at the time of merger or acquisition and any disclosures by any party to the merger or acquisition or to any state or federal regulatory agency with regard to the environmental condition of the site, including, but not limited to, any environmental liability associated with the site.

36. Documents related to the total sales and revenues generated by the facility located in Covington County, Lockhart, Alabama, from 1958 to present.

37. Documents related to the financial situation and/or financial status and position of the facility for the relevant time period, including 10K filings, 10Q filings, annual reports, and proxy statements filed with the SEC.

38.   Tax returns, financial statements, ledgers, profit and loss statements and/or accounting records reflecting total revenues and/or total expenditures on an annual basis for the relevant time period.

39.   All Board, Shareholders, and Board Committee meeting minutes of your corporation and any environmental group or committee for which your company maintains records.

40.   Corporate Policy Manuals and/or documents that govern the conduct of business operations and management of all of your companies including, but not limited to, Strategic Planning, Functional Planning, Financial Planning, Financial Record-Keeping, Capital Budgeting, Capital Expenditures, Tax Planning, environmental management, environmental training and pollution control.

41.   Manuals and/or documents relating to employee benefit plans.

42.   Manuals and/or documents relating your corporation's public relations policy.

43.   Documents related to budgetary requests, budgetary increases and/or expenditures for environmental matters regarding the facility.

44.   Documents related to environmental audits, reports or plant environmental reports conducted by, or on behalf of your corporation and/or any regulatory agency for the facility.

45.   Documents related to the chain of command from local manager to the president and CEO of your corporation for each year during which you operated the facility.

46.   Documents related to any citations that you have received from any regulatory agencies at any plant or facility operated or formerly by you between 1980 and the Present.

47.   Documents related to all environmental citations, settlements and convictions of any type of your corporation, or their predecessors, or subsidiaries, or sister corporations, from 1980 to the Present.

48. Documents related to the Defendant's plans or knowledge of the likely closing date or depletion date for the facility based upon any reasons, including depletion of forest products, markets or any other projections or predictions effecting the time during which the facility was expected to operate.

49. Documents related to all requirements of your probation resulting from any criminal convictions.

50. Documents related to costs of pollution control and/or alternatives.

51. Documents related to costs of savings from both transportation and disposal of all amounts of hazardous chemicals disposed of by burning at the facility.

52. Documents related to costs of savings from both transportation and disposal of all amounts of hazardous chemicals disposed of by dumping at the facility.

53. Documents related to costs of savings from both transportation and disposal of all amounts of hazardous chemicals disposed of by putting them into the air at the facility.

54. Documents related to costs of savings from both transportation and disposal of all amounts of hazardous chemicals disposed of by burial at the facility.

55. Documents related to environmental affairs overseen by the Environmental Affairs Committee of the Board of Directors of your company or any of your predecessors during the period of time that you operated or contributed to the costs of remediation at the facility.

56. Documents concerning environmental affairs overseen by the Environmental Affairs Committee of the Board of Directors related to any site in the United States.

57. The video tape series of CEO Mark Suwyn (this applies to Defendant Louisiana-Pacific, unless Defendant PACTIV has possession or has used the subject presentation).

58. Internal environmental auditing reports.

59.  Documents related to the Defendant's document retention program and/or policy relating to the retaining, filing, indexing, accumulating, storing, compiling, retrieving and destroying of any and all documents, including documents stored at the facility.

60.  Documents related to any decisions not to sample air or ground surface or dust off site, including any quotes for expenses or sampling not accepted or performed.

61.  Documents related to any employee of the Defendant who was ever present at the facility, including the date of their presence and purpose from January 1, 2002, to present.

62.  Documents related to the spoliation, destruction of documents, tampering of witnesses, contacts with plaintiffs and plaintiffs' families during the pendency of this litigation, or after you received notice of the fact that plaintiffs were represented.

63.  Documents related to the identity of each and every former and/or current employee of your corporation including name, position/title, address and telephone number, including illnesses and cause of death; if applicable, and including, but not limited to, contractors, and/or subcontractors retained who have either been assigned any of the following job assignments from inception to the present to perform in any one or more of the following capacities at the facility: (1) Plant Manager; (2) Operations Manager/Supervisor; (3) Sales Manager; (4) Treating Supervisor; (5) Safety Director; (6) Risk Manager; (7) Industrial Hygienist; (8) Environmental Director; (9) Environmental Engineer; (10) Environmental Auditors and or Asssesors; (11) Geologist; (12) Hydrologist; (13) Health and human Resources Manager; (14) Public Relations Director; (15) Environmental Consultant; Environmental Pre-operation and Post-operation Compliance and Attorneys (16) Dioxin Task force Team Members.

64. Documents related to the employees at the facility, including, but not limited to, the number, job title or position, duties and number of shifts during each year of historical operations.

65. Documents related to selection, promotion, training, education and certification of your employees who worked at the facility, including managers and superintendents.

66. The personnel file of each and every person who was a manager or supervisor at the facility and each and every employee who you contend was trained, certified or responsible for handling of hazardous waste at the facility during the relevant time period.

67. Documents related to training for each and every employee for each year during the relevant time period, including the nature of the training, all documents associated with the training, the entity or person who provided the training which related to safety, hazardous chemicals, or environmental factors.

68. Documents related to all certifications of operators or applicators of pesticides or hazardous chemicals.

69. Documents related to the information and documents you provided to your workers, employees and management at the facility to describe chemicals used, effects of exposure, safety and environmental concerns, including a copy of any material provided to employees and indicate when and to which employee it was provided.

70. Documents related to the identity of persons responsible for management and environmental compliance.

71. Documents related to safety equipment and exposure prevention equipment provided to employees.

72. The Louisiana-Pacific managers' environmental handbook and all revisions of it.

73.   The Louisiana-Pacific's environmental handbook for employees and all revisions of it.

74.   Documents related to the use of specific wood treating preservatives, by chemical name, commercial product name/number and chemical composition used at the facility, including, but not limited to, the time period of use, the types of preservatives used, the volumes of chemicals used by month and year, MSDS Sheets, product labels, hazardous waste manifest records and chemical inventory reports.

75.   Documents related to any and all chemicals stored, mixed or utilized in any part of the operations, processes, maintenance, cleaning, or treating at the facility, including, but not limited to, chemical name, commercial product name/number chemical composition, the volume of chemicals used by month and year, MSDS Sheets, product labels, hazardous waste manifest records and chemical inventory reports and its purpose and use.

76.   Documents related to risk assessments or health assessments performed on or offsite of the facility, including in electronic format.

77.   Documents related to industrial hygiene studies, employee monitoring, medical surveillance data, health surveys, occupational health studies and/or exposure monitoring performed at any and/or all of your corporations' wood product facilities for any and all types of health exposures.

78.   Documents related to health profiles, comparative community studies, community health profiles, epidemiology studies or any other health studies performed on the nearby residences and/or communities at any and/or all of your corporation's wood product facilities.

79.   Documents related to purpose, reporting, findings, protocol, and/or any documentation related to activities of the Dioxin Task Force or any similar internal organization

80. Documents related to demographic or epidemilogical studies conducted by, or on behalf of your corporation relating to nearby residences of the community where the facility is located.

81. Scientific literature, worker studies, community studies, animal studies, epidemiological studies, toxicological studies and reports regarding the health effects of creosote, creosote constituents, pentachlorophenol, dioxins, CCA or any other chemical or chemical compound utilized by your corporation or its predecessors, either presently or in the past, at the wood preserving facility.

82. Documents related to all safety and exposure studies done or funded by you at the facility, or any other wood product facility operated by your corporation at any time.

83. Documents related to the amount and types of any chemicals that you contend that you were entitled to emit from the facility, or that you contend was safe to any persons within one mile of the facility to emit from the facility.

84. Documents related to the quantity of hazardous waste that you contend would be required in order to cause ill health effects in persons exposed in the vicinity of the facility during each year of operation.

85. Documents related to the amount exposure that you contend would be required both in amount and in distance and time for a person to suffer ill health effects from the hazardous chemicals that were emitted from the facility.

86. Documents related to any studies that you conducted to determine any health effects related to hazardous chemicals emitted from the facility.

87. Documents related to the nature of any ill health effects that you admit could result from exposure to the hazardous chemicals used or emitted from the facility.

88. Documents related to all information received from you or provided by you to any trade associations during the relevant time period concerning wood treatment, the operation of the facility, the operation of your corporation, or the safety of the wood treatment operations or chemicals used by you.

89. Documents related to the use and identification of carrier agents, whether it be water, diesel fuel, coal tar distillates, wood treatment oil for solvents for wood treatment chemical carriers for each year of facility operation.

90. Documents related to risk assessments to workers or persons in the vicinity of this facility or any other facility which provides data which you contend is relevant to exposure at or nearby this facility.

91. Documents related to the nature of each and every wood treatment chemical used by your corporation at the facility, including its color, odor, taste, detection, contaminants, hazardous nature, carcinogenity, mutantogenicinty, health affects caused by exposure, including amount of both time and amount required to produce ill health affects.

92. Documents related to the nature and amount of any material placed in the facility boilers, or disposed of at the facility.

93. Documents related to the nature of chemical constituents and percentage composition of each chemical constituent of each and every wood treatment chemical used by you at the facility, and the period of time that such chemicals were used, including, but not limited to, Creosote, Pentachlorophenol, Copper naphthenate, solubilized copper-8-quinolinolate, Alkyl ammonium compound, waterborne preservatives, Acid copper chromate, Ammouniacal copper arsenate, Ammoniacal copper zinc arsenate, chromated copper arsenate Type A, chromated copper arsenate Type B, chromated copper arsenate Type C, chromated zinc chloride, any other treatment chemicals, any measurements made of waste emanating and/or emissions at the facility, including quantity, quality, when they were made magdum.

94. All compounds known to be in or detected in any creosote samples, or samples of creosote waste at the facility for each year creosote was used.

95. All compounds known to be in or detected in any penta samples, or samples of penta waste at the facility for each year penta was used.

96. All compounds known to be in or detected in any CCA samples, or samples of CCA waste at the facility for each year CCA was used.

97.  Documents related to any medical or environmental research funded or partially funded by you.

98.  Documents related to any studies on your employees or neighborhoods surrounding any of your facilities, whether by you or any other entity.

99.  Documents related to notice or expense for treating workers from either acute or chronic exposure to toxic chemicals at the facility during the relevant time period.

100. Documents or reports of injury provided to the State Department of Industrial Relations during the relevant time period.

101. Documents related to State and Federal Community-Right-To-Know compliance, violation, and/or procedural protocol referencing enforceable community concerns and documentation of such.

102. Documents related to any and all information that you provided to medical providers, employees and community emergency responders and any other persons concerning the nature of the hazardous chemicals stored at your facility, or any hazardous chemicals which could have emanated from your facility; and if you failed to do so, documents related to such decision.

103. Each and every thing you did to inform the community or medical providers or any other persons concerning chemicals used at or emanating from the facility related to any other facilities that you contend emitted hazardous chemicals which affected the Plaintiffs, Florala or Lockhart communities, including the name of the facility you claim emitted such chemicals, the nature of the chemicals emitted, when they were emitted, the amount emitted, and the information that you rely upon to make such contention.

104. Documents related to your compliance (or failure to comply) with OSHA Right to Know, 29 CFR 1910.1200, and what information and documents were provided to employees.

105. Air Permits and Title V permits, including, but not limited to, the preparation and submission of such permit applications, and data gathered to prepare such applications, for submittal to the appropriate regulatory agencies.

106. Documents related to the submission of air emission related data required by regulatory agencies.

107. Documents related to solid and hazardous waste acquisition, use, storage and/or disposal, including, but not limited to, RCRA Part A, RCRA Part B, RCRA investigations and assessments, Hazardous Waste Permits, Solid Waste Permits, Post Closure Plans and Closure Plans.

108. Documents related to pesticide use and application and documents related to compliance with pesticide application regulations.

109. Documents related to any and all regulatory information and testimony relating to compliance and enforcement, including but not limited to Compliance Orders, Consent Decrees, injunctions, lawsuits, penalties, fines, public complaints, Notices of Deficiencies, Notices of Violations, Notification of Exceedences, Compliance Evaluation Inspections, citations and compliance sampling.

110. Documents related to environmental submissions related to the facility, including but not limited to, environmental data associated with the EPA's Toxic Release Inventory (TRI - Form R).

111. Documents related to RCRA and CERCLA investigations at the facility.

112. Documents related to State and Federal Clean Air Act and Clean Water Act reporting requirements and violations for the facility.

113. Documents related to communications concerning the facility, including, without limitation, internal memoranda, correspondence, permit applications, reports, closure reports/documents, independent third-party reports or documents between facility personnel and regulatory agency personnel, and vice versa.

114. Documents related to the Defendant's compliance with rules and regulations of the Alabama Department of Environmental Management and with the rules and regulations of the U.S. Environmental Protection Agency.

115. All court orders, agreements with regulatory agencies, which in any way affected, or could have affected, your operation of the facility, or your operation commitment to compliance with environmental rules and regulations.

116. Documents related to this Defendant's licensing and compliance with licensing by any state or federal regulatory agencies.

117. Documents related to everything you did to comply and prove compliance with environmental regulations, including tests and studies, including where you obtained them and who you relied upon.

118. Documents related to your compliance (or failure to comply) with RCRA.

119. Documents related to your compliance (or failure to comply) with the Clean Water Act and the Clear Air Act.

120. Documents related to whether or not you complied with the EPA record keeping requirements of the wood treatment facility checklist dated June 19, 1996, at any time and the nature of each act of compliance as set out or described in the wood preserving report, appendices C through F, of the EPA. Also, please list every act that you admit did not comply or that you contend was not required regarding the storage, use, disposal or incineration of hazardous wastes.

121. Documents related to whether or not you contend that the United States Environmental Protection Agency Office of Air Quality Planning and Standards of Emission Factor Group concerning emission factor documentation for AP-42 Sec. 10.8, the Wood Preserving Final Report, sets forth accurate methods for determining and measuring the quantity of waste emanating from your facility and if not why not and what methods would you contend are more accurate.

122. Documents related to whether or not you contend to be exempt from any federal environmental statutes, whether you claim the petroleum exemption relates to your facility, operation or chemicals emitted by you.

123. Documents related to all inspections of the facility for environmental, safety or hazardous chemicals for each year during the relevant time period, including the nature of the inspection, and the identity of the person or entity conducting the inspection.

124. Documents related to your compliance (or failure to comply) with and the Comprehensive Environmental Response, Compensation and Liability Act.

125. Documents related to any voluntary consumer awareness programs or other programs in which you participated concerning the nature of the chemicals used at your facility.

126. All correspondence to and from any ADEM and EPA concerning operation of this or any other facility in the State of Alabama, including the preparation of such reports prepared by or for your company or predecessor.

127. Documents related to the laws and regulations you contend applied to operation of this or any other facility in the State of Alabama.

128. Documents related to air monitoring or sampling performed at, or in the vicinity of, the facility, including but not limited to: ambient temperature, wind speed and wind direction at noted anemometer heights, barometric pressure, cloud conditions, concentration measurements of chemical constituents including particulate matter and constituents grouped according to their physical or chemical characteristics.

129. Documents related to ground water measurement locations.

130. Documents related to measurements made at ground water measurement locations on, or in the vicinity of, the facility associated with 'free' product thickness including but not limited to: datum elevation for each measurement,

date of measurement, recorded thickness of product, and any qualifiers/comments.

131.    Documents related to measurements and samplings of dissolved constituent concentrations in ground water collected at ground water measurement locations on, or in the vicinity of, the facility, including date of measurement, chemical constituent sampled, analytical result, method of analysis, detection limis, qualifiers, depth of sample, units of measurement and any qualifiers/comments, this includes samples not reported to regulatory agencies.

132.    Documents related to selection of locations and/or methods for environment or chemical testing or sampling.

133.    Documents related to all hydrologic property/parameter tests and/or measurements at ground water measurement locations on, or in the vicinity of the facility.

134.    Documents related to all domestic and other public and/or private wells on, or in the vicinity of, the facility.

135.    Documents related to soil borings, soil samples and sediment samples collected on, or in the vicinity of, the facility.

136.    Documents related to testing at the facility site or elsewhere within a five mile radius of the facility, whether it be water, blood, soil, air, dust attic samples, or any other form of environmental testing.

137.    Documents related to remediation of the facility, including all results of air samples, soil samples, water samples, or other tests.

138.    The name, address and written report of each and every person, corporation, or entity which has been employed by you to do environmental or health studies related to wood treatment facilities, or the community of Florala/Lockhart.

139. Documents related to the Defendant's policy and/or practice of selling or dispensing treated poles, cross-ties or cuts of such to the public, or employees, including the expected use of such material.

140. Documents indicating names and addresses of companies, entities, and/or customers that purchased treated cross-ties, poles or any other type of wood product from the facility.

141. Plant construction diagrams, photos, maps, drawings, survey information, and locations of buildings, operational units, treatment systems, lagoons, ponds, land fields, spray irrigation fields, waste piles, disposal areas, storage area, and any photos or documents relating to chemical containment or control of the facility.

142. Documents related to buildings and operational units, including, but not limited to, the dates of construction/modification/ replacement, physical features, inventories, period of use, historical use, velocity discharge, fuel sources and types, design, height, capacity, type, dimensions, locations of vents, outlets, inlets, sizes, shapes, volume, function and use of each building and unit and any changes with time.

143. All photographs, drawings, maps, plats, and schematic diagrams, prepared by your and/or your consultants and contractors associated with the facility and the surrounding vicinity as a function of time, including but not limited to, aerial, fly-by and ground level photographs, including any in electronic format.

144. Documents related to suppliers of any and all preservatives and/or chemical utilized in any part of the operations, processes, maintenance, cleaning, or treating at the facility.

145. Documents related to the operational history of the facility, including, but not limited to, the days and hours of operation, periods of shutdown/non-operation, operational and maintenance records/reports, processes and techniques utilized and changes in type(s) or method(s) of process(es) utilized.

146. Documents related to the types, dimensions, and numbers of each wood product that was treated/processed at the facility throughout its history.

147. Documents related to upsets, spills, fires (including intentional burns and unintentional fire events), leaks, accidents, incidences, and other occurrences/events at the facility.

148. Documents related to the disposal and/or treatment of sludges, process waste and wastewater from process operations, operational units, and/or ponds or waste storage.

149. Documents related to air pollution control devices implemented, used or considered for use at the facility.

150. Documents related to air modeling simulations undertaken by, or on behalf, your corporation, for the facility in question, for any purpose.

151. Documents related to the locations of surface water flows, ponds, air spray, discharge points, ditches, streams, creeks, and drainages on or in the vicinity of the facility and changes to their locations and/or size over time.

152. Documents related to historic rates of discharges to surface water ditches on or in the vicinity of the facility as a result of operations at the facility.

153. Documents related to ground water flow and/or ground water contaminant transport modeling simulations undertaken by, or on behalf of, your corporation, for the facility in question for any purpose.

154. Documents related to the history of soil excavations and remediation efforts conducted on, or in the vicinity of the facility.

155. Documents related to the disposal of or expected or recommended disposal of excavated soils or sludges from the facility.

156. Documents related to the Defendant's disposal of hazardous waste generated, stored or disposed of at the facility.

157. Documents related to the disposal or transportation of hazardous waste.

158. Operation of TeePee burners at the facility.

159. Operation of boilers at the facility.

160. Documents related to the operation and disposal of waste from the following methods and areas:

    a.    Ponds;
    b.    Aeration/spray field systems;
    c.    Boiler;
    d.    TeePee burner;
    e.    Injection into boiler, boiler exhaust or boiler smoke stack;
    f.    Thermal evaporation;
    g.    Filters and waste collection systems;
    h.    Drippage or waste collection areas;
    i.    Burning;
    j.    Burying;
    k.    Thermal evaporation and holding tanks;
    l.    Onsite disposal by any means
    m.    Transportation and disposal to approved facilities;
    n.    Transportation and disposal to unapproved facilities;
    o.    Transportation and disposal to other entities;

161. Documents related to the burning of Pentachlorophenol treated waste in the facility's boiler.

162. Documents related to the amount or quantity of any and all hazardous chemicals emitted by the facility during its term of operation in the relevant time period.

163. Documents related to the hours and dates of operation of the facility during the relevant time period.

164. Documents related to the amount and kind of all hazardous chemicals purchased by you, including the amount and type of hazardous chemicals that

you contend were emitted into the air, water or ground at the facility for each year of operation.

165. Documents related to any studies that you conducted to determine the amount and nature of hazardous chemicals emitted from the facility.

166. Documents related to the operation of pollution control devices at the facility and documents related to the purchase, operation and use of such environmental equipment.

167. Documents related to the disconnection of pollution control devices at this facility and at any facility operated by your or your predecessor.

168. Studies or information concerning the amount of chemicals lost or wastes created by your wood treatment operations, or any typical wood treatment operations.

169. Documents related to your method of determining the quantity and nature of hazardous waste generated or emanating from your facility by any means and of any type.

170. Documents related to different wood treatment methods used by you at the facility for each year, including the amount of lumber treated by each method.

171. Documents related to the classification for each source of air, water or ground contamination.

172. Documents related to the production of treated wood by your facility for each year of operation, including the volume of treated wood and whether or not of the types listed below, including whether or not it was treated by creosote solution, oil borne preservatives, water borne preservatives, fire retardants, CCA, Penta, or other chemicals, and include the production for each year for crossties, switch and bridge ties, poles, pilings, fence posts, lumber, timber, plywood, or other.

173. Documents related to your methods and data for determining the values of fugitive emissions from creosote treated wood, CCA treated wood,

Pentachlorophenol treated wood and any other type of chemical treated wood for each year during the operation of the facility.

174. Documents related to methods and data for determining each and every source of emission of hazardous chemicals at the facility for each year during its operation by you.

175. Documents related to the emission and methods of determining the amount of emissions of contamination by ash waste stored or emanating from the facility for each year during the relevant time period.

176. Documents related to methods of your identification of hazardous waste and standards for generation of waste.

177. Documents that you contend are authoritative sources for information to calculate or determine amount of exposure and effects of exposure to chemicals used or emitted from the facility.

178. Appraisals of any and all property, residential or commercial, within a two mile radius of the facility or along the flood plain down gradient of the facility, as well as any and all purchases and/or leases of parcels of residential and/or commercial properties in the vicinity of the facility.

179. Tolling agreements or agreements to toll statute of limitations with the plaintiffs in this action.

180. Documents related to any reasons or purposes that you claim that trial plaintiffs' diseases were caused by any other condition or circumstance other than exposure to hazardous chemicals emanating from the facility.

181. Documents related to your claim, if you so claim, that hazardous chemicals emitted by your facility do not generally cause the type of health conditions of the trial plaintiffs.

182.  Documents related to each action you took in connection with the release or threat of release of any hazardous or toxic substance from the facility.

183.  Documents related to each action you declined to take in connection with the release or threat of release of any hazardous or toxic substance from the facility.

Respectfully submitted this 13th day of September, 2007.

/s/ W. Eason Mitchell
W. EASON MITCHELL
(MIT020)
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
Telephone: 662-327-0903
Facsimile: 662-329-4832
E-Mail: emitchell@colom.com

## Certificate of Service

I, W. Eason Mitchell, hereby certify that on September 13, 2007, I electronically served the foregoing *Request for Production of Documents and Things* on the following via e-mail to the following:

Douglas Sheppard Arnold
doug.arnold@alston.com, marion.cannon@alston.com
Dennis R. Bailey
drb@rsjg.com, pk@rsjg.com
John C. Berghoff, Jr
jberghoff@mayerbrownrowe.com
John Aaron Earnhardt
jearnhardt@mcglaw.com
R. Austin Huffaker, Jr
rah2@rsjg.com, 989@rsjg.com
Orlyn O. Lockard, III
slockard@alston.com
Edwin Bryan Nichols
bnichols@maynardcooper.com, bnick20@mindspring.com
Laura Ellison Proctor
laura.proctor@lpcorp.com
Matthew C. Sostrin
msostrin@mayerbrownrowe.com,
Bernard Taylor, Sr
bernard.taylor@alston.com, dianne.hall@alston.com
Mark R. Ter Molen
mtermolen@mayerbrownrowe.com
H. Thomas Wells, Jr
twells@mcglaw.com

This 13th day of September, 2007.

_/s/ W. Eason Mitchell_____
W. Eason Mitchell

Request for Production of Documents and Things to Pactiv.wpd