IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GAIL BEDSOLE TATUM as Mother and Administratix of the Estate of MELANIE CHAMBERS, a Deceased Minor Child,<br><br>Plaintiff,<br><br>vs.<br><br>PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)  **CASE NO. 2:06-cv-83-LES-CSC**<br>)          **(LEAD CASE)**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT PACTIV CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Defendant Pactiv Corporation ("Pactiv"), pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for the entry of summary judgment in its favor and against Plaintiffs[1] as required by Alabama's 20-year rule of repose.

**INTRODUCTION**

Plaintiffs claim that air emissions relating to the historic operation of a sawmill in Lockhart, Alabama caused various personal injuries and property damage within a one-mile radius of the facility. Yet there is no dispute that on November 4, 1983, Pactiv sold the mill, including the boilers and other equipment at issue, to Louisiana-Pacific Corporation.

This Court previously held that Alabama's 20-year rule of repose begins to run once all elements of a claim coexist. As set forth by the Alabama Supreme Court in *Garrett v. Raytheon Co.*, 368 So. 2d 516, 520-21 (Ala. 1979), all elements of a toxic tort claim coexist, including an

---

[1] This motion is equally applicable to all Plaintiffs (including Jimmie Lou Bowman, Susan Phillips, and Kandy Creech), except for a limited group of individuals whose only alleged exposure occurred within the last 20 years. Melanie Chambers, for example, was born in 1987.

actionable injury, on the "date or dates of exposure."  Plaintiffs here allege exposure to air emissions while Pactiv operated the sawmill before selling it to Louisiana-Pacific in 1983. Plaintiffs first filed suit in 2006.  Those claims are time-barred.  It is of no help to Plaintiffs that they also claim "secondary" exposure to Pactiv contaminants that allegedly persisted or were dispersed by wind after 1983.  A continuous tort only exists if a plaintiff can establish ongoing tortious conduct, not ongoing consequences from time-barred conduct.

In denying Pactiv's Rule 12(b)(6) motion without prejudice, this Court noted that "Pactiv may later prove that the plaintiffs' claims are barred by the rule of repose."  Dec. 8, 2006 Memorandum and Order at 5 (docket no. 112).  Since then, there have been two key developments.  First, discovery amply confirmed that Pactiv indeed ceased ownership and operation of the sawmill when it sold the site in 1983.  *See infra* 3-5.  Second, new case law further reinforced that Pactiv is entitled to relief under the rule of repose.  *See Cline v. Ashland, Inc.*, Case No. 1041076, 2007 Ala. LEXIS 5 (Jan. 5, 2007) (declining to overrule *Garrett*'s holding that all elements of a toxic tort claim first exist on the date of exposure, not when a health condition manifests as argued by the same lawyers representing Plaintiffs here) (attached as **Exhibit A**), *cert. denied*, 127 S. Ct. 2916 (2007); *German v. CSX Transp., Inc.*, Case No. 06-0662, 2007 U.S. Dist. LEXIS 32021 (S.D. Ala. May 1, 2007) (holding that CERCLA § 309's discovery rule does not preempt Alabama's rule of repose) (attached as **Exhibit B**).

The rule of repose allowed Plaintiffs ample opportunity to assert claims against Pactiv. Plaintiffs could have filed suit at any time until November 4, 2003, 20 years after they were last allegedly exposed to air emissions while Pactiv operated the sawmill.  Plaintiffs failed to do so, even though these lawsuits were admittedly already in the works.  *See* Plaintiffs' Affidavit of Debra Brooks Hughes (stating that Plaintiffs' counsel was first contacted in July 2003, and that

by October 2003, counsel met with certain community members to discuss "potential claims" against Pactiv and offer "legal representation") (attached as **Exhibit C**).  The rule of repose was intended for cases just like this.  There is no genuine issue of material fact for trial.  Pactiv is entitled to summary judgment under Alabama's 20-year rule of repose.

## UNDISPUTED FACTS

Tennessee River Pulp & Paper Company, through its TMA Forest Products Group division, formerly owned and operated a sawmill in Lockhart, Alabama.  Tennessee River is a predecessor of Pactiv.  These entities are collectively referred to herein as "Pactiv."

On October 14, 1983, Pactiv agreed to sell the sawmill to Louisiana-Pacific Corporation ("LP") for between $2.1 million and $2.825 million, depending on the size of the log inventory at closing.  *See* Agreement of Purchase and Sale ("Sale Agreement") (attached as **Exhibit D**). The Sale Agreement specifically provided that:

> The conveyance will include all real and personal property associated with the sawmill operation and treatment plant . . ., including but not limited to all lands, buildings, improvements, sawmills, planer mill, storage sheds, boiler, dry kilns, equipment, supplies, office equipment, mobile equipment and other fixed assets relating to the operation. . . .

*Id.* at 1.  Exhibit B to the Sale Agreement then detailed some of the buildings and equipment that were transferred to Louisiana-Pacific, including the mill's five wood treating cylinders, the waste water ponds and associated spray nozzles, eight storage tanks, and three boilers.  *Id.* at Ex. B, 1-2.  Simply put, apart from a few excluded computers and office items (*id.* at 2), Pactiv sold the entire Lockhart operation to LP and left the site.  The Sale Agreement even provided that Pactiv "shall not enter into any sawmill or treatment plant operation within a seventy five mile radius of Lockhart, Alabama." *Id.* at 5.  Pactiv abided by this provision.

On October 21, 1983, Pactiv notified the Alabama Department of Environmental Management ("ADEM") of the sawmill's impending sale. It stated:

> I wish to inform you that the TMA Lockhart plant will be under new ownership after November 4, 1983.
>
> The new owners will be Louisiana Pacific Corporation of P.O. Box 3107, Conroe, Texas 77305.

Oct. 21, 1983 Pactiv Letter (attached as **Exhibit E**). The parties closed on the Sale Agreement and completed the transfer as scheduled on November 4, 1983.

LP publicly announced the deal on November 8, 1983, explaining that the sawmill would become part of its Southern Division, headquartered in Conroe, Texas. *See* Nov. 8, 1983 Business Wire (attached as **Exhibit F**). *See also* Nov. 17, 1983 Florala News at 8 ("TMA sells out to L-P") (attached as **Exhibit G**); LP's 1983 10-K Filing (providing an "acquisitions and construction update" and noting that LP "purchased [a] sawmill[] in . . . Lockhart, Alabama") (excerpts attached as **Exhibit H**); Deposition of Plaintiff Don Daniel at 96: 22-23, 97: 1-3 ("Q: How did you know that the facility had been sold? A: Well, it was talked about all over the mill. Everybody knew it had been sold.") (excerpts attached as **Exhibit I**).

On December 14, 1983, LP notified the Alabama Air Control Board that LP "has purchased the mill site formerly known as TMA Forest Products sawmill and treating plant. . . ." Dec. 14, 1983 LP Letter (attached as **Exhibit J**). LP advised the Board that any correspondence should be directed to LP's on-site plant manager, with a copy to LP's Conroe, Texas office. *Id.* LP subsequently confirmed to ADEM that it "ha[d] become the new owner" of the mill. *See* Jan. 4, 1984 LP Letter (attached as **Exhibit K**). By March 1984, LP further advised ADEM of certain "changes that have been made and changes that [LP] intend[s] to make in [its] wood treating process at the [Lockhart] facility." May 2, 1984 ADEM Letter (attached as **Exhibit L**).

Most important, after Pactiv sold the sawmill to LP, there is absolutely no evidence that Pactiv engaged in any of the alleged tortious conduct giving rise to Plaintiffs' claims. As LP now confirms, after 1983, Pactiv did not treat any wood, did not operate the boilers or other alleged emission sources, and did not conduct any other operations at the mill. *See* Declaration of Neil Sherman (attached as **Exhibit M**). Plaintiffs do not dispute this critical point. *See, e.g.,* Lone Pine Response and Affidavit of Plaintiffs' Expert James Clark at 7 (conceding that "TMA operated the Site from approximately 1978 **to 1983**. . . . [LP] purchased the plant in 1983") (emphasis added) (excerpts attached as **Exhibit N**).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party informs the court of an absence of a genuine issue of material fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita Elec. Indus.*, 475 U.S. at 587.

## ARGUMENT

I.      **The Rule Of Repose Began To Run No Later Than November 4, 1983, When Pactiv Ceased Operations And Sold The Sawmill to Louisiana Pacific.**

In addressing Pactiv's Rule 12(b)(6) motion, this Court previously held that the rule of repose "does not begin to run until all of the essential elements of the claim coexist so that the plaintiff could validly file suit."  Dec. 8, 2006 Memorandum and Order at 4 (docket no. 112) (citing *Am. Gen. Life & Accident Ins. Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004)).[2]  In *Underwood*, the Alabama Supreme Court went on to explain that a "suit on a tort claim may not be commenced until the defendant's tortious act proximately causes the plaintiff to suffer an actual injury."  886 So. 2d at 812-13.  Thus, the question now remains—when does an injury first occur in a toxic tort case involving alleged exposure to hazardous substances?  This Court need not look far for the answer.  This is not a novel question under Alabama law.

A.      **The Alabama Supreme Court's Decision In *Garrett v. Raytheon Co.* Dictates That An Injury Occurred At The Time Of Exposure.**

The Alabama Supreme Court addressed this exact issue in *Garrett v. Raytheon Co.*, 368 So. 2d 516, 520-21 (Ala. 1979), holding in a toxic tort case that the injury "<u>occurred on the date or dates of exposure.  This is not a case where an injury did not occur until it made itself manifest by symptoms</u>."  (Emphasis added).  Thus, a claim can (and must) be asserted following

---

[2] The statute of limitations also begins to run once all elements of a claim are present.  *See, e.g., Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) ("The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues.'  The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.") (citation omitted).  Pactiv does not raise the statute of limitations in <u>this</u> motion, however, because this Court would be required to address the additional legal question of whether CERCLA § 309's federal "discovery" rule can apply without an underlying CERCLA claim.  Since by its plain language CERCLA § 309 does not apply to repose periods at all (see *infra* Part IV), the only issue here is that all elements of Plaintiffs' claims existed in 1983 and are time-barred under Alabama law.

the exposure itself. The commencement of a limitations or repose period is not stayed pending the development of manifest symptoms or a plaintiff's discovery of a cause of action.

In *Garrett*, the plaintiff alleged exposure to radiation while working near radar equipment from 1955 through 1957. *Id.* at 518, 522. He did not develop any symptoms until 1975 when patches of hair began to fall out. *Id.* at 522. The plaintiff's condition subsequently deteriorated, and it was not until 1977 that he was first advised that his condition was caused by radiation exposure. The plaintiff filed suit shortly thereafter in 1978.

The Court began its analysis with the bedrock principle under Alabama law that all elements of a claim are present "whether or not the full amount of damages is apparent at the time of the <u>first legal injury</u>." *Id.* at 519 (emphasis added) (citing *Home Ins. Co. v. Stuart-McCorkle, Inc.*, 285 So. 2d 468, 473 (1973)). *See also Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 112-14 (Ala. 2003) (holding that decedent's personal injury claim accrued in 1962 when she was first addicted to cigarettes and suffered economic damages, not when she later experienced shortness of breath, coughing, or throat irritation, or when she was diagnosed with lung cancer in 1998); *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 497 (11th Cir. 1982) (following *Garrett* and focusing on the first legal injury).

The Court then explained that there are two different types of torts. With the first type, the alleged wrongful conduct causes injury right away:

> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage (then apparent) however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done. . . . Nor does plaintiff's ignorance of the tort or injury . . . postpone the running of the statute until the tort or injury is discovered.

*Garrett*, 368 So. 2d at 519 (citing *Kelly v. Shropshire*, 75 So. 291, 292 (1917)). With the second type, the alleged wrongful conduct only causes injury in the future:

> [T]here are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues," and the statute of limitations begins to run, when, and only when, the damages are sustained.

*Id.* (citing *Kelly*).

The Court expressly held that latent injuries caused by exposure to hazardous substances fall within the <u>first</u> category of torts—the exposure itself constitutes a concurrent injury, a completed wrong, allowing a plaintiff to validly file suit. *Id.* at 520-21 (reasoning that "the damage must have occurred at the time of exposure else defendant would not be liable. It is simply that all the progressive nature of the injury has not made itself manifest at the time of the last exposure"). As Justice Jones observed in his dissenting opinion, *Garrett* "reduces [the] date of injury (and thus accrual of the cause of action) to a legal conclusion" based on the date of exposure, entirely independent of the onset of physical symptoms. *Id.* at 528.

Thus, in *Garrett*, the Court concluded that the plaintiff had an actionable claim after his radiation exposure ended in 1957, even though no physical symptoms or health conditions had manifested at that time. The claim was therefore already barred by the statute of limitations when asserted in 1978. *Id.* at 521. *See also Tyson v. Johns-Manville Sales Corp.*, 399 So. 2d 263, 268 (Ala. 1981) (following *Garrett* and holding that asbestos claims asserted more than one year after the exposure were time-barred);[3] *Mathis v. Gen. Elec. Corp.*, 372 So. 2d 864, 865 (Ala.

---

[3] The Alabama legislature in 1980 enacted a special discovery rule exempting asbestos claims from *Garrett*'s exposure doctrine. *See* Ala. Code § 6-2-30(b); *Tyson*, 399 So. 2d at 268 (holding that the statute is not retroactive); *Am. Mut. Liab. Ins. Co. v. Phillips*, 491 So. 2d 904, 908 (Ala. 1986) (holding that the statute applies only to asbestos, and not other hazardous substances).

1979) (following *Garrett* and holding that radiation claims based on pre-1969 exposures were already barred by statute of limitations when asserted in 1973).

*Garrett*'s exposure doctrine has been applied by Alabama courts in numerous other latent injury cases involving both the statute of limitations and rule of repose.  In *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1135-36 (Ala. 1997), the plaintiff filed suit in 1995 alleging that he was exposed to carbon disulfide from 1952 to 1986.  The Court held that the plaintiff's claims were barred by the statute of limitations because they accrued by 1986.  *Id.* at 1136, 1142.  In *Johnson v. Garlock, Inc.*, 682 So. 2d 25, 26, 28 (Ala. 1996), the Court held that the plaintiffs' claims were barred by the statute of limitations since the plaintiffs were exposed to asbestos ending in 1978, even though they filed suit shortly after being diagnosed with asbestos-related diseases in 1992.  In *Hillis v. Rentokil, Inc.*, 596 So. 2d 888, 889-90 (Ala. 1992), the Court held that the plaintiff's claim accrued in 1987 when he was exposed to chromated copper arsenate at a lumber facility.  Finally, in *Henderson v. MeadWestvaco Corp.*, Case No. CV2006-122, Circuit Court for St. Clair County (July 3, 2007) (attached as **Exhibit O**), the court granted summary judgment under the rule of repose where plaintiff alleged asbestos exposures in 1971 and 1972, even though he was not diagnosed with mesothelioma until 2004.

**B.    Last Term, The Alabama Supreme Court Directly Considered But Declined To Overrule *Garrett*'s Exposure Doctrine.**

*Garrett*'s exposure doctrine was just recently the subject of an extensive legal battle before the Alabama Supreme Court, litigated by the same lawyers representing Plaintiffs here. Plaintiffs' counsel asked the Court to overrule its earlier decision in *Garrett* by adopting a new rule for when a toxic tort claim accrues and can be asserted—either a discovery rule or a "manifest present injury" requirement.  They lost.  *See Cline v. Ashland, Inc.*, Case No. 1041076, 2007 Ala. LEXIS 5 (Jan. 5, 2007), *cert. denied*, 127 S. Ct. 2916 (2007).

The plaintiff in *Cline* alleged exposure to benzene from 1968 through 1987 during the course of his employment. *Id.* at *1. He was later diagnosed with leukemia in October 1999, and filed suit against various benzene manufacturers and suppliers within two years of the diagnosis in April 2001. The defendants moved for summary judgment relying on *Garrett*'s exposure doctrine. The circuit court applied *Garrett* and granted the motions, holding that the plaintiff's claims were barred by the two-year statute of limitations.

The plaintiff turned to the Alabama Supreme Court. The Court initially affirmed without opinion. The plaintiff then applied for a rehearing. The Court granted the plaintiff's application and heard oral argument. After the oral argument, the Court solicited additional *amicus* briefs from the Alabama Trial Lawyers Association and the Business Council of Alabama.

On January 5, 2007, the Alabama Supreme Court again affirmed without opinion, leaving *Garrett*'s exposure doctrine intact. Although *Cline* generated various concurring and dissenting opinions, the <u>entire</u> Court acknowledged that *Garrett*'s exposure doctrine is the law in Alabama, and that any recognition of a "manifest present injury" rule in toxic tort cases would necessitate a change. The key disagreement was simply who should consider making such a change, the legislature (to which the majority deferred) or the Court (advocated by the dissent).

Justice See's concurring opinion, joined by Chief Justice Nabers and Justice Stuart, explained that "[t]his Court has consistently chosen to continue to follow *Garrett*," and that a manifest present injury requirement would represent a "policy change" for the legislature to consider. *Id.* at *6, 8-11. Justice Smith's concurring opinion, joined by Justice Bolin, similarly recognized "the long history of *Garrett*" and that "[t]his Court has continued to apply the holding of *Garrett* since 1979." *Id.* at *16, 21. It also concluded that "the legislature is the more appropriate body to impose a new rule." *Id.* at *21. Justice Harwood's dissenting opinion,

joined by Justices Lyons, Woodall, and Parker, advocated a "manifest present injury" requirement. *Id.* at *59-61. Importantly, however, it also recognized that this requirement would create a "new accrual rule," and thus should be applied only prospectively. *Id.* at *65. The entire court thus flatly rejected any notion, under the current state of the law, that all elements of a claim are only present after the development of physical symptoms.

The legal battle did not end there. The plaintiff moved the Alabama Supreme Court to suspend its own rules and consider hearing the case again, for a third time. The Court denied the request. The plaintiff then petitioned the U.S. Supreme Court for a writ of *certiorari*, claiming due process violations that the Alabama Supreme Court had already considered and rejected. On June 4, 2007, the U.S. Supreme Court denied the petition.

In short, although Plaintiffs and their counsel are likely to continue their crusade against *Garrett* in this case, the war is already lost. Within the last year, the Alabama Supreme Court already considered and rejected their exact arguments, maintaining *Garrett*'s exposure doctrine unless the state legislature changes the law. It has not done so. All that is left for this Court is to apply *Garrett* in deciding when all elements of Plaintiffs' claims first coexisted. Under a straightforward application of *Garrett*, Plaintiffs here would have suffered injuries by 1983 when they were allegedly exposed to air emissions from Pactiv's operations at the mill. Plaintiffs' claims are therefore barred by Alabama's 20-year rule of repose.

## II.    Any Purported Continuing Exposure After Pactiv Sold The Sawmill In 1983 Cannot Delay The Running Of The 20-Year Repose Period.

In an attempt to toll the running of the repose period, Plaintiffs may say that ash from the sawmill's boilers was "dumped on the site and left exposed to the wind, creating a secondary airborne contaminant plume" that continued after Pactiv left the site in 1983. *See* Lone Pine Response and Affidavit of Plaintiffs' Expert James Clark at 4 (**Exhibit N**). As an initial matter,

this bare allegation has no factual support. The ash piles at issue were sampled in 1995 and determined to be non-hazardous. *See* RCRA Facility Assessment, Revised Draft at 35, 37 (excerpts attached as **Exhibit P**). At that point, ADEM concluded that the potential for a release of hazardous substances into the air was "low" and recommended "no further action." *Id.*

In any event, even if there was a so-called "secondary" plume, it is insufficient as a matter of law to toll the running of the repose period. A continuous tort only exists if a plaintiff can establish ongoing <u>tortious conduct</u> (*i.e.*, dumping ashes), not merely ongoing <u>consequences</u> from time-barred conduct (*i.e.*, wind dispersion of previously dumped ashes). Any ongoing exposure to a "secondary" plume would have occurred after the cessation of Pactiv's alleged tortious conduct and has no impact on the rule of repose.[4]

A continuous tort only occurs where a defendant engages in "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983). "When a tort is deemed continuous, the limitations period runs from the last date the plaintiff was exposed to damages." *Haynie v. Howmedia Osteonics Corp.*, 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000). In contrast, "Alabama law does not recognize a continuing tort in instances where there has been a single act followed by multiple consequences." *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 & n.2 (Ala. 2001). *See also*

---

[4] This of course assumes that a "continuous tort" can toll the rule of repose to begin with. Pactiv is not aware of any Alabama case that has tolled the rule of repose based on a continuous tort. To the contrary, in *American General Life & Accident Insurance Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004), the Alabama Supreme Court held that "the rule of repose began running on each [discrimination] claim arising from the purchase of a particular [life insurance] policy as soon as the plaintiff paid the <u>first premium</u> for the policy because that payment supplied the last essential element necessary for all essential elements of the particular claim to coexist. . . . <u>[T]he continued collection of premiums after the payment of the first premium for each policy did not toll the running of the rule of repose</u>." (Emphasis added). Instead, the Court acknowledged, "[t]he only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim." *Id.* Pactiv has never recognized the existence of any right to recover by Plaintiffs.

*Haynie*, 137 F. Supp. 2d at 1294-95 ("[I]t takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated.").

Courts have thus rejected the application of the continuous tort doctrine to the persistence and/or migration of contaminants that otherwise predate a limitations period. For example, in *LaBauve v. Olin Corp.*, No. 03-0567, 2005 U.S. Dist. LEXIS 28440, at *70-71 (S.D. Ala. 2005), the court held that under Alabama law:

> To the extent that the continuing wrongdoing claimed by plaintiffs consists of either <u>secondary</u> migration of Olin pollutants in the community or defendants' failure to take appropriate offsite remedial measures to correct existing contamination, such allegations do not support application of the continuous tort doctrine. Indeed, <u>a defendant's failure to clean up contamination that predates the limitations period, or the migration of such 'old' contamination from one location to another, does not constitute a continuous tort, as a matter of law</u>.

(Emphasis added). *See also Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004) (holding that migration of pollutants released before the limitations period, without further acts by the defendant, does not constitute a continuing tort); *Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 735-36 (E.D. Tex. 2002) (holding that where defendant ceased operations in 1990, its failure to modify or reverse prior wrongful conduct by cleaning up its contaminants is not a continuing tort). Alabama law instead only recognizes a continuous tort where contaminant releases are caused by "repetitive acts," such as through "ongoing operations." *See Monsanto Co.*, 801 So. 2d at 835-36 (recognizing a continuous tort where Monsanto did not refute plaintiff's allegation that its ongoing operations continued to discharge PCBs, even though it stopped the actual manufacturing of PCBs in the 1970s).

In this case, Pactiv's alleged tortious <u>conduct</u>—spreading boiler ash on the ground—ceased when it sold the facility in 1983. Any later <u>consequences</u> or continuing injury from this

prior conduct does not extend the repose period. *See also Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007) (holding that where salary decisions were made outside the limitations period, employment discrimination claims were time-barred even though consequences continued through ongoing paychecks). Plaintiffs' claims therefore accrued by November 4, 1983 and were time-barred well before Plaintiffs filed suit in 2006.

### III.    Pactiv's Remediation Of Onsite Groundwater And Soil Has Nothing To Do With Plaintiffs' Offsite Air Emission Claims.

To show some ongoing conduct (and thus a continuous tort), Plaintiffs may also try pointing at Pactiv's later involvement with environmental remediation work at the sawmill after it sold the site to LP. For example, Plaintiffs allege that Pactiv "continued to maintain, by operation of law or contract, a responsibility to remediate" the sawmill. Third Am. Compl. ¶ 44 (docket no. 103). *See also* Plaintiffs' Supplemental Response to Defendants' Joint Motion to Compel at 23 (docket no. 229) ("Pactiv and [LP] have entered into an agreement in which each Defendant has assumed responsibility for the legally-mandated environmental remediation."). This assertion is nothing more than a red herring. And a poor one at that.

In the mid-1980s, LP discovered an onsite plume of contaminated groundwater apparently emanating from the mill's wastewater lagoons. Pactiv and LP agreed to share the cost of pumping and treating the groundwater, as well as investigating and conducting any further remediation. *See* RCRA Facility Assessment, Revised Draft, Executive Summary (**Exhibit P**). To be clear, Plaintiffs do not (and cannot) allege exposure to, or damages resulting from, this onsite groundwater plume. *See, e.g.,* Plaintiffs' Dec. 28, 2006 Letter to Court at 4 (representing that "Plaintiffs do not claim exposure by a water pathway") (attached as **Exhibit Q**).

Instead, this case is about offsite air emissions. As set forth by Plaintiffs, the alleged tortious conduct involves burning waste in boilers, spreading ashes on the ground, and spraying

wastewater into the air during the course of every-day sawmill operations.  Plaintiffs do not claim that any remediation performed by Pactiv after 1983 caused their injuries.  Not a single allegation in the many complaints filed by Plaintiffs even describes the remedial work. Plaintiffs, predictably, may try to say that Pactiv did not do enough to clean up the sawmill.  But as discussed in Part II, any alleged failure to stop the spread of pre-1983 contaminants does not constitute ongoing "conduct" to support a continuous tort.

As Judge Kopf recently recognized in *Schwan v. CNH America LLC*, Case No. 04CV3384, Memorandum and Order at 38 (D. Neb. May 4, 2006) (excerpts attached as **Exhibit R**), a defendant does not become liable in tort merely because it agreed to conduct remediation:

> The plaintiffs have cited no authority for the proposition that the defendants may be held liable in tort simply because they hired experts to monitor and assess pollution, negotiated among themselves and with the [state agency] concerning remediation efforts, or contracted with each other to assume liability for certain portions of the property.  These actions may be 'consistent with the types of actions that would normally be taken by the direct owner and direct controller of the facility,' but it does not follow that by taking such actions the defendants became *de facto* owners or controllers of the facility.

Thus, by agreeing to remediate parts of the sawmill with LP, Pactiv did not reestablish operational control of the site that it relinquished in 1983.  And, most importantly, Pactiv did not engage in any of the alleged tortious conduct giving rise to Plaintiffs' claims in this case.

Finally, even if Plaintiffs did claim injury from the cleanup itself, Plaintiffs cannot use post-1983 conduct to revive claims related to pre-1983 conduct.  Where the continuing tort theory properly applies (which it does not here), "recovery may be had for resulting injuries subject to the limitation that only damages which occurred within the period of limitations may be recovered, provided that the damages sustained within the statutory period are separable from those that are barred under the statute by the lapse of time."  *Santiago v. Lykes Bros. Steamship*

*Co.*, 986 F.2d 423, 426 (11th Cir. 1993) (applying Alabama law).   *See also Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 888-89 (Ala. 1995) (holding that even though sexual harassment was a continuing tort, older conduct remained time-barred); *Garrett*, 368 So. 2d at 521 (citing cases which hold that "recovery for a continuous tort could be had only for those damages which occurred within the period of limitations").  Plaintiffs' assertion that Pactiv came back to remediate the facility after 1983 is thus a non-starter.  Damages allegedly caused by Pactiv's pre-1983 conduct (*i.e.* facility operations) remain time-barred.

**IV.     CERCLA § 309's Discovery Rule Does Not Apply To Alabama's Rule Of Repose.**

Plaintiffs previously suggested in their Rule 12(b)(6) briefing that CERCLA § 309's "discovery rule" might preempt Alabama's rule of repose.  This argument has been rejected in Alabama and elsewhere.  *See German v. CSX Transp., Inc.*, Case No. 06-0662, 2007 U.S. Dist. LEXIS 32021 (S.D. Ala. May 1, 2007) (holding that CERCLA § 309 does not apply to Alabama's rule of repose).  *See also BNSF v. Skinner Tank Co.*, 419 F.3d 355 (5th Cir. 2005) ("[T]he reach of the plain language of [CERCLA § 309] does not extend to statutes of repose."); *McDonald v. Sun Oil Co.*, No. 03-1504, 2006 WL 696316 (D. Or. Mar. 14, 2006) ("[Section] 309 of CERCLA extends only to statutes of limitations."); Frumer & Friedman, Products Liability § 55.05(4)(c)(1) (2006) ("[CERCLA § 309] refers to state statutes of limitation, not to state statutes of repose, and does not preempt the latter.") (attached as **Exhibit S**).

In assessing preemption, a court must "start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress."  *Nat'l Ass'n of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1252 (11th Cir. 2006).  "We accordingly presume that 'Congress does not cavalierly preempt state law.'"  *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  "Where

the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*).

CERCLA § 309, by its plain language, applies only to limitations periods (whether statutory or common law), not to statutes or rules of repose.  It provides that:

> If the <u>applicable limitations period</u> for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally-required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added).  In CERCLA, Congress itself defined "applicable limitations period" to mean "the period specified in a <u>statute of limitations</u> during which a civil action . . . may be brought." *Id.* § 9658(b)(2) (emphasis added).  *See also id.* § 9658(b)(3) (defining "commencement date" to mean "the date specified in a <u>statute of limitations</u> as the beginning of the applicable <u>limitations period</u>") (emphasis added).  CERCLA § 309 is completely silent on preempting the commencement date for any statute or rule of repose.  Section 309, by its own specific definitions, preempts only statutes of limitation.

In *German v. CSX Transp., Inc.*, 2007 U.S. Dist. LEXIS 32021, at *5-12, the Southern District of Alabama analyzed CERCLA § 309's plain text and held that it does not preempt Alabama's rule of repose.  The court began by recognizing the rule of repose's unique purpose:

> The common-law rule of repose . . . bars actions that have not been commenced within 20 years from the time they could have been commenced.   The rule of repose is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence has been obscured. Lack of notice is not sufficient to avert the application of the rule of repose.  The only element of the rule of repose is time.

*Id.* at \*6 (quoting *Am. Gen. Life & Accident Ins. Co. v. Underwood*, 886 So.2d 807 (Ala. 2004)). *See also Pinigis v. Regions Bank*, Case No. 1060474, 2007 Ala. LEXIS 125, at \*9 (July 6, 2007) ("[The rule of repose] is based solely on the passage of time, and is not affected by the circumstances of the situation, by personal disabilities, or by . . . concepts of accrual, notice, or discovery. The rule is an absolute bar to unasserted claims.").

The court then made clear that a limitations period and a repose period are not one and the same—the difference is "substantive, not merely semantic." *German*, 2007 U.S. Dist. LEXIS 32021, at \*9 (quoting *BNSF*, 419 F.3d at 362). "While a statute of limitations generally is procedural and extinguishes the remedy rather than the right, . . . repose is substantive and extinguished both the remedy and the actual action." *Id.* at \*8 (quoting *Ex Parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 764-65 (Ala. 2002)). *See also Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000) ("While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is a substantive doctrine of the State, eliminating a cause of action. . . ."), *aff'd*, 267 F.3d 1209 (11th Cir. 2001). As the Fifth Circuit explained in *BNSF*, "with the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it." 419 F.3d at 363. Thus, statutes of limitations and rules of repose are not interchangeable. And they are not treated as interchangeable by Congress in CERCLA.

Having established that Alabama's rule of repose is more than just a limitations period, the court turned to the plain language of CERCLA § 309. It held:

> [T]he text of § 9658 does not mention statutes or rules of repose but instead discusses only statutes of limitation. Under the principles of statutory construction, the plain language of § 9658

should be given effect. . . .  Therefore, § 9658 cannot be read as having a preemptive effect upon the Alabama rule of repose.

2007 U.S. Dist. LEXIS 32021, at *9-10.[5]  The court further explained that:

Literally, § 9658 states that it only preempts state law when the applicable state <u>statute of limitations</u> "provides a commencement date which is earlier than the [federally required commencement date in § 9658]" - no mention of peremptory statutes or statutes of repose.  The provision defines "commencement date" as the "date specified in a <u>statute of limitations</u> as the beginning of the applicable limitations period."

*Id.* at *8-9 (quoting *BNSF*, 419 F.3d at 362) (emphasis in original).  The court therefore declined to apply CERCLA § 309, and granted the defendant's motion to dismiss under the rule of repose, where the alleged chemical exposure occurred in or around 1981.  *Id.* at 11 ("Upon consideration of the arguments, the persuasive decision in [*BNSF*], and review of the case law of the State of Alabama, the undersigned finds that the rule of repose is applicable to plaintiff's claims, and thus, the substantive claims have been extinguished by the passage of time.").

The same result is warranted here.  CERCLA § 309 does not apply to the rule of repose, and under *Garrett*, Plaintiffs would have first suffered injuries when they were allegedly exposed to air emissions from Pactiv's operation of the sawmill ending in 1983.

---

[5] In *Fisher v. Ciba Specialty Chemicals Corp.*, Case No. 03-0556, 2007 U.S. Dist. LEXIS 76174, *61-67 (S.D. Ala. Oct. 11, 2007), a different Southern District judge applied CERCLA § 309 to Alabama's rule of repose, but only after defendants had "offer[ed] no rejoinder" to plaintiff's argument that CERCLA § 309 should preempt <u>common law</u> repose periods.  The court stated that it would "not undertake to articulate defendants' arguments for them."  *Id.* at *64.  The *Fisher* court never cited *German*, and was apparently unaware that the Southern District had already followed *BNSF* just months before in holding that CERCLA § 309 <u>does not preempt</u> to Alabama's rule of repose.  And, *Fisher* did not refer to the "definitions" in CERCLA § 309 for assistance in defining the "applicable limitations period."  Although CERCLA § 309 references "common law," that language directly qualifies the term "applicable limitations period," which in turn is defined to mean "the period specified in a statute of limitations."  The Alabama rule of repose is fundamentally different from a mere limitations period.  *See supra* at 17-18.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment for Pactiv and against Plaintiffs as required by Alabama's 20-year rule of repose.

October 19, 2007

/s/  John C. Berghoff, Jr.
John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)

Counsel for Defendant Pactiv Corporation

OF COUNSEL:

MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2007, I filed the foregoing via the CM/ECF system which will send notice of said filing to at least the following:

W. Eason Mitchell

Gregory A. Cade

Fred R. DeLeon

W. Lee Gresham, III

Robert Leslie Palmer

Richard Elder Crum

Bernard Taylor

Douglas S. Arnold

Orlyn O. Lockard, III


/s/  Matthew C. Sostrin
Of Counsel