<u>AGREEMENT OF PURCHASE AND SALE</u>

This Agreement dated <u>October 14</u>, 1983, by and between Tennessee River Pulp and Paper Company ("Seller"), a Delaware Corporation and Louisiana-Pacific Corporation ("Buyer"), a Delaware corporation.

W I T N E S S E T H

WHEREAS, Seller owns certain real and personal property in Lockhart, Covington County, Alabama, consisting of an approximately 45.68 acre site. The conveyance will include all real and personal property associated with the sawmill operation and treatment plant unless otherwise specifically excluded herein, including but not limited to all lands, buildings, improvements, sawmills, planer mill, storage sheds, boiler, dry kilns, equipment, supplies, office equipment, mobile equipment and other fixed assets relating to the operation, the real property being described in Exhibit A attached hereto, and the personal property described in Exhibit B.

WHEREAS, Seller desires to sell to Buyer and Buyer desires to purchase from Seller all of the aforesaid property upon the terms and subject to the conditions hereinafter set forth.



EXHIBIT
D

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, the parties do hereby agree as follows:

1. __Properties Included in Sale.__ Subject to the terms and conditions hereinafter set forth, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, a portion of the Lockhart, Alabama operation and treatment plant, more specifically described in Exhibits A and B attached hereto.

2. __Properties Excluded From Sale.__ Specifically excluded from this sale are the following described properties:

    (a)  Mobile radio equipment

    (b)  Computer

    (c)  Seller office files

    (d)  Leased office equipment

    (e)  Fuel tanks if leased or not otherwise owned by Seller

3. __Warranties.__

    (a)  __Real Property.__ Seller covenants that to the best of its knowledge, there are no agreements, leases, contracts, or other agreements affecting the right to use this property nor are there any encroachments to the knowledge of Seller, and there is to the knowledge of

2

LPC00048335

Seller, no pending or threatened change of any ordinance, regulation, zoning, or other law which would affect the intent and purpose of this sale, nor is there any pending or threatened condemnation of any property being conveyed.

(b)  Personal Property.  It is understood that the items of personal property to be sold and transferred hereunder shall be "As Is", "Where Is".  Other than the warranty of title, Seller EXCLUDES ALL WARRANTIES EXPRESS OR IMPLIED, IN LAW OR IN FACT, INCLUDING THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND THE WARRANTY OF MERCHANTABILITY.  Buyer has inspected both facilities and disclaims any reliance upon any statements, other than those contained herein, by Seller, its agents or employees about the character, use, fitness, or value of Seller's Plants. In particular, Buyer acknowledges that Seller has made no representation or warranty whatsoever with respect to the profitability of the operations being sold.

4. Purchase Price of Assets Conveyed.  Buyer shall pay to Seller for the assets enumerated above the sum of $2,100,000.00 to be paid by the Buyer to Seller as follows:

(a)  $282,500.00 by Cashier's Check or wire transfer to Seller's bank account upon the execution of this agreement; and

(b)  The balance of $1,817,500.00 by Cashier's Check or wire transfer to Seller's bank account at the Closing.

3

LPC00048336

If the transaction is not consummated by the Closing Date, through no fault of Seller, Buyer's deposit shall be forfeited provided only that title is acceptable as provided in Paragraph 1 above.

5.  <u>Inventory to be Conveyed.</u>  On the site mentioned above, there exists certain timber and lumber inventory which shall be paid for by Buyer at closing.  The exact amount of inventory shall be determined prior to closing by a method mutually agreed upon between the parties.  Seller guarantees this inventory will be no less than $725,000.00 at closing.  The inventory will be valued as follows:

(a)  White lumber inventory value shall be Random Length prices less 20% as reflected in its published report dated September 30, 1983.  A copy is attached hereto.  All treated lumber and treated and untreated post and pole inventory shall be based on Seller's price list dated September 30, 1983 less 20%.  A copy being attached hereto.

(b)  In addition to the above purchase price, all logs on the yard at closing would be paid for at Seller's cost.  All other logs delivered would be paid for at an agreed upon price.

(c)  Notwithstanding the above, all parties agree that the total purchase price for all assets being conveyed, excluding log inventory, shall not exceed $2,825,000.00.

4

LPC00048337

6.  **Accounts Receivable and Accounts Payable.**  Seller would keep all Accounts Receivable and Accounts Payable.

7.  **Conditions to Buyer's Obligations.**  The obligation of Buyer to pay the purchase price and to consummate the transactions contemplated herein, shall be subject to the following condition unless waived in writing by Buyer at closing:

(a)  Seller shall have performed all of the obligations to be performed by it hereunder at or prior to the Closing Date.

8.  **Conditions to Seller's Obligations.**  The obligation of Seller to consummate the sale provided for herein, and to perform its other obligations herein contained, shall be subject to the following conditions unless waived in writing by Seller at the Closing:

(a) Buyer shall have performed all of the obligations to be performed by it hereunder at or prior to the Closing Date; and

(b)  Approval of Seller's Board of Directors of the transaction contemplated in this Agreement.

9.  **Covenant Not to Compete.**  For a period of five years from the date of closing this transaction, Seller shall not enter into any sawmill or treatment plant operation within a seventy five mile radius of Lockhart, Alabama.

5

LPC00048338

10.  <u>Closing.</u>  The closing and sale of the real and
personal property, the payment of the purchase price, and
the deliveries contemplated by this agreement shall be
consummated at a closing no later than November 4, 1983 or
on such date or such time as the parties may mutually agree
upon.  The closing shall be held in the office of Tennessee
River Pulp and Paper Company at Packaging Corporation of
America, 1603 Orrington Avenue, Evanston, Illinois 60204 or
such other place as the parties shall mutually agree upon.

Possession shall be transferred on the closing date
except that Buyer shall have reasonable access to the
facilities prior to such date for activities such as
photography, taking inventory, measuring buildings and
collecting data.

11.  <u>Documents for Closing.</u>  Seller shall furnish a good
and sufficient warranty deed to the real property to be
conveyed, satisfactory mechanic's lien affidavits, bills of
sale conveying good and sufficient title to all personal
property to be conveyed, and any satisfactions,
cancellations or corrective instruments that may be required
in connection with perfecting the title.

12.  Buyer and its counsel shall have received from
<u>A. A. Haller, Attorney At Law</u>, an opinion dated the date of
closing, in the form and substance satisfactory to Buyer and
its counsel, to the effect that this agreement shall

6

LPC00048339

constitute a valid and binding obligation of Seller,
enforceable in accordance with its respective terms (subject
to judicial discretion regarding the remedy of specific
performance), that Seller has good and marketable title to
all personal property to be conveyed to Buyer free and clear
of any claims, liens, or encumbrances, and has full legal
right and power, and all authorization and approval required
by law, to take the actions contemplated by this agreement,
and upon completion of the contemplated transaction, Buyer
will acquire good and marketable title to all assets
conveyed. Such opinion shall include that to the best of
the knowledge of such counsel, the conditions of this
agreement have been satisfied.

13. <u>Evidence of Title.</u> Buyer shall purchase at its own
expense, a title insurance commitment issued by a qualified
title insurer, insuring the title of Seller to the real
property, subject only to liens, encumbrances, exceptions,
or qualifications set forth in this agreement, and those
which shall be discharged by Seller on or before Closing.

14. <u>Examination of Title.</u> Buyer shall have until five
o'clock p.m., on November 3, 1983 to examine the commitment
and if title is found defective, shall immediately notify
Seller, in writing, specifying the defects. If said defects
render the title unmarketable, Seller shall have thirty days
from receipt of the notice within which to remove said

7

LPC00048340

defects, and if Seller is unsuccessful in removing them
within said time, Buyer shall have the option of either (a)
accepting the title as it then is or (b) terminating this
contract with no further obligations.

15.  <u>Survey.</u>  Buyer, within the time allowed for
delivery of evidence of title and examination thereof, may
have the property surveyed at its expense.  If the survey,
certified by a registered Alabama surveyor, shows any
encroachment on said property, or that improvements intended
to be located on the subject property in fact, encroach on
lands of others, or violate any of the covenants contained
in this agreement, the same shall be treated as a title
defect.

16.  <u>Ingress and Egress.</u>  Seller covenants and warrants
that there is ingress and egress to the property.

17.  <u>Liens.</u>  Seller shall, both as to the realty and
personal property being sold hereunder, furnish to Buyer at
the time of Closing, affidavits attesting to the absence,
unless otherwise provided for herein, of any financing
statements, claims of lien, or potential lienors known to
Seller, and further attesting that there have been no
improvements to the property for ninety days preceding the
date of Closing which have not been paid for.

8

LPC00048341

18.  <u>Taxes.</u>  Buyer agrees to pay any documentary stamps or other taxes required to be affixed upon the deeds and bills of sale on the property to be conveyed herein.

19.  <u>Legal Proceedings; Compliance with Laws.</u>

(a)  Seller is not a party to any action, suit or proceeding pending or known to be threatened before any court or administrative agency which would adversely affect this transaction.  There is no order, injunction or decree of any court or governmental agency in force or outstanding against or affecting any of the operations of the properties to be conveyed.

To the knowledge of Seller all required permits for all discharges to air and water, or other pollution of contamination of the properties from all of the operations of the properties to be conveyed and affecting waste disposal thereon or therefrom are in full force and effect. To the knowledge of Seller, no such permit has been issued conditioned upon the performance of work of the installation of additional equipment.  To the knowledge of Seller, all properties, plants, and equipment of Seller and all operations and business of Seller are being conducted and have been, in substantial compliance of all applicable laws, ordinances, regulations, and zoning, and Seller knows of no threatened or pending change in any such law, ordinance, regulation or zoning which would have a material adverse effect on the business of Buyer.

9

LPC00048342

20.  Employment Matters.  Seller is not aware of any employment agreement, collective or bargaining agreement, commission arrangement, profit sharing, pension, retirement benefit, bonus, incentive, or other compensation, or retirement plan, or arrangement in existence which would survive this sale and adversely affect Buyer.

It is understood that Seller employees shall be rehired at the discretion of Buyer, and in this regard, Seller shall take all necessary action to terminate such employees as of the date of closing this transaction. Seller shall be responsible for all salaries due as of the date of closing for said employees, as well as all accrued benefits, including, but not limited to, vacation, leave time, bonuses, etc.  All state and federal employment taxes on such employees accrued or due as of the date of closing, will be the responsibility of Seller and Buyer shall have no responsibility therefor.  Seller shall also be responsible for all liability, benefits and coverage required under the workmen's compensation laws of the State of Alabama through the date of closing.

21.  Adverse Conditions.  There are no conditions known to Seller with respect to the markets, products, facilities, or personnel of Seller which might materially adversely affect Buyer's business or prospects other than such conditions as may affect the lumber, wood chip, and treatment plant business as a whole.

10

LPC00048343

22.  <u>Brokers.</u>  All negotiations relative to this agreement and the transactions contemplated hereby have, to the knowledge of Seller, been conducted solely by the parties hereto and without the intervention of any other person in such manner as to give rise to any valid claim for a brokerage fee, finder's fee, or like payment.

23.  <u>Seller's Indemnity.</u>  Seller shall indemnify, defend and hold harmless Buyer from all liability, suits, claims, demands, damages, fees, costs and expenses (including reasonable attorney's fees) of any kind whatsoever, including damage to, loss, or destruction of any person, firm, corporation, or other entity arising out of or in connection with the assets prior to the Closing.

24.  <u>Buyer's Indemnity.</u>  Buyer shall indemnify, defend and hold harmless Seller from all liability, suits, claims, demands, damages, fees, costs, and expenses (including reasonable attorney's fees) of any kind whatsoever, including damage to, loss, or destruction of any person, firm, corporation, or other entity arising out of or in connection with the assets from and after the Closing.

25.  <u>Further Assurances.</u>  Seller agrees that it will, from time to time, upon the written request of Buyer, do, execute, acknowledge, and deliver such further acts, deeds, conveyances, transfers, and assurances for the purpose of

11

LPC00048344

better assuring, conveying, transferring, assigning, and confirming unto Buyer the properties sold to Buyer hereunder, as Buyer may reasonably require.

26. <u>Destruction or Condemnation of Assets.</u>  Buyer shall insure the real and personal property against fire or other casualty prior to the Closing and shall be entitled to all proceeds in the event of loss, which shall be Buyer's sole remedy.  Neither party may revoke this agreement due to damage to the real or personal property by fire or other casualty.

27. <u>Notices.</u>  Any notice or other communication given or made hereunder shall be deemed properly given or made if mailed by registered or certified mail in the ordinary course, postage prepaid, when addressed to:

> Seller: Mr. John Cook
> Tennessee River Pulp and Paper Company
> Lockhart, Alabama 36455

> Buyer: Ronald L. Paul
> Louisiana-Pacific Corporation
> Post Office Box 2170
> Conroe, Texas  77301

or other such addresses as may be designated by the respective parties to writing.

28. <u>Assignment.</u>  Any assignment of this Agreement is and shall be absolutely void.

12

29.  <u>Modification or Waiver.</u>  This agreement or any provision hereof may be changed, waived, discharged, or terminated only by an instrument in writing signed by both parties.

30.  <u>Governing Law.</u>  This agreement shall be deemed to have been entered into pursuant to, and shall be governed by, the laws of the State of Alabama.

31.  <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, and each of such counterparts shall, for all purposes, be deemed to be an original, and all such counterparts shall together constitute one and the same instrument.

32.  <u>Heading.</u>  Paragraph headings contained herein are for reference purposes only and shall not be deemed to limit or modify the test hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers in the presence of the undersigned competent witnesses the day and year first above written.

WITNESSES:                          TENNESSEE RIVER PULP AND
                                    PAPER COMPANY,

13

*Diane B. Crowell*

*Robert P. Little*

WITNESSES:

*Diane B. Crowell*

*Robert P. Little*

By *John R Cook*
John R. Cook
Vice President

LOUISIANA-PACIFIC
CORPORATION

By _____
Ronald L. Paul
General Manager
Southern Division

State of ___Alabama___

County of ___Covington___

BEFORE ME, the undersigned Notary Public in and for said County and State on this __19th__ day of ___October___, 1983, personally came and appeared

___John R. Cook___, who declared and acknowledged that __he__ is the identical person who executed the foregoing instrument in writing; that __the__ signature thereto is his own true and genuine signature, and that he executed said instrument in his capacity as

___Vice President___ of TENNESSEE RIVER PULP AND PAPER COMPANY, of his own free will and accord as the act and deed of TENNESSEE RIVER PULP AND PAPER COMPANY for the prupsoe of considerations therein set forth and expressed.

_____
Notary Public

My Commission expires:
May 24, 1987

14

State of <u>Alabama</u>

County of <u>Covington</u>

BEFORE ME, the undersigned Notary Public in and for said County and State on this <u>10th</u> day of <u>October</u>, 1983, personally came and appeared <u>Ronald L. Paul</u>, who declared and acknowledged that he is the identical person who executed the foregoing instrument in writing; that his signature thereto is his own true and genuine signature, and that he executed said instrument in his capacity as <u>General Manager, Southern Div.</u> of LOUISIANA-PACIFIC CORPORATION, of his own free will and accord as the act and deed of LOUISIANA-PACIFIC CORPORATION for the purpose and considerations therein set forth and expressed.

_____
Notary Public

My Commission expires:

May 24, 1987

LPC00048348

EXHIBIT "A"

LAND DESCRIPTION
Lockhart, Alabama Plant Site

19.7 acres of land more or less, comprising portions of the SW 1/4 of SW 1/4 and
NW 1/4 of SW 1/4 of Section 34 and SE 1/4 of SE 1/4 and NE 1/4 of SE 1/4 of
Section 33, all in T1N, R17E, and more particularly described as follows:
Beginning at a point of 643.0 feet due North and 27.7 feet due West from the SW
corner of Section 34, T1N, R17E, said point of beginning lying on the West right
of way line of Alabama Power Company; thence run North 36° 5' East along said
West right of way line of Alabama Power Company for a distance of 761.7 feet to
a point; thence continue along said Alabama Power Company right of way line
North 23° 57' East for a distance of 368.2 feet to a point on the South right
of way line of Louisville & Nashville Railroad Company; thence run South 88° 42'
West along said South right of way line of Louisville & Nashville Railroad Company
for a distance of 311.7 feet to a point which is the PC of a 4° curve having a
radius of 1437.69 feet; thence continue to run Northwesterly along the curving
South right of way line of Louisville & Nashville Railroad Company on said 4°
curve for a distance of 650.0 feet to the point of tangency; thence run North
76° 00' West for a distance of 273.2 feet along the said South right of way
line of Louisville & Nashville Railroad Company; thence run South 7° 00' East
for a distance of 1104.3 feet to a point; thence run due East for a distance
of 476.5 feet to the point of beginning. LESS AND EXCEPT, however, all oil,
gas and other minerals lying in, on or under said lands heretofore reserved to
prior grantors. Said parcel being situated in Covington County, Alabama.

That certain parcel of land described as follows:  Starting at the Northeast
corner of the SE 1/4 of Section 33, Township 1 North, Range 17 East and running
thence due South 195.1 feet to the South right of way line of Alabama Highway
No. 55 for a point of beginning; thence running in a Westerly direction along
the curve of said South right of way line of said Alabama Highway No. 55, using
100 ft. tangents, first run North 75° 46' West 100 feet to a point, thence run
North 74° 16' West 100 feet to a point; thence North 72° 46' West 100 feet to a
point, thence North 71° 16' West 100 feet to the approximate point of tangency
of said curve; thence North 70° 00' West 296 feet to a point; thence South 4° 07'
West 135 feet to a point; thence South 19° 51' East 229.4 feet to a point; thence
South 46° 57' West 239.3 feet to a point; thence South 27° 30' West 118.3 feet to
a point on the North right of way line of Louisville and Nashville Railroad;
thence South 73° 57' East along said North right of way line of said Railroad
537.4 feet to the point of curve in said North right of way line of said Rail-
road; thence running Easterly along said curve using 100 ft. tangents, first run
South 76° 55' East 100 feet to a point, thence run South 79° 53' East 100 feet
to a point; thence South 82° 51' East 100 feet to a point; thence South 85° 49'
East 100 feet to a point; thence South 88° 47' East 100 feet to a point, being
the approximate point of tangency of said curve; thence run North 89° 43' East
along said North right of way line of said Railroad a distance of 650.9 feet to
a point; thence run North 32° 46' East 180.3 feet to a point; thence North 16° 30'
East 478.8 feet to a point on the said South right of way line of Alabama Highway
No. 55; thence run South 88° 05' West along said Highway right of way line a
distance of 74.0 feet to an approximate point of curve on said Highway right of
way line; thence running in a Westerly direction along said curving Highway right
of way line, using 100 ft. tangents, first run South 89° 14' West 100 feet to a
point  thence run North 89° 16' West 100 feet to a point; thence North 87° 46'
West 100 feet to a point; thence North 86° 16' West 100 feet to a point; thence
North 84° 46' West 100 feet to a point; thence North 83° 16' West 100 feet to a

point; thence North 81° 46' West 100 feet to a point; thence North 80° 16' West 100 feet to a point; thence North 78° 46' West 100 feet to a point; thence North 77° 16' West 100 feet to the point of beginning; all lying and being in the SE 1/4 of NE 1/4 and the NE 1/4 of SE 1/4 of Section 33 and the NW 1/4 of SW 1/4 of Section 34, all in Township 1 North, Range 17 East of St. Stephens Meridian, Covington County, State of Alabama, and containing 25.98 acres; LESS AND EXCEPT, however, all portions of the SE 1/4 of NE 1/4 of said Section 33, being a small triangle, lying in the Northwest corner of the foregoing parcel.

LPC00048350

LIST OF MAJOR EQUIPMENT & BUILDINGS
By Department
LOCKHART PLANT

A.  Administrative
    (a)  Office Building – 2,140 sq. ft.
    (b)  60' Howe Richardson Scales – 100,000# capacity

B.  Log Preparation – Sawmill
    (a)  20 HP – 54" Air Operated Cut-Up Saw
    (b)  26" Cambio Debarker

C.  Sawmill
    (a)  Building – 13,280 sq. ft., Wood & Steel Construction
    (b)  4 – Knee Cox Carriage, Air Set Works, Cable Drive
    (c)  5' Circle Headsaw System
    (d)  Schurman Model 12-10 DAG 36" Double Arbor Gang
    (e)  48" Crosby 6-Saw Edger
    (f)  5' Prescott Horizontal Resaw
    (g)  LeRoi 100 S2 & 25 S2 Air Compressors
    (h)  Precision 66" – 6 Knife Chipper
    (i)  Link Belt CA24-12 Vibrating Chip Screen
    (j)  Precision 5' Rotary Screen
    (k)  24' Trim Saw, Air Operated, Company Constructed
    (l)  Filing Room, Completely Equipped to File Band & Circle Saws
    (m)  24 Unit Peerless Bin
    (n)  Rail Car & Open Top Van Chip Loading System
    (o)  Machine Shop, 3,740 sq. ft. Equipped w/
        1 – Bridgeport milling machine
        1 – 5' Armstrong drill press
        1 – Manley 25 ton hydraulic press
        1 – 18" lathe, Smith-Cannery
        1 – 19" lathe, LeBlond-Regal
        Plus assortment of tools & small equipment

D.  Planing Mill
    (a)  Building – 12,504 sq. ft., Wood Constructed
    (b)  V-54 Yates American Vertical Resaw
    (c)  6' Package Breakdown System
    (d)  F-5 Yates American Feed Table
    (e)  Woods 412 – 6 Knife Planing Machine w/J-5 Profile
    (f)  24' Trim Saw, Air Operated, Company Constructed

E.  Treating Plant
    (a)  Building – 9,315 sq. ft., Steel Constructed
    (b)  Laboratory and Office, 216 sq. ft.
    (c)  Treating Cylinders
        1 – 6' dia., 90' long
        1 – 6' dia., 40' long
        3 – 6' dia., 50' long
    (d)  Waste Water Disposal System
        Pond #1 – 75' X 280'
        Pond #2 – 150' X 280' w/ 40 HP, 1,000 gal/m pump and 15 HP,
            250 gal/m pump and 62 spray nozzles

LPC00048351

LIST OF MAJOR EQUIPMENT & BUILDINGS
LOCKHART PLANT

E.  Treating Plant (continued)
    (e)  Storage Tanks, Complete w/ Retaining Wall System
        1 - 7,000 gallon, oil storage
        1 - 10,000 gallon, oil storage
        1 - 20,000 gallon, Penta work tank
        1 - 8,000 gallon, Penta storage
        1 - 8,000 gallon, creosote storage
        1 - 10,000 gallon, creosote storage
        1 - 24,000 gallon, creosote work tank
        1 - 22,000 gallon, creosote work tank
    (f)  100 S2 LeRoi Air Compressor

F.  Merchandiser
    (a)  Debarker Building - 400 sq. ft., metal construction
    (b)  Chipper Building - 1,194 sq. ft., metal construction
    (c)  Hydraulic Knuckle Boom Loader, HOBC-Prentice
    (d)  2 - 20 HP 54" Air Operated Cut-Up Saws
    (e)  26" Cambio Debarker
    (f)  75" Precision Chipper w/ 8' X 8' Screen
    (g)  1 - 40' Trailer and 1 - 60' Rail Car Chip Spreader
    (h)  100 S2 LeRoi Air Compressor
    (i)  2 each Morbark PS8 Post/Pole Peelers w/ 7' DE Trim System
    (j)  24 Unit Peerless Bin

G.  Yard and Outside
    (a)  Stacker System - Green Lumber
        Building 1,200 sq. ft., Butler Steel Building
        6' Package Stacker w/ Infeed and Outfeed System
    (b)  Lumber Drying Kilns
        2 each Buildings, 70' X 70', Masonry Construction
        75,000 BF capacity - 6' packages - 3 tracks
    (c)  Boilers
        Building - 3,720 sq. ft., metal construction
        Fuel House - 1,400 sq. ft., metal construction
        3 each 6' X 18' fire tube boilers, 72 - 4" X 18' flues
        24" Grundeler waste wood hog system
    (d)  Rail Spurs
        1 - 1,280' long to merchandiser
        1 - 831' long, chip and lumber loading
        1 - 526' long, chip loading
    (e)  Buildings
        Lumber Storage - 7,200 sq. ft., metal construction
        Lumber Storage - 11,400 sq. ft., metal construction
        Lumber Storage - 12,780 sq. ft., wood construction
        Automotive Shop & Supply Building - 7,200 sq. ft., metal construction
        Miscellaneous
            Clock & Breakroom - 754 sq. ft., wood construction
            Retail Sales Office - 576 sq. ft., wood construction
            Breakroom - Merchandiser - 264 sq. ft., wood construction
    (f)  Power Distribution System

-2-

LPC00048352

LIST OF MAJOR EQUIPMENT & BUILDINGS
LOCKHART PLANT

G.  Yard and Outside (continued)
   (g)  Mobile Equipment - Yard
      Taylor Y12WS lift truck
      Taylor Y22BWO lift truck
      Taylor Y22WO lift truck
      1968 Taylor Y20BWO lift truck
      Taylor Y10WS lift truck
      1967 Taylor Y12WS lift truck
      Taylor Y22BWO lift truck
      1967 Y22W Taylor lift truck
      1973 Cat 980 front end Loader
      1973 Cat 950 front end loader
      1974 Taylor LA840 front end loader
      1969 Ross/Clark straddle carrier
      1960 Ross/Clark straddle carrier
      1940 CAT 9K motor grader
      CAT D4 Crawler
      Miscellaneous
         1950 International Truck
         1962 Chevrolet Truck, 60 series
         1965 Chevrolet Truck, 60 series
         1969 GMC Truck
         1963 Mack Truck, B-61
         1969 Chevrolet Pickup
         1966 Chevrolet Pickup
         1969 GMC Pickup
         1958 Ford Pickup
         1969 GMC Pickup
   (h)  Highway Equipment
      Diesel Tractors
         1970 Mack-R
         1973 Mack-R
         1973 Mack-R
         1976 Mack-F
         1976 Mack-F
         1976 Mack-F
         1979 Mack-F
         1975 International
         1973 International
      Flatbed Trailers
         1964 Evans
         1971 Great Dane
         1971 Great Dane
         1955 Dorsey
         1967 Fontaine
         1971 Fontaine
         1971 Fontaine
         1967 Fontaine
         1978 Fontaine
         1959 Great Dane
         1971 Dorsey
         1965 Fontaine

-3-

LPC00048353

LIST OF MAJOR EQUIPMENT & BUILDINGS
LOCKHART PLANT

G.  Yard and Outside (continued)
     (h)  Highway Equipment (continued)
          Open Top Vans
               1965 Kentucky
               1965 Kentucky
               1967 Strickland
               1964 Brown
               1966 Kentucky
               1966 Kentucky
               1964 Fruehauf
               1964 Fruehauf
               1962 Kentucky
               1962 Kentucky
               1962 Kentucky
               1964 Brown
          Pole Trailers
               2 each 4-boster rail type, company constructed
          Tank Trailers
               1 - Trailmobile Tanker
          Road Vehicles
               1974 Chevrolet 1/2 ton
               1973 Chevrolet 1/2 ton
               1979 Chevrolet Impala
               1977 Chevrolet 1/2 ton
               1969 Ford 1/2 ton pickup

-4-

LPC00048354