1 of 1 DOCUMENT

Products Liability

Copyright 2006, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

IX Food, Drugs and Medical Devices
CHAPTER 55 Toxic Torts

*5-55 Products Liability § 55.05*

**AUTHOR:** Michael Axline

**§ 55.05 Defenses**

   **[1] In General.** Defenses to liability for damages arising from toxic torts are as varied as theories of liability. Defenses based on insufficiency of the evidence are likely to be the most successful in a toxic product case. The proof problems that plague plaintiffs are to defendants' advantage. The number of toxins in the environment and the inability of medical science to explain, much less prove, the causes of many toxin-related diseases, may help defendants to raise doubts in the mind of the fact finder as to whether the defendant actually caused any harm to the plaintiff.

   **[2] Superseding Cause.** The Restatement (Second) of Torts defines superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."n1 There may be an infinite number of "causes" of an accident or injury. The law, however, allows the trier of fact to focus on one or two such causes and determine that they contributed sufficiently to the accident or injury to give rise to liability. A factor other than the defendant's conduct is found to have been a significant cause of the injury, it may be a superseding cause relieving the defendant of liability.

Most courts hold that the intervening actions of a third party supersede an earlier tortfeasor's liability only where the third party's conduct was so unusual, out of the ordinary, and unforeseeable as to be unanticipatable from a legal point of view. For example, in an action against manufacturers that supplied asbestos products to the Navy, the defendants offered no evidence that Navy's actions had been so out unusual or out of the ordinary as to warrant a superseding cause instruction.n2 In a lead paint action, a mother's failing to apply paint supplied by her landlord and failing to adequately supervise her children because of her drinking did not give rise to an extraordinary situation that would constitute an independent and superseding cause.n3

Asbestos manufacturers often maintain that an employer's failure to warn and adequately protect its workers constitutes a superseding cause of any asbestos-related injury.n4 Some courts have rejected this theory, finding that the duty to warn is non-delegable and that when the supply of a defective products is continuous, there is no lapse of time to justify shifting the duty to warn to the employer.n5 In contrast, when an office cleaner was allegedly injured as a result of exposure to insecticides while working in proximity to a pesticide applicator, a question of fact existed as to whether the employer was a responsible intermediary and whether its conduct was an intervening cause relieving the defendants of liability for failure to warn.n6

The sheer number of variants involved in causing environmental injuries makes a superseding cause defense attractive in such cases. A person's age, environment, life style, and individual immune system characteristics may all combine with a particular toxin to "cause" the person to develop cancer or other disease. Under these circumstances, defendants may successfully argue that there were superseding causes of the cancer that were active enough to prevent the manufacturer or user of the toxin from being liable.

For a scientist, determining cause is a precise art, and scientists often qualify their opinions about what "caused" an event or injury. When an expert expresses some reservations about identifying the cause of an injury, an opposing wit

EXHIBIT
5

ness may suggest possible *alternative* causes of the injury, and then argue that, even assuming defendant's conduct was *a* cause of the accident, the other causes identified by defendant's expert were superseding causes.

[3] **Bulk Supplier, Sophisticated Employer, and Learned Intermediary Defenses.** In some states, component suppliers or suppliers of bulk materials may avail themselves of the "raw material supplier defense" or the "bulk sales/sophisticated purchaser rule." The doctrines, although conceptually distinct, tend to overlap, and are recognized in the Restatement (Third) of Torts: Products Liability.n7

Under the bulk supplier doctrine, also known as the raw material supplier doctrine, a manufacturer or seller discharges any duty to warn an ultimate user by making certain that the intermediary to whom it has supplied its raw materials and components in bulk actually understands the risks of the products.n8 For example, many jurisdictions will relieve manufacturers of bulk chemicals from the duty to warn if the employer-a knowledgeable intermediary-chose to supply no warning material.n9

Several courts have also held that bulk sales or sophisticated purchaser defense is available to the manufacturers of silicone gel used by breast implant manufacturers.n10 As explained by the *Restatement (Third) of Torts: Products Liability, section 5* (Final Draft), "Inappropriate decisions regarding the use of [raw] materials are not attributable to the supplier of the raw materials but rather to the fabricator that puts them to impose use ... To impose a duty to warn would require the seller to develop expertise regarding a multitude of different end-products and to investigate the actual use of raw materials by manufacturers over whom the supplier has no control."

However, in some jurisdictions, manufacturers do not enjoy blanket protection from liability simply because others in the chain of distribution may repackage or reformulate the product before it reaches the ultimate consumer. If a manufacturer knows or should know that downstream distributors are not giving adequate warnings to the end user of a product, then the bulk manufacturer may be liable for failing to take appropriate action.n11 Nor will the defense apply when the defendant's relationship to a distributor is closer to that of a component part manufacturer to another manufacturer.n12

The learned intermediary doctrine imposes on a manufacturer of prescription drugs or devices the duty to give adequate warnings to physicians, dentists, and other licensed health care professionals who may prescribe the products. The manufacturer, in almost every circumstance, has no duty to warn a patient.n13 The doctrine is nearly universally accepted with respect to prescription drugs and devices, and is recognized in the Restatement (Third) of Torts: Products Liability.n14 Some states have developed exceptions to the doctrine with respect to mass-immunizations involving vaccinesn15 and contraceptives that patients have specifically chosen.n16

In 1999, the New Jersey Supreme Court held that a pharmaceutical manufacturer which engages in mass marketing and makes direct claims to consumers to influence a patient's choice of a prescription drug is not automatically protected by the learned intermediary doctrine.n17

See § *12.06, above,* for an in-depth discussion of the learned intermediary doctrine.

[4] **Statute of Limitations.** Symptoms of a disease or injury may not occur until many years after exposure to a toxic substance. For example, mesothelioma may not develop until over 40 years after initial exposure to asbestos. Women may not be aware of injuries caused by their *in utero* exposure to DES until they have reached adulthood. Because of the long latency period of diseases caused by toxins, cases are often filed many years after the event that forms the basis for the complaint. Defendants frequently raise the affirmative defense of the statute of limitations.

The statute of limitations traditionally begins to run from the accrual of the case of action. Determining when a cause of action accrue is difficult in many toxic tort cases because of the latency period of progressive diseases. There are essentially three methods of determining when the commencement of the statute of limitations: the last exposure rule; the date of accrual rule; and the discovery rule.

Some states have a unified accrual date, based upon a products liability act establishing a single products liability cause of action.n18 Other states have separate commencement dates for negligence, breach of warranty, and strict liability causes of action.

**[a] Last Exposure Rule.** Alabama is perhaps the last state in which the statute of limitations runs from the plaintiff's last exposure to the toxic substance.n19 The legislature has provided some relief, however. Because the injury or death either is latent or not discoverable in the exercise of reasonable diligence, and is the result of ingestion of or exposure to a toxic or other harmful substance, over a period of time, the resultant products liability action may be commenced as late as one year from the date the injury should have been discovered.n20 Persons injured from exposure to asbestos also benefit from a statutorily-created discovery rule.n21

**[b] Date of Injury Rule.** A less extreme rule postpones the running of the statute of limitations until the occurrence of the injury.n22

**[c] Discovery Rule.** The discovery rule was developed to rectify the injustice of a cause of action being time-barred before the plaintiff is even aware of his or her injury.n23 Under one version, the statute of limitations starts to run when the plaintiff discovers, or through the exercise of reasonable care should have discovered, that he or she has been injured.n24 Even more favorable to plaintiffs are other versions, which provide that a cause of action does not accrue until the plaintiffs discovers or should have discovered not only that he or she has been injured, but that the injury may have been caused by the wrongful acts of anothern24.1 or by the defendant's product.n25 Whether a plaintiff has exercised due diligence in discovering the cause of his or her injury is usually a question of fact, but may also be determined as a matter of law.n25.1 In still other states, the limitations period does not begin to run until the injured party discovers or should have discovered facts constituting a cause of action.n26

Regardless of which form of the discovery rule they use, several courts have examined the issue of when temporary symptoms become an "injury" from which the surrounding facts and circumstances should put a person on notice of that injury, of its cause, or of the existence of a cause of action (*see § 26.04, above*).

**[i] Adoption of Discovery Rule by Judiciary or Legislature.** The discovery rule was adopted by the judiciary in many states.n27 In others, it has been adopted by statute, often as part of a state's general products liability actn28 The legislatures of several states have enacted statutes specifically providing for the application of the discovery rule to latent injuries or diseases.n29 New York, for example, which continues to adhere to the continues to adhere to the accrual of injury rule,n30 enacted a "toxic tort" discovery statute, under which the accrual date for actions to recover for injuries caused by the latent of effects of exposuren31 to any substance is the date the plaintiff discovered or should have discovered the injury.n32 Still other states have enacted product-specific statutes.n33 There are statutes providing for the application of the discovery rule to asbestos,n34 Agent Orange,n35 DES,n36 and drugs and medical devices.n37 Federal environmental statutes, such as CERCLA,n38 also contain discovery rule provisions.n39

The federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)n40 may preempt the accrual date for state law toxic tort actions based on exposure to hazardous substances released into the environment by facilities as defined by CERCLA.n41 In its place, CERCLA substitutes the "federally required commencement date" (FRCD), defined as the date a plaintiff knew or should have known that his or her personal injury or property damages were caused or contributed to by the hazardous substance or contaminant concerned.n42 The FRCD trumps a less generous state rule that would start the limitations period earlier. If the commencement date is later under state law than under federal law, or they are the same, courts apply the state law standard.n43 Most courts have held that CERCLA's discovery rule does not apply to actions asserting state-law claims without an accompanying CERCLA claim.n43.1 Also, § 9658 refers to state statutes of limitation, not to state statutes of repose, and does not preempt the latter.n43.2

Because CERCLA's definition of "release" expressly excludes "any release which results in exposure to persons solely within a workplace...,"n43.3 actions predicated on exposure to toxins in the workplace do not fall within the purview of § 9658.n43.4 Moreover, numerous courts have determined that the "environment" referred to in § 9658(a)(1) means the atmosphere external to the building, not the air within the building.n43.5

Courts have generally applied the discovery rule in environmental contamination FTCA cases involving latent contamination.n43.6

**[ii] Application of Discovery Rule.** Interpretation of a judicially-imposed or statutory discovery rule is a considerable source of litigation in toxic tort cases. What constitutes "discovery" is often open to debate.

New York's highest court made it clear that the time for bringing a DES action begins to run when the injured party discovers the primary condition on which the claim is based. Discovery of the injury is the discovery of the physical