IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C. who sues by and through her mother and next friend, GAIL TATUM | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 2:06cv83-LES: ) |
| PACTIV CORPORATION, et al., | ) ) |
| Defendants. | ) |

# AFFIDAVIT OF
## GREGORY ANDREWS CADE

**STATE OF ALABAMA** )
                      :
**JEFFERSON COUNTY** )

BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, PERSONALLY APPEARED GREGORY ANDREWS CADE, WHO BEING BY ME FIRST DULY SWORN, DEPOSED AND STATED AS FOLLOWS:

"My name is Gregory Andrews Cade. I am a resident of Jefferson County, Alabama. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts stated herein."

"I am an attorney representing the Plaintiffs in this case."

"In about July of 2003, Debra Brooks Hughes contacted me to discuss a potential case on behalf of her father, who had died as the result of metastatic colon cancer after having worked for many years at the former Louisiana Pacific Wood Treatment facility (hereinafter the "Facility") in the town of Lockhart, Alabama. She believed that her father had been exposed to something at the Facility that contributed to his cancer."

"In about mid-October, 2003, at the invitation of Ms. Hughes, I attended a meeting at the Florala Armory. Ms. Hughes asked me to speak to former employees who had worked at the

Facility concerning any potential claims that they might have for illnesses caused by exposures at the Facility."

"In about December of 2003, again at the invitation of Ms. Hughes, I attended another meeting at the Florala Armory. Ms. Hughes asked me to speak to members of the Florala and Lockhart communities concerning any potential claims that they might have for illnesses caused by exposures to chemicals released from the Facility."

"At the outset of both meetings I explained that because I had been invited to speak to the attendees about potential litigation, no one should remain in the room unless they were considering hiring me and my law firm to represent them. In addition, I understand that Ms. Hughes personally confirmed that every attendee was there for the purpose of determining whether he or she might need legal representation in the joint matter being discussed, and the only individuals who attended those meetings indicated that they were potentially interested in legal representation in connection with the poisoning of their community by the Defendants. Under no circumstances were any other individuals permitted to attend the meetings."

"At the conclusion of the December, 2003 meeting, several attendees advised me that they wanted to hire me, and my paralegals collected their contact information. Those individuals thereafter signed attorney employment contracts."

"Subsequent to the December, 2003 meeting, I called additional meetings, inviting only my clients, those individuals who had requested that I represent them. I invited my clients to the subsequent meetings by letters that were sent only to my clients. Some of my clients brought with them to each subsequent meeting additional people who wanted to be represented, and they were admitted to the meetings only as prospective clients, i.e., after they indicated that they were potentially interested in legal representation in connection with the poisoning of their community by the Defendants. Many of the prospective clients who attended these meetings subsequently signed contracts and became clients."

"Although many of the people who attended each of the meetings were related to other attendees by blood or marriage, my paralegals and I confirmed at every meeting that every attendee was either already a client or there for the purpose of determining whether he or she might need legal representation in the joint matter being discussed – the poisoning of their community by the Defendants."

"The only individuals who were permitted to attend any of the meetings were clients or prospective clients. Under no circumstances were any other individuals permitted to attend the meetings. In each case, this was confirmed verbally, and I did not create or keep any sign-in sheets or records of attendance at any of the meetings."

**Affidavit of Gregory Andrews Cade**                                            Page 2
*Tatum v. Pactiv Corporation, et al.*, Civil Action No. 2:06cv83-LES
In the United States District Court
For the Middle District of Alabama, Northern Division

"On no occasion did I ever send a letter to the entire community, and every letter that I did send out was addressed and mailed only to clients and not to any other individuals."

FURTHER THE AFFIANT SAYETH NOT.

_____
Gregory Andrews Cade

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by Gregory Andrews Cade on this the ___ day of April 2007.

_____
NOTARY PUBLIC
My Commission Expires: 1-13-2010



**Affidavit of Gregory Andrews Cade**                                                       Page 3
*Tatum v. Pactiv Corporation, et al.*, Civil Action No. 2:06cv83-LES
In the United States District Court
For the Middle District of Alabama, Northern Division