## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| M.C. who sues by and through her mother and next friend, GAIL TATUM | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 2:06cv83-LES: |
| PACTIV CORPORATION, et al., | ) ) | |
| Defendants. | ) ) | |

# PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE TO DEFENDANTS' JOINT MOTION TO COMPEL

COME NOW the Plaintiffs in the above-styled action, by and through undersigned counsel of record, and file this supplement to *Plaintiffs' Response to Defendants' Joint Motion to Compel* (Document 114), which was filed on December 15, 2006 in response to *Defendants' Joint Motion to Compel* (Document 69), which itself was filed on August 7, 2006 and to *Plaintiff's Supplemental Response to Defendants' Joint Motion to Compel* (Document 229), which, like *Defendants' Supplemental Brief* (Document 230), was filed on April 30, 2007 in response to the Court's request during the hearing on April 10, 2007. Specifically, this *Plaintiff's Second Supplemental Response to Defendants' Joint Motion to Compel* is filed in response to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357), filed on October 24, 2007. For the reasons stated herein, as well as those advanced in the Plaintiffs' other filings, this Honorable Court should deny *Defendants' Joint Motion to Compel*.

## The Testimony in Conflict

At the outset the undersigned Plaintiffs' counsel thank the Defendants' counsel for refraining from making accusations about the conflict between the *Affidavit of Gregory Andrews Cade*[1] and the deposition testimony of Debra Brooks Hughes,[2] instead stating simply that "Defendants cannot offer the Court any explanation for the apparent confusion surrounding the existence of sign-in sheets for these meetings."  The Plaintiffs' counsel are similarly at a loss to explain the confusion, because Mr. Cade's affidavit[3] remains precisely what Mr. Cade recalls.  ***It is of paramount significance that because the testimony of other witnesses has not altered or affected his own memory, Mr. Cade cannot and should not change his affidavit, notwithstanding the conflict***.  Moreover, had it even occurred to the Plaintiffs' counsel that Ms. Hughes might have created sign-in sheets, they would have explored that fact with her when her affidavit[4] was prepared for this Court in April.

---

1.      The *Affidavit of Gregory Andrews Cade* is attached as **EXHIBIT A** to *Plaintiff's Supplemental Response to Defendants' Joint Motion to Compel* (Document 229) and also attached as **EXHIBIT B** to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357).  The Plaintiffs therefore see no reason to further burden the record with another copy of the same affidavit.

2.      The *Transcript of the Deposition of Debra Brooks Hughes Taken on October 17, 2007* is attached as **EXHIBIT E** to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357).  The Plaintiffs again see no reason to further burden the record with another copy of the same deposition transcript.

3.      Mr. Cade offered his affidavit only after the Court suggested that it might be helpful: "it's not uncommon for a lawyer to simply file their own affidavit saying there are no sign-in sheets.  I mean, that's the right response.  Have you done that?  Not that I'm aware of."  *Transcript of the April 10, 2007 Hearing*, page 33, lines 9 – 12.  The *Transcript of the April 10, 2007 Hearing* is attached as **EXHIBIT A** to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357).  The Plaintiffs again see no reason to further burden the record with another copy of the same transcript.

4.      The *Affidavit of Debra Brooks Hughes* is attached as **EXHIBIT B** to *Plaintiff's Supplemental Response to Defendants' Joint Motion to Compel* (Document 229) and again **EXHIBIT D** to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357).  Once again, the Plaintiffs see no reason to further burden the record with another copy of the same affidavit.

**Plaintiffs' Second Supplemental Response to**                                                              **Page 2**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

Nevertheless, because of the detailed nature of the deposition testimony given by Ms. Hughes, and because of their recent review of similar testimony from other witnesses,[5] the Plaintiffs' counsel have searched their files – even sending two paralegals to a storage facility – in order to ascertain whether there might be sign-in sheets that had been forgotten or overlooked. ***Unfortunately, no sign-in sheets of any sort have been found***. (*Affidavit of Wendy Waldrop Garmon*, attached as **EXHIBIT A** hereto, page 2). It is noteworthy that even though Ms. Hughes testified that she gave sign-in sheets not only to Mr. Cade but also to Ms. Garmon (*Hughes Deposition*, page 118, lines 2 – 8), Ms. Garmon – like Mr. Cade – does not remember receiving those sign-in sheets from Ms. Hughes. (*Affidavit of Wendy Waldrop Garmon*, attached as **EXHIBIT A** hereto, page 2).

In his affidavit, Mr. Cade stated "I did not create or keep any sign-in sheets or records of attendance at any of the meetings." (*Cade Affidavit*, page 2). Significantly, Ms. Hughes did ***not*** testify that Mr. Cade ***created*** any sign-in sheets, and there is certainly no other testimony to that effect. Of course, if he had even ***remembered*** any sign-in sheets – whether created by him or Ms. Hughes or anyone else – he would have mentioned them in his affidavit.

---

5.      After reading Ms. Hughes' testimony, the Plaintiffs' counsel undertook to review the available testimony to determine how many others remembered sign-in sheets. In the interest of full disclosure, the Plaintiffs' counsel note for the Court that at least three other witnesses not discussed in the Defendants' most recent brief remembered sign-in sheets: Sandra Cobb, July 13, 2006, p. 124, lines 21-23; Jimmy Rogers, October 15, 2007, p. 69, lines 18-23, p. 70, lines 1-2; and Oscar Taylor, October 15, 2007, p. 96, lines 4-16. From the Plaintiffs' counsels' cursory review of other available deposition transcripts, it appears that at least 14 Plaintiffs did not testify at all about sign-in sheets: Sherri L. Davis, July 11, 2006 & July 26, 2006; Deborah Reynolds, July 12, 2006 & July 26, 2006; Kandy Creech, July 14, 2006 & July 27, 2006; Dick Patrick Lee, July 25, 2007; Avance Drake, July 26, 2007; Chester Norris, July 26, 2007; Robert Goldsmith, August 28, 2007; Don Daniel, August 29, 2007; Hamilton Henderson, August 29, 2007; Coleman Bass, August 30, 2007; Walter Kimbro, August 30, 2007; John Todd, October 19, 2007; Marvin Williford, October 19, 2007; and Chris Pelham, October 19, 2007. The Plaintiffs will file any or all of these transcripts with the Court if the Court so desires.

**Plaintiffs' Second Supplemental Response to**            **Page 3**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

The disparity in testimony may simply be a function of the passage of time and the differing importance placed on the sign-in sheets by Mr. Cade and Ms. Hughes. First, more than three years elapsed between the events made the subject of the testimony and the testimony itself. Second, Mr. Cade stated that he did not create or keep any sign-in sheets, a fact that in itself suggests that they were not important to him. In contrast, Ms. Hughes testified that she "did a sign-in sheet due to the fact I wanted to see how many people were interested" (*Hughes Deposition*, page 71, line 22 – page 72, line 1), suggesting that the sign-in sheets were important to her. Finally, even Ms. Hughes testified that Mr. Cade once forgot the sign-in sheets (*Hughes Deposition*, page 111, lines 14 – 23), again suggesting that they were simply not important to him. ***Finally, Mr. Cade is not the only person who does not remember Ms. Hughes' sign-in sheets – as stated above, Mr. Cade's paralegal, Wendy Waldrop Garmon, also does not remember receiving any sign-in sheets from Ms. Hughes, even though Ms. Hughes testified that she gave sign-in sheets not only to Mr. Cade, but also to Ms. Garmon*** (*Hughes Deposition*, page 118, lines 2 – 8).

## The Most Significant Testimony is *Not* in Conflict

The Defendants are so focused on the existence of the sign-in sheets that they neglect altogether to consider the many consistencies between Mr. Cade's affidavit and Ms. Hughes' deposition testimony. ***Not only are the consistencies more numerous, but they are also of greater significance***. First, Mr. Cade stated that the very first meeting occurred in mid-October,

**Plaintiffs' Second Supplemental Response to**                                                     **Page 4**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

2003 (*Cade Affidavit*, pages 1 – 2).  In her deposition, Ms. Hughes testified that that first meeting occurred on October 16, 2003:

> Q.     Okay.  I guess starting on page two.  It talks about this first meeting that was held, I guess in October 2003.
>
> A.     Okay.
>
> Q.     I guess you say it took place in the middle of October.  Do you have anyway of pinning down an exact date on that?
>
> A.     16th.
>
> Q.     The 16th?
>
> A.     The 16th.
>
> Q.     How do you know it's the 16th good memory I'm impressed.
>
> A.     I've worked on this a very long time and it was very important to me.  At this time, I dealt with a lot of employees, so it just stuck.

(*Hughes Deposition*, page 68, line 20 – page 69, line 15).  Mr. Cade also stated that the second meeting occurred in December, 2003 (*Cade Affidavit*, page 2).  In her deposition, Ms. Hughes also testified that the second meeting occurred in December, 2003 (*Hughes Deposition*, page 88, lines 6 – 17).

    *__Obviously, if the relevance of the meetings, as stated by the Defendants, is the timeliness of the filing of these cases, then the date of the first meeting is of paramount importance.  In contrast, the existence of sign-in sheets is of tangential significance, and do not relate in any way to the timeliness of the filings__*.

    Mr. Cade also stated in his affidavit that the first meeting involved only those who had worked at the wood treatment facility (*Cade Affidavit*, pages 1 – 2) and that the second meeting, held in December, 2003, had broader participation, involving many members of the community (*Cade Affidavit*, page 2).  In her deposition, Ms. Hughes also testified that that first meeting

**Plaintiffs' Second Supplemental Response to**                              **Page 5**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

involved 177 workers (*Hughes Deposition*, page 69, lines 16-19), and that the second meeting

involved about 800 people (*Hughes Deposition*, page 89, lines13 – 15).

Another significant consistency concerns the efforts to exclude all but clients and

potential clients from the meetings.  In his affidavit, Mr. Cade stated that:

> At the outset of both meetings I explained that because I had been invited to speak to the attendees about potential litigation, ***no one should remain in the room unless they were considering hiring me and my law firm to represent them***.  In addition, I understand that Ms. Hughes personally confirmed that every attendee was there for the purpose of determining whether he or she might need legal representation in the joint matter being discussed, and ***the only individuals who attended those meetings indicated that they were potentially interested in legal representation in connection with the poisoning of their community by the Defendants***.  Under no circumstances were any other individuals permitted to attend the meetings.

(*Cade Affidavit*, page 2, *emphasis added*).

In her deposition, Ms. Hughes testified that she confirmed that each individual was there

for the purpose of determining whether he or she might need legal representation (*Hughes*

*Deposition*, page 91, line 18 – page 92, line 1).  She did not, however, ask individuals whether

they were there for representation, but instead testified that she knew why they were there, either

because she already knew them or because they appeared to have some kind of physical or

mental problem (*Hughes Deposition*, page 92, lines 5 – 20; page 93, line 16 – page 94, line 4).

Only about 25 of the 800 attendees (about 3%) were admitted to assist other attendees (*Hughes*

*Deposition*, page 94, lines 13 – 21).  Indeed, Ms. Hughes states that she even excluded a

newspaper editor from the meeting at Mr. Cade's direction:

> Q.    And the citizens.  Did you not let anybody into this meeting?
> A.    I did.
> Q.    Who would that have been?
> A.    An editor of the newspaper.

**Plaintiffs' Second Supplemental Response to**                      **Page 6**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

Q.    Okay.  And he was from?

A.    She.

Q.    She?

A.    Florala.

Q.    Florala News? (not certain of this as Court filing stamp appears over this line).

A.    Correct.

Q.    Why did she show up?

A.    She wanted to do a story and take some pictures.  And Mr. Cade and I decided it wasn't good.

(*Hughes Deposition*, Page 90, line 12 – page 91, line 3).

Thus, there is consistency in several facts: (1) that ***the very first meeting occurred on October 16, 2003***; (2) that it involved a limited number of people who had worked at the wood treatment facility; (3) that the second meeting occurred in December, 2003; (4) that it involved a larger number of people in the greater Florala community; and (5) that ***the meetings were not "public" meetings*** but were open only to those who were seeking legal counsel.  It is in the context of these more important facts that the Defendants' motion to compel must be evaluated.

## The Utter Irrelevance of the Underlying Discovery

Notwithstanding all of the confusion about the existence of sign-in sheets, the Defendants are still unable to demonstrate to this Court that anything said at the meetings between the Plaintiffs and their attorneys is relevant.  In response to this Court's inquiry about the relevance of the Plaintiffs' meetings with their counsel, ***the only response given by the Defendants was that the content of those meetings is somehow relevant to the statute of limitations***:

**Plaintiffs' Second Supplemental Response to**                                            **Page 7**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

THE COURT:  Well look, what y'all argued to me at this juncture strikes me as capable of resolution only by an evidentiary hearing, at which I would probably have to conduct in an ex parte fashion with bringing all those people in here and trying to find out what the heck happened. And frankly, I'm not interested in conducting a mini trial before a trial on the merits of this case. It seems to me to be a very inefficient use of both the Court and counsel's time to resolve something about which I'm not confident there is any need for discovery.  Why are you interested in what happened at those meetings?

MR. TAYLOR:  Your Honor, the primary reason –

THE COURT:  What Rule twenty-six discovery related to the merits or defense can arise from knowing everything that happened at those meetings?

MR. TAYLOR:  Statute of limitations, Your Honor.

*Transcript of April 10, 2007 Hearing*, attached as **EXHIBIT A** to *Defendants' Second Supplemental Brief in Support of Joint Motion to Compel* (Document 357), page 11, lines 7 – 25.

The Defendants thereafter repeated this assertion, stating that the content of the Plaintiffs' meetings with their counsel is relevant to when the statute of limitations began to run because the attorneys might have said something that could have triggered the federally required commencement date for the two-year statute of limitations:

> Assuming CERCLA § 309 applies here as Plaintiffs assert, Alabama's two-year statute of limitation would begin to run on the date a plaintiff "knew (or reasonably should have known)" that an injury was "caused or contributed to" by facility emissions.  42 U.S.C. § 9658(b)(4)(A).  As set forth below, (1) the "reasonably should have known" standard starts the limitations period once a plaintiff has mere inquiry notice of a potential link between chemical emissions and an alleged injury, and (2) this inquiry notice can clearly arise (in whole or in part) from comments made by an attorney.  The contents of those meetings, therefore, are directly relevant to when the statute of limitations began to run.

*Defendants' Supplemental Brief in Support of Joint Motion to Compel* (Document 230), page 2. Notwithstanding this assertion, however, the Defendants have utterly failed to offer **_any_** evidence that anything said at the Plaintiffs' meetings with their lawyers could possibly affect the timeliness of their cases.  **_Indeed, even if the Plaintiffs received "notice" of their claims at the_**

**Plaintiffs' Second Supplemental Response to**                                                              **Page 8**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

*very first meeting with their attorneys, on October 16, 2003, the complaints were nevertheless all timely filed, thereby making this entire exercise futile*.  Moreover, to meet their burden, the Defendants would have to consider the facts specific to each individual Plaintiff's case.

Based on this Court's scheduling orders, this inquiry at present should be limited to the four Trial Plaintiffs, Melanie Chambers, Susan Renee Phillips, Kandy Creech, and Jimmie Lou Bowman.  With the possible exception of Melanie Chambers,[6] all of these Trial Plaintiffs were parties to a tolling agreement under which the statutes were tolled from December 16, 2004 through January 25, 2006.[7]  Consequently, the Plaintiffs had, in addition to the two years permitted by the statute of limitations itself, an additional 1 year, 1 month, and 9 days within which to file their cases.  *Adding these figures, then, the total time that these three Trial Plaintiffs had to file their cases was 3 years, 1 month, and 9 days*.

*Thus, even if we assume that these three Trial Plaintiffs all attended the very first meeting, on October 16, 2003, and that they learned sufficient information at that meeting to trigger the federally required commencement date, their cases are nevertheless all timely*:

| Trial Plaintiff: | First Meeting Date: | Filing Date: | Elapsed Time: |
|---|---|---|---|
| Susan Renee Phillips: | October 16, 2003 | January 30, 2006 | 2 years, 3 months, 14 days |
| Kandy Creech: | October 16, 2003 | January 30, 2006 | 2 years, 3 months, 14 days |
| Jimmie Lou Bowman: | October 16, 2003 | July 5, 2006 | 2 years, 8 months, 19 days |

---

6.    The Plaintiffs contend that Melanie Chambers was also a party to the tolling agreement, but understand that the Defendants may not agree with this position.

7.    The tolling agreement lists the plaintiffs and includes sensitive information, including social security numbers, and so the Plaintiffs have not attached a copy as an exhibit, but are willing to submit a redacted version or a complete version for *in camera* inspection, whichever the Court desires.

**Plaintiffs' Second Supplemental Response to**                                                                    **Page 9**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

With respect to Trial Plaintiff Melanie Chambers, the analysis is different but the result is the same – her case was timely filed even if we assume that she had notice of her claims as of the date of the very first meeting, October 16, 2003.  Melanie Chambers was born on September 11, 1987, and so at the time of the October 16, 2003 meeting she was just 16 years, 1 month, and 6 days old.  ALABAMA CODE § 6-2-8(a) provides as follows:

> If anyone entitled to commence any of the actions enumerated in this chapter,[8] to make an entry on land or enter a defense founded on the title to real property ***is, at the time the right accrues, below the age of 19 years***, or insane, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action, make entry, or defend.  No disability shall extend the period of limitations so as to allow an action to be commenced, entry made, or defense made after the lapse of 20 years from the time the claim or right accrued.  Nothing in this section shall be interpreted as denying any imprisoned person the right to commence an action enumerated in this chapter and to make any proper appearances on his or her behalf in such actions.

*Emphasis added*.

Thus, even without regard to the tolling agreement, Melanie Chambers could have timely filed her lawsuit at any time up to and including her 21st birthday, September 11, 2008, ***which is still in the future***.  Her case was filed on January 30, 2006, when she was 18 years, 4 months, and 20 days old.  It was therefore timely filed.

In light of the foregoing, it is difficult to understand just how the contents of the Plaintiffs' meetings with their lawyers is relevant and just why the Defendants insist that they must shatter the attorney-client privilege and ask questions about anything and everything that was discussed during the Plaintiffs' meetings with their lawyers.

---

8.    Chapter 2 includes the various statutes of limitations applicable to the causes of action asserted in these cases.

**Plaintiffs' Second Supplemental Response to**                    **Page 10**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that this Honorable Court will deny the Defendants' joint motion to compel.


/s/ *Robert Leslie Palmer*
Robert Leslie Palmer, State Court ID No. PAL007
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206

ATTORNEYS FOR THE PLAINTIFF

**Plaintiffs' Second Supplemental Response to**                                    **Page 11**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**

# CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2007, I caused the foregoing ***Plaintiffs' Second Supplemental Response to Defendants' Joint Motion to Compe****l* to be electronically filed with the Clerk of the Court using the ECF system and notification of such filing to be sent to all counsel of record.

 */s/ Robert Leslie Palmer*
Of Counsel

**Plaintiffs' Second Supplemental Response to**                                                    **Page 12**
**Defendants' Joint Motion to Compel**
*M.C. v. Pactiv Corporation, et al.*, **Civil Action No. 2:06cv83-LES**
**In the United States District Court**
**For the Middle District of Alabama, Northern Division**