IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C. who sues by and through her mother and next friend, GAIL TATUM | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 2:06cv83-LES: ) |
| PACTIV CORPORATION, et al., | ) ) |
| Defendants. | ) |

## AFFIDAVIT OF
## WENDY WALDROP GARMON

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | : |
| JEFFERSON COUNTY | ) |

BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC, PERSONALLY APPEARED WENDY WALDROP GARMON, WHO BEING BY ME FIRST DULY SWORN, DEPOSED AND STATED AS FOLLOWS:

"My name is Wendy Waldrop Garmon. I have also been known as Wendy Waldrop and Wendy Alessi. I am a resident of Jefferson County, Alabama. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts stated herein."

"I am a paralegal employed by Environmental Litigation Group, P.C., one of the law firms representing the Plaintiffs in this case. I work for Gregory Andrews Cade and have been involved in this case almost since its inception."

"I attended several of the meetings with clients and prospective clients held in Florala, Alabama. We did not use any sign-in sheets at any of the initial meetings at which the attorneys spoke to both clients and prospective clients. In addition, I do not recall any sign-in sheets being used by anyone else at these meetings. If we needed missing information about specific clients, we sometimes used a database printout to collect that information about those specific clients, but the printouts were not used to register attendance (the printouts only listed clients who had already signed contracts and from whom we still needed information). In addition, when talking

face-to-face with a client, I sometimes used a legal pad or steno book to collect the kind of information paralegals typically gather from clients, such as medical history. Like the printouts, the legal pads and steno books were not used to register attendance but only to collect information from specific clients. The only thing that we asked prospective clients to sign at these meetings was our contract, if they decided they wanted to be represented."

"At meetings held much later, after these cases had already been filed (for example, in connection with the "Lone Pine" questionnaire ordered by this Court), I did have clients sign in on a legal pad. I had not been asked to do this, and did so only so that I could serve the clients on a first-come, first-served basis. I did not keep the sheets and did not think that it was important enough to tell the attorneys, who were not at these meetings and had not asked me to have the clients sign in. Again, I asked clients to sign-in only at later meetings, long after these cases had already been filed."

"I have read the portion of Debra Brooks Hughes' deposition (**Hughes Deposition, page 118, lines 2 – 8**) in which she states that she gave me sign-in sheets from some of the initial meetings. I do not remember ever receiving any sign-in sheets from Ms. Hughes."

"Although I have no recollection of any sign-in sheets at the initial meetings, Mr. Cade asked me to search my office, our files, and even our storage facility for anything that might resemble a sign-in sheet. I was assisted in this effort by Alan Brasher, another employee of Environmental Litigation Group, P.C. Despite our efforts, we were unable to locate anything that resembled a sign-in sheet."

FURTHER THE AFFIANT SAYETH NOT.

_____
Wendy Waldrop Garmon

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by Wendy Waldrop Garmon on this the 2 day of November 2007.

_____
NOTARY PUBLIC
My Commission Expires: 8-9-08

**Affidavit of Wendy Waldrop Garmon**                                          Page 2
*Tatum v. Pactiv Corporation, et al.*, Civil Action No. 2:06cv83-LES
In the United States District Court
For the Middle District of Alabama, Northern Division