IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| M.C., Who Sues By and Through Her Mother And Next of Friend, GAIL TATUM, <br><br> Plaintiff, <br><br> vs. <br><br> PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, <br><br> Defendants. | ) ) ) ) ) CASE NO. 2:06-cv-83-LES-CSC ) (LEAD CASE) ) ) ) ) ) ) ) |

## PROTECTIVE ORDER

It is hereby ORDERED that Plaintiffs are limited to the following fifty topics as proper subjects of testimony to be obtained from Defendant Louisiana-Pacific Corporation ("LP") pursuant to Federal Rule of Civil Procedure 30(b)(6):

(1) LP's corporate structure for the time period it has owned the Lockhart Facility;

(2) Identification of LP employees with management responsibilities relating to the Lockhart Facility and their contacts with the Facility;

(3) Non-privileged Board of Directors meeting minutes, if any, reflecting discussion about the Lockhart Facility, including any discussion of environmental matters relating to the Facility;

(4) Shareholder meeting minutes, if any, reflecting discussion about the Lockhart Facility, including any discussion of environmental matters relating to the Facility;

(5) Non-privileged Environmental Committee Meeting minutes of the Board of Directors, if any, reflecting discussion about the Lockhart Facility, including any discussion of environmental matters relating to the Facility;

(6) Lockhart Facility sawmill operations during the period of LP's ownership;

(7) Lockhart Facility wood preserving operations during LP's ownership;

(8)  Lockhart Facility boiler operations during the period of LP's ownership;

(9)  Lockhart Facility Ponds 1, 2 and 3 during LP's ownership;

(10) Lockhart Facility spray evaporation system during LP's ownership;

(11) Lockhart Facility treatment cylinders associated with wood preservation operations during LP's ownership;

(12) Separator units associated with wood preserving operations at the Lockhart Facility during LP's ownership;

(13) The drip pad associated with wood preserving operations at the Lockhart Facility during LP's ownership;

(14) The layout and organization of the Lockhart Facility during LP's ownership;

(15) Equipment and methods used for wood preserving operations at the Lockhart Facility during LP's ownership;

(16) The identification, purchase, and dates of use by LP of creosote, pentachlorophenol and chromated copper arsenate ("CCA") at the Lockhart Facility;

(17) The suppliers of creosote, pentachlorophenol and CCA used by LP in wood preservation operations at the Lockhart Facility;

(18) Material Safety Data Sheets and other information received by LP regarding creosote, pentachlorophenol and CCA used by LP at the Lockhart Facility;

(19) The amount of dimensional lumber produced annually by the Lockhart Facility during the period of LP's operations;

(20) The amount of wood preserving conducted annually by the Lockhart Facility during the period of LP's operations;

(21) Environmental permits issued to or in effect at the Lockhart Facility during the period of LP's ownership;

(22) Disposition of wastes resulting from wood preserving operations at the Lockhart Facility during the period of LP's ownership;

(23) Disposition of ash generated from operation of the boilers at the Lockhart Facility during the period of LP's ownership;

(24) Off-site disposal of wastes from the Lockhart Facility during LP's ownership;

(25) Actions taken by LP to comply with state and federal environmental law relative to the Lockhart Facility during the period of LP's ownership;

(26) Written communications about wood preserving and other Lockhart Facility operations to ADEM and U.S. EPA;

(27) Written notifications and submissions by LP to federal, state, and local agencies regarding the Lockhart Facility during LP's ownership;

(28) Written information provided to Lockhart Facility employees regarding environmental matters, including wood preserving, during the period of LP's ownership;

(29) LP's corporate structure for handling environmental, health and safety matters during the period of its ownership of the Lockhart Facility;

(30) Environmental training or presentations relating to wood preserving operations at the Lockhart Facility during LP's ownership;

(31) LP's corporate Environmental, Health, and Safety program during the time LP operated the Lockhart Facility;

(32) LP's corporate environmental handbook to the extent such a handbook existed during the time LP operated the Lockhart Facility;

(33) To the extent any such documents existed during the time LP operated the Lockhart Facility, LP's corporate environmental audit program to the extent such a program was in place during the time LP operated at the Lockhart Facility;

(34) Sales of treated wood, if any, to employees and/or others at the Lockhart Facility during the period of LP's operations;

(35) ADEM and U.S. EPA inspections of the Lockhart Facility during the period of LP's ownership;

(36) Any notices of violation resulting from ADEM and U.S. EPA inspections at the Lockhart Facility during the period of LP's ownership;

(37) Any ADEM or U.S. EPA consent order issued with respect to the Lockhart Facility during the period of LP's ownership;

(38) Any other ADEM or U.S. EPA consent order or decree imposing requirements applicable to the Lockhart Facility during the period of LP's ownership;

(39) LP's decision to close the Lockhart Facility;

- 4 -

(40)    Investigation and remediation activities by LP at or near the Lockhart Facility during the period of LP's ownership;

(41)    Identification of third-party contractors who have performed investigation and remedial work at the Lockhart Facility during the period of LP's ownership;

(42)    Costs LP has incurred in connection with investigation and remediation work at the Lockhart Facility, including any division of costs for such work between LP and Pactiv;

(43)    Disposition of Lockhart Facility records during LP's ownership;

(44)    The "spoliation" allegations asserted by Plaintiffs against LP relating to Lockhart Facility records;

(45)    The collection of documents previously produced by LP to Plaintiffs as part of LP's Initial Disclosures;

(46)    LP's corporate document retention policies during the period of ownership of the Lockhart Facility;

(47)    LP's memberships during the time LP operated the Lockhart Facility in industry or trade groups that dealt with issues relating to wood preserving, if any;

(48)    During the period of LP's ownership of the Lockhart Facility, insurance coverage for environmental liability in connection with that Facility, including any coverage disputes and settlements of such disputes;

(49)    During the period of LP's ownership of the Lockhart Facility, indemnity agreements concerning environmental liability in connection with that Facility, including any disputes and settlements of such disputes; and

(50)    During the period of LP's ownership of the Lockhart Facility, agreements relating to the allocation of environmental liability for that Facility and division of remediation costs for that Facility.

So ordered this _____ day of _____, 2007.

_____
Chief Magistrate Judge Charles S. Coody

LEGAL02/30596919v1